UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| ———————————————— x | | |
| WATERFORD TOWNSHIP POLICE & FIRE RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated, | : : : | Civil Action No. |
| | : | CLASS ACTION |
| Plaintiff, | : : | COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| | : | |
| vs. | : : | |
| NATIONAL INSTRUMENTS CORPORATION, EMERSON ELECTRIC CO., ERIC STARKLOFF, KAREN RAPP, and DANIEL BERENBAUM, | : : : : | |
| | : | |
| Defendants. | : : | |
| ———————————————— x | | DEMAND FOR JURY TRIAL |

Plaintiff Waterford Township Police & Fire Retirement System ("plaintiff"), on behalf of itself and all others similarly situated, by plaintiff's undersigned attorneys, for plaintiff's complaint against defendants, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of the U.S. Securities and Exchange Commission ("SEC") filings by National Instruments Corporation ("National Instruments" or "NATI" or "NI" or the "Company"), conference call transcripts, Company press releases, and media reports about the Company.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a securities fraud class action on behalf of all sellers of the common stock of NATI between May 25, 2022 and January 17, 2023, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 ("1934 Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the 1934 Act, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. §240.10b-5, promulgated thereunder by the SEC.

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the 1934 Act, 15 U.S.C. §78aa.

4.      Venue is proper in this District pursuant to §27 of the 1934 Act and 28 U.S.C. §1391(b).  Many of the acts charged herein, including the dissemination of materially false and misleading information occurred in this District.

- 1 -

5.     In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the Nasdaq.

## PARTIES

6.     Plaintiff Waterford Township Police & Fire Retirement System, as set forth in the accompanying certification, which is incorporated herein by reference, sold NATI common stock during the Class Period and was damaged thereby.

7.     Defendant National Instruments is a producer of automated test equipment and virtual instrumentation software.   Since October 2023, NATI operates as Emerson Electric Co.'s ("Emerson") Test and Measurement business unit after getting acquired by Emerson.   During the Class Period, NATI common stock traded in an efficient market on the Nasdaq under the ticker symbol "NATI."   As of February 13, 2023, there were approximately 131.5 million shares of NATI common stock issued and outstanding.

8.     Defendant Emerson manufactures products and provides engineering services for industrial, commercial, and consumer markets.   On October 11, 2023, Emerson acquired all of the common stock of NATI and as a matter of law assumed NATI's legal obligations.   Emerson is named as a defendant herein as the successor in interest to NATI, and not for any conduct it committed during the Class Period.

9.     Defendant Eric Starkloff ("Starkloff") was at all relevant times, the Chief Executive Officer ("CEO") and President of NATI, and a member of the NATI Board of Directors (the "Board").   According to his LinkedIn bio, defendant Starkloff now serves as an "Advisor to the President at National Instruments."

10.     Defendant Karen Rapp ("Rapp") was, until January 9, 2023, an Executive Vice President and the Chief Financial Officer ("CFO") of NATI.

11.    Defendant Daniel Berenbaum ("Berenbaum") was between January 9, 2023 and at least October 11, 2023, an Executive Vice President, the CFO, and the Treasurer of NATI.

12.    Defendants Starkloff, Rapp, and Berenbaum were senior executives of NATI and are sometimes referred to herein as the "Individual Defendants."

13.    The Individual Defendants made, or caused to be made, false statements and/or omitted to disclose material information that artificially deflated the price of NATI common stock during the Class Period.  The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of NATI's press releases, interim financial reports, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.  They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions with the Company and their access to material, non-public information available to them but not to the public, the Individual Defendants knew that the facts specified herein had not been disclosed to and were being concealed from the public and that the representations being made were then materially false and misleading.  The Individual Defendants are liable for the false and misleading statements and material omissions pleaded herein.

14.    Defendant Emerson and the Individual Defendants are sometimes referred to herein collectively as "defendants."

15.    Defendants are liable, directly or as successors in interest, for: (i) making false statements; or (ii) failing to disclose non-public facts known to them about NATI and the true market value of its common stock.  Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on sellers of NATI common stock was a success, as it: (i) deceived the investing

public regarding NATI's prospects; (ii) artificially deflated the market price of NATI common stock; and (iii) caused plaintiff and other members of the Class (defined herein) to sell NATI common stock at artificially deflated prices.

<strong>DEFENDANTS' FRAUDULENT SCHEME</strong>

16.     In April 2010, NATI adopted a program to repurchase of shares of NATI common stock from time to time, depending on market conditions and other factors (the "2019 Program"). NATI amended the 2019 Program several times over the years to increase the number of shares that may be purchased under the program.  On October 23, 2019, NATI amended the 2019 Program to increase the number of shares that may be repurchased by 3,000,000 shares.

17.     In January 2022, NATI adopted an additional stock repurchase program permitting the Company to repurchase up to $250 million of its common stock on the open market and, thereafter, purchased NATI stock on the open market (the "2022 Program").  The 2022 Program was in addition to the existing 2019 Program.  Under the 2022 Program, shares could be repurchased from time to time in open market transactions, in privately negotiated transactions, or otherwise, and the timing and the other terms of the repurchase depended on a variety of factors, including legal requirements, economic and market conditions, and other investment opportunities.

18.     As detailed further herein, at the time that NATI was repurchasing NATI stock, defendants knew that NATI had received a formal acquisition offer from Emerson to purchase all outstanding shares of NATI common stock at prices significantly above the then-current market prices of NATI common stock, and therefore significantly above the prices at which NATI was repurchasing NATI common stock from unsuspecting Class members.  Accordingly, NATI had an obligation to disclose that it had received a formal acquisition offer from Emerson or abstain from purchasing NATI stock from unsuspecting investors.   NATI did not disclose this material information during the Class Period.

19.    The Class Period starts on May 25, 2022 – NATI common stock opened at $34.56 per share.  On that day, after having received a telephone call from Emerson on or about May 16, 2022, indicating an initial interest in purchasing all of the outstanding shares of NATI, the Company received an official letter from Emerson directed to defendant Starkloff and the Board, which offered to purchase all the outstanding common stock of NATI for $48 per share in cash.  The letter stated in pertinent part as follows:

> Further to my recent discussions with you, ***I am excited to present you with this proposal (the "Proposal") for the acquisition of all outstanding shares of National Instruments Corporation ("NI") by Emerson Electric Co. ("Emerson")***.
>
> *        *        *
>
> With that backdrop, ***I am pleased to present you and your Board with this Proposal***:

> **Valuation**

> ***Emerson proposes to purchase 100% of the outstanding common stock of NI for $48 in cash per common share***, which implies an equity value of $6.49 billion and an enterprise value of $6.67 billion.  We believe our Proposal provides significant value to your shareholders:

> -    A 39% premium to NI's closing share price as of May 24, 2022;
>
> -    A 36% premium to the volume weighted average price for the last 30 trading days ending May 24, 2022;
>
> -    A 4% premium to the 52 week high trading price as of May 24, 2022

> **Financing**

> ***Our Proposal is not subject to any financing condition and would be financed from cash on hand, committed lines of credit and/or other available sources of financing***.

> **Regulatory**

> While applicable regulatory approvals will be required, ***we do not expect there to be substantive impediments to closing***.  We note the complementary nature of our respective businesses.

**Due Diligence**

This Proposal is based on publicly available information under the assumption that it presents fairly and completely NI and its businesses and its outstanding debt and share count. It is subject to the completion of customary and confirmatory due diligence (e.g., tax, environmental, legal, etc.). We are prepared to move quickly to complete such due diligence when appropriate.

**Timing**

*Emerson is prepared to proceed immediately* to work with NI and its advisors to complete due diligence and to negotiate a mutually agreeable merger agreement (the "Definitive Agreement") in parallel. It is our expectation that the signing of the Definitive Agreement and announcement can be achieved in 4-6 weeks.

*We have no current plan to disclose this letter* and assume that you do not intend to either. Our strong preference is to work constructively and expeditiously with you and your board to announce a Definitive Agreement.

\*       \*       \*

*To reiterate, our Proposal – all cash consideration with no financing contingency and no substantive regulatory impediments – provides both significant value and certainty to NI's shareholders. We are prepared to move very quickly to complete our due diligence and sign definitive agreements*.

20.      On June 16, 2022, defendant Starkloff, on behalf of NATI, rejected Emerson's offer.

NATI's response stated in pertinent part as follows:

*The Board of Directors (the "Board") of National Instruments Corporation ("NI") has carefully reviewed your letter dated May 25, 2022, with the assistance of our financial and legal advisors.*

*The Board has unanimously determined* that your letter does not provide a basis for further discussions.

NI's Board and management team will remain focused, without distraction, on executing our strategies that are producing a significant and steady increase in bookings and revenue, strengthened operational performance, and advances in technology.

21.      On June 16, 2022, the price of NATI common stock closed at $31.41 per share.

22.      On June 22, 2022, Emerson CEO Lal Karsanbhai ("Karsanbhai") responded to

defendants Starkloff and McGrath, and indicated Emerson's continued interest in purchasing all the

outstanding shares of NATI common stock at $48 per share.  Emerson's response stated in pertinent part as follows:

> I am disappointed in your response and the lack of engagement from you and your Board to what is an extremely attractive Proposal for the shareholders of NI.
>
> *We have followed NI for many years and believe that the Proposal is a unique opportunity for NI shareholders to realize a certain cash value* and to accelerate the execution of your vision to automate test across the product lifecycle. *We are offering an immediate financial benefit to your shareholders*, and a high-quality home for NI, benefiting your employees, customers, suppliers and communities.
>
> *Our Proposal to acquire all of NI's outstanding shares at $48 per share in cash offers significant value to your shareholders measured against both short and longer-term metrics* . . . .
>
> *       *       *
>
> *We are highly confident your shareholders would view our cash offer favorably and recent market data points reinforce this view, including:*
>
> - The last time NI's share price closed above $48 was on December 6th, 2018. NI's share price has underperformed both the broader market and its key peer, Keysight, since then, with the stock down 34% in a period where the NASDAQ Index gained 54% and Keysight gained 125%;
>
> - Four of the six brokers who cover NI have reduced their 12 month forward price targets following your Q1 earnings with the median price target being reduced from $50 to $43.50; and
>
> - The top 10 active shareholders as of the end of Q1 2021 owned approximately 19% of the company with an estimated weighted average cost basis of $35.  Over the past year, 8 of those 10 shareholders have reduced their positions and sold stock materially below the price we are offering.

23.     On July 6, 2022, defendant Starkloff, on behalf of NATI, responded to Emerson's June 22, 2022 letter, stating in pertinent part: "I wanted to let you know that we will be discussing your follow-up letter at our regularly scheduled board meeting at the end of this month.  I will be in touch with you after the board meeting to discuss."

24.     On July 28, 2022, after the close of trading, NATI issued a press release announcing its second quarter 2022 financial results and updating its financial guidance.  The letter quoted defendant Starkloff justifying that increased guidance, stating in pertinent part as follows:

> "***NI has delivered strong performance over the last several quarters***, driven by our highly differentiated technologies and offerings targeted at segments with powerful growth drivers, including electric and autonomous vehicles, wireless communication, and new space technology.  ***We believe our focused strategy is leading to ongoing share gains*** . . . .  Momentum continued in the second quarter with orders up 20 percent year over year and revenue up 14 percent year over year. ***These results bring us increased confidence in achieving revenue growth and earnings per share in line with current consensus estimates***."

The release also quoted defendant Rapp detailing the increased guidance, stating in pertinent part as follows:

> "***We continue to see the benefits of the actions we have taken to increase scale into our business model***.  Despite the temporary headwinds to gross margin, ***we have improved diluted non-GAAP EPS by 15 percent year over year in the first half of 2022***. . . .  With many key initiatives underway, ***we are confident in our ability to deliver on our commitment to non-GAAP operating margin improvement***. Even in a potential recessionary environment, ***we now expect to increase our non-GAAP operating margin by 300 basis points in 2023, followed by 100 basis points of additional improvement each year through 2025.***"

25.     The July 28, 2022 release provided the following updated financial guidance for NATI:

**Guidance**

- Q3 GAAP revenue to be in the range of $410 million to $440 million, up 16 percent year over year at the midpoint

- GAAP diluted EPS to be in the range of $0.34 to $0.48 for Q3, up 105 percent year over year at the midpoint

- Non-GAAP diluted EPS expected to be in the range of $0.46 to $0.60, up 26 percent year over year at the midpoint

26.     On the morning of July 28, 2022, NATI also conducted a conference call with investors providing further positive commentary about the Company's then-present business metrics and financial prospects purportedly justifying the increased financial guidance.

27.     On July 29, 2022, NATI filed with the SEC its quarterly financial report on Form 10-Q representing that "[d]uring the three months ended June 30, 2022, we repurchased 986,876 shares of our common stock at a weighted average price per share of $39.06" pursuant to the Company's stock repurchase program.

28.     On August 2, 2022, defendant Starkloff, again on behalf of NATI, responded to Emerson's June 22, 2022 letter, and rejected Emerson's offer.  Starkloff stated in pertinent part: "Our Board of Directors has carefully reviewed your letter dated June 22, 2022, with the assistance of our financial and legal advisors.  The Board remains unanimously of the view that your proposal is not in the best interests of NI and its shareholders."

29.     On September 13, 2022, NATI issued a press release stating in pertinent part that defendant Rapp had "announced her plans to retire in May 2023."

30.     On October 27, 2022, before the opening of trading, NATI issued a press release announcing its third quarter 2022 financial results and again increasing its financial guidance.  The release quoted defendant Starkloff supporting that strong guidance by stating: "'We achieved very strong performance in the third quarter with record orders, revenue and non-GAAP EPS for a third consecutive quarter,'" and that "'[t]he initiatives that we've executed since 2017 have transformed NI into a company with higher growth, better profitability, and lower cyclicality'" so "'[w]e believe these strategic shifts position us to meet our three year plan for growth and margin expansion.'"  The release also quoted defendant Rapp supporting the strong guidance by stating:

"We planned ahead and are taking action in anticipation of a semiconductor downturn and the impact of a weaker macro economy.  Looking ahead, we will

continue to sharpen our focus on making intentional investments for growth, pivoting to new customer opportunities, and on continuing to increase scale and leverage across our business . . . . Through disciplined cost management, we remain focused on delivering on our commitment to increase non-GAAP operating margin by 100 basis points in 2022."

As to guidance, the release stated in pertinent part as follows:

**Guidance**

- Q4 GAAP revenue to be in the range of $435 million to $465 million, up 7 percent year over year at the midpoint

- GAAP diluted EPS to be in the range of $0.22 to $0.36 for Q4, down 3 percent year over year at the midpoint

- Non-GAAP diluted EPS expected to be in the range of $0.54 to $0.68, up 2 percent year over year at the midpoint

31.     On October 28, 2022, NATI filed with the SEC its quarterly financial report on Form 10-Q representing that "[d]uring the three months ended September 30, 2022, we repurchased 2,033,135 shares of our common stock at a weighted average price per share of $40.25" under the stock repurchase program.

32.     On November 3, 2022, Emerson sent a third offer letter to NATI directed to defendants Starkloff and McGrath, which stated in pertinent part as follows:

After receiving your terse response and continued refusal to engage with Emerson for the benefit of NI's shareholders, ***we decided to wait to see if your revised guidance, investor day communication, and Q3 results might fundamentally alter investors' views of NI's value or signal an acceleration in NI's outlook that we could incorporate into our thinking before reaching out to you again***.

33.     Emerson's November 3, 2022 letter went on to provide a recap of all that had transpired in connection with the offer, expressly accusing NATI of having repeatedly inflated its earnings guidance in order to support its stock price to make Emerson's offer less appealing to shareholders, stating in pertinent part as follows:

- 10 -

- *July 28th Q2 Earnings Call*: Despite solid order momentum, NI's performance demonstrated continued challenges to expanding margins, with gross margins down year-over-year by more than 400 bps and only a 2% incremental margin on 14% sales growth. ***With the knowledge of our approach (that you did not disclose to your shareholders), and despite the headwinds and weak financial performance, you substantially increased your outlook for 2023, guiding to a mid-teens topline growth rate and 300 basis points of margin improvement, a margin improvement three times larger than your prior guidance only three months earlier when you released 1st quarter earnings, at a time when you were not aware of Emerson's interest in acquiring NI.***

*      *      *

- *September 15th Investor Day*: ***You reaffirmed the same 2023 guidance as provided with Q2 earnings and provided additional guidance to achieve a further 200 bps operating margin expansion by 2025.*** Despite your positive tone, your shares fell 3.2% on the day, underperforming the market as investors and analysts continue to doubt NI's ability to execute and deliver these results given its historical track-record and the current operating environment. In particular, the market remains unconvinced about NI's ability to expand EBIT margins through software and system-level solutions as well as the sustainability of order trends and NI's ability to capitalize on secular opportunities in ADAS/EVs/5G.

- *October 27th Q3 Earnings*: Despite achieving record quarterly revenue, NI's share price declined 3.0% the next day (a day in which the NASDAQ Index was up 2.9%) given decelerating order rates, as well as continued supply chain challenges and the potential impact of a deteriorating macro. NI's Q4 guidance was below street expectations, ***despite reaffirming the margin expansion guidance for 2023.*** Since your announcement, research has highlighted how NI continues to be a "wait and see" company as evidence of margin expansion was pushed out once again. The market is particularly concerned about your ability to achieve your expected growth in the face of a worsening economic outlook in many markets, particularly in your portfolio businesses. Factoring in these uncertainties, almost all brokers revised their estimates for both Q4 and 2023 downwards as well as their target prices[.]

34.     Nonetheless, in its November 3, 2022 letter, Emerson offered an "Improved Proposal," increasing its offer to $53 per share, stating in pertinent part as follows:

> From our first outreach, we have preferred to engage with you privately and have been committed to improving our offer to reflect the outlook for your company incorporating the latest financial information. Although we question the motivations for your updated guidance, we do believe in the long-term potential of the NI business under Emerson's leadership and, in the spirit of achieving engagement, we are willing to incorporate your updated outlook to improve our offer. As such, ***we are increasing our Proposal, from $48 per share to $53 per share (our "Improved Proposal")***.

> ***Under our Improved Proposal, Emerson proposes to purchase 100% of the outstanding common stock of NI for $53 in cash per common share*** which implies an equity value of $7.1 billion and an enterprise value of $7.6 billion.  Our Improved Proposal delivers compelling all cash value and provides credit for significant future earnings, including your recently updated guidance.  Rather than wait for you to achieve an uncertain 2023, ***our cash offer gives your shareholders immediate credit today.  The offer provides substantial premiums to both current and historical metrics*** . . . .

Further emphasizing the premium this offered to the existing market price of NATI common stock, Emerson's November 3, 2022 letter stated in pertinent part as follows:

> ***For reference, the last time NI's share price closed above $53 was on March 12th, 2018.  Since then, NI's share price has underperformed both the broader market and its key peer, Keysight, with the stock down 31% in a period where the NASDAQ Index gained 36% and NI's closest peer Keysight gained 206%.***

35.     On November 15, 2022, defendants Starkloff and McGrath, on behalf of NATI, responded to Emerson's November 3, 2022 offer letter, stating in pertinent part:

> ***NI and its Board of Directors take your proposal seriously***, in accordance with our fiduciary duties.  We have established a working group of the Board to examine your proposal in greater detail, as we examine and evaluate options with the assistance of our advisors, inclusive of other prospective purchasers and transaction partners.

36.     In a November 16, 2022 response to NATI's November 15, 2022 response, Emerson confirmed that it intended to purchase additional NATI shares, stating: "[A]s mentioned in our November 3rd letter, Emerson will be filing for HSR approval to acquire additional shares of National Instruments Corporation.  Attached please find the required notice of such filing and of your company's HSR filing obligation."

37.     On December 15, 2022, NATI announced that defendant Rapp, who had announced in September 2022 that she would be retiring in May 2023, was suddenly advancing her departure and that defendant Berenbaum would become CFO effective January 9, 2023.

38.     On January 11, 2023, Emerson wrote to NATI confirming its prior offer of $53 per share, stating in pertinent part: "Based on what you have shared to date, we reiterate our proposal for

Emerson to purchase 100% of the outstanding common stock of NI for $53 in cash per common share."

39.     On Friday, January 13, 2023, prior to the opening of trading, NATI issued a press release announcing that "its Board . . . [had] initiated a review and evaluation of strategic options, in consultation with its financial and legal advisors, with the intent to unlock and maximize shareholder value," adding that the "comprehensive review [would] include consideration of a full range of available strategic, business and financial alternatives, including solicitation of interest from potential acquirors and other transaction partners, some of whom have already approached the Company."  The press release also disclosed that the Board had adopted a poison pill "shareholder rights plan" that would make it difficult for anyone to exercise a hostile takeover of NATI.  The press release further stated that "[t]here is no deadline or definitive timetable set for completion of the strategic review, and there is no assurance that this process will result in any specific transaction, including a business combination or acquisition of NI," that "[t]here is also no assurance as to the specific terms or timing for any agreed transaction if one were to result," and that "[t]he Company does not plan to make further comment or disclosures regarding this review until such time as required by law or otherwise deemed appropriate."

40.     On this news, the market price of NATI surged, trading as high as $47.95 per share and closing at $46.50 per share on January 13, 2023, on unusually high trading of more than 7.77 million shares trading, or more than 11 times the average daily trading volume over the preceding 10 trading days.

41.     On January 17, 2023, prior to the opening of trading, Emerson issued a press release announcing that it had made an all-cash offer to purchase all of the shares of NATI for $53 per share. There were no financing contingencies or anticipated regulatory concerns with the proposed

acquisition.  The release laid out the timeline of the previous communications about Emerson's

offer, demonstrating that Emerson had made its initial offer of $48 per share on May 25, 2022 –

which it increased to $53 per share in November 2022.  It also emphasized that in response to the

initial offer, while simultaneously undertaking the largest stock buy-back in its history – all at the

deflated price of approximately $40 per share – NATI chose to conceal Emerson's all-cash, no

financing contingency, no regulatory risk offer from the investing public:

> **Emerson's Public Proposal Follows Eight Months of Delay and Lack of Engagement**
>
> Emerson's first outreach to NI regarding a potential all-cash acquisition was on May 16, 2022, and ***Emerson's initial $48 per share proposal was formalized in a letter on May 25, 2022***.  For eight months, NI delayed and refused to engage meaningfully with Emerson, as outlined in the correspondence below.  ***In addition, after receiving the initial May 25, 2022 proposal from Emerson, NI not only refused to engage with Emerson – it repurchased more than 2 million shares at an average weighted price of $40.25, the largest quarterly repurchase in its history on a dollar basis, depriving its shareholders of the opportunity to realize immediate cash value through the transaction price, which is significantly above the repurchase price***.
>
> ***In a November 3, 2022 letter, Emerson outlined the terms of an improved all-cash proposal of $53 per share*** and highlighted its numerous attempts to engage with NI to that date.  ***On November 15, 2022, NI responded to Emerson, indicating that it had created a working group of its Board to examine Emerson's proposal in greater detail***, as well as evaluate options with the assistance of advisors.
>
> In the more than two months since, NI continued to resist engaging meaningfully with Emerson to work toward an agreement.  Eight months after Emerson's approach, NI agreed to a January 4, 2023 meeting with representatives from Emerson, which was followed by one additional conference call.  During these discussions, NI shared very limited, high-level information about its business and continued to demonstrate its unwillingness to provide more detailed information, including refusing to respond to key diligence questions provided ahead of the meeting.  NI then informed Emerson that this would be the extent of its engagement.  ***In a letter dated January 11, 2023, Emerson reiterated its $53 per share proposal to acquire NI***.

42.     On January 17, 2023, Emerson also posted a comment to its LinkedIn social media account, stating in pertinent part that "Emerson today announced that it has submitted a proposal to acquire National Instruments for $53 per share in cash."

43.     On the morning of January 17, 2023, Emerson also conducted a conference call to announce its "All-Cash Proposal to Acquire National Instruments," which was conducted by Colleen Mettler, Emerson's Vice President of Investor Relations; Lal Karsanbhai, Emerson's President and CEO; Frank Dellaquila, Emerson's Senior Executive Vice President and CFO; and Ram Krishnan, Emerson's Executive Vice President and CEO; and was attended by research analysts Stephen Tusa from JPMorgan Chase & Co, Research Division; Deane Dray from RBC Capital Markets, Research Division; Jeffrey Sprague from Vertical Research Partners, LLC; Julian Mitchell from Barclays Bank PLC, Research Division; Nigel Coe from Wolfe Research, LLC; and Thomas Moll from Stephens Inc., Research Division.  The conference call was conducted in New York City.  Emerson CEO Karsanbhai opened his remarks lamenting on the efforts Emerson had been making to get NATI's senior executives and Board members to respond to Emerson's offer, stating in pertinent part as follows:

> Thank you for joining us to discuss our proposal to acquire National Instruments for $53 per share in cash.  ***Today, we'll speak in detail about our numerous attempts to engage with NI***, and our belief that NI shareholders have an opportunity to realize immediate and significant value.
>
> Our proposal represents a 32% premium to NI's closing price on January 12, 2023, the day before they announced a public strategic review process and a 45% premium to NI's closing price on ***November 3, 2022, the day our $53 per share proposal was submitted***.  It is also a 38% premium to the 30-day VWAP as of January 12, 2023, and a 23% premium to NI's 52-week high intraday share price of $43.12 prior to its strategic review announcement.
>
> Beyond the compelling premium and all-cash value for NI shareholders, we have no financing contingency or expected regulatory concerns, and we are eager to pursue an expedited timeline where we can be ready to sign and announce quickly.  ***We have been at this since May, with repeated attempts since, which we outlined in***

*our announcement this morning*.  Despite these efforts, our attempts to engage privately have only been met with limited engagement by NI over the last 8 months.

In November, after months of delay, *NI told us that it had formed a working group of its Board to evaluate Emerson's proposal and strategic options*.  And then last Friday, more than 2 months later, NI publicly announced that it is initiating a review and evaluation of strategic options with its advisers and adopted a poison pill. Emerson urges NI shareholders to engage with their Board to ensure this public strategic review process is not merely another delay tactic.

*       *       *

*In May, we proposed an initial all-cash offer of $48 per share* and we were rebuffed.  In the interim, we reiterated our offer and requested access to information, but were rejected.  *In November, we increased our all-cash offer to $53 per share*, providing NI shareholders with even greater value and again, saw no engagement from NI despite its claims about forming a strategic transaction committee to evaluate Emerson's proposals and NI's strategic focus – strategic options, I should say.

*In January, NI gave the illusion of engagement, only to provide high-level responses to reasonable questions and then publicly announced a strategic review*. Leading up to NI's strategic review announcement, we received no update on our proposal or the options the Board was supposedly evaluating.  Meanwhile, over the past 8 months, NI shareholders have been unaware of this opportunity to realize an immediate cash premium.

*       *       *

*We think it is important for NI shareholders to understand the time line and our numerous attempts to engage with NI* to reach a friendly transaction agreement. Over the last 8 months, NI has consistently delayed and refused to engage with Emerson, and then has rejected our approaches.  *NI has also tried to buy time as they materially increase their guidance in an apparent attempt to support the stock, despite deteriorating market conditions*.  As I mentioned in November, NI claimed it had formed a working group of the Board to examine our proposal, as well as other strategic options and potential transaction partners.

Despite claims of running a process, *NI did not engage with Emerson until mid-December, at which point it agreed to a January 4th meeting*.  While initially, we were encouraged by NI's offer of a meeting, during these discussions, NI shared only high-level information about its business, and refused to respond to key diligence questions provided ahead of the meeting.  NI then told us that this would be the extent of their engagement *and asked us for a revised view of value, after which we reiterated our $53 per share proposal*.  The strategic review process NI announced continues the track record of delay and evasion.  What was NI's Board doing privately for 2 months as it evaluated options and continued to avoid

engagement with Emerson?  Why did NI choose to wait until now to announce the review publicly?

> *We feel that NI shareholders are due the transparency their Board has denied them.  So today, we are disclosing all of our correspondence with NI beginning in May 2022 to make public our sustained track record of attempted engagement with NI without any meaningful or constructive response.*  You can read all of our letters and NI's responses on our transaction website, MaximizingValueAtNI.com.

44.      Emerson CEO Karsanbhai also detailed how NATI had actually increased its financial guidance in response to the offer from Emerson – noting that the guidance increases had likely not been warranted and were only being issued to support the common stock price:

> [W]e believe our proposal adds important context to the significant increases in guidance NI has provided in recent months.  *In July 2022 with knowledge of Emerson's approach, which was not shared with NI shareholders, NI substantially increased its 2023 outlook.  After lowering its 2022 revenue guidance at the end of April, just 3 months later, NI guided to a mid-teens top line growth rate and adjusted its 2023 margin improvement to 3x larger than its prior guidance.  This came even as NI demonstrated continued challenges expanding its margins.  We question NI's motivations for this revised guidance and saw a disconnect between current performance and NI's updated outlook, particularly in light of a challenging macroeconomic environment and continued supply chain challenges*.

> *Then at its September 15, 2022 Investor Day, NI reaffirmed this guidance and said it would achieve a further 200 bps operating margin expansion by 2025*.  NI shares fell 3% on the day, underperforming the market as investors and analysts continued to doubt NI's ability to execute and deliver these results.  *With its third quarter earnings results reported on October 27, NI* announced record quarterly revenue *but also reported decelerating order rates, pushing its share price down the next day 3% again, even as the NASDAQ Index was up nearly 3%*.  Factoring in continued uncertainty, almost all of NI's sell-side analysts have revised their estimates for both the fourth quarter and fiscal 2023 downwards, as well as their target prices.  Clearly, the market is concerned about NI's ability to achieve its targets.

> *We think the existence of our offer and our numerous engagement attempts are important context for investors to have to understand NI's guidance*.

45.      On this news, the market price of NATI common stock predictably spiraled up to trade as high as $54.69 per share on January 17, 2023, on even higher trading volume of nearly 17

million shares trading, on the anticipation that if Emerson was willing to pay $53 per share, it or another competing bidder might be willing to pay more.

46.     On February 8, 2023, Emerson conducted an earnings conference call and Emerson's CEO opened up his remarks commenting on its offer to purchase NATI, the history of its offer, and his company's stated intent to purchase NATI:

> Before I turn the call over to Frank, I wanted to briefly discuss our proposal to acquire National Instruments for $53 per share in cash.  As you know, we made our offer public on January 17 and our correspondence with NI since 2022, May is available on maximizingvalueatni.com.

> Emerson is committed to an acquisition of NI and is participating in the strategic review process.  We believe our premium all-cash proposal with no financing conditions or anticipated regulatory concerns is compelling and in the best interest of Emerson and NI shareholders.  We look forward to continued engagement with NI and its advisers and moving swiftly towards an agreed transaction.

47.     On February 21, 2023, NATI filed with the SEC its 2022 annual financial report on Form 10-K representing that "during the year ended December 31, 2022, we repurchased 3,792,063 shares of our common stock at a weighted average price per share of $40.04," whereas "we repurchased *[only]* 1,339,498 shares of our common stock at a weighted average price per share of $41.06 during the year ended December 31, 2021, and we repurchased *[only]* 1,390,057 shares of our common stock at a weighted average price per share of $35.04 during the year ended December 31, 2020."

48.     According to a March 3, 2023 report by *Reuters*, Emerson's disclosure of its bid for NATI prompted a bidding war, citing confidential sources stating two other companies put in competing bids to acquire NATI.

49.     Then, on April 12, 2023, Emerson issued a press release announcing that it "entered into a definitive agreement under which Emerson will acquire NI for $60 per share in cash at an

equity value of $8.2 billion" (the "Merger Agreement").  The $60-per-share cash offer represented a

premium of nearly 50% to NATI's closing price on January 12, 2023.

50.     In connection with the Merger Agreement, NATI filed with the SEC a preliminary

proxy statement on May 11, 2023 and a definitive proxy statement on May 25, 2023, setting a June

29, 2023 date for shareholders to vote on the Merger Agreement.  And on June 29, 2023, the

Company's stockholders voted to adopt the Merger Agreement, whereby NATI would be acquired

by Emerson.

51.     On October 11, 2023, Emerson completed its acquisition of NATI pursuant to the

terms of the Merger Agreement and delisted NATI's common stock.  Pursuant to §1.1 of the Merger

Agreement, "at the Effective Time" of the **_merger_**, a wholly owned merger subsidiary of Emerson

"merge[d] with and into" NATI and "the separate corporate existence" of that merger subsidiary

"cease[d] and [NATI] . . . continue[d] its corporate existence . . . as the surviving corporation . . . and

a wholly owned Subsidiary of [Emerson]."  According to NATI's website (visited Oct. 26, 2023),

NATI is now "proud to be **_part of Emerson_**" and "will now operate as a new Test & Measurement

**_business group of Emerson_**."

## SCIENTER ALLEGATIONS

52.     As alleged herein, NATI and the Individual Defendants acted with scienter in that

they: (i) knew that the public documents and statements issued or disseminated in the name of the

Company were materially false and misleading and/or contained material omissions; (ii) knew that

such statements or documents would be issued or disseminated to the investing public; and (iii)

knowingly and substantially participated or acquiesced in the issuance or dissemination of such

statements or documents as primary violations of the federal securities laws.  As set forth herein in

detail, these defendants, by virtue of their receipt of the offer letters from Emerson to purchase all

outstanding shares of NATI common stock at prices significantly above the then-current trading

prices of NATI common stock, their control over, and/or receipt and/or modification of NATI's allegedly materially misleading statements and omissions, their control over NATI's stock repurchase programs, and/or their associations with the Company which made them privy to confidential proprietary information concerning NATI, participated in the fraudulent scheme alleged herein.

## LOSS CAUSATION AND ECONOMIC LOSS

53.     During the Class Period, as detailed herein, defendants engaged in a scheme to deceive the market and a course of conduct that artificially deflated the prices of NATI common stock and operated as a fraud or deceit on sellers of NATI common stock.  As detailed above, when the truth about defendants' misconduct and omissions was revealed, the price of NATI common stock increased precipitously as the prior artificial deflation came out.

54.     The increase in the price of NATI common stock was the direct result of the nature and extent of defendants' fraud finally being revealed to investors and the market.  The timing and magnitude of the share price increase negates any inference that the losses suffered by plaintiff and other members of the Class were caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to defendants' fraudulent conduct.

55.     The economic loss, *i.e.*, damages, suffered by plaintiff and other Class members was a direct result of defendants' fraudulent scheme to artificially deflate the prices of NATI common stock and the subsequent significant increase in the value of NATI common stock when defendants' prior misrepresentations, omissions, and other fraudulent conduct were revealed.

56.     At all relevant times, defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by plaintiff and other Class members.  Those statements were materially false and misleading through their failure to disclose a true and accurate picture of NATI's business, operations, and financial prospects as

alleged herein.  Throughout the Class Period, defendants issued materially false and misleading statements and omitted material facts necessary to make defendants' statements not false or misleading, causing the price of NATI common stock to be artificially deflated.  Plaintiff and other Class members sold NATI common stock at those artificially deflated prices, causing them to suffer damages as complained of herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE

57.     Plaintiff and the Class are entitled to a presumption of reliance under *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972), because the claims asserted herein against defendants are predicated upon omissions of material fact for which there was a duty to disclose.

58.     Plaintiff and the Class are also entitled to a presumption of reliance pursuant to *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), and the fraud-on-the-market doctrine because the market for NATI common stock was an efficient market at all relevant times by virtue of the following factors, among others:

(a)     NATI common stock met the requirements for listing, and was listed and actively traded on the Nasdaq, a highly efficient market;

(b)     NATI regularly communicated with public investors via established market communication mechanisms, including the regular dissemination of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(c)     NATI was followed by a number of securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  These reports were publicly available and entered the public marketplace.

59.     As a result of the foregoing, the market for NATI common stock promptly incorporated current information regarding the Company from publicly available sources and reflected such information in the prices of the stock.  Under these circumstances, all those who transacted in NATI common stock during the Class Period suffered similar injury through their transactions in NATI common stock at artificially deflated prices and a presumption of reliance applies.

60.     Without knowledge of the misrepresented or omitted material facts, plaintiff and other Class members sold NATI common stock between the time defendants omitted, misrepresented, and failed to disclose material facts and the time the true facts were disclosed. Accordingly, plaintiff and other Class members relied, and are entitled to have relied, upon the integrity of the market prices for NATI common stock, and are entitled to a presumption of reliance on defendants' materially false and misleading statements and omissions during the Class Period.

## CLASS ACTION ALLEGATIONS

61.     Plaintiff brings this action on behalf of all sellers of NATI common stock during the Class Period who were damaged thereby (the "Class").  Excluded from the Class are defendants, the officers and directors of the Company ("Excluded D&Os"), the defendants' and the Excluded D&Os' immediate families, legal representatives, heirs, successors, or assigns, and any entity in which any of the defendants or Excluded D&Os have or had a controlling interest.

62.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, NATI common stock was actively traded on the Nasdaq.  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by NATI or its transfer agent and may be notified of the pendency of this

action by mail, using the form of notice similar to that customarily used in securities class actions. Upon information and belief, these shares were held by hundreds or thousands of individuals located geographically throughout the country.  Joinder would be highly impracticable.

63.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of the federal laws complained of herein.

64.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

65.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)     whether defendants acted knowingly or with deliberate recklessness in issuing false and misleading statements and/or omissions;

(c)     whether the prices of NATI common stock during the Class Period were artificially deflated because of defendants' conduct complained of herein; and

(d)     whether the members of the Class have sustained damages and, if so, the proper measure of damages.

66.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of

individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## COUNT I

### For Violation of §10(b) of the 1934 Act and Rule 10b-5
### Against All Defendants

67.     Plaintiff incorporates ¶¶1-66 by reference.

68.     During the Class Period, defendants had access to the material, non-public confidential information concerning the Company and its true prospects, as alleged herein at ¶¶19-20, 22-37, and 39.

69.     Notwithstanding their duty to refrain from trading in NATI common stock unless they disclosed those material, non-public, favorable facts alleged herein, and in violation of their fiduciary duties to plaintiff and other members of the Class, defendants caused NATI to purchase more than two million shares of NATI common stock at artificially deflated prices.

70.     Defendants caused NATI to purchase those shares of common stock, as alleged above, at market prices artificially deflated by the nondisclosure of material, non-public, favorable facts during the Class Period.

71.     Defendants knew that they were in possession of material, non-public, favorable information which was not known to the investing public, including plaintiff and other members of the Class.  Before purchasing that common stock from the public, defendants were obligated to disclose that material, non-public favorable information to plaintiff and other members of the Class.

72.     By reason of the foregoing, defendants, directly and indirectly, by use of the means and instrumentalities of interstate commerce, the mails, and the facilities of the national securities exchanges, employed devices, schemes, and artifices to defraud, and engaged in acts and

transactions and a course of business which operated as a fraud or deceit upon members of the investing public who sold NATI common stock during the Class Period.

73.     Plaintiff and other members of the Class who sold shares of NATI common stock: (i) have suffered substantial damages because they relied upon the integrity of the market and sold shares of NATI common stock at artificially deflated prices as a result of the violations of §10(b) and Rule 10b-5 alleged herein; and (ii) would not have sold NATI common stock at the prices they sold at, or at all, if they had been aware that the market prices had been artificially and falsely deflated by defendants' concealment.  At the time of the sales by plaintiff and members of the Class, the fair and true value of NATI common stock was substantially more than the prices they sold the shares at.

74.     As a direct and proximate result of defendant's wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their sales of NATI common stock during the Class Period.

## COUNT II

### For Violation of §10(b) of the 1934 Act and Rule 10b-5
### Against All Defendants

75.     Plaintiff incorporates ¶¶1-74 by reference.

76.     During the Class Period, defendants disseminated or approved the false or misleading statements and/or omissions specified above, which they knew or recklessly disregarded were misleading or deficient in that they contained misrepresentations and/or omissions and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

77.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

   (a)  employed devices, schemes, and artifices to defraud;

(b)     made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their sales of NATI common stock during the Class Period.

78.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they sold NATI common stock at artificially deflated prices.  Plaintiff and the Class would not have sold NATI common stock at the prices they sold at, or at all, if they had been aware that the market prices had been artificially and falsely deflated by defendants' misleading statements.

79.     As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their sales of NATI common stock during the Class Period.

## COUNT III

### For Violation of §20(a) of the 1934 Act
### Against All Defendants

80.     Plaintiff incorporates ¶¶1-79 by reference.

81.     During the Class Period, defendants acted as controlling persons of NATI within the meaning of §20(a) of the 1934 Act.  By virtue of their stock holdings, their positions with the Company, and their power to control public statements about NATI, the Individual Defendants had the power and ability to control the actions of NATI and its employees.  NATI controlled the Individual Defendants and its other officers and employees.  By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A.     Determining that this action is a proper class action, designating plaintiff as Lead

Plaintiff and certifying plaintiff as Class representative under Rule 23 of the Federal Rules of Civil

Procedure and plaintiff's counsel as Lead Counsel;

B.     Awarding plaintiff and the members of the Class damages and interest;

C.     Awarding plaintiff's reasonable costs, including attorneys' fees; and

D.     Awarding such equitable/injunctive or other relief as the Court may deem just and

proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  November 30, 2023        ROBBINS GELLER RUDMAN
           & DOWD, LLP
        SAMUEL H. RUDMAN
        MARIO ALBA JR.
        MARY K. BLASY


                        *s/ Samuel H. Rudman*
                    SAMUEL H. RUDMAN

        58 South Service Road, Suite 200
        Melville, NY  11747
        Telephone:  631/367-7100
        631/367-1173 (fax)
        srudman@rgrdlaw.com
        malba@rgrdlaw.com
        mblasy@rgrdlaw.com

WOLF POPPER LLP
ROBERT C. FINKEL
JOSHUA W. RUTHIZER
ADAM SAVETT
845 Third Avenue, 12th Floor
New York, NY  10022
Telephone:  212/759-4600
212/486-2093 (fax)
rfinkel@wolfpopper.com
jruthizer@wolfpopper.com
asavett@wolfpopper.com

VANOVERBEKE, MICHAUD &
   TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

*Attorneys for Plaintiff*

CERTIFICATION OF NAMED PLAINTIFF
<u>PURSUANT TO FEDERAL SECURITIES LAWS</u>

Waterford Township Police & Fire Retirement System ("Plaintiff") declares:

1.     Plaintiff has reviewed a complaint and authorized its filing.

2.     Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.     Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.     Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:  *See* attached Schedule A.

5.     Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:  None.

6.     Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this ⟨19th⟩ day of October, 2023.

Waterford Township Police & Fire
Retirement System

By:  _____

Its:  _____

NATIONAL INSTRUMENTS

## SCHEDULE A

### SECURITIES TRANSACTIONS

**Stock**

| Date Disposed | Amount of Shares Disposed | Price |
|---|---|---|
| 06/21/2022 | 1,070 | $31.90 |
| 08/11/2022 | 1,185 | $40.50 |
| 01/13/2023 | 1,520 | $46.95 |

Prices listed are rounded to two decimal places.