**Robbins Geller Rudman & Dowd LLP**

| Chicago | Melville | Nashville | San Diego | Wilmington |
| Boca Raton | Manhattan | Philadelphia | San Francisco | Washington, D.C. |

January 15, 2025

<u>VIA ECF</u>

The Honorable Denise L. Cote
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

      Re:    *In re National Instruments Corp. Securities Litigation*,
              Case No. 1:23-cv-10488-DLC (S.D.N.Y.)

Dear Judge Cote:

We represent the lead plaintiff in this matter. We respectfully request an informal conference to seek the Court's assistance in compelling defendants to produce relevant documents. Defendants are attempting to restrict discovery in this matter to the unduly narrow time period during which National Instruments engaged in insider trading, and are refusing to provide relevant evidence from the aftermath of the unlawful transactions at issue.

Although defendants' repurchases occurred in August and September of 2022, the events at issue in this case extend until at least January 2023. At that time, investors learned the truth concerning Emerson's offers to acquire National Instruments for a significant premium and the market price of National Instruments' common stock corrected sharply to the level of Emerson's offer. Defendants initially refused to produce any documents from after September 2022. After an in-depth meet and confer in which we urged defendants to produce documents through January 2023, defendants now take the position that they will only produce documents through October 2022.

In attempting to limit discovery to the period of their insider trading, defendants are refusing to produce documents of obvious relevance to this case. For example, on January 17, 2023, Emerson publicly accused National Instruments of the insider trading at issue here. As stated in Emerson's release:

> [A]fter receiving the initial May 25, 2022 proposal from Emerson, NI not only refused to engage with Emerson – it repurchased more than 2 million shares at an average weighted price of $40.25, the largest quarterly repurchase in its history on a dollar basis, depriving its shareholders of the opportunity to realize immediate cash value through the transaction price, which is significantly above the repurchase price.

ECF 29 at ¶76. Defendants' receipt of and response to this accusation, including any discussion or analysis touching upon the stock repurchases at issue, are relevant to this case.

Similarly, beginning in early-November 2022, National Instruments' board of directors formed a "Transaction Evaluation Committee" (chaired by Defendant McGrath) to evaluate

Emerson's offer.  This committee continued its work until well after the January 2023 corrective disclosures in this case.  The records of this committee are important evidence here.  For example, the committee's work from the period shortly after defendants' insider trades occurred will shed significant light on the materiality of Emerson's offer at the time those trades occurred.  Indeed, one of defendants' principal defenses is their (tenuous) contention that there was no material information in their possession at the time of the repurchases because (according to defendants) Emerson's original offer was not likely to come to fruition.  The committee's work beginning a few weeks later on the Emerson transaction is significant evidence regarding this factual issue, and will help demonstrate whether a transaction with Emerson was as unlikely and immaterial as defendants now assert.  Moreover, any consideration or analysis by the committee of National Instruments' stock repurchases, or the relationship between those repurchases and the Emerson transaction, is highly relevant evidence in this case even if the repurchases occurred a few weeks earlier.  For example, any evidence tending to show that the repurchases were understood or intended to be part of a deliberate strategy to get Emerson to increase its offer price would be significant evidence of scienter.  As another example, National Instruments originally retained BofA Securities as its financial advisor regarding Emerson's offer in May 2022, and BofA continued to advise the committee after its formation.  To the extent BofA provided any advice or analysis concerning the repurchases, that would be important evidence in this case regardless of when it was created.

As the Court noted in its order denying defendants' motion to dismiss, this case raises the question "whether the class can only be composed of those who sold their stock to NI during the months of August and September 2022."  ECF 42 at 21, n.2.  But even if the class period is limited to this narrow insider trading period – an issue properly decided at class certification – it is well established that facts from after a class period may be relevant to establishing the elements of a claim within that class period.  *See, e.g.*, *In re: Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72-3 (2d Cir. 2001) ("[O]ur cases have relied on post-class period data to confirm what a defendant should have known during the class period[.]  Any information that sheds light on whether class period statements were false or materially misleading is relevant. [P]ost-class period data may be relevant to determining what a defendant knew or should have known during the class period.").  Accordingly, courts routinely require defendants to produce materials from after an alleged class period.  *See, e.g.*, *In re Allergan PLC Sec. Litig.*, No. 18 Civ. 12089(CM)(GW), 2020 WL 4034751, at *2 (S.D.N.Y. Mar. 30, 2020) (requiring production for a seven month period after the class period because "discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues").[1]

Lead plaintiff seeks production of relevant materials through the end of January 2023, a reasonable period of approximately four months after defendants' insider trades, encompassing the corrective disclosures alleged in this case, and otherwise including substantial evidence material to this litigation.  We respectfully ask for an informal conference with the Court regarding compelling defendants to produce such materials.

Very truly yours,

Noam Mandel

---

[1]  S*ee also In re Control Data Corp. Sec. Litig.*, No. 3-85-1341, 1988 WL 92085, at *3 (D. Minn. Feb. 22, 1988) ("Although the class period here is short and definite, it does not determine the period of relevancy for discovery purposes.  There are numerous instances in securities fraud litigation where post-offering statements, documents, or conduct have been treated as admissible evidence on the issue of scienter, intent, and knowledge[.] Although [the defendant] relies on the certified class period as the relevant time frame, there is no rule fixing discovery in class action litigation to the class period.").