```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
                                        :   23cv10488 (DLC)
IN RE NATIONAL INSTRUMENTS SECURITIES   :
LITIGATION                              :       OPINION AND
                                        :          ORDER
--------------------------------------- X
```

APPEARANCES:

For lead plaintiff:

Chad Johnson
Noam Mandel
Desiree Cummings
Jonathan Zweig
Jai Chandrasekhar
Christopher T. Gilroy
Alyssa H. Plascoff
Robbins Geller Rudman & Dowd LLP
420 Lexington Avenue, Suite 1832
New York, NY 10170

Robert C. Finkel
Joshua W. Ruthizer
Wolf Popper LLP
845 Third Avenue, 12th Floor
New York, NY 10022

For defendants:

James F. Bennett
J. Russell Jackson
Jenny E. Braun
Dowd Bennett LLP
7676 Forsyth Boulevard, Suite 1900
St. Louis, MO 63105

Andrew Ditchfield
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017

DENISE COTE, District Judge:

In 2022, National Instruments Corporation ("NI") repurchased its stock from investors without disclosing that it had received an offer to buy the company. Investors who sold stock during that time allege that NI engaged in insider trading and violated the securities laws. The lead plaintiff has moved for class certification, to be appointed as class representative, and for Robbins Geller Rudman & Dowd LLP ("Robbins Geller") to be appointed as class counsel. For the reasons below, the lead plaintiff's motion is granted with a modified class definition.

## Background

NI produced automated test equipment and virtual instrumentation software. As explained below, it was acquired by Emerson Electric Co. ("Emerson") in 2023. Defendant Eric Starkloff was the Chief Executive Officer, the President, and a member of NI's Board of Directors (the "Board"). Defendant Michael McGrath was the Chairman of the Board.

NI's Board approved a stock repurchase program on January 19, 2022 (the "2022 Stock Repurchase Plan"). That program authorized NI to repurchase up to $250 million worth of common stock from shareholders, representing the largest stock repurchase in the company's history. Stock repurchases occurred

each month from January through May.  Beginning in March, all repurchases were pursuant to the 2022 Stock Repurchase Plan.

Emerson began making overtures to acquire NI in May of 2022.  On May 25, Emerson's CEO emailed a letter to Starkloff that detailed an initial offer to purchase 100% of the outstanding common stock of NI for $48 in cash per common share.  NI's stock closed that day at $34.35 per share.  The letter stated that Emerson was motivated to pursue a merger, was prepared to move quickly, and preferred to negotiate in private.  On June 14, NI's Board rejected Emerson's offer, concluding that it "substantially undervalued" NI.

In a letter of June 22, Emerson renewed its offer to acquire NI at $48 per share.  That letter stated that acquiring NI was Emerson's "highest strategic priority," and that "with access to limited non-public information after signing an NDA, we could work with you to find additional value that would allow us to increase our Proposal."  NI's Board and management again rejected the offer as "inadequate."  On August 2, NI advised Emerson that "[t]he Board remains unanimously of the view that your proposal is not in the best interests of NI and its shareholders."

No stock repurchases occurred in June or July, but NI resumed stock repurchases in August and September.  Between

3

August 12 and September 26, NI repurchased 2,033,135 shares at
an average price of $40.25.  No more stock repurchases occurred
in 2022.

In a letter of November 3, having had no contact with NI
since August 2, Emerson made an offer to purchase NI at $53 per
share and reiterated its desire to move quickly.  Emerson warned
that it was willing to bring its offer directly to NI's
shareholders if NI continued in its refusal to engage.  In
response, NI established a working group of the Board to examine
the proposal.

On January 13, 2023, prior to the opening of trading, NI
issued a press release announcing that its Board had initiated a
review and evaluation of strategic options, including
solicitation of interest from potential acquirors and other
transaction partners, "some of whom have already approached the
Company."  This statement did not mention Emerson or any of
Emerson's offers to acquire NI.  NI's stock price surged from
the previous day's close of $40.17 per share to a high of $47.95
per share on January 13.

On January 17, prior to the opening of trading, Emerson
issued a press release announcing that it had made an all-cash
offer to purchase all the shares of NI at $53 per share.
Emerson also stated that in response to an initial offer, NI had

chosen to conceal the offer from the investing public and had instead undertaken a large stock repurchase.  On this news, NI's stock price surged from a previous close of $46.97 per share to a high of $54.69 per share.

Emerson completed its acquisition of NI on October 11, 2023.  It purchased all of NI's stock at a price of $60 per share.

This putative class action was filed on November 30, 2023. The lead plaintiff asserts a cause of action for violations of § 10(b) of the Securities Exchange Act and Rule 10b-5 thereunder, as well as a cause of action for control person liability pursuant to § 20(a) of the Securities Exchange Act.

On February 16, 2024, Wayne County Employees' Retirement System was appointed as lead plaintiff.  It filed the Amended Complaint on March 29.  On April 26, the defendants moved to dismiss the Amended Complaint.

An Opinion of September 6, 2024 granted the defendants' motion to dismiss in part.  In re Nat'l Instruments Corp. Sec. Litig., No. 23cv10488, 2024 WL 4108011 (S.D.N.Y. Sept. 6, 2024). That Opinion dismissed claims that various statements by the defendants were misleading by omission because they failed to disclose Emerson's offers.  Id. at *4-5.  Remaining in the action is a claim that NI violated § 10(b) and Rule 10b-5 by

engaging in insider trading, having failed to either abstain
from trading in NI's securities or to disclose Emerson's offers
while repurchasing NI's securities.  Id. at *5-7.  Also
remaining in the action are claims of control person liability
against Starkloff and McGrath, which stem from the alleged
insider trading.  Id. at *7.

On May 2, 2025, the lead plaintiff moved to certify the
following class:

> All persons who sold National Instruments common stock
> between August 12, 2022 and September 30, 2022,
> inclusive (the "Class Period") and were damaged
> thereby (the "Class").  Excluded from the Class are
> Defendants, the officers and directors of the Company,
> at all relevant times, members of their immediate
> families and their legal representatives, heirs,
> successors, or assigns and any entity in which
> Defendants have or had a controlling interest.

The motion also requests that the lead plaintiff be appointed as
class representative and that Robbins Geller, which represents
the lead plaintiff, be appointed as class counsel.  Attached to
the motion is an expert report by Dr. Matthew D. Cain.  The
defendants opposed the motion on June 16, attaching expert
reports by Dr. David J. Denis and Dr. Shane Goodwin.  Among
other arguments, the defendants assert that the lead plaintiff
has not sufficiently described a methodology for calculating
damages on a classwide basis.  The lead plaintiff filed a reply
on July 28.  Attached to that reply is another expert report by

Dr. Cain, which provides a more detailed description of a
proposed methodology for calculating damages.

## Discussion

I.  Class Certification

To qualify for class certification, the lead plaintiff must
prove that the proposed class action satisfies the four elements
of Rule 23(a): numerosity, commonality, typicality, and adequacy
of representation.  Fed. R. Civ. P. 23(a).  In addition, the
lead plaintiff must show that the proposed class action can
proceed under one of the categories of Rule 23(b).  Here, the
lead plaintiff seeks certification of the class under Rule
23(b)(3).  Thus, the lead plaintiff must show that common
questions of law or fact predominate, that a class action is the
superior method for bringing its claims, and that the proposed
class is sufficiently ascertainable.  Fed. R. Civ. P. 23(b)(3);
In re Petrobras Sec., 862 F.3d 250, 260 (2d Cir. 2017).

A party seeking to certify a class must "affirmatively
demonstrate . . . compliance" with the requirements of Rule 23.
Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).  The
district court must "make a definitive assessment of Rule 23
requirements, notwithstanding their overlap with merits issues,
must resolve material factual disputes relevant to each Rule 23
requirement, and must find that each requirement is established

7

by at least a preponderance of the evidence." <u>In re U.S.</u>
<u>Foodservice Inc. Pricing Litig.</u>, 729 F.3d 108, 117 (2d Cir.
2013) (citation omitted).  Stated differently, "the district
judge must receive enough evidence, by affidavits, documents, or
testimony, to be satisfied that each Rule 23 requirement has
been met." <u>Shahriar v. Smith & Wollensky Rest. Grp., Inc.</u>, 659
F.3d 234, 251 (2d Cir. 2011) (citation omitted).

The lead plaintiff has satisfied Rule 23(a)'s requirements,
and the defendants do not argue otherwise.  The numerosity
requirement is satisfied, as the lead plaintiff has submitted
evidence that over 400 institutions held NI stock during the
proposed class period.  As reflected in the discussion below,
there are questions of law and fact common to the class.  The
lead plaintiff's claims are also typical of those of the class,
as it sold stock on September 22, 2022, during the class period
that will be certified.  Finally, the lead plaintiff and Robbins
Geller adequately represent the class.

The defendants also do not dispute that the requirements of
superiority and ascertainability are satisfied.  Adjudication of
this dispute as a class action is appropriate because joinder is
impracticable and, as the discussion below makes clear, class
members are similarly situated.  The class is also

ascertainable, as it consists of sellers of NI stock who can be identified through objective criteria.

The defendants oppose class certification on the ground that the lead plaintiff has not satisfied Rule 23(b)(3)'s requirement of predominance.  For a class to be certified pursuant to Rule 23(b)(3), the court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  In a securities fraud case, elements such as "materiality," "loss causation and the falsity or misleading nature of the defendant's alleged statements or omissions are common questions that need not be adjudicated before a class is certified."  Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 475 (2013).  Instead, "[w]hether common questions of law or fact predominate in a securities fraud action often turns on the element of reliance."  Erica P. John Fund, Inc. v. Halliburton Co., 563 U.S. 804, 810 (2011).  To obtain class certification, reliance must generally be proven via a method commonly applicable to the entire class.  See id. at 810-11; In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 42 (2d Cir. 2006).  Establishing predominance also requires showing that "damages are capable of measurement on a classwide basis."  Comcast Corp. v. Behrend, 569 U.S. 27, 34 (2013).

The predominance requirement is satisfied here.  As explained below, predominance is presumed as to the element of reliance under the Affiliated Ute doctrine and damages are capable of measurement on a classwide basis.

A.   The Affiliated Ute Presumption

Under the doctrine articulated in Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128 (1972), when a securities fraud claim is premised on an omission rather than a false statement, reliance on the omission can be presumed from its materiality.  Id. at 153.  "All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important" in making their investment decisions.  Id. at 153-54.  The Affiliated Ute presumption "applies in the context of an insider trading claim."  Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc., 186 F.3d 157, 173 (2d Cir. 1999).

Generally, "[o]missions are material when there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available."  Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co., 19 F.4th 145, 151 (2d Cir. 2021) (citing Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 38 (2011)).  When a contingent or

speculative event is at issue, such as the potential acquisition
of a company, "materiality will depend at any given time upon a
balancing of both the indicated probability that the event will
occur and the anticipated magnitude of the event in light of the
totality of the company activity."  Id. (citing Basic Inc. v.
Levinson, 485 U.S. 224, 238 (1988)).

Here, the lead plaintiff may rely on the Affiliated Ute
presumption to show reliance.  Based on the evidence submitted
in connection with this motion, the defendants' failure to
disclose Emerson's offers to acquire NI while repurchasing NI
stock may have constituted a material omission.  There was a
meaningful possibility that Emerson would continue its efforts
to acquire NI after it indicated serious interest in doing so in
its letters of May 25 and June 22, and such acquisition efforts
would have been significant to investors.  In any event, Rule
23(b)(3) only "requires a showing that questions common to the
class predominate, not that those questions will be answered, on
the merits, in favor of the class."  Amgen Inc., 568 U.S. at
459.  Whether the defendants' omissions are material is a
question that is common to the entire class.  See id. at 475.[1]

---

[1] Because the Affiliated Ute presumption applies, it is
unnecessary to consider the lead plaintiff's alternative
argument that reliance can be presumed under the fraud-on-the-
market doctrine of Basic Inc. v. Levinson, 485 U.S. 224 (1988).

The defendants argue that the lead plaintiff improperly relies on its pleadings rather than submitting evidence in support of the Affiliated Ute presumption.  But both the lead plaintiff and the defendants have submitted expert reports that detail the factual history material to this motion, including the offers Emerson made on May 25 and June 22, with citations to documents produced in discovery and publicly available documents.

The defendants also attempt to rebut the Affiliated Ute presumption by presenting evidence that, in their view, demonstrates that Emerson's offers were not material during the proposed class period because "the prospects of a deal with Emerson were dead."  In support of that argument, Dr. Goodwin opines that the prospect of a deal was "negligible" at the beginning of the class period because the Board had twice rejected Emerson's offer of an acquisition at $48 per share, and that disclosure of Emerson's offers "would not have had a significant impact on NI's stock price."  According to Dr. Goodwin, the prospects of a deal were only resurrected beginning on November 3, 2022, when Emerson brought a new offer to purchase NI stock at $53 and threatened to go public with its offer.

12

This argument does not defeat certification.  The offers
Emerson made on May 25 and June 22 to purchase NI stock at $48
per share could be found to reflect its serious interest in
acquiring NI.  A reasonable investor may well have concluded
that $48 was only Emerson's opening bid.  The swift rejection of
those early offers by NI's Board does not prevent them from
being found material.  It remained entirely plausible that
Emerson would return with an improved offer or take its offer
public.  That is what NI's Board contemplated in June and July
of 2022, when it concluded that the $48 offer "substantially
undervalue[d]" NI and discussed "the potential for [Emerson] to
change its offer."

The defendants also submit evidence that, after NI rejected
Emerson's second proposal, it consulted with counsel before
lifting its trading restrictions in August 2022.  That evidence
may be relevant to a jury's evaluation of materiality, but it
does not render Emerson's bids immaterial as a matter of law or
impact the determination that materiality is a question common
to the class.

B.   Methodology for Measuring Damages on a Classwide Basis

As noted, in order to satisfy the predominance requirement
of Rule 23(b)(3), it must be shown that "damages are capable of

13

measurement on a classwide basis." Comcast, 569 U.S. at 34.
The Second Circuit has explained that

> Comcast held that a model for determining classwide
> damages relied upon to certify a class under Rule
> 23(b)(3) must actually measure damages that result
> from the class's asserted theory of injury; but the
> Court did not hold that proponents of class
> certification must rely upon a classwide damages model
> to demonstrate predominance.

Roach v. T.L. Cannon Corp., 778 F.3d 401, 407 (2d Cir. 2015).
Even if a damages model is proposed at the class certification
stage, "calculations need not be exact." Waggoner v. Barclays
PLC, 875 F.3d 79, 106 (2d Cir. 2017) (citing Comcast, 569 U.S.
at 35).

The lead plaintiff provided a general description of how it
might measure damages in its opening papers, but a damages model
is described in more specific terms in Dr. Cain's July 28
report, which is attached to the plaintiff's reply. That July
28 report has rendered many of the defendants' arguments moot.[2]

The lead plaintiff has shown that damages can be measured
on a classwide basis. Dr. Cain opines in his July 28 report
that Emerson's offer to purchase NI stock at $48 per share
implied a stock valuation of at least that amount per share

---

[2] Dr. Cain's July 28 report was submitted at the deadline for
opening expert reports. The defendants have not requested that
it be stricken or requested to file a sur-reply. It is properly
considered on this motion.

during the class period.  According to Dr. Cain, the "but-for"
stock price that would have existed had the relevant truth been
exposed can be conservatively estimated as $48 per share during
the class period, which implies that the artificial deflation at
any time during the class period can be modeled as $48 minus the
actual stock price.  This provides a foundational model for
determining damages that result from the asserted theory of
injury, and it is sufficient to show that damages are capable of
measurement on a classwide basis.

The defendants argue that damages must be limited to
profits they gained and losses they avoided.  The traditional
measure of damages in § 10(b) cases is out-of-pocket loss, which
is the difference between the price at which a stock is bought
or sold and the stock's true value.  See Elkind v. Liggett &
Myers, Inc., 635 F.2d 156, 168 (2d Cir. 1980); see also Acticon
AG v. China N. E. Petroleum Holdings Ltd., 692 F.3d 34, 38-39
(2d Cir. 2012).  The defendants rely, however, on a statutory
limitation that applies to claims brought under § 20A of the
Securities Exchange Act, 15 U.S.C. 78t-1(b)(1).[3]  The defendants

---

[3] Section 20A "provides an express private right of action for
those who trade contemporaneously with an inside trader,"
premised on an "independent Securities Exchange Act violation."
Steginsky v. Xcelera Inc., 741 F.3d 365, 372 (2d Cir. 2014); see
also Fujisawa Pharm. Co. v. Kapoor, 115 F.3d 1332, 1337 (7th
Cir. 1997) (explaining that "the purpose of section 20A was to

fail to establish that such a limitation applies here.  Section
20A itself provides that "[n]othing in this section shall be
construed to limit or condition the right of any person to bring
an action to enforce a requirement of this chapter or the
availability of any cause of action implied from a provision of
this chapter."  Id. at 78t-1(b)(1).  Moreover, the rationales
for limiting insider trading damages to the defendants' profits
gained and losses avoided are largely inapplicable here.  See
Elkind v. Liggett & Myers, Inc., 635 F.2d 156, 168-72 (2d Cir.
1980) (discussing, inter alia, the possibility of imposing
draconian damages on a tippee).[4]

The defendants also make several arguments to suggest that
some of their conduct benefited some class members, either
during or after the class period.  These arguments are largely
speculative and do not impact the decision on class
certification.

Finally, the defendants complain that the lead plaintiff
has not provided a damages model that contemplates a but-for

---

extend the protections of the existing insider-trading
prohibition to persons not in privity with the insider").

[4] Because damages are not limited to profits gained and losses
avoided by the defendants, it is unnecessary to consider the
defendants' argument that NI did not gain any profit because
share repurchases are functionally equivalent to dividends.

world in which NI did not disclose the offers it had received

from Emerson, but also did not repurchase stock in August and

September 2022.  The defendants point out that this would not

have constituted a violation of the securities laws.  This

argument fails.  It is not necessary for a damages model to

account for two but-for worlds at once, particularly when the

damages model is only being offered to illustrate that damages

are capable of measurement on a classwide basis.

## II.  Class Definition

The defendants argue that the lead plaintiff's proposed

class definition is overbroad because it includes individuals

who did not sell NI stock contemporaneously with NI's

repurchases.  As noted, the proposed class definition includes

individuals who sold NI stock between August 12 and September

30, 2022.  The defendants argue that a more accurate class

definition would be limited to August 12-30 and September 12-28,

the dates in August and September 2022 when NI's repurchases

occurred, inclusive of settlement dates.  The defendants are

correct.

A duty of disclosure is owed "to all persons who during the

same period" as the defendants traded stock on the open market.

Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 495 F.2d

228, 237 (2d Cir. 1974).  In particular, the "duty of disclosure

17

is owed only to those investors trading contemporaneously with
the insider; non-contemporaneous traders do not require the
protection of the 'disclose or abstain' rule because they do not
suffer the disadvantage of trading with someone who has superior
access to information." Wilson v. Comtech Telecommunications
Corp., 648 F.2d 88, 94-95 (2d Cir. 1981).

Accordingly, the class will be certified for sellers of NI
stock in the two discrete periods identified by the defendants.
This has the effect of eliminating fourteen days from the lead
plaintiff's proposed class definition: twelve days between the
two periods and two days at the end of the proposed period.

III. Appointment of Class Counsel

Pursuant to Rule 23(g), Fed. R. Civ. P., a court that
certifies a class must appoint class counsel. In appointing
class counsel, a court must consider

(i) the work counsel has done in identifying or
investigating potential claims in the action;

(ii) counsel's experience in handling class actions,
other complex litigation, and the types of claims
asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to
representing the class.

Fed. R. Civ. P. 23(g)(1)(A). The court may also consider "any
other matter pertinent to counsel's ability to fairly and
adequately represent the interests of the class." Fed. R. Civ.

18

P. 23(g)(1)(B).  Robbins Geller has shown that it has satisfies the requirements of Rule 23(g).

## Conclusion

The lead plaintiff's May 2, 2025 motion for class certification is granted with the modification to the class definition described above.  The following class is certified:

> All persons who sold National Instruments common stock between August 12, 2022 and August 30, 2022 and/or between September 12, 2022 and September 28, 2022, inclusive, and were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns and any entity in which Defendants have or had a controlling interest.

Lead plaintiff Wayne County Employees' Retirement System is appointed as class representative.  Robbins Geller is appointed as class counsel.

Dated:     New York, New York
           September 19, 2025

_____
DENISE COTE
United States District Judge