UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ———————————————————— x | |
| | : Civil Action No. 1:23-cv-10488-DLC |
| In re NATIONAL INSTRUMENTS | : |
| CORPORATION SECURITIES LITIGATION | : <u>CLASS ACTION</u> |
| | : |
| | : |
| ———————————————————— x | |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO EXCLUDE EXPERT TESTIMONY
<u>OF DR. DAVID DENIS AND DR. SHANE GOODWIN</u>**

**TABLE OF CONTENTS**

                                                                        **Page**

PRELIMINARY STATEMENT ...............................................................................1

LEGAL STANDARD ........................................................................................2

ARGUMENT ...................................................................................................3

    I.    Defendants' Experts Should Not Be Permitted to Offer Affirmative Materiality Opinions ............................................................................................... 3

    II.   Duplicative Opinions of Defendants' Experts Should Be Excluded .................................. 4

    III.  Dr. Denis's Opinions Regarding Inapplicable Measures of Damages Should Be Excluded ............................................................................................... 6

    IV.  Dr. Goodwin's Irrelevant Testimony Should Be Excluded ................................................... 9

    V.   Dr. Denis's and Dr. Goodwin's Opinions Ignore Critical Facts ......................................... 9

CONCLUSION .................................................................................................11

## TABLE OF AUTHORITIES

**Cases**                                                                                                                      **Page(s)**

*In re Acetaminophen – ASD-ADHD Prods. Liab. Litig.*,
    707 F. Supp. 3d 309 (S.D.N.Y. 2023)...................................................................................10

*Acticon AG v. China N. E. Petroleum Holdings Ltd.*,
    692 F.3d 34 (2d Cir. 2012)..............................................................................................6

*Am. Empire Surplus Lines Ins. Co. v. J.R. Contracting & Env't Consulting, Inc.*,
    754 F. Supp. 3d 456 (S.D.N.Y. 2024)..............................................................................2

*Betances v. Fischer*,
    2021 WL 1534159 (S.D.N.Y. Feb. 23, 2021).....................................................................6

*Castellano v. Young & Rubicam*,
    257 F.3d 171 (2d Cir. 2001).........................................................................................3, 4

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993).................................................................................................2, 10

*Elkind v. Liggett & Myers, Inc.*,
    635 F.2d 156 (2d Cir. 1980)............................................................................................6

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997)........................................................................................................9

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999)........................................................................................................2

*In re Novatel Wireless Sec. Litig.*,
    846 F. Supp. 2d 1104 (S.D. Cal. 2012)............................................................................7

*Olin Corp. v. Lamorak Ins. Co.*,
    2018 WL 1901634 (S.D.N.Y. Apr. 18, 2018)....................................................................6

*On Track Innovations Ltd. v. T–Mobile USA, Inc.*,
    106 F. Supp. 3d 369 (S.D.N.Y. 2015)..............................................................................4

*S.E.C. v. Tourre*,
    950 F. Supp. 2d 666 (S.D.N.Y. 2013)..............................................................................2

*Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    495 F.2d 228 (2d Cir. 1974)............................................................................................7

*Sunstar, Inc. v. Alberto–Culver Co.*,
    2004 WL 1899927 (N.D. Ill. Aug. 23, 2004) ...................................................................5

*US Airways, Inc. v. Sabre Holdings Corp.*,
    2022 WL 986232 (S.D.N.Y. Apr. 1, 2022)................................................................................5

*Wilson v. Comtech Telecomm. Corp.*,
    648 F.2d 88 (2d Cir. 1981)...........................................................................................................7

**Other Authorities**

Fed. R. Evid. 403 ..............................................................................................................4, 6

Fed. R. Evid. 702 ..............................................................................................................2, 6

iii

## PRELIMINARY STATEMENT

Defendants' experts, Dr. David Denis and Dr. Shane Goodwin, offer opinions that are unreliable, ignore critical facts, apply incorrect legal standards, and risk misleading and confusing the jury.

Defendants' experts present critiques of the economic materiality opinion submitted by Plaintiff's expert, Dr. Matthew Cain. Neither of their analyses can support affirmative opinions about economic materiality, however, because Dr. Denis admits that he has not performed the requisite analysis, and Dr. Goodwin considers only the probability prong of the materiality analysis without considering the magnitude of the potential event. Defendants' experts therefore should not be permitted to present affirmative opinions about economic materiality.

Moreover, most of Dr. Denis's and Dr. Goodwin's proffered testimony is duplicative. Permitting both of them to testify about the same topics would be an inefficient use of resources and would unfairly allow Defendants to attempt to sway the jury by having two overlapping experts bolster each other's testimony. Defendants should be required to choose between whichever of their testimony on these points may be deemed admissible.

However, some of the critiques of Dr. Cain's opinions by Defendants' experts should not be admitted at all. In particular, Dr. Denis offers opinions about damages based on a legally incorrect measure of damages and an irrelevant "but-for" world in which NI did not repurchase stock. And Dr. Goodwin offers irrelevant testimony about "customary" disclosures in circumstances without insider trading, which does not correspond with the facts here. These opinions should be excluded.

Additionally, both Dr. Goodwin and Dr. Denis ignore critical facts while critiquing Dr. Cain's economic materiality opinion. Plaintiff believes that disputes over whether experts properly

1

addressed the factual record are best handled in this case through cross-examination rather than exclusion, but given that Defendants seek to exclude Dr. Cain on this purported basis, it is necessary to set the record straight.

The Court could deny Defendants' motion for summary judgment without deciding this *Daubert* motion because, for the reasons discussed in Plaintiff's opposition to that summary judgment motion, Dr. Denis's and Dr. Goodwin's opinions do not demonstrate that there is no genuine dispute as to any material fact. Indeed, Defendants barely mention Dr. Denis and Dr. Goodwin in their summary judgment motion, underscoring that their opinions are of limited value at best. However, given the possibility that challenges to their opinions might be considered waived if not made now, Plaintiff is moving to exclude them at this time.

**LEGAL STANDARD**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which codifies the holdings of *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and subsequent cases. Under Rule 702 and *Daubert*, the trial court acts as the gatekeeper for expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148 (1999) (citing *Daubert,* 509 U.S. at 592) (holding that trial judge's gatekeeping function applies to all expert testimony, not just scientific testimony). "To determine whether a proposed expert's testimony passes muster under Rule 702, courts must inquire into: (1) the qualifications of the proposed expert; (2) whether each proposed opinion is based upon reliable data and reliable methodology; and (3) whether the proposed testimony would be helpful to the trier of fact." *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 674 (S.D.N.Y. 2013). The same admissibility standards apply to expert rebuttal reports, which "must meet *Daubert*'s threshold standards regarding . . . sufficiency of the data, reliability of the methodology, and relevance of the testimony.'" *Am. Empire Surplus Lines Ins. Co. v. J.R.*

*Contracting & Env't Consulting, Inc.*, 754 F. Supp. 3d 456, 462-63 (S.D.N.Y. 2024) ("Rule 702 . . . governs the admissibility of testimony by expert witnesses, including rebuttal experts").

ARGUMENT

**I.    Defendants' Experts Should Not Be Permitted to Offer Affirmative Materiality Opinions**

Dr. Denis's and Dr. Goodwin's expert reports raise various arguments purporting to challenge the opinion of Plaintiffs' expert, Dr. Cain, that the information Defendants failed to disclose while NI engaged in repurchases during the Class Period was economically material. For different reasons, neither Dr. Denis nor Dr. Goodwin should be permitted to testify affirmatively that the undisclosed information was economically immaterial.

For his part, Dr. Denis admitted that he is "not offering an opinion in the end o[n] economic immateriality," but rather is only critiquing Dr. Cain's opinion on that issue. Ex. 9, Denis Tr. 157:4-7.[1] In other words, Dr. Denis agreed that he is not "offering an opinion that the information omitted in this case was not material," *id.* 165:8-13, and that he has made no "assessment of materiality in this case independent of Dr. Cain's opinion," which "would require a more full-blown analysis" that he was not asked to perform and has not performed. *Id.* 165:15-166:19.

Moreover, Dr. Goodwin opines only on the probability of an acquisition of NI by Emerson, not on the potential acquisition's magnitude or significance to NI. Ex. 7, Goodwin Tr. 47:14-48:21; 56:3-11, 62:14-63:8, 68:11-18. Although he cites the materiality standard from *Castellano v. Young & Rubicam*, 257 F.3d 171, 185 (2d Cir. 2001) (cited at Declaration of James F. Bennett, December 22, 2025, Dkt. 116 Ex. E ("Goodwin Rebuttal Report") at App. A), which considered both the potential transaction's "probability" and its "significance to the issuer of securities," Dr. Goodwin opines only on the first of these prongs, not the second. Ex. 7, Goodwin Tr. 65:1-76:18, 93:6-94:15,

---

[1] Exhibits referenced as "Ex. __" are to the Declaration of Noam Mandel filed contemporaneously.

3

96:15-97:6, 100:3-101:2, 102:1-102:25, 141:19-151:6. The magnitude of the potential transaction, which Dr. Goodwin ignores, is a critical part of the materiality inquiry, as "there is no requirement that a transaction need be probable for negotiations and preparations regarding [a] transaction to be material." *Castellano*, 257 F.3d at 185; *see also id.* ("As materiality in such a circumstance is determined by considering both the probability of an event and its potential magnitude, a relatively improbable event of sufficient magnitude could potentially be material[.]"). Because Dr. Goodwin does not opine on the magnitude prong of the materiality inquiry, and instead focuses narrowly on probability, he is in no position to provide an affirmative opinion as to whether the information Defendants failed to disclose was economically material. Indeed, Dr. Goodwin ultimately acknowledged that he "can't opine" on whether a disclosure of Emerson's offer, together with the relevant factual context, would have been significant to investors. Ex. 7, Goodwin Tr. 127:22-128:11.

Accordingly, Dr. Denis and Dr. Goodwin should not be permitted to offer affirmative opinions about whether the information that Defendants failed to disclose as NI engaged in repurchases was economically material.

## II.    Duplicative Opinions of Defendants' Experts Should Be Excluded

Dr. Denis's and Dr. Goodwin's expert opinions are largely duplicative. They are experts in the same field of study, and they apply the same methodologies to the same evidence and reach the same conclusions. To permit both to testify about the same matters at trial would be inefficient and risk misleading the jury, and should not be permitted.

Evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Courts have held that "[m]ultiple expert witnesses expressing the same opinions on a subject is a waste of time

and needlessly cumulative. It also raises the unfair possibility that jurors will resolve competing expert testimony by 'counting heads' rather than evaluating the quality and credibility of the testimony." *On Track Innovations Ltd. v. T–Mobile USA, Inc.*, 106 F. Supp. 3d 369, 414 (S.D.N.Y. 2015) (quoting *Sunstar, Inc. v. Alberto–Culver Co.*, 2004 WL 1899927, at *25 (N.D. Ill. Aug. 23, 2004)); *see also US Airways, Inc. v. Sabre Holdings Corp.*, 2022 WL 986232, at *2 (S.D.N.Y. Apr. 1, 2022) ("Duplicative expert opinions are not allowed.").

Dr. Denis's and Dr. Goodwin's opinions are patently duplicative under this standard. Their approaches in attempting to rebut Dr. Cain's opinions are essentially indistinguishable, and while they sometimes use different words, their methodologies and opinions are the same. For example, Dr. Denis opines that "Cain's event study analysis . . . [is] irrelevant in assessing the economic materiality of the Alleged Omissions." Declaration of James F. Bennett, December 22, 2025, Dkt. 116 Ex. D (Denis Rebuttal Report") at 8. This is effectively identical to Dr. Goodwin's opinion that "Cain's event study analysis does not support his claim that the alleged omissions were economically material." Goodwin Rebuttal Report at 14. Similarly, Dr. Denis opines that "Cain's discussion of the academic literature to support his opinion that the Alleged Omissions are economically material does not address the information allegedly withheld in this case." Denis Rebuttal Report at 11. Dr. Goodwin offers the same opinion that "[t]he academic literature that Dr. Cain cites is irrelevant . . . The results of those studies do not prove or provide support for Dr. Cain's opinion that the alleged omissions in this case were economically material." Goodwin Rebuttal Report at 75.

To the extent there is any material difference between Dr. Denis's and Dr. Goodwin's opinions, it is that only Dr. Denis goes on to express Defendants' incorrect views regarding the proper measure of damages in this case. Those opinions should be excluded for the separate

reasons described below. But with respect to their core rebuttal opinions, Dr. Denis and Dr. Goodwin are fundamentally duplicative.

If the Court determines that their testimony is otherwise admissible, Defendants should be required to choose between Dr. Denis and Dr. Goodwin at trial. Otherwise, the jury could be swayed simply by the number of experts, rather than the substance of their testimony. Additionally, the Court's management of this matter to date has emphasized efficiency. Permitting Defendants to call duplicative experts would be contrary to this practice and would waste the time and resources of the Court, the jury, and the parties.

## III.    Dr. Denis's Opinions Regarding Inapplicable Measures of Damages Should Be Excluded

The only opinions Dr. Denis offers that are meaningfully distinct from those also offered by Dr. Goodwin consist of irrelevant discussions about inapplicable damages methodologies that the Court has already held do not apply in this case. Such testimony is not relevant to the actual measure of damages here and would risk confusing the jury.

An expert opinion that contradicts applicable law is unhelpful, unreliable, and irrelevant under Federal Rule of Evidence 702, and should also be excluded under Federal Rule of Evidence 403 because it presents a substantial danger of confusing the issues, misleading the jury, and wasting time at trial. *See Betances v. Fischer*, 2021 WL 1534159, at *4 (S.D.N.Y. Feb. 23, 2021) (excluding expert opinions "making statements of fact or law that are incorrect"); *Olin Corp. v. Lamorak Ins. Co.*, 2018 WL 1901634, at *21 (S.D.N.Y. Apr. 18, 2018) ("Expert testimony also should be excluded when it applies the wrong legal standard."). Dr. Denis's opinions applying incorrect damages measures should be excluded for these reasons.

In particular, Dr. Denis applies an erroneous instruction "from counsel that damages for insider trading claims are limited to the insider's allegedly ill-gotten gains" and opines that NI

6

received no ill-gotten gains from its stock repurchases during the Class Period. Denis Rebuttal Report ¶¶11, 34-36. This opinion applies an incorrect measure of damages because it incorrectly frames "the question in this case" as "whether the firm had any ill-gotten gains from conducting repurchases." *Id.* ¶36. As the Court has already held, "[t]he traditional measure of damages in §10(b) cases is out-of-pocket loss, which is the difference between the price at which a stock is bought or sold and the stock's true value." Dkt. 105 at 15 (citing *Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156, 168 (2d Cir. 1980) and *Acticon AG v. China N. E. Petroleum Holdings Ltd.*, 692 F.3d 34, 38-39 (2d Cir. 2012)); *see also* Dkt. 83 at 4-5 (Plaintiffs' class certification reply brief citing authorities that damages are not limited to disgorgement). Thus, the Court held, "damages are not limited to profits gained and losses avoided by the defendants," and "defendants' argument that NI did not gain any profit" as a result of the repurchases is irrelevant. Dkt. 105 at 16 n.4. Dr. Denis's opinion based on this incorrect measure of damages is therefore irrelevant and would risk confusing the jury about which measure of damages is legally applicable. *See In re Novatel Wireless Sec. Litig.*, 846 F. Supp. 2d 1104, 1107-08 (S.D. Cal. 2012) (excluding rebuttal expert who applied an incorrect legal standard for loss causation).

Dr. Denis also opines regarding similarities and differences between repurchases and dividends. Denis Rebuttal Report ¶¶51-68. This opinion should likewise be excluded as irrelevant. As the Court has already held: "Because damages are not limited to profits gained and losses avoided by the defendants, it is unnecessary to consider the defendants' argument that NI did not gain any profit because share repurchases are functionally equivalent to dividends." Dkt. 105 at 16 n.4.

Relatedly, Dr. Denis opines that, in a but-for world in which Defendants neither disclosed Emerson's offers nor conducted repurchases, damages would be zero. Denis Rebuttal Report ¶¶37-

7

40. This opinion is also irrelevant and unduly prejudicial. As the Court has rightly observed, "[i]t is not necessary for a damages model to account for two but-for worlds at once[.]"  Dkt. 105 at 17. There are many conceivable worlds in which Defendants would not have violated the law, such as if all of Emerson's offer letters and other communications to NI had been lost in the mail, or if NI had never been founded in the first place. None of those hypotheticals have any impact on damages in this case, and the same is true of Dr. Denis's alternate but-for world.

Dr. Denis's analysis also ignores that, as the Court has held, the "duty of disclosure is owed 'to all persons who during the same period' as the defendants traded stock on the open market." Dkt. 105 at 17 (quoting *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 495 F.2d 228, 237 (2d Cir. 1974)); *see also Wilson v. Comtech Telecomm. Corp.*, 648 F.2d 88, 94–95 (2d Cir. 1981) (the "duty of disclosure is owed only to those investors trading contemporaneously with the insider"). In accordance with that theory of liability, it is appropriate to measure damages by considering the price investors would have received for their NI stock in a but-for world in which Defendants complied with their duty of disclosure. By contrast, it is irrelevant to consider a but-for world in which Defendants never had that duty in the first place.

Dr. Denis's analysis of a hypothetical in which NI never repurchased stock appears to be intended to imply that damages should not be based on the actual value of NI stock at the time that Class Members sold it. But as discussed above and as the Court has already held, an out-of-pocket methodology based on the true value of NI stock at the time of sale is the appropriate measure of damages in a Section 10(b) case like this one. The connection between NI's repurchases and the actual value of NI stock that was obscured by Defendants' non-disclosure is supplied by the contemporaneous-purchase requirement, which the Court has already applied to limit the Class Period to a narrow window around NI's repurchases. Dkt. 105 at 17-18. Going beyond that

8

requirement and permitting Dr. Denis to testify about an irrelevant hypothetical in which those repurchases never happened in the first place would risk confusing the jury and would encourage jurors to apply an incorrect measure of damages. Dr. Denis's opinion to that effect should therefore be excluded.

**IV.     Dr. Goodwin's Irrelevant Testimony Should Be Excluded**

One aspect of Dr. Goodwin's proffered testimony stands out for its sheer lack of relevance to this matter. Dr. Goodwin opines that "when a company receives an unsolicited, non-binding acquisition proposal in the ordinary course of business . . . and summarily rejects the proposal . . . it is not customary for the company to publicly disclose the existence or rejection of the proposal." Goodwin Rebuttal Report ¶2(7); Ex. 7, Goodwin Tr. 157:12-21. But he acknowledges that this opinion does not address disclosure *while trading stock*, which is the premise of Plaintiff's liability theory. Ex. 7, Goodwin Tr. 159:22-160:21. Thus, Dr. Goodwin's opinion that it would not have been "customary" for NI to disclose Emerson's initial offers in a counterfactual world in which NI did not repurchase stock is irrelevant, would risk confusing the jury, and should be excluded.

**V.     Dr. Denis's and Dr. Goodwin's Opinions Ignore Critical Facts**

Dr. Denis's and Dr. Goodwin's opinions in response to Dr. Cain's economic materiality opinion do not account for key facts that undermine the validity of their methodologies. Plaintiff stands by the position set out in its opposition to Defendants' motion to exclude Dr. Cain's testimony, filed herewith, that in the circumstances presented here, arguments that an expert has not properly considered certain evidence are best handled through cross-examination, not exclusion. However, to the extent that the Court determines to exclude experts on this basis, it is Defendants' experts, not Dr. Cain, whose testimony involves "too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Starting with Dr. Goodwin, his opinion that NI's rejection of Emerson's initial offers made the possibility of a transaction negligible, *e.g.* Goodwin Rebuttal Report ¶28, is contrary to the evidence, relies on circular reasoning, and is unreliable. Dr. Goodwin admitted in his deposition that he opined that the probability of an acquisition by Emerson at the start of the Class Period was "negligible" only "under the terms offered." Ex. 7, Goodwin Tr. 135:15-136:17. He further acknowledged that his opinion does not account for the possibility, or assess the probability, of Emerson's increasing its offer, escalating its acquisition efforts in a more hostile manner, taking its offer publicly directly to NI shareholders, accumulating NI stock as takeover tactic, or threatening to contest NI board seats. *Id.* 56:20-58:1, 58:11-60:18, 61:9-62:13, 111:11-112:20, 139:6-13, 140:9-142:3. All of these possibilities are obviously relevant to the likelihood that Emerson's initial offers would ultimately lead to a sale of NI, and Dr. Goodwin's failure to consider them makes his opinion unreliable. In effect, Dr. Goodwin assumes an essential premise of his opinion – that there was no reasonable likelihood that Emerson would take its offer public or return with a higher offer.  That Dr. Goodwin's opinion ignores critical facts is perhaps unsurprising given that he originally formulated it after reviewing only eight internal NI documents, all of which were selected for him by Defendants' counsel. Ex. 7, Goodwin Tr. 18:25-19:5, 23:21-24.

As to Dr. Denis, his critique of Dr. Cain's materiality opinion is likewise based narrowly on the fact that NI's Board initially rejected Emerson's first two proposals to acquire NI for $48 per share, which he asserts somehow makes all other information about Emerson's offer irrelevant. Dr. Denis thus ignores numerous critical facts in existence at the start of the Class Period, including that the offeror was Emerson (a much larger company than NI and one with ample financial resources to acquire NI), that Emerson's offer was for cash, that Emerson told NI that acquiring NI was Emerson's "highest strategic priority," that Emerson expressed a willingness to increase is

10

offer, and that Emerson told NI it was prepared to move very quickly to complete a transaction. Ex. 9. Denis Tr. 147:22-148:4, 150:19-151:2, 152:12-154:3, 154:16-155:7, 157:9-19, 159:9-12, 162:7-18. Dr. Denis also ignores facts demonstrating that Emerson remained highly interested in acquiring NI after NI's initial rejections of its offers, including NI's Chief Legal Officer writing on September 19, 2022, that "NI was on Wolverine's [i.e., Emerson's] acquisition pipeline list, and there's no evidence that Wolverine's interest has petered out," and that "[s]peculation is that Wolverine will likely approach National Instruments privately again before going public." *Id.* 206:3-207:11, 208:6-19. Dr. Denis's opinion thus "fails to address evidence that is highly relevant to [the expert's] conclusion." *In re Acetaminophen – ASD-ADHD Prods. Liab. Litig.*, 707 F. Supp. 3d 309, 336 (S.D.N.Y. 2023).

## CONCLUSION

For these reasons, should the Court decide to address *Daubert* motions at this juncture, Plaintiff's motion should be granted, and the referenced portions of Dr. Denis's and Dr. Goodwin's testimony should be excluded. At a minimum, Defendants should not be permitted to proffer duplicative expert testimony at trial.

DATED: January 26, 2026

**JOHNSON VAN KWAWEGEN LLP**

*s/ Noam Mandel*
Chad Johnson
Noam Mandel
Desiree Cummings
Jonathan Zweig
1120 Avenue of the Americas
New York, NY 10036
Telephone: (646) 836-9630
chad@jvk-law.com
noam@jvk-law.com
desiree@jvk-law.com
jonathan@jvk-law.com

*Lead and Class Counsel*

11

## **CERTIFICATE OF WORD COUNT**

1.      Pursuant to Rule 7.1 of the United States District Court for the Southern District of New York, the undersigned counsel certifies that the foregoing brief was prepared on a computer using Microsoft Word.  A proportionally spaced typeface was used as follows:

> Name of Typeface: Times New Roman
> Point Size in Body: 12 (footnotes, 12)
> Line Spacing in Body: Double (block quotes and footnotes, single)

2.      The total number of words in the brief, inclusive of point headings and footnotes and exclusive of the caption, table of contents, table of authorities, signature block, and this Certification, is 3,403 words.  By operation of Microsoft Word's word-count function, this number includes legal citations and certain forms of punctuation.

*/s/ Noam Mandel*

NOAM MANDEL