# EXHIBIT 6

# FILED UNDER SEAL

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

In re NATIONAL INSTRUMENTS ) Case No.
CORPORATION SECURITIES )
LITIGATION, ) 1:23-cv-10488-
) DLC
)

VIDEOTAPED DEPOSITION OF KEVIN ILCISIN

October 30, 2025

Portland, Oregon

Reported by:
Connie Recob, CCR, RMR, CRR
Washington CCR No. 2631
Oregon CCR No. 15-0436
Utah CCR No. 1133171-7801
Idaho CCR No. SRL-1220
Job No. 46618

APPEARANCES


For the Plaintiff:  (Via Zoom)

          DESIREE CUMMINGS
          CHAD JOHNSON
          ROBBINS GELLER RUDMAN & DOWD LLP
          420 Lexington Avenue, Suite 1832
          New York, New York 10170
          (212) 432-5125
          dcummings@rgrdlaw.com
          cjohnson@rgrdlaw.com


For the Defendants:

          JOHN COMERFORD
          JEREMY HOFMAN (Via Zoom)
          DOWD BENNETT LLP
          7676 Forsyth Boulevard, Suite 1900
          St. Louis, Missouri 63105
          (314) 889-7300
          jcomerford@dowdbennett.com
          jhofman@dowdbennett.com


Also Present:

          Eric Montross - Videographer

EXAMINATION INDEX


EXAMINATION BY:                                PAGE NO.

BY ATTORNEY CUMMINGS                               9

BY ATTORNEY COMERFORD                            238

BY ATTORNEY CUMMINGS                             253


EXHIBIT INDEX


EXHIBIT NO.   DESCRIPTION                        PAGE NO.

Exhibit 1    Handwritten Notes, Bates No.
             NAT-SL-00028044                        31

Exhibit 2    e-mail string with attachment,
             Bates Nos. NAT-SL-00001263
             through 66                             39

Exhibit 3    e-mail string with attachment,
             Bates Nos. NAT-SL-00016112
             through 145                            55

Exhibit 4    Handwritten Notes, Bates Nos.
             NAT-SL-00022248 through 50             77

Exhibit 5    Meeting Invite, Bates No.
             NAT-SL-00016099                        96

Exhibit 6    e-mail string, Bates Nos.
             NAT-SL-00023922 through 23            104

Exhibit 7    Handwritten Notes, Bates Nos.
             NAT-SL-00019760 through 61            106

Exhibit 8    e-mail string with attachments,
             Bates Nos. WLRK-00000913
             through 976                           113

Exhibit 9    Meeting Minutes, Bates Nos.
             NAT-SL-00001447 through 48            117

EXHIBIT INDEX CONTINUED

EXHIBIT NO.   DESCRIPTION                              PAGE NO.

Exhibit 10   Handwritten Notes, Bates Nos.
             NAT-SL-00008520 through 21        119

Exhibit 11   Handwritten Notes, Bates Nos.
             NAT-SL-00019642 through 44        130

Exhibit 12   e-mail string with attachment,
             Bates Nos. NAT-SL-00010410
             through 13                        135

Exhibit 13   Handwritten Notes, Bates Nos.
             NAT-SL-00019636 through 41        148

Exhibit 14   e-mail string, Bates Nos.
             NAT-SL-00017728 through 31        158

Exhibit 15   e-mail string with attachment,
             Bates Nos. NAT-SL-00015145
             through 47_0019                   164

Exhibit 16   Handwritten Notes, Bates Nos.
             NAT-SL-00019645 through 47        167

Exhibit 17   Handwritten Notes, Bates No.
             NAT-SL-00028008                   174

Exhibit 18   e-mail string, Bates Nos.
             NAT-SL-00023205 through 6         177

Exhibit 19   Handwritten Notes, Bates Nos.
             NAT-SL-00027226 through 39        183

Exhibit 20   e-mail string with attachment,
             Bates Nos. NAT-SL-00025699
             through 702                       186

Exhibit 21   e-mail string, Bates Nos.
             NAT-SL-00023167 through 68        192

Exhibit 22   e-mail string, Bates Nos.
             NAT-SL-00023210 through 11        196

EXHIBIT INDEX CONTINUED

EXHIBIT NO.   DESCRIPTION                          PAGE NO.

Exhibit 23   e-mail string with attachment,
             Bates Nos. NAT-SL-00011781
             through 85                              199

Exhibit 24   e-mail string with attachment,
             Bates Nos. NAT-SL-00001239
             through 40                              201

Exhibit 25   e-mail string, Bates Nos.
             NAT-SL-00017263 through 67              206

Exhibit 26   e-mail string, Bates Nos.
             NAT-SL-00018186 through 87              209

Exhibit 27   e-mail string, Bates Nos.
             NAT-SL-00018188 through 90              212

Exhibit 28   e-mail string with attachment,
             Bates Nos. NAT-SL-00011768
             through 69                              215

Exhibit 29   e-mail string, Bates No.
             NAT-SL-00019635                         219

Exhibit 30   e-mail string, Bates Nos.
             NAT-SL-00027888 through 89              223

Exhibit 31   e-mail string, Bates No.
             NAT-SL-00027400                         224

Exhibit 32   e-mail string, Bates Nos.
             NAT-SL-00023790 through 91              228

Exhibit 33   e-mail string, Bates Nos.
             NAT-SL-00023530 through 32              231

Exhibit 34   e-mail string, Bates Nos.
             NAT-SL-00023189 through 90              232

Exhibit 35   e-mail string with attachment,
             Bates Nos. NAT-SL-00012292
             through 95                              235

Deposition of Kevin Ilcisin                    In Re National Instruments Corporation Securities Litigation

WITNESS INSTRUCTED NOT TO ANSWER


Pages 163-164



INFORMATION REQUESTED


Pages 155-156

Page 158

Page 170

Page 7

BE IT REMEMBERED that on Thursday, October 30, 2025, at Portland, Oregon, at 8:57 a.m., before Connie Recob, CCR, RMR, CRR, appeared KEVIN ILCISIN, the witness herein;

WHEREUPON, the following proceedings were had, to wit:

<<<<<<  >>>>>>

THE VIDEOGRAPHER:  We're now on the video record.  Today's date is October 30th, 2025.  The time is 8:57 a.m.  This is the video-recorded deposition of Kevin Ilcisin in re of the National Instruments Corporation Securities Litigation, being held in the United States District Court, Southern District of New York.  This deposition is being taken at Regus in Portland.

My name is Eric Montross from Everest Court Reporting, and I am the video specialist. The court reporter today is Connie Recob, also from Everest Court Reporting.

Counsel, will you state their appearances for the record.

ATTORNEY CUMMINGS:  Sure.  Just before we begin, I just want to confirm that the video that

Page 8

I'm seeing of Kevin is how it's being recorded? Is that right?

THE WITNESS:  No.  You're seeing my Zoom link.

ATTORNEY COMERFORD:  That's right. So there -- yeah, the video you're seeing of Kevin is through his laptop that he has in front of him, but then the videographer has a video camera with more of what you're used to seeing.

ATTORNEY CUMMINGS:  Okay.  Perfect.  Thank you.

Good morning, Mr. Ilcisin.  My name is Desiree Cummings.  I'm an attorney with Robbins Geller Rudman & Dowd LLP and I represent the plaintiff Wayne County Employees Retirement System in this case.

THE WITNESS:  Good morning.

ATTORNEY CUMMINGS:  I'm joined by -- sorry.  I'm joined by my colleagues.  Pleasure to meet you.  I'm joined by my colleagues on Zoom as well.  Pleasure to meet you.

ATTORNEY COMERFORD:  John Comerford, Dowd Bennett LLP.  I'm here in Portland with the witness.  I represent the defendants.  And attending by Zoom is my colleague, Jeremy Hofman.

Page 9

ATTORNEY CUMMINGS:  Mr. Ilcisin, have you ever been deposed?

THE REPORTER:  I need to swear in the witness.

ATTORNEY CUMMINGS:  Oh, sorry.  The court reporter, will you please swear in the witness.

THE VIDEOGRAPHER:  All counsel appearing today will be noted on the stenographic record.

Will the court reporter please swear in the witness.

KEVIN ILCISIN,   having been first duly sworn, deposed and testified as follows:

EXAMINATION

BY ATTORNEY CUMMINGS:

Q  Good morning again, Mr. Ilcisin.
Have you ever been deposed?

A  I have.

Q  How many times have you been deposed?

A  Twice.

Q  When was the last time you were deposed?

A  About 12 years ago for a personal injury lawsuit.

Q  And prior to that deposition, when were

Page 10

you deposed?

A  It was in the '90s.  I don't remember the exact year.  It related to a corporate IP infringement matter.

Q  Okay.  Before we proceed, I'm just going to go over a few ground rules since it's been a while since you've been deposed.

Is that okay?

A  Absolutely.

Q  Okay.  First, before -- because the court reporter is transcribing your testimony, I'm going to ask that you let me finish my question before you provide an answer.

Fair?

A  Fair.

Q  And because your deposition is being recorded, I'm going to ask that you provide verbal responses.

Okay?

A  Acceptable.

Q  So no nods, no, you know --

A  Understood.

Q  -- shaking your head, right?

If at any time my question is unclear, please ask for clarification.  Okay?

Page 11

A  Okay.

Q  If you don't ask for clarification, I'm going to assume that you understand my question.
    Do you understand that?

A  I do.

Q  Now, your counsel may object to my questions, but unless he instructs you not to answer, you are to provide a response.
    Do you understand that?

A  Understood.

Q  And I will endeavor to take a break every hour.  If you need a break before then, please say the word, and we'll take a break, fair?

A  Fair.  Thank you.

Q  The only exception is that if there's a question pending, we need to finish that session, your response before we take a break.

A  Okay.

Q  Do you understand that?

A  I do understand that.

Q  Great.
    Did you do anything to prepare for your deposition today?

A  Yes.  I met with defense counsel to understand what this process would look like.

Page 12

Q  Who did you meet with?

A  I met virtually with Jeremy and in person with John.

Q  When you say "Jeremy," you mean Jeremy Hofman?

A  Jeremy Hofman, correct.

Q  With Dowd Bennett?

A  Correct.

Q  And you met with John Comerford --

A  Correct.

Q  -- of Dowd Bennett in person?

A  Correct.

Q  When did you meet with Mr. Comerford?

A  I met with Mr. Comerford yesterday afternoon, October the 29th between 3:30 and 5:00.

Q  And when did you meet virtually with Mr. Hofman?

A  Monday and Tuesday of this week, so the 27th and 28th, for about an hour each day.

Q  Aside from Messrs. Comerford and Hofman, have you discussed your deposition with anyone else?

A  I have not discussed the deposition with anyone else.

Q  Do you have any documents with you today?

Page 13

A  Yes, I have the book you just gave me.

Q  Aside from the book that I provided, do you have any other documents with you today?

A  No.  I have a blank paper pad just to take notes while we're going through the process.

Q  Great.
    Do you understand that you're testifying under oath?

A  Yes.

Q  Same as if you were testifying before a judge or a jury?

A  Yes.

Q  Are you taking any medication that would prevent you from testifying truthfully here today?

A  No.

Q  Now that we've kind of gone through some ground rules, I'm going to just go over a few terms that may come up during the course of today so we can get that out of way.
    Is that okay with you?

A  That's acceptable.

Q  Will you understand my reference to National Instruments, NATI, NI or the company to refer to National Instruments Corporation?

A  I do.

Page 14

Q  Will you understand my reference to Emerson or EMR to refer to Emerson Electric Co?

A  I do.

Q  Will you understand my reference to "BofA" to be a reference to BofA Securities Inc.?

A  I do.

Q  Do you recall -- do you recall National Instruments being acquired by Emerson and that --

A  I do.

Q  You do?  And that transaction closed in October 2023; is that right?

A  That is correct.

Q  Did National Instruments use code names in connection with Emerson's offer to acquire the company?

A  Yes.

Q  Was "Nuthatch" a code name used for Emerson?

A  Yes.

Q  Was "Eagle" another code name that was used for Emerson?

A  I don't recall "Eagle" being used.

Q  Was "Wolverine" a code name that was used for Emerson?

A  "Wolverine" was a code name used in the

Page 15

overall process.

Q Was it also used as a code name for Emerson, the company?

ATTORNEY COMERFORD:  Asked and answered.

ATTORNEY CUMMINGS:  Wasn't answered.

BY ATTORNEY CUMMINGS:

Q Was "Wolverine" used as a code name specifically to refer to Emerson?

ATTORNEY COMERFORD:  Objection.  Asked and answered.

BY ATTORNEY CUMMINGS:

Q You can answer, Mr. Ilcisin.

A So it was a code name for the process, interchangeably would be used sometimes to represent a particular target.

Q I think you just testified that -- well, let me just ask this question.  Strike that.

Was "Project Wolverine" the code name for the process by which National Instruments considered Emerson's offers?

A Yes.

Q Mr. Ilcisin, did you go to college?

A I did go to college.

Q Where did you go to college?

A I went to college in Canada.

Page 16

Q What was the name of the college you attended in Canada?

A I went to the University of Alberta in Edmonton, Alberta.

Q Did you earn a degree from the University of Alberta?

A I did.

Q What degree did you earn from the University of Alberta?

A I earned a Bachelor of Science in electrical engineering.

Q When did you graduate from the University of Alberta?

A 1986.

Q What did you do after graduating from the University of Alberta?

A I enrolled in graduate studies.

Q Where did you enroll?

A I enrolled at Princeton University.

Q Did you obtain a degree from Princeton University?

A I obtained two degrees from Princeton University.

Q What's the first degree you earned from Princeton University?

Page 17

A A Master of Arts in astrophysical sciences.

Q And when did you earn that degree?

A It was granted in 1990.

Q And you mentioned you earned two degrees from Princeton.  What was the second degree you earned from Princeton?

A Doctorate of Philosophy.

Q And when did you earn your Doctorate of Philosophy from Princeton University?

A October of 1991.

Q Now, after your studies at Princeton, what did you do?

A I accepted a job as a research scientist at a company named Tektronix here in Portland, Oregon.

Q How long did you work at Tektronix?

A Initially, I worked for three years to May of 1994.

Q And in May of 1994, what did you do?

A Myself and two other Tektronix employees started a small company called Technical Visions.

Q How long were you at Technical Visions?

A Until 2001.

Q And in 2001 what did you go on and do?

Page 18

A Went to work for a start-up that went through name changes, but it was either Colorado MicroDisplay or Zight Incorporated in Boulder, Colorado.

Q Eventually, you joined National Instruments.

A Correct.

Q Is that right?

A Yes.

Q When did you join National Instruments?

A In February of 2015.

Q When you joined National Instruments in February 2015, what position did you hold?

A I held a vice president position.

Q Was that vice president of product marketing?

A Yes.

Q At a high level, can you describe for me what your responsibilities were in that position?

A To understand the strategic fit of the company's products to the customer markets.

Q And how long did you hold that position?

A 18 months.

Q Okay.  And did you hold any other positions at National Instruments?

Deposition of Kevin Ilcisin

In Re National Instruments Corporation Securities Litigation

Page 19

A  Yeah, subsequent to that, I became the vice president of marketing for what was referred to as the "test stripe," which was an internal organization of R&D and marketing staff.

Q  And when did -- when did you assume that position?

A  In the 2015 mid-year time frame.

Q  And at a high level --

A  Or pardon me, 2016 mid-year time frame.

Q  Okay.  And at a high level, what were your responsibilities in that -- in that position?

A  Guiding the strategy of the test stripe.

Q  And did there come a time when you became a senior vice president of strategy and corporate development at National Instruments?

A  Yes, I became the vice president of strategy and corporate development in 2017, and then the promotion, I actually forget what year it was.  It was in the 2020s.

Q  And at a high level, can you describe for me your responsibilities as a senior vice president of strategy and corporate development --

A  Sure.

Q  -- at National Instruments?

A  I was responsibile for coordinating the

Page 20

annual strategy development process, along with my counterparts in the finance team, to, you know, turn strategy into budget and operational plans. And then I was responsible for leading the transaction side of the company's mergers and acquisitions and investments.

Q  Is it fair to say that in that position of the senior vice presidents of strategy and corporate development, you obtained extensive mergers and acquisitions experience?

A  I would say I continued experience that I have been gathering for many years.

Q  Did you hold any other positions at National Instruments?

A  No.

Q  Did you end up leaving National Instruments?

A  Yes.

Q  When did you leave National Instruments?

A  I left National Instruments in December of 2023.

Q  And are you currently employed --

A  I am.

Q  -- Mr. Ilcisin?

A  I am currently employed.

Page 21

Q  Where are you employed?

A  I am employed as the founder and owner of Juniper Strategies, and I am employed as the CEO of Luna Innovations.

Q  And what is Juniper Strategies?

A  It's an AI-based strategy development company.

Q  And what -- I think you said Luna Innovations?

A  Luna.  Luna, L-U-N-A.  Luna Innovations Incorporated.

Q  And what's Luna Innovations?

A  It is a company in the fiberoptic measurement space.

Q  And I believe you testified that you are the CEO of Luna Innovations?

A  I am.

Q  And when did you become the CEO of Luna Innovations?

A  August 1st, 2024.

Q  Okay.  Thanks for all that background.

I am going to just turn to some of the specifics around the transaction at issue.  Were you aware of Emerson's offers to require National Instruments?

Page 22

ATTORNEY COMERFORD:  Form.

BY ATTORNEY CUMMINGS:

Q  Did you become aware of Emerson's offers to acquire National Instruments?

ATTORNEY COMERFORD:  Object to form. Go ahead.

THE WITNESS:  Yes.

BY ATTORNEY CUMMINGS:

Q  You can answer.

A  Yes.

Q  Yes.

How did you become aware of Emerson's offers to acquire National Instruments?

ATTORNEY COMERFORD:  Object to form.

THE WITNESS:  I was brought in by the CEO to support the transaction activities, like I would for any potential buy or sell activity at National Instruments as part of my role.

BY ATTORNEY CUMMINGS:

Q  Understood.

And the CEO you're referring to, is that Eric Starkloff?

A  It is.

Q  Do you remember when Mr. Starkloff brought you in to assist with National Instruments'

Deposition of Kevin Ilcisin                                    In Re National Instruments Corporation Securities Litigation

Page 23

consideration of Emerson's offers?

A  Yes.

ATTORNEY COMERFORD:  Object to form.

BY ATTORNEY CUMMINGS:

Q  When?  When was that?

A  That was in late May after, I believe, Eric received either an e-mail or a call.  And so after the initial communications, I was part of a small group that was brought in to understand what had transpired.

Q  You just testified that you were brought in as part of a small group to understand what had transpired; is that correct?

A  That is correct.

Q  What were you brought in to do in that -- in that connection?

A  So my role was corporate M&A, so anything having to do with transactions.  There might have been a need for me to, you know, just be part of the -- the project team.  And so I was -- you know, to use your favorite phrase, I was brought under the tent.  I was read in to support as needed.

Q  And did that support include attending internal meetings where National Instruments

Page 24

discussed Emerson's offer to acquire the company?

ATTORNEY COMERFORD:  Object to form.

THE WITNESS:  Yes, it did.

BY ATTORNEY CUMMINGS:

Q  And did -- did that also involve your attendance at external meetings with National Instruments' advisors?

A  Yes.

Q  And did that involve your participation in board meetings?

A  Sometimes.

Q  Okay.  And did your -- did that involvement include assisting National Instruments and its consideration of financial advisors to hire?

A  If by financial advisors you mean investment banking, yes.

Q  That's what I mean.  Thank you, Mr. Ilcisin.

Do you -- do you recall who National Instruments considered when it was looking for a financial advisor?

A  Yes, I do.

Q  Who?  Who did National Instruments consider?

Page 25

A  We considered a combination of three potential advisors that we had worked with previously.

Q  Can you identify the three advisors National --

A  Yeah.

Q  -- National Instruments considered?

A  Bank of America, Evercore and Centerview.

Q  Did National Instruments hire one of the three advisors you just mentioned?

A  They did.  They entered into an engagement with Bank of America.

Q  Okay.  When National Instruments was considering -- considering financial advisors, what factors or criteria was National Instruments looking -- looking for?

ATTORNEY COMERFORD:  Form.

BY ATTORNEY CUMMINGS:

Q  Let me strike that.

What was National Instruments looking for in a financial advisor?

ATTORNEY COMERFORD:  Form.

BY ATTORNEY CUMMINGS:

Q  Was National Instruments looking for a financial advisor with experience in its industry?

Page 26

A  That was one of the criteria that would be considered, yes.

Q  What was another criteria that National Instruments considered?

A  We put a rubric together and then had the team score it, and I don't have that in my possession.

Q  I'm going to go through a few criteria.  Let's -- let's see if any of these help.

Was National Instruments looking for a financial advisor with M&A experience?

A  All financial advisors would have M&A experience.

Q  Was National Instruments looking for a financial advisor with experience advising target companies?

A  I'm not sure I understand your question.  What do you mean by "target companies"?

Q  A company that was the subject of an acquisition proposal.

A  Yes, all investment bankers have that experience.

Q  Right.  Was National Instruments looking for a financial advisor with experience helping a target company getting -- getting -- strike that.

Page 27

Was National Instruments looking for a financial advisor who had some experience with obtaining improved offers for a target company?

ATTORNEY COMERFORD: Object to the form.

THE WITNESS: That was not my recollection of what we were looking for in an advisor.

BY ATTORNEY CUMMINGS:

Q Fair to say, though, that a financial advisor having experience with obtaining improved offers would be beneficial to the subject of an acquisition offer, right?

ATTORNEY COMERFORD: Object to the form. Calls for speculation.

BY ATTORNEY CUMMINGS:

Q You can answer.

A I would not agree with your statement that started with "fair." That's speculation.

Q Okay. A financial advisor who's advising a target company, right? You with me?

A I'm with you.

Q If that financial advisor has experience with obtaining improved offers, that would be beneficial to a target company, right?

ATTORNEY COMERFORD: Object. Form. Calls for speculation. Asked and answered.

Page 28

BY ATTORNEY CUMMINGS:

Q You can answer.

A So any company retains a financial advisor to give advice to the board to perform their fiducial responsibilities to the shareholders.

Q Understood.

Would such experience hurt a target company?

A It's not how they get evaluated.

Q I don't know that's responsive.

Would a financial advisor who has experience with getting, obtaining improved offers hurt a target company who's looking for an advisor?

ATTORNEY COMERFORD: Object. Form. Calls for speculation.

BY ATTORNEY CUMMINGS:

Q You can answer.

ATTORNEY COMERFORD: It's an incomplete and improper hypothetical.

BY ATTORNEY CUMMINGS:

Q You can answer.

A So I'm not sure I understand the point of your question.

The financial advisor is there to take all

Page 29

the information that they can get and provide a board with an opinion on whether or not a offer price is fair.

Q So if a financial advisor that has a track record of helping target companies obtain an increased offer for those companies, that experience would be beneficial to a company looking for an advisor, correct?

ATTORNEY COMERFORD: Form. Calls for speculation. Asked and answered.

THE WITNESS: So I'm -- I'm not following the question, because that's not what the engagement is about.

BY ATTORNEY CUMMINGS:

Q I didn't ask about the engagement.

A Okay.

Q I asked you -- it's a yes or no answer.

A Sure.

Q Would it hurt for a financial advisor to have experience with obtaining improved offers in their advice of a target company, yes or no?

ATTORNEY COMERFORD: Form. Form. Calls for speculation. It's an incomplete and improper hypothetical, and it's been asked and answered, I think, five times now.

Page 30

ATTORNEY CUMMINGS: It has not been. But thank you, John.

BY ATTORNEY CUMMINGS:

Q Mr. Ilcisin?

A So my response to your question is if a target company is seeking to sell itself to someone, then getting a higher offer would obviously be beneficial. That is not necessarily the role of the investment banker.

Q Thank you for that, but that wasn't my question. But I appreciate your response there.

A Okay.

Q Do you know how Bank of America was compensated?

A Yes.

Q How was Bank of America compensated?

A They were -- okay. There were two periods over which Bank of America was engaged with NI in different structures. So over what period are you asking the question?

Q I'm -- let me take a step back.

Bank of America advised National Instruments until the merger closed in October 2023; is that right?

A That is correct.

Deposition of Kevin Ilcisin                                    In Re National Instruments Corporation Securities Litigation

Page 31

Q Okay. Do you know how much Bank of America was paid in connection with Project Wolverine?

A I don't recall the exact amounts. I recall the structures.

Q Does $51 million sound about right to you?

A That sounds like the amount that was paid to National Instruments under the second engagement. So you're asking me a question about the second engagement period.

ATTORNEY CUMMINGS: I'm going to ask Alex to mark as Exhibit 1, Tab 1.

(Exhibit No. 1 marked
for identification.)

BY ATTORNEY CUMMINGS:

Q So Exhibit 1 includes a metadata slip sheet and handwritten notes dated May 20th, 2022. The notes bear Bates No. NAT-SL-00028044.

Do you have that document in front of you, Mr. Ilcisin?

A I do.

Q It's also in your binder. It should be as Tab 1.

A Yeah, it's easier to read in the binder.

Q That's -- that's what we were thinking.

Page 32

So feel free to read Exhibit 1 that's in your binder, but we're going to mark it electronically. Take a few minutes to review this document, and let me know when you've done so.

A Okay. I have reviewed it.

Q Do you recognize this document?

A I do.

Q What is this document?

A This document is handwritten notes by myself.

Q And the handwritten notes appear to be dated May 20th, 2022; is that right?

A Correct.

Q Before we get into the substance, I'm going to just ask a few background questions.

Did you have a practice of taking handwritten notes on calls or meetings?

A I use handwritten notes as a memory enhancer.

Q Did you have a practice with respect to keeping or maintaining your handwritten notes?

A Yes.

Q What was your practice?

A My practice was to take notes, sometimes keep them, sometimes destroy them.

Page 33

Q What would cause you to keep notes?

A Inconsistent. I didn't have a standard practice.

Q And when you kept notes, how did you keep the notes?

A Would scan them electronically and then file them.

Q Okay. Where would you file them?

A On my laptop.

Q And what would you do with the hard copies of the handwritten notes?

A Shred them.

Q And did you -- did you consistently follow that practice?

A Yes.

Q And some of the notes we'll be looking at, not necessarily Exhibit 1 here right now, but we see initials in the margins. What -- what does -- what does that mean?

A When you said you see what in the margins?

Q Initials. So like my -- my name Desiree Cummings, I see DC, for example. I see, like, initials of a person's name in the margins.

A Yeah, you'd have to take me to a specific example. There was no -- there was no unique

Page 34

practice about that.

Q Okay. We'll take a look at some of those shortly.

A Okay.

Q So let's -- let's just jump into Exhibit 1, if that's okay with you.

A Certainly.

Q Now, I think we covered already that the first note is dated May 20th, 2022?

A Correct.

Q And it appears to be notes of a call with or about Tom Stokes of Evercore; is that right?

A That is correct.

Q And just for the record, "EVR" stands for Evercore; is that right?

A That is correct.

Q Okay. And the second line from the top right underneath Tom Stokes's name -- are you there?

A I am.

Q Does that say, "Doing some more work"?

A Yes, it does.

Q Great.

And the next line says, "How would we be looked at" -- looked at "strategic rationale"; is

Deposition of Kevin Ilcisin                                In Re National Instruments Corporation Securities Litigation

Page 35

that right?

A  That is correct.

Q  Do you know what that's a reference to?

A  Yes, I do.

Q  What is it a reference to?

A  So this note was my calling Tom Stokes in response to being told a private rumor that there might be someone looking to acquire NI.

Q  And forgive me, the next line says, "Who would be likely strategies?"  Is that --

A  Strategics.

Q  Strategics, got it.

And underneath that there are two bullet points.

Do you see that?

A  Correct.

Q  I -- I can't make out those two words. Can you help me with that?

A  The first one is Siemens.

Q  Siemens.  And what's the next word?

A  Emerson.

Q  Okay.  So you discussed with Tom a rumor regarding Emerson acquiring the company at or around this time?

A  No.  The conversation was, There is a

Page 36

rumor.  Do you have any idea who the rumor might be about?

Q  Okay.  And one of the entities the rumor might be about was Emerson?

A  Correct.

Q  Okay.  And then there's like a box around a number "2."

Do you see that?

A  I do.

Q  I'm going to read the first line.  You let me know if I read it correctly, and correct me if I read it incorrectly.  Okay?

A  Yeah.

Q  "What would PE look like"; is that -- is that right?

A  That is correct.

Q  And what does "PE" mean or refer to here?

A  Private equity.

Q  Okay.  And then the next line says, "What we should prepare."

A  Correct.

Q  Is that right?  And -- and then there are sub-bullets underneath that.  I read this to mean, "What we should prepare for the street"; is that right?

Page 37

A  No.

Q  Okay.  How did I -- how did I go wrong?

A  So it's for strategics.

Q  For strategics, got it.

A  Or for private equity.

Q  Okay.  And what's for strategics?  What does that mean?

A  It's the sentence -- okay.  So you are looking at my shorthand notes.

Q  Okay.

A  So I would suggest, as we go through these notes, that any work that you've done to try and interpret these notes is reading into an extreme form of shorthand.

Q  Okay.  So what did you mean by "for strategics"?

A  So the question on this was:  Is there anything we should be doing to prepare if there was a strategic company that was interested in acquiring us, and would that be different than what we might do for a private equity approach or something like an activist hedge fund.

Q  Understood.

A  And so that leads to the, "What should we know."

Page 38

Q  Okay.  Okay.  Understood.

A  Uh-huh.

Q  Then the next set of notes dated the same date, May 20th, 2022, right?

A  Correct.

Q  And -- and are these notes of a call with Steve Miller?

A  Correct.

Q  And am I right that Steve Miller is a partner at Centerview?

A  That is correct.

Q  Okay.  And I just have one question towards the bottom of these notes.  I read the, I guess, third line from the bottom that has text to say, "Leveraged share purchase."

Do you see that?

A  Uh-huh.

Q  What is that a reference to?

A  I have to read my notes to remember.  Hang on.

Q  Sure.  Take your time.

A  So that refers to a question of whether or not a leveraged buyout by a PE firm would be something that would be of interest to the PE community.

Deposition of Kevin Ilcisin                    In Re National Instruments Corporation Securities Litigation

Page 39

Q Before we leave this note, I do -- I do have another question, actually, on the notes regarding the call with Mr. Miller. Three lines above, "Leveraged share purchase," I believe it says, "Range of strategic alternatives"; is that right?

A That's correct.

Q And what is the sub-bullet underneath that heading?

A I -- I actually can't read it myself.

Q Okay.

ATTORNEY CUMMINGS: I'm going to ask Alex to mark Tab 2 as Exhibit 2.

(Exhibit No. 2 marked for identification.)

BY ATTORNEY CUMMINGS:

Q Do you have a document bearing Bates Nos. NATSL -- excuse me. Let me restart.

Mr. Ilcisin, do you have a document bearing Bates No. NAT-SL-00001263 that continues to 1266?

A Sorry, what am I looking at?

ATTORNEY COMERFORD: Not in paper.

BY ATTORNEY CUMMINGS:

Q Sorry. Let me just explain this to you,

Page 40

Mr. Ilcisin. So the handwritten notes are going to be in the binder.

A Okay.

Q Because it's easier to look at in physical form. All other exhibits will be populated electronically on the screen.

A Okay.

Q So we'll be wavering between the two.

A Got it. Thank you.

Q No problem.

Do you have Exhibit 2 in front of you?

A Yes.

Q Do you recognize Exhibit 2?

A No.

Q Okay. Take a few minutes to review this document.

A This looks like a letter between -- or a letter from the CEO of Emerson to the CEO of NI.

Q The letter is dated May 25th, right?

A Correct.

Q Have you seen this letter recently?

A I had seen this letter in preparation.

Q Okay. So this is the May 25th, 2022, proposal from Emerson to acquire National Instruments; is that right?

Page 41

A Correct.

Q Okay. And in this letter, Mr. Karsanbhai communicates a sense of excitement throughout the letter; is that right?

ATTORNEY COMERFORD: Form.

BY ATTORNEY CUMMINGS:

Q Does Mr. Karsanbhai communicate a sense of excitement at various points in this letter?

ATTORNEY COMERFORD: Form.

BY ATTORNEY CUMMINGS:

Q You can answer, Mr. Ilcisin.

A I read -- in my role, I read a letter like this as a reach-out to a potential target to start a dialog. I don't take anything else from it.

Q Okay. So let's just look at some -- some of Mr. Karsanbhai's actual words, if that's okay with you.

A Certainly.

Q Okay. In the first full paragraph, he writes, "I'm excited to present you with this proposal."

Do you see that?

A I can see that.

Q Okay. In the second paragraph, Mr. Karsanbhai says, "We are very excited about

Page 42

the combination of our two firms and the potential we can achieve together."

Do you see that?

A I see that.

Q And I read that correctly?

A Yes.

Q Okay. And if you flip through to the last page of this document -- are you there?

A I am. Well, it's -- it's being moved for me.

Q Okay.

A It's on the last page.

Q Okay. In the second paragraph on the last page, Mr. Karsanbhai says, "We are highly enthusiastic about the prospects of what we can achieve together."

Do you see that?

A I can see that.

Q And I read that correctly?

A Yes.

Q So fair to say this letter contains at least three references to excitement or enthusiasm?

A It is --

ATTORNEY COMERFORD: Object to the form.

Page 43

THE WITNESS: It is a true statement that there are three instances where words "excitement" or "enthusiastic" are used in this letter.

BY ATTORNEY CUMMINGS:

Q Great. Thank you.

Now let's look at a little bit more of the letter. In this letter, Mr. Karsanbhai is offering or proposing to acquire National Instruments for $48; is that right?

A I would --

ATTORNEY COMERFORD: Form.

THE WITNESS: I would have to check the letter.

BY ATTORNEY CUMMINGS:

Q Okay. So let's go look at valuation.

Do you see a section on the page -- on the page ending --

A Now I see it.

Q Okay. There's a section titled "Valuation."

Do you see that?

A I do.

Q And in that section, Mr. Karsanbhai, on behalf of Emerson, is offering to acquire National Instruments for $48.

Page 44

Do you see that?

ATTORNEY COMERFORD: Object to the form. Mischaracterizes the document.

THE WITNESS: I read a sentence under "Valuation" that says, "Proposes to purchase 100 percent of the outstanding common stock for $48 in cash."

BY ATTORNEY CUMMINGS:

Q So the proposal was to purchase National Instruments outstanding common stock for $48 per share; is that right?

A That's what the sentence reads.

Q Okay. And the proposal was a cash proposal; is that right?

A It says, "in cash per common share."

Q Okay. Now, do you know or recall at this time, so May 25th, 2022, Mr. Kar -- do you recall whether or not Mr. Karsanbhai's letter was -- was public?

ATTORNEY COMERFORD: Foundation.

THE WITNESS: I --

BY ATTORNEY CUMMINGS:

Q This -- this letter is from Mr. Karsanbhai to Mr. Starkloff; is that right?

A That is correct.

Page 45

Q Do you know if this letter had been disclosed to the public at or around this time?

ATTORNEY COMERFORD: Form. Foundation. Calls for speculation.

THE WITNESS: I have -- I have no way of knowing what Emerson did with this letter.

BY ATTORNEY CUMMINGS:

Q Do you have any reason to believe that Emerson disclosed this letter at this time?

A I don't have any knowledge of it one way or the other.

Q Do you have any reason to believe that National Instruments disclosed this letter or its content at this time?

A I don't believe NI made this letter public.

Q Okay. In this letter, Mr. Karsanbhai states that the $48 per share offer reflects a 39 percent premium to National Instruments closing price as of May 24, 2022.

Do you see that?

ATTORNEY COMERFORD: Form.

THE WITNESS: I do see that written in the document in front of me.

BY ATTORNEY CUMMINGS:

Page 46

Q Now, the letter goes on to discuss timing. Do you see a section titled "Timing"?

A I do.

Q Okay. And on the topic of timing, Mr. Karsanbhai states that Emerson is willing to work quickly to complete due diligence and to execute merger documentation; is that right?

ATTORNEY COMERFORD: Form.

THE WITNESS: You are paraphrasing what is written, yes.

BY ATTORNEY CUMMINGS:

Q Did I correctly paraphrase what's written?

ATTORNEY COMERFORD: Form.

THE WITNESS: I would rather just say I can see what's in front of me on the screen.

BY ATTORNEY CUMMINGS:

Q Okay. Let's - let's go through what the letter says then.

"Emerson is prepared to proceed immediately to work with NI and its advisors to complete due diligence and to negotiate a mutually agreeable merger agreement."

Do you see that?

A I see that.

Q And I read that correctly?

Page 47

A Yes.

Q Okay. And in that same section, Emerson indicates that it thinks it can complete merger documentation and announce a merger within four to six weeks.

Do you see that?

A That is what I see.

Q And then there's a section right below timing that says "Board Review."

Do you see that?

A I do.

Q And that section indicates that Emerson's board has reviewed and supports the transaction; is that right?

A That's what the first sentence reads.

Q Now, if you turn to the next page or the page ending 266. Are you there?

A I am.

Q Now, the first full paragraph is basically describing the key terms of Emerson's proposal; is that right?

ATTORNEY COMERFORD: Form. Foundation.

THE WITNESS: Yeah.

BY ATTORNEY CUMMINGS:

Q Does the first -- sorry. Go ahead,

Page 48

Mr. Ilcisin.

A Again, the first paragraph is a three-sentence paragraph that says a summary of what was in the letter.

Q Okay. So that paragraph says, "To reiterate, our proposal, all cash consideration with no financing contingency and no substantive regulatory impediments, provide both significant value and certainty to NI shareholders."

Do you see that?

A I do.

Q And I read that correctly?

A You did.

Q And it goes on to say, "We are prepared to move very quickly to complete our due diligence and sign definitive agreements."

A Correct.

Q And I read that correctly, right?

A Correct.

Q Okay. So that paragraph in sum says that Emerson is offering cash in connection with its proposal to acquire NI, right?

ATTORNEY COMERFORD: Form.

THE WITNESS: That paragraph to me says they're making a proposal, but given that it says

Page 49

due diligence is required, I don't consider it complete because it's a proposal until after due diligence is complete.

BY ATTORNEY CUMMINGS:

Q The proposal includes cash consideration; is that right?

ATTORNEY COMERFORD: Form.

THE WITNESS: The proposal says "all cash consideration," but it says "complete our due diligence," which means that everything is subject to restatement, renegotiation and reproposal after diligence.

BY ATTORNEY CUMMINGS:

Q Are you disputing that at this time Emerson was -- was offering to acquire National Instruments for $48 cash per share?

ATTORNEY COMERFORD: I dispute it. And I object to the form of the question.

ATTORNEY CUMMINGS: I don't think you're the witness, Mr. Comerford.

BY ATTORNEY CUMMINGS:

Q Mr. Ilcisin, are you disputing that Emerson was offering to acquire National Instruments for $48 cash per share --

ATTORNEY COMERFORD: Object.

Page 50

BY ATTORNEY CUMMINGS:

Q -- at this time?

ATTORNEY COMERFORD: Object to the form of the question. It mischaracterizes the document.

And I'm going to note for the -- for the stenographic record that the entire page of this document is not being shown on your screen by your technical person. Part of the text is hidden. I want that noted on -- I want that noted on the record.

ATTORNEY CUMMINGS: Mr. Comerford. Mr. Comerford, I'm going to ask that you -- you have an objection. Please limit it to form.

ATTORNEY COMERFORD: So --

ATTORNEY CUMMINGS: I believe we've gone through -- let me finish, Mr. Comerford.

I believe we've gone through this in multiple depositions.

BY ATTORNEY CUMMINGS:

Q Mr. Ilcisin, the documents appearing on the screen, if you need to see more, please advise us, and we will make sure you can see it. Okay?

ATTORNEY COMERFORD: Please -- please show --

ATTORNEY CUMMINGS: And if you have a

Page 51

question --

ATTORNEY COMERFORD: Please show --

ATTORNEY CUMMINGS: If you have a question or don't understand something, please seek clarification.

ATTORNEY COMERFORD: Okay. Please --

ATTORNEY CUMMINGS: This is not an opportunity for your counsel to -- to speak. You are the witness.

ATTORNEY COMERFORD: Please --

ATTORNEY CUMMINGS: If you have questions, please feel free to ask them. If you need to see more of the document, please ask for it.

ATTORNEY COMERFORD: Okay.

ATTORNEY CUMMINGS: This shouldn't be controversial.

ATTORNEY COMERFORD: I'm asking again -- the -- the rest of this page of the letter is not being displayed on the screen, and I ask that you please reveal to the witness the rest of this page so that he can see it.

ATTORNEY CUMMINGS: Mr. -- Alex, could you please go to Page 2 of this document.

ATTORNEY COMERFORD: No, no, no. I'm talking about this page, Page 4.

Page 52

ATTORNEY CUMMINGS: And I'm asking Alex to go to Page 2 so that I can ask my question.

ATTORNEY COMERFORD: So --

ATTORNEY CUMMINGS: Thank you.

ATTORNEY COMERFORD: -- I'm requesting that you show the witness the bottom of Page 4 that has been hidden from him. Can we do that, please?

ATTORNEY CUMMINGS: First of all, John, let's be clear.

ATTORNEY COMERFORD: All right.

ATTORNEY CUMMINGS: Nothing is being purposely hidden from the witness, so I object to your -- your tone or suggestion that something is being hidden from him.

ATTORNEY COMERFORD: The bottom of Page 4, Desiree.

ATTORNEY CUMMINGS: Mr. Comerford. Mr. Comerford, this is going to be a long day for you and your witness if you continue.

Alex, could you please reduce the size of Exhibit 2 so that Mr. Ilcisin can see the page in its entirety. Thank you.

ATTORNEY COMERFORD: Now -- now can you please go to Page 4 so we can see it?

Page 53

ATTORNEY CUMMINGS: Now -- now -- no. First of all, I am questioning.

BY ATTORNEY CUMMINGS:

Q My pending question was, are you disputing that Emerson was offering to acquire National Instruments for $48 cash at this time?

ATTORNEY COMERFORD: Objection.

BY ATTORNEY CUMMINGS:

Q That's the question.

ATTORNEY COMERFORD: Objection. Mischaracterizes the document and form.

BY ATTORNEY CUMMINGS:

Q You can answer.

A This letter states that after completing due diligence, Emerson would enter into a definitive agreement to acquire National Instruments. It states that it's starting that process with an offer of $48. It is not interpreted, in my opinion, that it means that they would finalize an offer at $48.

Q Well, Mr. Ilcisin, they didn't finalize an offer at $48, right? This deal closed at $60 cash, right?

A I think -- I think we're --

Q Right?

Page 54

A No, I think --

Q Is that yes or no? Yes or no? What -- at what price did this deal close at?

ATTORNEY COMERFORD: Object to the form.

THE WITNESS: With respect, are you asking me a question about this letter or are you asking me now a separate question about the close -- the published closing price of the deal?

BY ATTORNEY CUMMINGS:

Q What was the published closing price of the deal?

A I believe it was $60 or something around that, depending on how you calculate the waterfall.

Q And that was cash?

A Yes.

Q Thank you.

Earlier, we talked about National Instruments hiring Bank of America as its financial advisor.

Do you recall that?

A Yes.

Q Did National Instruments hire a legal advisor in connection with Project Wolverine?

A They did.

Page 55

Q  Who did National Instruments hire?

A  Wachtell, Rosen; WLRK.

Q  Do you recall in the -- in the context of your being brought in and read into this project meeting with Wachtell?

A  I recall being in meetings where they were present.

Q  Okay.  Do you recall receiving presentations from Wachtell?

A  Yes.

Q  And do you recall discussing those presentations with Wachtell and others at National Instruments?

A  Yes.

ATTORNEY CUMMINGS:  Alex, could you mark as Exhibit 3, Tab 5.

(Exhibit No. 3 marked for identification.)

ATTORNEY COMERFORD:  I want the record to show that Ms. Cummings refused my request to show the witness the entirety of Exhibit 2.

ATTORNEY CUMMINGS:  John, I did not refuse your request to show the entirety of Exhibit 2. John, you will have an opportunity to go back over these exhibits, as I'm sure you will, and point

Page 56

out whatever you feel like you need to point out.

ATTORNEY COMERFORD:  Well, you didn't --

ATTORNEY CUMMINGS:  It would be helpful -- it would be helpful to -- to move this along, but since you are insisting.

Alex, can we go back to Exhibit 2, please.

BY ATTORNEY CUMMINGS:

Q  Mr. Ilcisin, this is the first page of Exhibit 2, ends with Bates No. 264.

Do you see that?

A  I do.

Q  Okay.

ATTORNEY CUMMINGS:  Alex, could you go on to the second page of Exhibit 2.

BY ATTORNEY CUMMINGS:

Q  And that page ends 265.

Do you see that?

A  I do.

Q  Okay.

ATTORNEY CUMMINGS:  And, Alex, could you go to the next page of Exhibit 2.

BY ATTORNEY CUMMINGS:

Q  Do you see that?  It's page ending 266?

A  Yeah.

Q  Great.

Page 57

Now you've seen the entirety of Exhibit 2; is that right?

A  Yes.

Q  Thank you.

ATTORNEY COMERFORD:  Can you make out the -- the words at the bottom, or are they --

ATTORNEY CUMMINGS:  Alex --

But, no, listen, listen, John.  Let's take a break.  Actually, let's take a break right now. Thank you.

Let's go off the record, please.

THE VIDEOGRAPHER:  We're going off the record at 9:51 a.m.

(Recess 9:51-9:57.)

THE VIDEOGRAPHER:  We are going back on the record at 9:57 a.m.

ATTORNEY CUMMINGS:  Great.

EXAMINATION (Continuing)

BY ATTORNEY CUMMINGS:

Q  I believe before we broke I had asked Alex to mark as Exhibit 3, Tab 5.  It's a document bearing Bates No. NAT-SL-00016112, and it goes to 145.  It's a May 25th, 2022, e-mail from Sabastian Niles to you, Mr. Ilcisin, and others at National

Page 58

Instruments.

Do you see that?

A  I do.

Q  And the e-mail attaches a set of slides; is that right?

A  It says it does.

Q  Okay.  Do you see the attachment line underneath the subject line?

A  Correct.

Q  Right?  And the attachment line reads, "███████████████████████████████ ██████████████████████.pdf."

Do you see that?

A  I do.

Q  Do you recognize this -- do you recognize Exhibit 3?

ATTORNEY COMERFORD:  I object.  We've only seen the first page of a 34-page document.

ATTORNEY CUMMINGS:  Alex, Alex, Alex, could you please --

BY ATTORNEY CUMMINGS:

Q  Mr. Ilcisin, before we proceed.

A  Yes.

Q  For the documents that -- for any documents you're shown today, I'm just going to

Page 59

encourage you to take as much time as you need to review the entirety of the document. Okay? If there's a document being displayed electronically that you want to peruse yourself, just ask Alex, and he will give you control over the document being identified for the record as an exhibit.

Do you understand that?

A I understand that. Can I -- may I ask a clarifying question?

Q Yes.

A Just in the interest of time, you're -- in general, you're showing me documents that are three years old. Certainly, if it has my name on it, I saw it at one point in time. I will almost consistently answer back that I don't remember these documents. So if you're asking a detailed question about what's in the document, I will have to read it. If you're not asking a detailed question about content, then I'm just trying to save us all time. So you'll -- you'll collectively have to guide me on whether the question is directed at a specific fact in the document or if you're asking a general question.

Q Well, that's all fair. And I will be directing you to specific pages, right, in a

Page 60

document that I have questions about. But I wanted to give you an opportunity to actually leaf through this document so you can get familiar with it as you're sitting here today.

Okay?

A Sure. Do you want me to take a minute to scan it?

Q Please do.

A Okay.

THE WITNESS: Alex, did you say you can give me control just so I don't have to keep going, scan. Like can I just -- is there a way that I can...

EXHIBIT TECHNICIAN: Just click your mouse on the screen, and then you move -- you can move it around.

THE WITNESS: Yeah. Yeah. That's working. Thank you.

It's gone into the PowerPoint. Alex, can you shrink that? Because it's now outside the bounds of what can be shown on my screen. Yeah, thank you. That works.

Okay. I have scanned the document, but I have not read every page. But I am now familiar with the overall content. Thank you.

Page 61

BY ATTORNEY CUMMINGS:

Q Have you seen this document recently?

A No.

ATTORNEY COMERFORD: I object. I think that that question, "Have you seen this recently," is invading the attorney-client privilege because it's trying to invade the documents that we prepped him for. He's a fact witness. So I object to that, and I ask that you not do it again, please.

BY ATTORNEY CUMMINGS:

Q Mr. Ilcisin, you said you've had some time to look -- look through the document, right?

A On the screen, yes.

Q Okay. I'm going to direct your attention to -- I think you said you were looking at the attachment, which begins on the page ending 114.

ATTORNEY CUMMINGS: It should be the third page of the PDF, Alex.

BY ATTORNEY CUMMINGS:

Q Do you see that, Mr. Ilcisin?

A I do.

Q Okay. This is a PowerPoint presentation from Wachtell May 22nd, 2022.

Do you see that?

Page 62

A I do.

Q And the title of the PowerPoint is, "Directors' Duties for M&A, Takeover and Activism Preparedness."

Do you see that?

A I do.

Q And I'm going to just, to your point, direct you to the page ending 121.

ATTORNEY CUMMINGS: Alex, that should be PDF Page 10.

BY ATTORNEY CUMMINGS:

Q Are you -- are -- do you have that page in front of you, Mr. Ilcisin?

A I do, yeah.

Q Now, this is a slide titled, "███████ ███████████████████████████████ ██████████████████

Do you see that?

A I do.

Q And that slide is showing ████████ ████████████████████████████████ right?

A Correct.

ATTORNEY COMERFORD: Form.

BY ATTORNEY CUMMINGS:

Q And the ████████████████████████████

Page 63

██████████████; is that correct?

ATTORNEY COMERFORD: Form.

THE WITNESS: ████████████████ ████ yes.

BY ATTORNEY CUMMINGS:

Q Okay. And do you see Item No. 3?

A Yes.

Q In the -- in ██████████████?

A Yes.

Q Okay. And ████████████████ ████████████ right?

A Correct.

Q Okay. And the next ████████████ ████████████████████████ ████████████████████████."

Do you see that?

A I do.

ATTORNEY COMERFORD: Form.

BY ATTORNEY CUMMINGS:

Q And do you understand that Wachtell here in this slide is ████████████ ████████████████████████ ████████████████████████ ████████████████████████ ██████

Page 64

ATTORNEY COMERFORD: Form. Mischaracterizes the document.

THE WITNESS: I don't agree with the way you framed the statement. I view this as a ████ ████████████████████████ ████████████████████ How do you say that word?

BY ATTORNEY CUMMINGS:

Q Okay. And I think you testified earlier that it's ████████████████████ ████████; is that right?

ATTORNEY COMERFORD: Object to the form. Mischaracterizes prior testimony.

THE WITNESS: This --

BY ATTORNEY CUMMINGS:

Q You can answer.

A This -- this slide was put together by Wachtell, and it has, you know, ████████████ ████████████████████

Q Okay. So again, I think you're saying it -- ████████████████████████ ████████████ is that correct?

A It's ████████████████████████ ████████████████████.

Q This slide does include numbers; is that

Page 65

correct?

A That is correct.

Q Okay. And the ████████████████ ████████████

A Correct.

Q On ████████████ that right?

A On ████████████ yes.

Q Okay. And ████████████████████ ████████████████████████; is that correct?

A I wouldn't call it an ████████████ ████████████████

Q And the ████████████████████ ████████████████████████; is that right?

ATTORNEY COMERFORD: Form. Asked and answered.

THE WITNESS: That is the way the slide is presented, yes.

BY ATTORNEY CUMMINGS:

Q Okay. Okay. And three comes before four; is that right?

ATTORNEY COMERFORD: Form.

THE WITNESS: The ████████████████ ████████████████████████.

Page 66

BY ATTORNEY CUMMINGS:

Q Great. Thank you.

If we could go to the slide ending 122. It's the next slide in this presentation. This is a slide entitled "████████████"; is that right?

A It is.

Q Okay. And this slide is covering, among other things, ████████████████████ ████████████████████; is that right?

ATTORNEY COMERFORD: Object -- object to the form. Mischaracterizes the document.

THE WITNESS: Sorry. I got caught up. Could -- could you repeat your question for me, please?

BY ATTORNEY CUMMINGS:

Q This slide, the slide titled "████████ ████████" right?

A Uh-huh.

Q That's where you are, right?

A Correct.

Q Discusses ████████████████████ ████████████████████████████████████; is that right?

Page 67

ATTORNEY COMERFORD: Object to the form. Mischaracterizes the document.

THE WITNESS: No. I view this as ███ ███████ ███████████ ███████ █████ And I think this was per the original page of this to the directors of the company.

BY ATTORNEY CUMMINGS:

Q Understood.

So what's your understanding of the column entitled "██████████"?

ATTORNEY COMERFORD: Form.

THE WITNESS: It's not -- I think the way I read it, ████████████ ████████ ████

BY ATTORNEY CUMMINGS:

Q Understood.

So ██████████ right?

Page 68

A It's a ██████████, yes.

Q Great.

So ██████████ is that correct?

A ██████████.

Q Okay. And looking at ██████ are you there?

A I am.

Q Okay. ██████████ is that right?

A Correct. That's what it says.

Q And the May 25th, 2022, letter that we looked at a few minutes ago was a private letter from Mr. Karsanbhai to the CEO of National Instruments, Eric Starkloff; is that right?

A That's correct.

Q And ██████████. Do you see that?

ATTORNEY COMERFORD: Form. Foundation.

THE WITNESS: I see it, but it's incomplete.

BY ATTORNEY CUMMINGS:

Page 69

Q This column says, ██████████ " right?

A Yes. But the letter that you're referencing did not specify a transaction price. It specified a proposal subject to due diligence, which --

Q And the -- sorry. Go ahead.

And the proposal was a $48 cash proposal.

A Subject to due diligence. It's nonbinding. It can be changed at any point in time, and there's no reason to believe that that is the price that would actually be proposed at the transaction stage.

Q Right. It could be more, right?

A It could be less.

Q But it could be more, right?

A It could be different.

Q And that different includes more, right?

ATTORNEY COMERFORD: Objection.

BY ATTORNEY CUMMINGS:

Q Mr. Ilcisin?

ATTORNEY COMERFORD: Objection. Asked and answered.

THE WITNESS: It can be different.

Page 70

BY ATTORNEY CUMMINGS:

Q Is different inclusive of more, Mr. Ilcisin?

ATTORNEY COMERFORD: Form.

THE WITNESS: Different includes a range from less to more, yes.

BY ATTORNEY CUMMINGS:

Q Thank you.

I mean, like -- and ██████████ ██████████. Do you see that?

A Yes.

Q And Emerson's May 25th, 2025 -- 2022, excuse me, proposal included cash consideration; is that correct?

ATTORNEY COMERFORD: Object to the form. It's been asked and answered.

THE WITNESS: The letter that you showed me talked about a cash transaction. It did not cross -- it did not talk about structure, which was another missing element of the letter.

BY ATTORNEY CUMMINGS:

Q So you -- you don't -- did -- did the letter suggest that Emerson was proposal stock for



Page 71

stock?

ATTORNEY COMERFORD: Objection. Form. Foundation.

THE WITNESS: That's not my interpretation of the word "███████."

BY ATTORNEY CUMMINGS:

Q Okay. But stock -- stock is a structural element of a deal; is that correct?

ATTORNEY COMERFORD: Form. Foundation.

THE WITNESS: You may be educating me. I don't consider that structural.

BY ATTORNEY CUMMINGS:

Q Okay. So if someone is proposing to acquire your company using stock, their stock for your stock, that's not a structure of a transaction?

ATTORNEY COMERFORD: Form.

THE WITNESS: No.

ATTORNEY COMERFORD: Yeah. Form. Foundation. Incomplete and improper hypothetical.

THE WITNESS: So just -- so I said my answer was no, just in case it got missed.

BY ATTORNEY CUMMINGS:

Q Yeah. I believe we got it. Thank you.

A Okay.

Page 72

Q If we go to the second row with the heading "███████████████"?

A Uh-huh.

Q Are you there?

A I am.

Q And if you follow that row to the section that's underneath ████████████, are you there?

A I am.

Q Okay. And I'm paraphrasing, but this row ███████████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████

Do you see that?

A I'm reading the words. Candidly, this is where in my role, I would ask our legal counsel to explain what that means. I don't actually know what this all means.

Q Understood.

Do you recall asking Wachtell at the time?

A No. It wasn't my responsibility to be involved in anything related to that.

Q Understood.

And if you go on to the next page, it's the page ending 123, and just let me know when

Page 73

you're there, Mr. Ilcisin.

A Yeah, it's in front of me.

Q Is it there?

A Yeah.

Q Okay. And this page is titled ██████ ███████" right?

A Correct.

Q And it's a continuation of the discussion ████████████████████.

A Correct.

Q Is that right?

A Yeah.

Q Okay. And ████████████████████ ████████████████████████████████████,

right?

A Correct.

Q Do you -- do you remember -- strike that.

Did Emerson accumulate shares of National Instruments at any point during Project Wolverine?

ATTORNEY COMERFORD: Form. Foundation.

THE WITNESS: During the Project Wolverine period, we became aware through a process that we initiated that Emerson had accumulated a position in NI shares.

BY ATTORNEY CUMMINGS:

Page 74

Q Let me -- you said a process that we had initiated.

Did National Instruments hire a stock surveillance firm --

A We did.

Q -- to monitor accumulation?

A We did.

Q Let me just finish. Sorry.

Go ahead.

A You -- the question was, did NI hire a stock surveillance company?

We hired a proxy services company. Stock surveillance is one of the offerings of that company.

Q Okay. And what company did National Instruments hire to monitor or surveil its activity in the stock?

A MacKenzie.

Q Is that MacKenzie Partners?

A I believe that's their full name.

ATTORNEY CUMMINGS: If we go to the next page in this slide deck, it's the page ending 124.

BY ATTORNEY CUMMINGS:

Q And this slide is titled, "██████████ ████████████████████████"; is that right?



Page 75

A  Correct.

Q  And here Wachtell's advising NI, among other things, to, "███████████████████ ███████████ right?

Do you see that?

A  I'm looking for it.

Q  It's the last check at the bottom --

A  Oh, yeah.  I see it.

Q  -- left.  Do you see that?

A  Uh-huh.

Q  And you just testified that MacKenzie Partners was hired as a proxy solicitation firm and a firm that provides stock surveillance, right?

A  Correct.

Q  And NI hired MacKenzie to monitor trading activity in its -- its stock, right?

A  Correct.

ATTORNEY CUMMINGS:  And if we go to the page ending 126, that's two pages, Alex.

BY ATTORNEY CUMMINGS:

Q  Are you there, Mr. Ilcisin?

A  Yes.

Q  And that's a slide titled, "███████ ███████████████████

Page 76

A  Yes.

Q  Do you see that?

And it lists several items, 1, 2, 3.  Do you see that?

A  I do.

Q  And 1 ███████████████████████ ███████

Do you see that?

A  I do.

Q  And 2 is, "██████████████████████."

Do you see that?

A  I see that words.

Q  And the third item is, "████████████ ██████

Do you see that?

A  Correct.

Q  And one of the items under, ████████ ████████████████████████████████ ██████████████████

Do you see that?

A  Yes.

Q  And another step underneath, ██████████ ████████████████████████████ ████████████

Do you see that?

Page 77

A  I do.

ATTORNEY CUMMINGS:  You can -- you can put that to the side, Alex, for right now.

BY ATTORNEY CUMMINGS:

Q  Mr. Ilcisin, do you recall participating in internal discussions about Emerson's May 25th proposal?

A  Yes.

Q  Okay.  What do you recall about those discussions?

A  I remember that I participated in them three years ago.

Q  Okay.  Fair point.

ATTORNEY CUMMINGS:  Alex, can you mark as Exhibit 4, Tab 3.

(Exhibit No. 4 marked for identification.)

ATTORNEY CUMMINGS:  So I think we're up to Exhibit 5, if I'm not mistaken; is that right Alex?

EXHIBIT TECHNICIAN:  This is 4.

ATTORNEY CUMMINGS:  4, okay.

BY ATTORNEY CUMMINGS:

Q  So, Mr. Ilcisin, Exhibit 4 is a metadata slip sheet along with handwritten notes dated

Page 78

5/25/2025 (sic).  The notes bear Bates No. NAT-SL-000222- --

A  Yeah.

Q  -- 48 to 250.  Just take a few minutes to peruse Exhibit No. 4, please.

A  Okay.

Q  These are your handwritten notes, Mr. Ilcisin?

A  Yes.

Q  And these notes appear to be -- these notes are dated 5/25/2022, right?

A  Correct.

Q  And at the top of each of the pages of notes there's a reference to "Wolverine"; is that right?

A  That's correct.

Q  Okay.  I think we talked about this earlier.  "Wolverine" was the code name?

A  For the process, yes.

Q  Right?  For the process.  And by "process," you mean NI's consideration of Emerson's offer to acquire the company?

ATTORNEY COMERFORD:  Form.

THE WITNESS:  No.

BY ATTORNEY CUMMINGS:

Deposition of Kevin Ilcisin                    In Re National Instruments Corporation Securities Litigation

Page 79

Q  What do you mean by "process"?

A  So in -- at NI, any time we would have a project that would be buy or sell side, that entire -- that entire process would get a code name.  For example, there were periods when, under the same process name, NI might be seeking to acquire two targets.  Each of the targets would have its own separate code name.

Q  And "Project Wolverine" was the project name in this case for a sell-side transaction?

A  No.

Q  Right?

A  No.  So --

Q  No, what -- what was it?

A  So -- okay.  So first of all -- and I believe I answered this question earlier.

Q  Okay.

A  And I said that people started using these code names in different ways.

Q  Okay.

A  In my handwritten notes, the name "Wolverine" refers to the overall process of there being a potential acquirer of NI.  And so anything --

Q  And -- and --

Page 80

A  -- anything that related to that potential process, I personally labeled "Wolverine."

Q  Okay.  And you said a project name was given to any potential acquirer of NI; is that correct?

A  No.  I said that there was a code name given to the process, and then I said there could be separate names identified for particular companies.

Q  And the process included a potential acquirer of NI?

ATTORNEY COMERFORD:  Form.

THE WITNESS:  "Wolverine" refers to a project inside NI about a possible acquisition of NI by someone.

BY ATTORNEY CUMMINGS:

Q  Right.  And at this time, Emerson had approached NI with a proposal to acquire the company.

A  Correct.

Q  Is that correct?

A  At this time of the -- this note, yes.

Q  Correct.  And this note is dated 5/25/2022, correct?

A  Correct.

Page 81

Q  And that's the same date as Emerson's proposal to acquire National Instruments for $48, correct?

A  I'd have to go back to that letter.

Q  Okay.  Could you please --

A  I'm not -- I'm not writing -- I'm not writing this down so...

Q  That's fine.  You shouldn't.  And you shouldn't.

ATTORNEY CUMMINGS:  Alex, could you go back to Exhibit 2.

THE WITNESS:  Yeah, could you go back to the -- the time on that?  Because I -- I believe -- the reason I'm asking, Desiree, is I believe the -- I'm trying to get the relationship between the Wachtell presentation and my notes.  Because I'm -- even for myself, given it's three years ago, I'm trying to -- I'm -- even for myself I'm trying to sort out that these notes are probably more related to the timing of the Wachtell presentation.

BY ATTORNEY CUMMINGS:

Q  Okay.  But the date of this -- these notes, it's -- it's the same date as the date of the letter, correct?

Page 82

A  That is true.  My dating of my notes is not always -- there's no timestamps.  So those are often dated after the fact, and I try to put them in sequential context.  That's why --

Q  Understood.

A  -- that's why I'm trying to look at, if you -- I'm fairly certain, from having reviewed the document, that these are notes taken in response to the Wachtell presentation.  And if you show me a document that says the Wachtell presentation occurred on 5/26, I would tell you that I misdated these notes.

Q  Understood, Mr. Ilcisin.

Let's just take a look back at the notes because I think the notes refer to a $48 per share.  So that would suggest, right, that they relate to the letter you received or that NI received on that same date?

A  No, it says -- no, it says it relates to -- I believe these notes are in relationship to the Wachtell presentation, so it's more likely that I heard that during the Wachtell presentation.

Q  So are you saying that Wachtell knew about a $48-per-share offer during the time of the

Deposition of Kevin Ilcisin                    In Re National Instruments Corporation Securities Litigation

Page 83

presentation?

ATTORNEY COMERFORD:  Form.

THE WITNESS:  I can't state or recall that one way or the other because I'm not part of the communication chain between NI's counsel, internal, and NI's external counsel.

BY ATTORNEY CUMMINGS:

Q  But fair to say, we did see in Exhibit 2 a letter dated 5/25/2022 with a proposal for $48 per share.

A  You did --

Q  Is that correct?

A  Yes, you showed me that letter.

Q  Okay.  And actually, it's on the screen, right?

ATTORNEY CUMMINGS:  Alex, if you can go to Page 2 of the letter.

THE WITNESS:  Yep.

BY ATTORNEY CUMMINGS:

Q  Under "Valuation"?

A  I see the letter on -- presented in front of me where it says $48.

Q  Perfect.  Thank you.

ATTORNEY CUMMINGS:  Alex, if you can go back to Exhibit 4.

Page 84

BY ATTORNEY CUMMINGS:

Q  So going back to these notes, the first line under "Wolverine" is "Adam Emmerich"; is that correct?

A  That is correct.

Q  And Adam Emmerich is a lawyer with Wachtell.

A  That's correct.

Q  Is that right?

A  Yes.

Q  Okay.  And if we go a few lines down, I think it says, "Two parts."

Do you see that?

A  I do.

Q  Okay.  And underneath "Two parts," it says, -- I believe and you will correct me, I'm sure -- "Since conversation with Lal"; is that correct?

A  Yes.

Q  And then it says, "Did receive a letter..."

A  "...from them."

Q  "...from them"?

A  Yep.

Q  Okay.  Do you read that to be a letter

Page 85

from Emerson?

A  Yes.

Q  And then it says, "Couple of decisions"; is that right?

A  Yes.

Q  Okay.  What's below -- what's the word, if you can discern, below --

A  Yeah.

Q  -- "Couple of decisions"?

A  I can't actually read it.

Q  Okay.  And below that it says, "Board meeting tomorrow"?

A  Correct.

Q  Do you see that?

A  Yeah.

Q  And that's a reference to a May 26, 2022, special meeting of the board of National Instruments?

ATTORNEY COMERFORD:  Foundation.  Form.

THE WITNESS:  That would be my notes that I probably heard a reference to an upcoming board meeting.

BY ATTORNEY CUMMINGS:

Q  Okay.  Thank you.  That's helpful, Mr. Ilcisin.

Page 86

Then you go -- then you go on to say, "As expected, well prepared."

Do you see that?

A  Uh-huh.

Q  Do you know what that's a reference to?

A  No.  Because it's -- like again, these -- these notes I'm using to educate myself, so I can't -- at this point in time, I can't get the context as to who said that.

Q  Okay.

A  So I don't -- that's probably a reference to somebody saying something.

Q  Okay.  And below that it says, "Lal," I think?

A  Yes.

Q  Is that correct?

A  That's correct.

Q  And then there's an arrow?

A  Uh-huh.

Q  I'm going to say it says, talked about the strategy portfolio review; is that right?

A  "Talk about their strategy portfolio review."

Q  And the "their" is Emerson strategy portfolio review?

Page 87

A  Yes.

Q  Then below that it says, "Imminent sale of retail group."

Do you see that?

A  I do.

Q  Do you know what that's a reference to?

A  I believe that is a reference to the publicly known intent of Emerson to sell some of its assets that they refer to as their retail business.

Q  And the line below that I can't read.  I think it says, "Activist..."?

A  "Activist pressure to sell."

Q  "Activist pressure to sell."

And do you know what that's a reference to?

A  Yeah.  The reason they're selling the retail group was activist pressure.  And in subsequent trying to learn more about Emerson competitive intelligence gathering, we became aware of hedge fund activist campaign against the former CEO of Emerson.

Q  Understood.

And two lines down I think it says, "Look at NI"?

Page 88

A  Yes.

Q  Is that right?

A  Correct.

Q  And is that a reference to Emerson looking at National Instruments?

A  Yes.

Q  Okay.  And looking at National Instruments to acquire -- to acquire it?

ATTORNEY COMERFORD:  Form.  Foundation. Calls for speculation.

THE WITNESS:  Yeah, it's not necessarily acquire.  It just is there becoming a pure play automation provider.  They're looking at NI as a player in the space.

BY ATTORNEY CUMMINGS:

Q  Got it.

And below that it says, "Will be sharing an offer with us."

Do you see that?

A  I do.

Q  And is that a reference to a forthcoming offer from Emerson?

ATTORNEY COMERFORD:  Form.  Foundation. Calls for speculation.

THE WITNESS:  That is a reference to me

Page 89

hearing a statement that Emerson may be sending a letter.

BY ATTORNEY CUMMINGS:

Q  Okay.  And right below that is a reference to "all cash," right?

A  Yeah.

Q  And then I'm going to just go to -- I'm going to go down to something that I can't make out.  I think I can make out the other item.

It says -- is that "letter" -- "letter" is that "letter Emerson"?

Two -- two lines below "all cash."

A  Yeah, yeah.  No, I see it.

Yeah.  So -- so the context of it, this is taking notes on what someone in the room was saying.  I didn't mark who that was.  And it's referring to the fact that -- it must be referring to the fact that there was a phone conversation that did not appear hostile and that a letter might be coming.

Q  Right.  And then there's a reference to "$48/share offer," right?

A  Uh-huh, yeah.

Q  Okay.

A  But the most important part of that is --

Page 90

is the reason that sentence is captured is it says it does not confirm timing, and without a confirmation of timing, the offer would not be considered real.

Q  Well, I mean, National Instruments hired advisors, right?

A  You asked me to state --

Q  Let me finish my question.  Let me finish my question, Mr. Ilcisin.

Right?  National Instruments did hire financial and legal advisors, correct?

A  Correct.

Q  In connection with Project Wolverine?

A  Correct.

Q  Okay.  Three lines down, I think it says, "Going to talk to board"; is that right?

A  There is a line that says, "Going to talk to board."

Q  Okay.  And below that does it say, intend to reject the offer?

A  That's not -- that is not intent.

Q  What is that word?

A  It's "indicative."

Q  "Indicative to reject the offer"?

A  Yeah.  It doesn't make sense, but that's

Page 91

what it reads.

Q  Okay.  Going on to the next page of these notes, Page 2 --

A  Uh-huh.  Uh-huh.

Q  -- that ends Bates No. 249, are you there?

A  I am.

Q  The second line below "Wolverine," are you there?

A  I am.

Q  What's the first word?  Is that, fully financials?

A  No, but I'm struggling to read it.

Q  Okay.  Well, the arrow following the -- the leading portion of that line, does that say, "Not representative value of company"?

A  Yes.

Q  Do you know what that's a reference to?

A  That -- no.  I would be speculating myself, because to my point, I was only capturing partial notes.

Q  Okay.  Two lines down, does that say, "Never quite know how they will go"?

A  Yes.

Q  Do you know what that's a reference to?

A  Yes.  It's impossible to speculate on what

Page 92

Emerson's actual intent is.

Q  So that's a reference to Emerson?

A  That is.

Q  Okay.  And then two -- two rows -- two lines below that it says, "Measured pace."

Do you see that?

A  I do.

Q  What is that a reference to?

A  I believe it was a -- what would be -- advice of the advisors for us to respond in a measured pace.

Q  And the respond in a measured pace, that's a response to Emerson's proposal?

A  If a letter was sent, yes.

Q  Okay.  And these notes indicate that someone during this call or at this meeting mentioned a possible letter coming, right?

ATTORNEY COMERFORD:  Form.  Foundation.

THE WITNESS:  My notes on the previous page --

BY ATTORNEY CUMMINGS:

Q  Say, "Will be sharing an offer with us."

A  Correct.

Q  Do you see that?

A  Yeah.

Page 93

Q  And again, in Exhibit 2, we saw a proposal from Emerson dated the same day of these notes; is that right?

A  That is correct.

Q  Okay.  If we go to the next page of these notes, it's the page ending 250.

A  Yes.

Q  Again, same date, right, 5/25, 2022?

A  Correct.

Q  And the notes are titled "Wolverine"?

A  Correct.

Q  Can we go over the first three items.

Does the first -- the No. 1 item say, may believe board/shareholder will support?

A  It says, "May believe board shareholders are supportive."

Q  "Are supportive."

What is that -- what is that -- what is that a reference to?

A  Yeah.  That -- this is speculation on what Emerson may be thinking.

Q  You know, I don't see the word "speculation," but I see the word, may believe board shareholders will support, right?

A  "Are supportive."

Page 94

Q  "Are supportive," right?

A  Yeah, uh-huh.

Q  The next line says, "May believe we feel activist pressure."

Do you see that?

A  Yeah.

Q  Okay.  And you -- you -- I believe you just testified that these points are points about what Emerson may be thinking?

A  I said that these are --

ATTORNEY COMERFORD:  Form.

THE WITNESS:  -- speculations about what Emerson may be thinking.

BY ATTORNEY CUMMINGS:

Q  So meant to reflect what you think Emerson is thinking at this time?

A  It --

ATTORNEY COMERFORD:  Object to the form. It's asked and answered.  Mischaracterizes the prior testimony.

BY ATTORNEY CUMMINGS:

Q  You can answer, Mr. Ilcisin.

A  It's speculation on what Emerson may be thinking, but it's purely speculative.

Q  "Speculation" doesn't appear on this page,

Page 95

right?

A  Correct.

Q  Correct.  The third item says, Know it has time, start early; is that right?

A  No.  It's an incomplete sentence.

Q  What -- what is meant here?

A  It's -- actually says, "Know" that "it takes time."

Q  "Know it takes time, start early"?

A  Yes.

Q  Is that -- is that right?

A  Yep.

Q  Okay.  And that's -- what is that a reference to?

A  That is speculation that Emerson knows that any process of acquiring a public company would take a long time and might -- you know, "time" being multiple years, so if their intent is to acquire the company in the next few years, that they would start early in that process.

Q  Understood.

And then sort of below the lines we were just looking at, one, two, three, the fourth line below the line we were just looking at it says, "Convince them it is a two-year battle"?

Page 96

A  Yes.

Q  Do you see that?

A  I do.

Q  What is that a reference to?

A  I don't recall.  And the reason I say that is reading this three years later, I can speculate today that that refers to multiple things.

Q  All right.

A  And I don't recall which one of those would it be.

Q  Understood.

Do you know who would have participated in this May 25th, 2022, call?

ATTORNEY COMERFORD:  Object to the form.  Mischaracterizes the document.  Assumes facts not in evidence.

THE WITNESS:  So I don't have a record of the call or who participated.

ATTORNEY CUMMINGS:  Can we mark Alex, as Exhibit 5, Tab 4.

(Exhibit No. 5 marked for identification.)

BY ATTORNEY CUMMINGS:

Q  This is a document bearing Bates No. NAT-SL-00016099.

Page 97

Take a few minutes to review this, Mr. Ilcisin.

A  Okay.

Q  Do you recognize this document?

A  I don't recognize the document.  I -- I'm internalizing it now.

Q  Okay.  This appears to be a log of a meeting or call held on May 25th, 2022; is that right?

ATTORNEY COMERFORD:  Object to the form.  Mischaracterizes document.

THE WITNESS:  It -- it looks like a meeting invite.

BY ATTORNEY CUMMINGS:

Q  Okay.

A  With a whole bunch of things that I've never seen before.

Q  Okay.  This document indicates that the meeting took place on May 25th, 2022?

A  That's the appointment schedule, yes.

Q  Okay.  Let's -- let's just maybe cut through some of this, right?  Below the "Attendees" section, do you see that?

A  Yeah.

Q  There's a field that says, "Start Time."

Page 98

A  Yeah.

Q  Do you see that?

And it says this meeting started at 9:44:28 seconds p.m. on May 25th, 2022, right?

A  Yep, correct.

Q  And it says this meeting ended same day, May 25th, 2022, at 11:05 p.m., right?

A  Correct.

Q  And it says that the call lasted about 1 hour and 20 minutes, right?

A  Correct.  That's how I read this document.

Q  Okay.  So it suggests that a call took place, and this is a log of that call; is that right?

ATTORNEY COMERFORD:  Object to the form.  Foundation.  Calls for speculation.

THE WITNESS:  It does -- again, not having seen a document like this before, it looks like a Teams invite, but that has had information added to it in terms of when different people joined and left the meeting.

BY ATTORNEY CUMMINGS:

Q  And you can tell from the information contained in this exhibit that you joined the meeting at 9:57 p.m., and you left the meeting at

Page 99

10:45 p.m.

Do you see that?

A  I do --

ATTORNEY COMERFORD:  Object to the form. It lacks foundation.

THE WITNESS:  So I'm looking.

BY ATTORNEY CUMMINGS:

Q  So towards the bottom of this page --

A  Yeah.

Q  -- there is an entry for May 25th, 2022.

A  Uh-huh.

Q  9:57:26 p.m.

A  Yep, I see it.

Q  It says, Kevin Ilcisin, it says -- excuse me -- joined the call?

A  Yep.

Q  And right below that it says you left the call?

A  Correct.

Q  At 10:45 p.m.?

A  Yes.

Q  Suggesting that you participated in this meeting for about, you know, a little less than an hour?

ATTORNEY COMERFORD:  Form.  Foundation.

Page 100

Calls for speculation.

THE WITNESS:  This, to me, supports the protocols we typically used, which is I was clearly present for part of the meeting to provide information, you know, from my role, and was dismissed from the meeting for discussions that would only include the board or other officers because I was not an officer.

BY ATTORNEY CUMMINGS:

Q  Understood.

And aside from yourself, Mr. Dixon if you go up to the top, joined this call at 9:45 p.m. on May 25th, 2022.

Do you see that?

ATTORNEY COMERFORD:  Form.  Foundation.

THE WITNESS:  I see the line that's being pointed at, yes.

BY ATTORNEY CUMMINGS:

Q  Okay.  And right below that it says Mr. Dixon left the call at 11:05?

A  I believe that's what it says.

ATTORNEY COMERFORD:  Same objections.

BY ATTORNEY CUMMINGS:

Q  Okay.  Great.

And who is Mr. Dixon?

Page 101

A  He is NI's chief legal counsel.

Q  Okay.  He was NI's chief legal counsel at this time?

A  Correct.

Q  And if we go down a little bit.  So I'm looking at the entry for 9:58:26 p.m. for SVNiles?

A  Uh-huh.

Q  Do you see that, Mr. Ilcisin?

It says that Mr. Niles joined this call --

A  Yes.

Q  -- at 9:58 p.m.?

ATTORNEY COMERFORD:  Form.  Foundation.

THE WITNESS:  I do see it.

BY ATTORNEY CUMMINGS:

Q  Okay.  And it also indicates that Mr. Niles left this call at 11:05 p.m.?

A  Yes.

ATTORNEY COMERFORD:  Form.  Foundation.

THE WITNESS:  And towards the bottom of this document, it indicates that Ms. Rapp joined this call on May 25th, 2022, at 9:55 p.m.

Do you see that?

ATTORNEY COMERFORD:  Form.  Foundation.

THE WITNESS: I -- I do see that.

BY ATTORNEY CUMMINGS:

Page 102

Q  And it says she left this call at 10:45 p.m.?

ATTORNEY COMERFORD:  Form.  Foundation.

THE WITNESS:  Correct.

BY ATTORNEY CUMMINGS:

Q  And right below that it indicates that Mr. Starkloff joined the call at 9:55 p.m.?

ATTORNEY COMERFORD:  Form.  Foundation.

THE WITNESS:  Correct.

BY ATTORNEY CUMMINGS:

Q  And he left this call at 11:05 p.m.?

ATTORNEY COMERFORD:  Form.  Foundation.

THE WITNESS:  Correct.

BY ATTORNEY CUMMINGS:

Q  Okay.  And who is Ms. Rapp?

A  Ms. Rapp was NI's chief financial officer.

Q  Is Exhibit 5 -- strike that.

After becoming aware of Emerson's proposal to acquire National Instruments, did you understand that you had material nonpublic information?

ATTORNEY COMERFORD:  Form.  Calls for legal conclusions.

BY ATTORNEY CUMMINGS:

Q  You can answer.

Page 103

A  I would not make that assessment on my own.  That's a legal question.

Q  All right.  My question was:  Did you understand that you had material nonpublic information?

ATTORNEY COMERFORD:  Same objections.

THE WITNESS:  I don't make those assessments.  I wait for guidance from counsel.

BY ATTORNEY CUMMINGS:

Q  So you -- you don't understand -- you don't have a personal understanding of whether or not you had material nonpublic information --

ATTORNEY COMERFORD:  Object --

BY ATTORNEY CUMMINGS:

Q  -- is that right?

ATTORNEY COMERFORD:  Object.  Mischaracterizes prior testimony.  And calls for legal conclusions.  Form.

THE WITNESS:  So I'm repeating my answer that on subjects like this, I would look for guidance from counsel.

BY ATTORNEY CUMMINGS:

Q  Okay.

ATTORNEY CUMMINGS:  Alex, let's mark as Exhibit 6, Tab 7.

Page 104

(Exhibit No. 6 marked for identification.)

BY ATTORNEY CUMMINGS:

Q  Exhibit 6 is a document bearing Bates No. NAT-SL-00023922, and it goes to 923.  It's a May 25th -- 27th, excuse me, 2022, e-mail from Eddie Dixon to yourself and others at NI or on NI's board.

Do you see that?

A  I do.

Q  And the subject of this e-mail is, "Project Wolverine Confidential and Training Restriction Notification.  Please Read."

Do you see that?

A  I do.

Q  And you're a recipient of this e-mail, right?

A  Correct.

Q  And this e-mail is advising you and others of a restriction against trading in National Instruments stock because of material nonpublic information relating to Project Wolverine; is that right?

A  Dated 5/27, 2022, correct.

Q  Okay.  And you are listed at the bottom,

Page 105

right?  If you scroll down to the bottom, there's a list that says "Wolverine Disclosed List."

Do you see that?

A  Yeah, it's probably cutting off on the -- what I -- yeah, okay.  It was cut off.  Yeah.

Q  Yeah.  I want to -- yeah.  So there's a Wolverine disclosed list at the bottom of the page ending 922, right?

A  Correct.

Q  And that carries on to 923, right?

A  Correct.

Q  And you are listed as an individual on this disclosed list, right?

A  This lists me as a person who's been disclosed on Project Wolverine and then subject to the trading restrictions described in the letter, yes.

Q  Right.  And the trading restrictions are in place because of material nonpublic information regarding Project Wolverine; is that right?

ATTORNEY COMERFORD:  Object to the form.  Calls for legal conclusions.

BY ATTORNEY CUMMINGS:

Q  You received this document, Mr. Ilcisin, right?

Page 106

A  I did.

Q  And the first line of this e-mail says, "Due to the existence of National Instruments Corporation ('NATI' or 'NI'), material nonpublic information of which you have become aware during the course of your work on Project Wolverine, you should not trade in NI common stock until you receive a notification from me specifically stating is that the Project Wolverine trading restriction has been lifted."

Do you see that?

A  I do.

Q  Okay.

ATTORNEY CUMMINGS:  Alex, could you pull up exhibit -- as Exhibit 7, Tab 9.

(Exhibit No. 7 marked for identification.)

BY ATTORNEY CUMMINGS:

Q  Mr. Ilcisin, Exhibit 7 is a metadata slip sheet and handwritten notes dated June 2nd, 2022, bearing Bates No. NAT-SL-00019760 to 761.

Just take a few minutes to familiarize yourself with the document, please, and let me know when you've done so.

A  Okay.

Deposition of Kevin Ilcisin                                   In Re National Instruments Corporation Securities Litigation

Page 107

Q  Are these your handwritten notes?

A  They are.

Q  And we touched upon this a little bit earlier in our conversation, but I made a reference to initials being in the margins of some of your handwritten notes?

A  Yes.

Q  Okay.  And in this note in particular, there are initials along the left margin; is that right?

A  Correct.

Q  What's the initials here?

A  AI, for action item.

Q  Got it.

I was really struggling whether it was a person, whether it was something else.  But that's very helpful.  Let's start from the top.

These are -- these are June 2nd, 2022, notes, right?

A  Correct.

Q  And they relate to Wolverine?

A  Correct.

Q  Okay.  And right below the title "Wolverine," it says, "Phil Youn"; is that right?

A  That is correct.

Page 108

Q  And Mr. Youn is associated with Bank of America?

A  Correct.

Q  And below that it says, "sensitivity analysis."

Do you see that?

A  I do.

Q  And right below that it says, "We will have to talk through normal POR."

Does POR stand for plan of record?

A  Yes, it does.

Q  What does this line refer to?

A  Which line?

Q  The line that says, "Normal POR."

A  It's -- it's part of all one sentence. "We will have --"

Q  Okay.

A  "We will have to talk through the normal POR."

Q  Okay.  What is that a reference to?

A  That's a reference to if you're going to do a sensitivity analysis around the discounted cash flow, that it's going to be based on -- the starting point would be the normalized POR.  It's a financial calculation.

Page 109

Q  Okay.  And if we go a little ways down, I think there's a -- I'll use the word "heading" or -- or "subject line."

A  Uh-huh.

Q  It says, "Firepower."

Do you see that?

A  Yes.

Q  Okay.  And below that it says, "E is evaluating, 'in the process.'" And in the process is in quotes.  And then it says, "Firepower analysis," arrow, "What would be --" "What would that implicate be" or "implications be"?

Do you see that?

A  Yeah.  So --

Q  Did I read -- go ahead, Mr. Ilcisin.

A  So that whole sentence --

Q  Yeah.

A  -- refers to myself learning that an investment banker will do a firepower analysis any time they're engaged in something like BofA was engaged for.  And that's -- go ahead.

Q  Go ahead.  Sorry.

A  So in the process means this is part of their process.  So they're educating me on what they will do.

Page 110

Q  Okay.  And the E and "is evaluating," what's that a reference to?

A  I don't recall.

Q  Okay.  If we go down towards the bottom of the page, it says, strategies for consideration; is that right?

A  No.  It says "Strategics."

Q  "Strategics for consideration."

And underneath that heading, there are three entries.

Do you see that?

A  Uh-huh.

Q  And the first is "Acquisition"?

A  Yeah.

Q  Is that right?

And the second is "Strategic accelerators"?

A  Correct.

Q  And the third is "Board will be interested in scenarios"?

A  Correct.

Q  What's the second item a reference to, "Strategic accelerators"?

A  So it's a -- it's technical speak in the banking industry for when a acquisition will

Page 111

accelerate a company's strategy.

Q  Okay.  That's helpful.

And if we go to the third page in the PDF but the page ending 761, so it's the next page in these notes.

A  Uh-huh.

Q  I just have a few questions towards the bottom of this page.

A  Uh-huh, yeah.

Q  There's an entry that starts with, "This is not..."

Do you see that?

A  Yeah.

Q  And it says, "This is not something they (E) did casually."

Do you see that?

A  Yeah.

Q  And is the E in that line a reference to Emerson?

A  Yes.

Q  Okay.  And then below that it says -- is that, "Because --" well, tell me what the next line says.

A  It says, "Be polite, clear, passive aggressive."

Page 112

Q  Got it.

And that's -- what's that -- what's that a reference to?

A  That is the investment banker's encouragement to me in my role any time I might have to communicate with anybody on the other side.

Q  So communicate externally with a potential acquirer?

A  Correct.

Q  Okay.  And then there are a few entries below the line we were just looking at.  There's a reference to -- I think it says, "Hostile bids are up this year"; is that right?

A  Correct.

Q  Okay.  And then the next line says, "Most likely they will come back once," right?

A  Correct.

Q  And then below that it says, "Don't put ourselves in 'clear and present danger.'"

A  Yeah.

Q  Did I get that right?

A  Correct.

ATTORNEY CUMMINGS:  Can we take a five-minute break?

Page 113

ATTORNEY COMERFORD:  Sure.

ATTORNEY CUMMINGS:  Is it okay with you, Mr. Ilcisin?

THE WITNESS:  Sure.

THE VIDEOGRAPHER:  We're going off the record at 11:00 a.m.

(Recess 11:00-11:10.)

THE VIDEOGRAPHER:  We're going back on the record at 11:10 a.m.

ATTORNEY CUMMINGS:  Alex, can you mark as Exhibit 8 -- are we up to 8, Alex?

EXHIBIT TECHNICIAN:  That's right.

ATTORNEY CUMMINGS:  Exhibit 8, Tab 11.

(Exhibit No. 8 marked
for identification.)

EXAMINATION (Continuing)
BY ATTORNEY CUMMINGS:

Q  This is a document dated June 12th, 2022.  It's bearing Bates Nos. WLRK00000913, and it goes through until 976.  The e-mail attaches several documents, so I'm going to -- again, Mr. Ilcisin, take as much time as you need.  I'm going to focus my questions on the third attachment.  It's on the page ending 923.

Page 114

MS. CUMMINGS:  And that's Page 11, Alex, of the PDF.

THE WITNESS:  Okay.

ATTORNEY CUMMINGS:  Alex, can we start --
BY ATTORNEY CUMMINGS:

Q  Sorry, Mr. Ilcisin.  That's you.

Please scroll through that attachment.

A  Yeah.  So this is the BofA -- just to confirm, this is the BofA attachment?

Q  Correct.

A  Okay.

Q  We can -- we can -- if you want to go to the -- Page 1 of the e-mail.  You see an attachment line, right, Mr. Ilcisin?

A  Yeah, I'm just looking.  Sorry.

Q  No, take your time.

A  Yeah.

Q  And the first attachment is a 6/14, 2022 board agenda?

A  Yeah.

Q  And then a second attachment is agenda Item 1, financial plan of record June 2022.

Do you see that?

A  I do.

Q  And the third attachment is "Agenda

Page 115

Item 2_Project Wolverine - Board Deck."

Do you see that?

A  I do.

Q  And then there's an "Agenda Item 3_Wolverine - 6.14 Board Deck."

Do you see that?

A  I do.

Q  And subject line of this e-mail is, "FINAL Docs Sent to Board by Eddie..."

A  Correct.

Q  "... RE 6-14-2022 Meeting?"

Do you see that?

A  I do.

ATTORNEY CUMMINGS:  Now, if we can go to Page 11 of the PDF.

BY ATTORNEY CUMMINGS:

Q  Page 11, which starts on the page ending 923, right?

A  Yeah.

Q  It's a BofA presentation titled, "Project Wolverine Discussion Materials, June 2022"?

A  Correct.

Q  And have you had a chance to look at this particular attachment, Mr. Ilcisin?

A  I did -- I did scan it, yes.

Page 116

Q  Okay.  This is a PowerPoint presentation from Bank of America prepared in connection with Project Wolverine, right?

A  Correct.

ATTORNEY CUMMINGS:  And I'm going to just go to Page 938, so that would be page 26 of the PDF.

BY ATTORNEY CUMMINGS:

Q  Are you there, Mr. Ilcisin?

A  I am, yeah.

Q  Now, that -- that slide is titled, ███████████████████████."

Do you see that?

A  I do.

Q  And this is BofA's analysis of Emerson's capacity to engage in M&A; is that right?

A  That is correct.

Q  And BofA indicates that, "████████ ████████████████"

Do you see that?

A  I do.

Q  And the next page of this slide presentation is a continuation of BofA's analysis of Emerson's financial capacity, right?

A  Correct.

Page 117

Q  And this page considers Emerson's capacity to engage in M&A in the context of a divestment of an InSinkErator asset?

A  Correct.

Q  We can put that to the side for now, Mr. Ilcisin.

ATTORNEY CUMMINGS:  Alex, can we mark as Exhibit 9, Tab 12.

(Exhibit No. 9 marked for identification.)

BY ATTORNEY CUMMINGS:

Q  This is a document bearing Bates No. NAN-SL-00001447, and it goes to 1448.

Do you have that in front of you, Mr. Ilcisin?

A  I do.

Q  Do you recognize this document?

A  I do.

Q  What is this document?

A  It says it is, "Minutes of a Special Meeting of the Board of Directors, June 14th, 2022."

Q  And you attended this meeting, right?

A  I attended part of the meeting.

Q  But you did attend part of the meeting,

Page 118

right?

A  I did attend part of a meeting.

Q  Okay.  And during this meeting, Wachtell presented; is that correct?

A  Yes, that's what it says.

Q  Okay.  And BofA also presented at this meeting, right?

A  That's what it says.

Q  Okay.  And the minutes indicate that Wachtell presented on National Instruments -- National Instruments's board fiduciary duties in the context of Project Wolverine; is that right?

A  Correct.

Q  And it also indicates that BofA presented its valuation analyses; is that correct?

A  That is correct.

Q  Do you recall that the board determined at this meeting to decline Emerson's proposal?

A  I do not recall.  I was typically excused from any discussion like that because that's board-only executives.

Q  Did you become aware of National Instruments's decision to decline Emerson's May 25th, 2022, proposal?

A  Yes, that was communicated to me.

Deposition of Kevin Ilcisin                    In Re National Instruments Corporation Securities Litigation

Page 119

Q  Who communicated that to you?

A  I don't recall.  It was probably verbal, and it was probably Eric or Eddie.

Q  Okay.  And I think you covered this, the -- these are meeting minutes from a meeting held on June 14, 2022?

A  Correct.

Q  Right?

A  (Witness nods head up and down.)

Q  On this same date, June 14th, 2022, do -- do you recall you and Karen wagering a bet on Emerson's acquisition of National Instruments?

A  I don't recall, but I see in the binders that there is a copy of Karen and I chatting, which has reminded me of that.

Q  Okay.  So you skipped ahead, Mr. Ilcisin.

A  Of course I did.

ATTORNEY CUMMINGS:  Alex, can we mark as Exhibit 10, I believe we're up to, Tab 13.

(Exhibit No. 10 marked for identification.)

BY ATTORNEY CUMMINGS:

Q  I'll just -- while Alex is doing that, Tab -- Exhibit 10 is a metadata slip sheet along with handwritten notes dated June 14, 2022?

Page 120

A  Yeah.

Q  Bearing Bates No. 8520 to 8521.

A  Yeah.

Q  Do you have that in front of you?

A  I do.

Q  Mr. Ilcisin?

A  I do, indeed.

Q  Okay.  Can we take a look at the second page of the PDF?

A  Yeah.

Q  Do you have that in front of you?

A  I do.

Q  Is the writing on this page your writing?

A  It is.

Q  Your handwriting, yes?

A  Yes.

Q  And what about the handwriting on the page ending 521, the next page?

A  I believe that would have been Karen's.

Q  Now, let's go back to -- to your handwritten notes for a moment.

A  Yes.

Q  Okay.  Okay.  So at the top we have, "Winner choose wine, loser buys," right?

A  Correct.

Page 121

Q  Okay.  Other than a loser choosing -- other than a loser buying the wine, were there any other conditions of this wager?

A  I don't recall.

Q  Okay.  And right below it, I was just reading, is the date of the notes and a reference to Project Wolverine, right?

A  Correct.

Q  Okay.  And below that you indicate, "Today Rejection Notice."

Do you see that?

A  I do.

Q  Is that a reference to NI sending Emerson a letter declining its offer?

A  No, it's --

Q  What is that a reference to?

A  This -- these two pages are all speculation about what the board might do.

Q  Okay.  And -- and the thought here -- or what's being conveyed here -- is that on this date, June 14th, 2022, the board would send a letter to Emerson declining its offer?

ATTORNEY COMERFORD:  Form.

THE WITNESS:  It's speculation on what might happen to set the premise for the bet.

Page 122

BY ATTORNEY CUMMINGS:

Q  Okay.  But that the -- the thinking there was that on this day, right, "Today," that would have been June 14th, 2022, right?

A  The premise for this note was assume that today the board chooses to send a rejection notice to Emerson.  It's not a statement of fact.

Q  Okay.  So just a date that the board may decide to send the letter?

A  Yes.

Q  Correct?

A  Right.

Q  Okay.  Then you -- the next line goes on to say, "Late June"; is that correct?

A  That is correct.

Q  And I'm going to read this, and you tell me if I got anything wrong, right?  It says, letter -- "(letter)"?

A  Yeah.

Q  With "small increase $51"?

A  Yeah.

Q  Right?

A  Yeah.

Q  And it says, announce -- "Announce before or with earnings."

Page 123

Do you see that?

A  I do.

Q  What's that a reference to?

A  That's a reference to a belief that if Emerson was actually serious about acquiring NI, that they would come back with a letter that had an increase in price, and that they would probably do this and go public, either announcing before or with their earnings call.

Q  Understood.

And then there's a reference to "Wait to earnings call"?

A  Yes.

Q  And then there are some items below that. You see that?

A  Yeah.

Q  And those items below, "Wait for earnings call," are your predictions regarding what would happen if Emerson waited to make another offer or proposal?

A  No.  That just --

Q  No?  What is it?

A  Like that's just saying, yeah, we're going to wait for the earnings call.  This will get interesting.

Page 124

Q  The earnings call, you mean -- which earnings call are you referring to?

A  There's both.  There's an NI earnings call, and there's an Emerson earnings call.  And they're relatively on the same time scale, so this would have -- this was a generic comment about we will be waiting for everybody's earnings calls.

This is -- this is all speculation, and so the speculation would include announce before our earnings call, after our earnings call, before their earnings call, after their earnings call. It's just scenario speculation.

Q  At this time, June 14th, 2022 --

A  Uh-huh.

Q  -- you were aware of Emerson's proposal dated -- right?  Were you aware of Emerson's proposal at this time?

ATTORNEY COMERFORD:  Objection. Lack of time frame.  Vague.

BY ATTORNEY CUMMINGS:

Q  In -- in June?

A  In June?

Q  In June 2022, were you aware of Emerson's proposal to acquire National Instruments for $48?

A  In June I was aware that Emerson had sent

Page 125

Eric a letter that had triggered a set of activities that included engaging with Wachtell and BofA.

Q  And we saw that letter, right, as Exhibit 2 earlier today?

A  Yeah.

Q  Okay.  And at this time, June 14, 2022, you had extensive M&A experience, right?

ATTORNEY COMERFORD:  Form.

THE WITNESS:  I'm not understanding the question.

BY ATTORNEY CUMMINGS:

Q  Did you have M&A experience at this time?

A  My role was mergers and acquisition for NI.

Q  So is that a yes, you had M&A experience?

A  Yes, I have M&A experience.

Q  Okay.  Then there's a reference next to "early August," "$51 is a great premium if we miss."

Do you see that?

A  Yeah.

Q  Is that a reference to National Instruments missing its earnings?

A  Yes.

Page 126

Q  Okay.  And then there's a reference to "$55 and threat of public."

Do you see that?

A  Yeah.

Q  And that's a reference to Emerson offering $55 and threatening to go public with its offer?

A  That's more actually doing it.  That's like internalizing the threat of reacting to a public announcement.

Q  A public announcement of a proposal for $55?

A  Yes.

Q  Okay.  And then it says "Reject."

Do you see that?

A  Yeah.

Q  And that's a reference to National Instruments rejecting any proposal -- or a proposal at $55 per share?

ATTORNEY COMERFORD:  Form.

THE WITNESS:  No.  That is a reference to Karen and I talking about what happens if we were to reject at that point in time.

BY ATTORNEY CUMMINGS:

Q  That point in time, you're talking about early August?

Page 127

ATTORNEY COMERFORD: Form.

THE WITNESS: After the earnings calls.

BY ATTORNEY CUMMINGS:

Q After earnings calls.

And the items listed above, "Reject, early August," right?

A Yeah.

Q To the right of that, those are items being discussed in the context of once the earnings calls have happened; is that correct?

ATTORNEY COMERFORD: Object to the form. It mischaracterizes the document. It assumes facts not in evidence.

THE WITNESS: These are comments between Karen and myself speculating on various scenarios that might happen.

BY ATTORNEY CUMMINGS:

Q Okay. And the scenario that the early August entry relates to is after earnings, right?

A Correct.

Q Okay. Thank you.

Then there's a reference to "Late August."

Do you see that?

A Yeah.

Q And then next to that it says, "Public

Page 128

letter --" I think it says "-- based on Q3 earnings consensus"?

A Yeah.

Q Is that right?

A Correct.

Q And is that a reference to a letter with a proposal based on NI's third quarter earnings consensus results or consensus results?

A That is --

Q Go ahead. Sorry.

A That is speculation that if there was a future letter, it would tie the premiums to Q3 consensus in the way that the earlier letter referenced premiums to past consensus.

Q And that letter referenced a premium to National Instruments closing stock price the day before the letter?

A No.

Q Is that right?

A This is -- no, it's for the -- we didn't go through it, but in the BofA materials, there is various summaries that's called a football field of various ways that the street is looking at prices.

Q Uh-huh. Okay. My --

Page 129

A And so it's all referencing that.

Q Okay. My reference was to the May 25th, 2022, Emerson letter that said the $48 per share proposal was 39 percent premium to National Instruments closing price as of May 24th, 2022.

Do you remember us looking at that?

A I do.

Q Okay. And you conclude with the final price of $61, right?

A I speculate a final price of $61.

Q Your prediction was $61; is that correct?

A Correct.

Q Okay. And the deal closed at $60 per share?

A It did.

Q Oh, pretty good, huh?

A Lucky.

Q Got it. Yeah, right.

And it looks like both you and Ms. Rapp were pretty close in terms of where you thought this -- you know, this deal would end, right? She ends with a $58.50, right?

A Correct.

Q Did you receive -- or did you supply the wine?

Page 130

A No. We never closed the bet.

Q Looking at Ms. Rapp's note on the page ending 521 --

A Uh-huh.

Q -- there's a reference to, "All top shareholders sign up."

Do you see that?

A I do.

ATTORNEY CUMMINGS: The next page, Alex.

BY ATTORNEY CUMMINGS:

Q What is that a reference to?

ATTORNEY COMERFORD: Objection. Form. Foundation. Calls for speculation.

THE WITNESS: So that's a reference to the deal would only happen if the top shareholders agreed to sign up to it and support it in a hostile bid.

BY ATTORNEY CUMMINGS:

Q The top shareholders of National Instruments, right?

A Correct, yeah.

ATTORNEY CUMMINGS: Alex, can we mark as Exhibit 11, Tab 14.

(Exhibit No. 11 marked for identification.)

Deposition of Kevin Ilcisin · · · · · · · · · · In Re National Instruments Corporation Securities Litigation

Page 131

BY ATTORNEY CUMMINGS:

Q Exhibit 11 is a metadata slip sheet along with handwritten notes dated June 20th and June 21st, 2022, and the document bears Bates No. NAT-SL-00019642 to 644.

Do you have that in front of you, Mr. Ilcisin?

A I do.

Q These are your handwritten notes, right?

A Correct.

Q Okay. And can we take a look at the page ending 642? It's the second page of the PDF.

A Yeah.

Q Or second page of your --

A Yeah, I have it.

Q Okay. These are notes relating to Wolverine; is that correct?

A That is correct.

Q And again, the date is June 20th, 2022, right?

A Yeah.

Q And if we go down a few lines below the redacted box, do you see that?

A Uh-huh.

Q This is a "BofA," I believe, in the

Page 132

margins?

A Uh-huh.

Q Do you see that?

A I do.

Q And then right next to that is "flagging" by BofA?

A Uh-huh.

Q Are the items below what I just read items that BofA was flagging for you and -- and/or others at NI?

ATTORNEY COMERFORD: Form.

THE WITNESS: Let me read the comments.

BY ATTORNEY CUMMINGS:

Q Sure.

A So the BofA is referencing the flag by BofA on the information on their assessment that there's an information asymmetry in the public markets versus the internal files that we had.

Q What did BofA say on that topic, if you can recall?

A They are guiding us that because NI has not been proactive in speaking to the markets and focused on customers, that there's an information asymmetry.

Q And what's the nature of the information

Page 133

asymmetry?

A That NI is performing better than the analysts and various other Wall Street pundits understand.

Q Then some ways down there's -- there's a reference or line that says, "- full PR plan."

A Yeah.

Q Do you see that?

A I do.

Q Okay. And then towards the bottom of this page under "Draft press release," do you see that?

A Yeah.

Q What does that say, the next line?

A "Additional two paragraphs on the strengths."

Q Okay. And below that?

A "Need a note to employers --" "-- employees and a note to customers."

Q What's that a reference to?

A That if we're going to do a press release, we have to think about the messaging to our internal employees and we have to think about the messaging to our customers that might read said press release.

Q Understood.

Page 134

And if we go to the next page ending 643, it's the third page --

A Yeah.

Q -- in your binder.

Again, this is Page 2 of your notes dated June 20th, 2022, heading "Wolverine," and it talks about stock surveillance, right?

A Yeah.

Q And we talked a little bit about that earlier, right?

A Correct.

Q And it says -- below "stock surveillance," "NASDAQ," arrow, "may not be sufficient."

Do you see that?

A I do.

Q And then below that, does that say "derivatives"?

A Yes.

Q What is that a -- what is that a reference to?

A That there are derivative sales that NASDAQ can't capture.

Q Got it.

And then it says, "Need to supplement"; is that right?

Deposition of Kevin Ilcisin                In Re National Instruments Corporation Securities Litigation

Page 135

A  Correct.

Q  And does -- the, "Need to supplement" and "Surveillance," is that one line?

A  The, "Need to supplement" is a suggestion of what to do, and "Surveillance" was a one-word reference to what you would ask someone to do on your behalf.

Q  Understood.  Understood.

A  No -- no one had been through this before. So as I said, many of these calls were educating us on what are appropriate actions.

Q  Understood.  Understood.

ATTORNEY CUMMINGS:  I'm going to mark as Exhibit 12, Tab 15, Alex.

(Exhibit No. 12 marked for identification.)

BY ATTORNEY CUMMINGS:

Q  Mr. Ilcisin, this is a document bearing Bates numbers NAT-SL-00010410, and it goes through to 413.

Do you see that?

A  I do.

Q  And this is a June 22nd, 2022, e-mail attaching a June 22nd, 2022, letter from Mr. Karsanbhai?

Page 136

A  Correct.

Q  Right?

ATTORNEY CUMMINGS:  Alex, if you could go to Page 2 of the PDF.

BY ATTORNEY CUMMINGS:

Q  Mr. Karsanbhai's June 22nd, 2022, letter is addressed to Mr. Starkloff and Mr. McGrath; is that right?

A  That is what the page says.

Q  And Mr. McGrath was the chairman of the board of National Instruments?

A  Yes.

Q  Okay.  And if we go to the third paragraph on the first page of the letter -- are you with me?

It says -- it starts with, "Our proposal"?

A  Yes.

Q  And here National Instruments is proposing to acquire -- excuse me.  Strike that.

Here, Emerson is proposing to acquire National Instruments for $48 per share in cash, right?

A  Correct.  That's what the sentence says.

Q  And Mr. Karsanbhai's letter on behalf of Emerson indicates that the $48-per-share cash

Page 137

proposal represents a 51 percent premium to NI's closing price as of June 21st, 2022.

Do you see that?

A  I do.

Q  Okay.

ATTORNEY CUMMINGS:  If we go to the next page ending 412, so Page 3, Alex.

Alex, can you zoom out of this page, please.  Great.  Thank you.

BY ATTORNEY CUMMINGS:

Q  The second full paragraph, Mr. Ilcisin.

A  Uh-huh.

Q  It says -- are you there?  It says, "We prefer"?

A  Yeah.

Q  So in this letter Mr. Karsanbhai states, quote, "We prefer to engage collaboratively, bilateral discussions with minimal distraction to your management team to reach an agreement privately."

Do you see that?

A  I do.

Q  Okay.  Then he goes on to say, "Your letter referenced 'significant and steady'" increase -- "'increases in bookings and revenue'

Page 138

as well as 'strengthened operational performance and advances in technology.'"

Do you see that?

A  I do.

Q  And I read that correctly?

A  Yes.

Q  It goes on to say, "We look forward to learning more about your internal plan and are confident that with access to limited nonpublic information after signing an NDA, we could work with you to find additional value that would allow us to increase our proposal."

Do you see that?

A  I do.

Q  Emerson is indicating that it was willing to increase its proposal in this letter?

ATTORNEY COMERFORD:  Object to form.

BY ATTORNEY CUMMINGS:

Q  Is that right?

A  No.

Q  It's not?  Do you see the words, "allow us to increase our proposal"?

ATTORNEY COMERFORD:  Form.

THE WITNESS:  Yeah, that's not the way I read the letter.

Page 139

BY ATTORNEY CUMMINGS:

Q  But are those words in this letter?

ATTORNEY COMERFORD:  Form. Mischaracterizes the document.

You can answer.

THE WITNESS:  I see those words on the document that's shown to me.

BY ATTORNEY CUMMINGS:

Q  Okay.  Great.

And I believe you testified earlier that the transaction with -- between Emerson and National Instruments closed at $60 per share, right?

A  I did.

Q  Okay.  Mr. Karsanbhai goes on to discuss "Diligence."

Do you see that?

A  Yes.

Q  And he indicates that Emerson has performed extensive diligence; is that right?

A  No.

ATTORNEY COMERFORD:  Object to -- yeah, mischaracterizes the document.

Go ahead.

BY ATTORNEY CUMMINGS:

Page 140

Q  So --

A  That is not -- that's not what it says.

Q  Okay.  So let me just read it. "Diligence" is a section in this letter, correct?

A  There is a bullet item labeled "Diligence."

Q  There's a bullet item labeled "Diligence," right?

A  Correct.

Q  And that bullet item labeled "Diligence" reads as follows, "We have performed extensive outside and due diligence on NI over an extended period."

Do you see that?

A  I do.

Q  And the letter goes on to talk about "Timing."

Do you see that?  Do you see a bullet titled, "Timing"?

ATTORNEY COMERFORD:  I'm just going to object that the -- the purported reading of the "Diligence" bullet is incomplete.

BY ATTORNEY CUMMINGS:

Q  Mr. Ilcisin, are you with me?

A  I am following what you're stating.

Page 141

Q  Okay.  So there's a bullet titled, "Timing," right?

A  That is a true representation of what's on the piece of paper.

Q  And Mr. Karsanbhai says, that again, he's willing to -- and I'm paraphrasing, willing to work towards the signing of a deal and an announcement of a merger agreement within four weeks; is that right?

A  That is your paraphrasing, yes.

Q  Okay.  Happy to read it.  "Timing," right? "We are ready to begin our confirmatory due diligence exercise and we would work towards signing and announcing a definitive agreement within four" to six "weeks."

Do you see that?

A  It only says "four weeks."

Q  Four weeks.

Do you see that?

A  I see it on the page, yes.

Q  And that's a shorter time frame than what Mr. Karsanbhai had previously indicated; is that right?

ATTORNEY COMERFORD:  Form. Foundation.

THE WITNESS:  It says -- that -- these are

Page 142

assumptive statements.  It's not -- there's no comparison here.

BY ATTORNEY CUMMINGS:

Q  Okay.  So can we pull up --

A  There's no statement -- there's no statement about a reduction from a previous.

Q  Okay.  Okay.  Fine.

ATTORNEY CUMMINGS:  Alex, can you put side by side the May 25th, 2022, letter and this letter so Page 2 of the May 25th, 2022, letter and this Page 2.

EXHIBIT TECHNICIAN:  Is that from Exhibit 2?

ATTORNEY CUMMINGS:  Sorry.  That's Exhibit 2.  Thank you.

EXHIBIT TECHNICIAN:  Sure.  Give me a moment.

ATTORNEY CUMMINGS:  Will you blow that up a little bit, if possible, Alex.

BY ATTORNEY CUMMINGS:

Q  Do you have two letters in front of you, Mr. Ilcisin?

A  I do.

Q  And on the left is the letter we looked at earlier today it's the May 25th, 2022, letter?

Page 143

A  Correct.

Q  Right?  And then on the right is the letter we were just looking at as Exhibit 11?

A  Yes.

Q  Okay.  And both have a section -- whether it's a section or a bullet -- titled "Timing," right?

A  Correct.

Q  And the May 25th, 2022, letter indicates a proposed timing of four to six weeks.

Do you see that?

ATTORNEY COMERFORD:  Form.

THE WITNESS:  I see a stated goal.

BY ATTORNEY CUMMINGS:

Q  Do you see it says, let me just read it, "It is our expectation that the signing of the definitive agreement and an announcement can be achieved in four to six weeks."

Do you see that?

A  It is not -- I see it, but I read it as a goal and not a commitment.

Q  Okay.  But that's what this letter says, right?

A  That is the words on the page.

Q  Thank you.  Thank you.

Page 144

And then the letter we were just looking at, right, says in the same section, "We are ready to begin our confirmatory due diligence exercise and we would work towards signing and announcing a definitive agreement within four weeks."

Do you see that?

ATTORNEY COMERFORD:  Form.

THE WITNESS:  I see that.

BY ATTORNEY CUMMINGS:

Q  Okay.  So this second letter that we're looking at, the June 22nd, 2022, letter, right, with respect to timing is indicating a shorter time frame?

A  No.

Q  Okay.  So four weeks is not shorter than four to six weeks?

A  The difference in the choice of words, "we would work towards" and the "it is our expectation" means that someone that's practiced in the art can't take away a guarantee from either of those sentences.

Q  But four weeks is -- is shorter than four to six weeks; is that right, all else equal?

ATTORNEY COMERFORD:  Form.

THE WITNESS:  Not in the context of these

Page 145

documents.  I agree that a measure of four weeks is shorter than a measure of four to six weeks.

BY ATTORNEY CUMMINGS:

Q  Okay.  Thank you.

ATTORNEY CUMMINGS:  Alex, you can remove the side by side and just display Exhibit 12.

BY ATTORNEY CUMMINGS:

Q  Okay.  Mr. Ilcisin, two bullets below timing, there's a bullet called "Financing," right?

A  Correct.

Q  And in this bullet -- and I'm paraphrasing, Emerson is indicating that its proposal is not subject to any financial conditions, right?

A  Correct.

Q  And in this letter there's a bullet titled "Advisors," right?

A  Yes.

Q  Do you see that?

A  I do.

Q  And Emerson is identifying its financial -- financial and legal advisors here?

A  Correct.

Q  Right?

Page 146

So it's advising National Instruments that it has engaged Goldman Sachs, right?

A  Yeah.

Q  And it's engaged Centerview, right?

A  Correct.

Q  As their financial advisor, right?

A  Correct.

Q  And National Instruments has also engaged Davis Polk as its legal advisor, right?

A  Emerson, but...

Q  Sorry.  Emerson, yeah.  Emerson has engaged Davis Polk as its legal advisor?

A  Correct.

Q  Thank you for that correction.

And again, Mr. Karsanbhai indicates that the board of -- excuse me.  Strike that.

And again, Mr. Karsanbhai indicates that the board of Emerson has reviewed and supports the proposed transaction with National Instruments; is that right?

A  You need to read the complete sentence.  It says, "Emerson shareholder approval will not be required."  And what that means is that until they have the definitive agreement, there isn't a conclusive offer on the table.

Page 147

Q But the first sentence says, am I right, that, "Our board of directors has reviewed and supports the proposed transaction"?

A Those are the words on the page, but what it does not say is that it has approved a definitive agreement.

Q And I didn't say that. It says, "Our board has reviewed and supports the proposed transaction," right?

A That is -- that is a correct reading of the words. Thank you.

Q Thank you. Thank you. I appreciate it. If we go on to the next page, the page ending 413, right?

A Yeah.

Q Are you there?

A I am.

Q Emerson indicates at the start of the paragraph on this page that its proposal is its highest strategic priority, right?

A Uh-huh.

Q Okay. And it again describes it's motivated to conclude a transaction with National Instruments; is that right, in the next sentence?

A That is correct.

Page 148

Q And Emerson asks for confirmation that NI received this letter?

A Yes.

Q Is that right?

A That is correct.

Q And they ask that a response be provided by July 11th, the week of July 11th. Do you see that?

A I do.

Q Okay. And Emerson is saying that it's asking for a response by the week of July 11th because there's a holiday, right, coming up?

ATTORNEY COMERFORD: Form.

BY ATTORNEY CUMMINGS:

Q Is that right?

A Yes.

Q Thank you.

ATTORNEY CUMMINGS: Can we mark Tab 19 as Exhibit 13.

(Exhibit No. 13 marked for identification.)

ATTORNEY CUMMINGS: Exhibit 13 is a metadata slip sheet along with handwritten notes dated June 22nd, 2022, Bates No. NAT-SL-00019636, and it goes to 641.

Page 149

BY ATTORNEY CUMMINGS:

Q Do you have that in front of you, Mr. Ilcisin?

A I do.

Q Okay. Take a few minutes to review these notes.

A Just checking, there -- there are two separate sets of notes under this tab. Was that intentional or --

Q So these notes were produced in this way, so we received it as one document.

A Okay.

Q Do you follow me?

A Yeah.

Q I see, obviously, in the notes there are multiple dates, right --

A Yeah.

Q -- in the notes going from June 22nd through June 27th, right?

A Okay. Just checking.

Q But -- but this is produced as a single document.

A Yeah. Okay. Understood. Okay. I've had the chance to scan it.

Q So these are -- are they your handwritten

Page 150

notes?

A They are handwritten notes of mine.

Q Okay. And the handwritten notes are dated between June 22nd, 2022, and June 27th, 2022, right?

A Correct.

Q And if we take a look at the first set of notes on the page ending 636.

A Uh-huh.

Q Are these notes of a call or meeting with Bank of America and FSG?

A Correct.

Q Okay. Who was FSG?

A I don't remember their formal name. They are a communication -- they're -- they're a communication firm that NI engaged with. I'd have to look it up.

Q And I just really have one question at the bottom of this page, towards the bottom.

A Uh-huh.

Q It's the second sort of entry that begins with "Eric's..." Do you see that?

A Yeah.

Q It says, "Eric's external slides have not

Page 151

convinced the street"; is that correct?

A  That's correct.

Q  What's that a reference to?

A  That's a reference to a discussion about why the analyst price is -- on the football field by BofA are less than the internal DCF calculations.

Q  Understood.

And if we go to the next page, so these are notes from a June 23rd, 2022, Wolverine working group?

A  Yeah.

Q  A follow up on a meeting?  Yes?

A  Yes.

Q  And am I right that these notes are discussing Emerson's June 22nd, 2022, letter we were just looking at?

A  Yes.

Q  And I'm going to go one two -- four lines down.  Does that say, practically gave us three weeks?

A  Yes.

Q  Okay.

A  "Proactively gave us three weeks."

Q  "Proactively gave us three weeks."  Got

Page 152

it.

And then if we scroll down a little -- or go down a little further, does that say, "Conveyed threat"?

A  Yes.

Q  I don't know what the next line reads, but I'll try my best.  "If we think shareholders are getting an issue"?

A  Yeah, I can't -- that is what it reads, but I can't tell you what it means.

Q  Okay.  Okay.  I understand.

And then again on the margin, the AI is action item?

A  Action item, yeah.

Q  "How will street react"; is that right?

A  Correct.

Q  Okay.  And what's the next entry?

A  That -- what it says is -- I don't know the reference to the JAVS.  There must have been somebody else involved.  And it's, "What did they say?"

Q  "What did they say," okay.

A  And that's the -- it's an action item to go figure out what they said.

Q  What they said?

Page 153

A  Yeah.

Q  Okay.

A  But I don't know -- I don't recall. That's an acronym for something.  I don't recall the acronym.

Q  Okay.  And then we see a reference to "DF King" and "MacKenzie," right?

A  Correct.

Q  And next to that is, "Stock surveillance," right?

A  Yeah.

Q  And we talked about MacKenzie having been hired, right --

A  Yeah.

Q  -- to perform to perform stock surveillance?

A  And I believe -- I would have to go back and check because I don't remember the name, but I will speculate that DF King is another stock surveillance provider and that this is a reference to going and getting quotes from them.

Q  From them -- from the two firms?

A  Right.

Q  Now if we go to the next page, so these are notes dated June 24th, 2022?

Page 154

A  Uh-huh.

Q  And these are notes of a call or meeting. The title is "Wolverine update to BofA FGS"?

A  Correct.

Q  Are you there?

A  Yeah.

Q  I want to ask about the entry that says "Kevin D."

A  Yes.

Q  Do you see that?

A  Uh-huh.

Q  Is that a reference to Kevin Daniels?

A  Yes.

Q  And Kevin Daniels was with BofA?

A  Correct.

Q  And next to that reference it says, "Believes lack of engagement is plan to go public"; is that right?

A  Correct.

Q  What's that a reference to?

A  I don't recall, because the "believes lack of engagement," I don't know if he meant by NI or by Emerson, but it was a speculation on Kevin's part that lack of engagement one way or the other could indicate a plan to go public based on past

Deposition of Kevin Ilcisin                    In Re National Instruments Corporation Securities Litigation

Page 155

experience.

Q So if National Instruments didn't engage, it might go public? Is that what you're saying, as an option?

A That would be one of the ways to read it. I don't remember what I meant by that.

Q And is another reading that a lack of engagement by NI might cause Emerson to go public?

ATTORNEY COMERFORD: Objection. Form. Foundation. Calls for speculation.

THE WITNESS: No. I think it was probably because we were being defensive at the time and thinking of Kevin Daniels' role. I think he was encouraging us to be prepared that Emerson could go public if they were serious.

BY ATTORNEY CUMMINGS:

Q Right. But the "public" reference is a reference to Emerson is what you just said, right?

A Correct.

Q Got it.

ATTORNEY CUMMINGS: Counsel, I'm going to just ask that you produce these notes without redactions. These relate to Wolverine and a potential transaction between Emerson and National Instruments, both of which are -- which -- which

Page 156

are topics for which you have waived privilege as to. I want to get that on the record. And that -- that is for, you know, this exhibit and other exhibits that relate to Mr. Ilcisin's handwritten notes.

BY ATTORNEY CUMMINGS:

Q Mr. Ilcisin, if you can go to the next page.

A Yeah.

Q It's the page ending 639.

A Yeah.

Q And these are notes from a meeting or call dated June 27, 2022, relating to Wolverine, right?

A Correct.

Q And there's a reference towards the middle of the page that says "Friday."

You see that?

A Yeah.

Q "Boil the ocean"; is that right?

A Correct.

Q Do you know what that's a reference to?

A No.

Q Okay. And a little ways down you'll see sort of three redaction boxes.

Do you see that?

Page 157

A I do.

Q Okay. And below the last redacted box --

A Yeah.

Q Are you there?

A I am.

Q There's a reference to, "48 sold share below 40s."

Do you see that?

A I do.

Q Did I read that correctly?

A You did.

Q Do you know what that's a reference to?

A Yes.

Q What is that a reference to?

A So I'm going to ask the advice of counsel to guide me. This specific page of this document talks about multiple activities, some of which are not related to Wolverine at all. And I just don't know in the process of discovery and everything you're doing if there -- you know, just somebody guide me on what I am -- because I know why it's redacted. I know what it refers to. It has nothing to do with Wolverine. So I just -- I just don't know. Between the two of you, you guide me and I will respond appropriately, but I do know

Page 158

what it refers to.

Q Just to be clear, I'm asking you about what the -- the "48 sold shares below 40s," which is not redacted.

A Correct.

Q What does that relate to?

A That relates to the -- the sentence that's redacted above it.

Q And these notes are titled "Wolverine," right?

A That's correct.

ATTORNEY CUMMINGS: Counsel, again, I'm going to ask you to reconsider your redactions here and produce these -- these notes in unredacted form. And we will reserve all rights to revisit this issue at a later time.

Alex, can you pull up Tab 20.

BY ATTORNEY CUMMINGS:

Q Mr. Ilcisin --

A Yeah.

Q -- this is a June 24, 2022, e-mail. It bears Bates No. NAT-SL-00017728, and it goes to 731.

(Exhibit No. 14 marked for identification.)

Page 159

BY ATTORNEY CUMMINGS:

Q  Just take a few minutes to become familiar with this document, please.

EXHIBIT TECHNICIAN:  This will be Exhibit 14 for the record.

ATTORNEY CUMMINGS:  Thank you, Alex. Exhibit 14.

THE WITNESS:  Do I have control to scan or -- okay, thanks.

I've had a chance to read it.  Thank you.

BY ATTORNEY CUMMINGS:

Q  Do you recognize this document?

A  I do.

Q  What -- what is this document?

A  The entire thread relates to a request by Karen Rapp and myself for guidance on what information to share with the external advisors, both of which had explicitly asked for updates on where the process was so that they could react accordingly.

Q  In -- in the earliest-in-time e-mail, which begins on the page ending 730.

A  The -- yes.

Q  Okay.  That's an e-mail from you to Eddie Dixon and Eric Starkloff and Karen Rapp, right?

Page 160

A  Correct.

Q  It's dated June 23rd, 2022?

A  Correct.

Q  And its subject is, "Wolverine: Privileged and Confidential Information"?

A  Yeah.

Q  Do you see that?  And then --

A  I do.

Q  And then it -- it looks like you are preparing talking points for an update to BofA and FGS regarding Emerson's June 22nd, 2022, proposal?

A  Correct.

Q  Is that right?

A  That is correct.

Q  And the -- the e-mail right above the one we were just looking at is an e-mail from Mr. Dixon to you, Eric Starkloff, and Karen Rapp.

Do you see that?

A  I do.

Q  The same date, right?  June --

A  Correct.

Q  -- 23rd, 2022?

A  Uh-huh.

Q  Okay.  And Mr. Dixon is asking whether you need him to prepare any sort of messaging points;

Page 161

is that right?

A  That's correct.

Q  And you respond by saying, you plan to deliver the update to FSG and BofA orally, right?

A  Correct.

Q  Okay.  And Mr. Dixon responds to that e-mail on the same date, June 23rd, 2022, and says, "Definitely the better method," right?

A  That's correct.

Q  Meaning the better course of action is to get on the phone and provide the update; is that right?

A  That's the recommended course of action, yes.

Q  And -- and did you follow that recommended course of action?

A  I don't recall.  I will assume so.

ATTORNEY CUMMINGS:  And can we go back to -- is that Exhibit 14, Alex?

Sorry, Exhibit 13.

BY ATTORNEY CUMMINGS:

Q  And, Mr. Ilcisin, if we can go to the page ending 638.

A  Yeah.

Q  These appear to be your handwritten notes

Page 162

of a call, update call to BofA and FSG, right?

A  Correct.

Q  FGS, excuse me.

A  Yeah.

Q  Right?

A  Yes.

Q  And if we go to the next page of these notes, 639, the page ending 639 -- are you there?

A  I am.

Q  And we were looking at the line that said, "48 sold shares below 40s."

Do you see that?

A  Correct.

Q  And I'm going to ask again, what is that -- what is that a reference to?

A  That is a reference to the redacted materials.

Q  And what are the redacted materials?

ATTORNEY COMERFORD:  I object.  The --

ATTORNEY CUMMINGS:  What's the basis of your objection?

ATTORNEY COMERFORD:  It's -- it's been redacted, because as the witness just testified, it has nothing to do with -- with Emerson.

ATTORNEY CUMMINGS:  Well,

Page 163

relevance redactions are not proper redactions.

ATTORNEY COMERFORD: Or this case.

ATTORNEY CUMMINGS: Is this an instruction not to answer my question on the basis of privilege?

ATTORNEY COMERFORD: The material's been redacted. The witness has testified that it's not relevant. I will look at the redaction again, and we will let you know if we're going to change our position.

ATTORNEY CUMMINGS: To be clear, so are you directing the witness to not answer my question for a reason other than privilege?

ATTORNEY COMERFORD: I'm directing him to not tell you what's under a redaction mark.

ATTORNEY CUMMINGS: And that direction is because this is a -- is privileged information?

ATTORNEY COMERFORD: No. I'm directing him to not answer because you're asking him what's under a redaction mark, which I think is a -- is an improper question.

ATTORNEY CUMMINGS: That's not a -- that's not --

ATTORNEY COMERFORD: You should have -- Ms. Cummings, you -- if you had a problem with

Page 164

this redaction mark, you should have brought it up with us prior to the deposition so that we could assess it again instead of waiting until during the deposition and bringing it up with us for the first time. So --

ATTORNEY CUMMINGS: Or -- or you should not redact documents for relevance. But again, like I said, I understand you to be instructing the witness not to answer for a reason other than privilege, and we reserve all rights to revisit this document and any other document where the redaction appears to be improper. And call this witness back.

Alex, could you mark as Exhibit 15, Tab 21.

(Exhibit No. 15 marked for identification.)

BY ATTORNEY CUMMINGS:

Q Mr. Ilcisin, Exhibit 15 is a document bearing Bates No. NAT-SL-00015145, and it goes through until 15147. It's a June 30th, 2022, e-mail that attaches a presentation from Bank of America, FGS, Wachtell, Lipton, Rosen & Katz, titled "Project Wolverine discussion materials, July 1st, 2022."

Page 165

I'm going to focus my question on the e-mail on page be 145. But you should take as much time as you need to review the document.

A Okay.

THE WITNESS: Alex, I'm not sure if something changed, but on what is Page 145, for some reason I can't get it lower to see who actually wrote that e-mail, the first page, 145.

I'm just trying to get the whole context. It says it's to Marissa, but I can't actually see who wrote it.

BY ATTORNEY CUMMINGS:

Q So the top e-mail says from Karen Rapp --

A Okay.

Q -- dated June 30th, 2022, to Marissa, right?

A Okay. Got it. I couldn't see that. That's why I was asking. For some reason it's not displaying on my screen. My screen cuts off at the sent line.

Q Okay. And you should please let us know if you can't --

A Yeah. I was just checking. I just didn't know -- for instance, I didn't know if this was an e-mail from me or from someone else. That's why I

Page 166

was trying to confirm.

Q And just to be clear, I'm going to focus on the second e-mail from the top.

A Okay.

Q Okay. This is a June 30th, 2022, e-mail from Eric Starkloff to yourself.

Do you see that?

A Yeah.

Q And he copies Karen Rapp and Eddie Dixon, right? Is that right?

A Yeah.

Q Okay. And Mr. Starkloff is asking you about the response to Emerson's June 22nd, 2022, proposal; is that right?

A That is correct.

Q Okay. And -- and in that context, Mr. Starkloff is -- is indicating that -- and I want us to be prepared in the event Nuthatch goes public the week of July 11th, right?

A Correct.

Q And July 11th was the date in the June 22nd, 2022, Emerson proposal, right?

A Correct.

Okay. I've reviewed the e-mails and I've scanned the BofA materials.

Deposition of Kevin Ilcisin                    In Re National Instruments Corporation Securities Litigation

Page 167

Q I'm actually done.

A Oh, okay.

Q Yeah. I said I was going to focus on the e-mail.

A Yeah, yeah. Okay. I just -- I just -- I read those and I scanned the other ones, so I'm good.

Q No, no. You're good. You're good.

ATTORNEY CUMMINGS: Alex, could you pull up as Exhibit 16, Tab 25.

(Exhibit No. 16 marked for identification.)

BY ATTORNEY CUMMINGS:

Q So Exhibit 16 is a metadata slip sheet and call notes -- excuse me. Strike that.

Exhibit 16 is a metadata slip sheet and handwritten notes dated July 6, 2022. The Bates No. is NATI -- NAT-SL-00019646, and it goes to 647.

Do you have that in front of you, Mr. Ilcisin?

A I do.

Q Are these your handwritten notes?

A They are.

Q And they're notes relating to Wolverine;

Page 168

is that correct?

A That is partially correct.

Q These are notes relating to Wolverine that are dated July 6th, 2022?

ATTORNEY COMERFORD: Objection. Mischaracterizes prior testimony. Form.

THE WITNESS: These are notes that capture -- these are notes that I captured on a number of projects, not just Wolverine. But I agree that the header says "Wolverine," but it is more inclusive than Wolverine.

BY ATTORNEY CUMMINGS:

Q But includes Wolverine in terms of Emerson's proposal to acquire National Instruments?

A Some of the points in the notes do refer to Emerson's proposal.

Q Thank you.

I'm going to direct your attention to the page ending 646.

A Okay.

Q Are you there?

A I am.

Q And these notes are again dated July 6, 2022?

Page 169

A Yep.

Q Title is "Wolverine," right?

A Correct.

Q And below the notation to Wolverine, it says, "Even with respect," arrow, "Internal goals are more ambitious."

Do you see that?

A I do.

Q What is that a reference to, if you can recall?

A I can't actually recall.

Q Okay. And again, we see to the left, right, of these notes --

A Yeah.

Q -- initials SN.

Does that refer to Sabastian Niles?

A So I'm looking at the notes, because I've got SN and I've got NS.

Q Right.

A And so it could be either Shawn Liu with a poorly scripted letter or Sabastian.

Q Okay.

A And since --

Q And --

A And since it says, "Profitability and

Page 170

floors, not ceilings," without recalling that, that appears to be more about valuation, which would seem to be more of a BofA comment.

Q Understood.

Okay. And so below that -- that notation we were discussing you see a redacted box, right?

A Yeah.

Q And then in the margin there's NS.

Do you see that?

A Yeah.

Q Do you know what NS refers to?

A No. And without seeing the redacted -- this is where the notes -- because they're including more than Wolverine comments, I would probably need to confirm what NS refers to after seeing the redacted.

ATTORNEY CUMMINGS: I'm going to reiterate my request to counsel to revisit these notes and to remove the redactions.

BY ATTORNEY CUMMINGS:

Q If we go to the last page of these notes, so it's Page 3, ending 647.

Let me know when you're there, Mr. --

A Oh, sorry. I'm here.

Q Okay. These notes are dated July 6, 2022,

Page 171

right?

A  Correct.

Q  Regarding Wolverine?

A  Yeah.

Q  And the first item in these notes is, "Sensitivity"?

A  Yes.

Q  Is that right?

A  Correct.

Q  And is the arrow -- the word after the arrow "Opportunity"?

A  Yes.

Q  Okay.  Do you know what that's a reference to?

A  Yeah.  The sensitivity analysis will show the opportunities for continued performance as an independent company.

Q  Okay.  And then the next line says -- I think it says "Sabasto"?

A  Sabastian.  Sabastian.

Q  Sabastian.  And that's Sabastian Niles --

A  Correct.

Q  -- at Wachtell?

A  Yeah.

Q  And it says, "Simple response"?

Page 172

A  Yeah.

Q  Is that a reference to advice from Sabastian that National Instruments response to Emerson's June 22nd, 2022, proposal should be simple?

A  I don't recall, but given the timing, that is likely.

Q  Okay.  And then in sort of the same general area, it says, "Planning for the psychology."

Do you see that?

A  Yeah.

Q  What is that a reference to?

A  We have to be planning for the psychology of all the stakeholders if it goes public.

Q  Got it.

And right below that it says, "Four to five"; is that right?

A  Yeah.

Q  And it says, "Four to five other ways they don't need to go public.  Turn up the heat more"; is that right?

A  Correct.

Q  Is that a reference to ways in which Emerson could increase its tactics other than --

Page 173

takeover tactics other than going public?

A  Correct.

Q  And then you have a star towards the left margin.

Do you see that?

A  I do.

Q  And it says, "Eric would take a call if requested."

Do you see that?

A  Yeah.

Q  And that's a reference to Eric Starkloff, the CEO of National Instruments, taking a call with Lal Karsanbhai of Emerson?

ATTORNEY COMERFORD:  Form.  Foundation.  Calls for speculation.

THE WITNESS:  Yeah.  I don't know who it's in reference to.

BY ATTORNEY CUMMINGS:

Q  The line below that says, "Working against call on earnings."

Do you see that?

A  Yeah.

Q  What's that a reference to?

ATTORNEY COMERFORD:  Foundation.  Calls for speculation.

Page 174

THE WITNESS:  Yeah, I don't recall.

BY ATTORNEY CUMMINGS:

Q  And two lines down from where we were just looking --

A  Yeah.

Q  -- does that say, "Proactive call versus reactive call"?

A  Yes.

Q  Okay.  Do you know what that refers to?

A  No, I don't.  Because this whole sequence here is intermixed, things we were doing to talk to, you know, a large number of stakeholders if Emerson were to go public.  And so I can't actually recall whether this was talking about proactive calls to our investors, which is the other thing that was under discussion at the time, not about Emerson, but just about the position of the company, so...

ATTORNEY CUMMINGS:  Alex, could you mark as Exhibit 17.  It's Tab 26.

(Exhibit No. 17 marked for identification.)

ATTORNEY CUMMINGS:  This is in your binder, Mr. Ilcisin.

THE WITNESS:  Yeah.

Page 175

BY ATTORNEY CUMMINGS:

Q Exhibit 17 is a metadata slip sheet with handwritten notes bearing Bates No. NAT-SL-00028008?

A Yep.

Q Okay. Let me -- you have these notes in front of you?

A Yes.

Q Okay. I'm going to ask you about the first arrow in these notes.

Do you see that?

A Yes.

Q It says, "Need to make decision on type or broad"; is that right?

A Yes.

Q Do you know what that's a reference to?

A No.

Q And then the line below says, "Conscious of inconsistency between."

Do you see that?

A Yeah.

Q And then it's -- do you know what that's a reference to?

A No, because I didn't finish the sentence.

Q Okay. And then it says, "Need

Page 176

consistency."

Do you see that?

A Yes.

Q Do you know what that's a reference to?

A Whatever is missing on the previous line.

Q Between in the --

A Yeah. It's -- that -- that's something we need to work on.

Q Okay. And then it says, "Need Marissa"?

A Yeah.

Q Do you -- that -- do you know what that's a reference to?

A Most likely -- because Marissa's role was director of investor relations, it's got to be something relating to communicating to investors.

Q Okay. And at the top of this note there's an open paren -- it looks like "(250M)"?

A Yeah.

Q Do you know what that's a reference to?

A No.

ATTORNEY CUMMINGS: Alex, could you mark as Exhibit 17, Tab 27.

EXHIBIT TECHNICIAN: This will be 18.

ATTORNEY CUMMINGS: 18? Oh, yep. 18, sorry.

Page 177

(Exhibit No. 18 marked for identification.)

BY ATTORNEY CUMMINGS:

Q Exhibit 18 is -- is a July 7, 2022, e-mail. It bears Bates No. NAT-SL-00023205, and it goes to 206.

Just take a few minutes to review this document, Mr. Ilcisin.

A Got it.

Q Do you recognize this document?

A I do.

Q What is this document?

A It's an e-mail chain about a communication between myself and Pedro.

Q And who's Pedro?

A Pedro was a VP of FP&A reporting to Karen Rapp.

Q And this is a communication about slides that Pedro put together for the board regarding NI's financing?

A Yes.

Q Okay. And looking at your e-mail at the bottom of the page.

A Yeah.

Q Right there.

Page 178

A Uh-huh.

Q You're suggesting that Pedro not describe or frame recurring M&A and opportunistic buy-backs as a problem; is that right?

A Correct.

Q And you send your e-mail to Karen and Eddie, right?

A Correct.

Q Okay. And you note in your e-mail dated July 7, 2022, you say, "Sent this to Pedro copying you but without explaining why."

Do you see that?

A Yes.

Q And then you say, "This could be Nuthatch discoverable, don't want these listed as problems," right?

A Correct.

Q And "Nuthatch" is a reference to Emerson, right?

A Correct.

Q And when you said "Nuthatch discoverable," what did you mean?

A Under diligence.

Q Under diligence, not -- okay.

What do you mean "under diligence"?

Page 179

A  So if at some future point in time Emerson was to actively engage NI -- you know, we never got there, but if there was a point at which Emerson was engaging NI in diligence to develop an actual offer as opposed to a proposal, they would be able to specify documents that they would want to see, and that would be discoverable under diligence.

Q  And why would describing buy-back as a problem be an issue in terms of diligence performed by Emerson?

A  It's -- it's not related to diligence as much.  So -- okay.  NI -- there so I have two jobs.  I was also, you know, VP of strategy and corp dev.

Q  Uh-huh.

A  We were transforming NI to become more -- if you're familiar with the lean methodology.

Q  Uh-huh.

A  And there is very rigorous -- there's a few words in the lean methodology that become very, very important, and one of those words is "problem statement."  Because "problem statement" refers to a very, very specific event and a very, very specific set of actions that were not

Page 180

appropriate for a discussion about financing or M&A.

And so that was just my coaching an up-and-coming employee that when you're putting presentations together for executives and the board that you need to use the right language and that what he was describing in that section is the context for his presentation, not that it's a problem statement.  Because a problem statement would have required a different reaction.  In the -- in the spirit of lean methodologies.

Q  But just to be clear, your e-mail at the bottom of the page says, "Recurring M&A opportunistic buy-backs are better not framed as a problem"?

A  Problem statement, yes.

Q  Do you see "statement" after "problem" from what I just read?

A  It's inferred from the previous comment.

Q  But the line I just read, does it say "problem statement"?

A  It says quotation, "problem."

Q  Okay.  Thank you.

Do you recall Wachtell advising National Instruments that information, documents can be

Page 181

discoverable and that -- do you recall that?

A  I don't recall --

ATTORNEY COMERFORD:  Form.

THE WITNESS:  Explicitly --

ATTORNEY CUMMINGS:  If we can take a look at -- go back to Tab 11, Alex.

I'm going to go to the page ending 963, which is, I think, around 44 or 45 of this.

BY ATTORNEY CUMMINGS:

Q  Mr. Ilcisin, this is a -- you should take as much time to review the document.  This is a presentation from Wachtell, Lipton, Rosen & Katz to National Instruments's boards.  It was prepared in connection with the June 14th board meeting.

A  Uh-huh.

Q  And do you see the █████████

A  Correct.

Q  And they're saying ████████

A  Okay.

Q  Do you see that?

A  I do.

Q  Does this refresh your recollection that

Page 182

Wachtell advised NI regarding its communications being made discoverable?

A  No, that's not what this says.

Q  What does it say?

A  It says, "████████████████████."  I think of that as show up on the front page of the New York Times.

Q  Disclosable, right?

A  No.  Will be made public, like as in published in media.

Q  Right.  If you publish something in the media, you -- it's still a disclosure, no?

ATTORNEY COMERFORD:  Form.

THE WITNESS:  You're asking me a legal definition.

BY ATTORNEY CUMMINGS:

Q  Disclosures.

No.  Like if you disclose something, if you print it in media, it's disclosed in that form, right?

ATTORNEY COMERFORD:  Form.

THE WITNESS:  I use the word "disclose" --

ATTORNEY CUMMINGS:  It's fine.  It's fine.

THE WITNESS:  Okay.

Page 183

ATTORNEY CUMMINGS:  It's fine.
Let's go to Tab 29.  These are going to be handwritten notes.
BY ATTORNEY CUMMINGS:
Q  So they will be in your hard copy material exhibits, Mr. Ilcisin.
A  Yep.
(Exhibit No. 19 marked for identification.)
ATTORNEY CUMMINGS:  This will be Exhibit 19.  Am I right, Alex?
EXHIBIT TECHNICIAN:  Yeah.
BY ATTORNEY CUMMINGS:
Q  Mr. Ilcisin, these -- this is a metadata slip sheet along with handwritten notes.  The Bates No. for the notes is NAT-SL-00027226 --
A  Yeah.
Q  -- through 239.
A  Yeah.
Q  Do you have that in front of you?
A  I do have it in front of me.
Q  Can you take a few minutes to review these notes?
A  I can.  Give me a sec.
Okay.

Page 184

Q  You've taken a look at the notes?
A  I have.
Q  Are these your handwritten notes?
A  They are.
Q  These notes are dated July 12th, 2022.
A  Yes.
Q  Do you see that?
A  I do.
Q  And various -- actually, let me take a step back.
Some of these notes are dated July 12th, 2022.
A  Correct.
Q  Is that right?
A  Correct.
Q  If you look at the page ending 234 -- are you there?
A  Skipping to it.  Yep.
Q  These appear to be dated July 14th --
A  Correct.
Q  -- 2022.  Right?
So these are notes dated either July 12th, 2022, or July 14th, 2022?
A  Correct.
Q  Okay.  And fair to say that most of these

Page 185

notes have a reference to ▮ --
A  Correct.
Q  -- at the top?
A  Yes.
Q  What's -- do you recall what ▮ refers to?
A  I do.
Q  What does it refer to?
A  So again, I'm not sure how this process works, so I'm requesting guidance from counsel.
ATTORNEY COMERFORD:  Do you want to take a break and ask me a question?
THE WITNESS:  Yes.
ATTORNEY COMERFORD:  Is that all right with you, Ms. Cummings?
BY ATTORNEY CUMMINGS:
Q  Do you think, Mr. Ilcisin, that the question you have relates to a privilege matter?
A  So I'm not a lawyer, so I don't know how to interpret your question.  Maybe the -- the layman's terms is these notes have nothing to do with Wolverine, so I'm not sure why they're in the package, and I'm not sure the extent to which I'm obligated to respond under this particular activity.  I mean --
Q  Well -- well, Mr. Ilcisin, some of these

Page 186

notes do reference Wolverine, and I'm happy to mark another document that's explicitly connect the two.
So let me mark as Exhibit 19 -- Exhibit 20, Tab 30.
(Exhibit No. 20 marked for identification.)
THE WITNESS:  Sorry.
ATTORNEY COMERFORD:  She's got an electronic document she's going to want to ask you to look at.
THE WITNESS:  Oh, okay.
BY ATTORNEY CUMMINGS:
Q  This is an e-mail dated July 14th, 2022, from you --
A  Yeah.
Q  -- to Karen Rapp, Eddie Dixon, Albert Percival.
A  Yeah.
Q  Do you see that?
A  I do.
Q  And you're attaching a PowerPoint presentation, right?
A  Yes.
Q  It says, "Advisor perspectives on ▮

Page 187

proposal 2022-07-14."

That's the title of the attachment --

A  Correct.

Q  -- right?

ATTORNEY CUMMINGS:  Alex, could you go to Page 3.

BY ATTORNEY CUMMINGS:

Q  I understand ███████████████.

Do you have a similar understanding?

A  I do.

Q  Okay.  And your -- Page 2 of your slide, right?  Do you see that?  "Advisor Perspectives on ██████"?

A  Yes.

Q  Your second -- your first bullet says, "There is a relatively aligned consensus that an investment in NI will become unattractive to ██ if Nuthatch goes public before the deal is linked -- inked."

Do you see that?

A  I read that, yes.

Q  Right.  So there's a -- you're making a connection in your slides about ██████ -- a possible deal with ████████ and Nuthatch going public, right?

Page 188

A  That is a true statement.

Q  Right.  Okay.  So let's go back to the notes, please.

ATTORNEY CUMMINGS:  That's Exhibit 19, Alex.

BY ATTORNEY CUMMINGS:

Q  If you go to page ending 230.

A  230, okay.

Q  At the bottom of that page, it says, "Buy back 10b-5-1 issue."

Do you see that?

A  Yes.

Q  "Need to put another one --" "-- another on now," do you see that?

A  I do.

Q  Do you know what that's a reference to?

A  No.

Q  Okay.  Then on the next page ending 231, a continuation of your notes July 7, 2022, it says, "We can't buy back now."

Do you see that?

A  I do.

Q  Do you know what that's a reference to?

A  No.

Q  Okay.  And then --

Page 189

A  These are notes -- these are notes from -- these are notes from advisors.  So I'm taking notes.  I'm not understanding what they mean.

Q  Okay.  And then you say -- below the second redacted box, do you see that?

A  Uh-huh.

Q  "Very clear be perceived as hostile by Nuthatch."

A  Yeah.

Q  Do you see that?

A  Yeah.

Q  Portrayed as diluted shareholdings; is that right?

A  "Shareholders."

Q  "Shareholders."  Is that right?

A  Correct.

Q  "Increase the likelihood," do you see that?

A  Yeah.

Q  Do you know what this is a reference to?

A  It's a reference to speculation from the advisors how Nuthatch would perceive an investment by ████████.

Q  And the thinking was that investors might perceive a ██████ transaction as diluting

Page 190

shareholders?

ATTORNEY COMERFORD:  Object to the form.  Mischaracterizes testimony and the document.

BY ATTORNEY CUMMINGS:

Q  You can -- you can -- you can answer.

A  Sorry.  Could you repeat your question, because I was actually nuanced.  What was your question?

Q  I asked you what increased the likelihood meant, and you testified, "It's a reference to speculation from the advisors how Nuthatch would perceive an investment by ████████."

Do you recall that testimony?

A  So if you're asking me what does the sentence say -- what I heard you to say is how does investors take it, which is different than Nuthatch.  That's why I was asking you to -- to repeat the question.  Because I thought I heard how investors would perceive it.

ATTORNEY COMERFORD:  I did too.

ATTORNEY CUMMINGS:  Excuse me?

ATTORNEY COMERFORD:  I think you might have misspoke, Ms. Cummings.  You said the word "investors," and I think in the context both the witness and I thought you meant to say "Emerson."

Page 191

So that's why he and I are both confused.

ATTORNEY CUMMINGS: Okay. Let's be clear then.

BY ATTORNEY CUMMINGS:

Q And the thinking was that Emerson might perceive a ███████ transaction as diluting shareholders; is that correct?

A That is correct.

Q If we go to the page ending 236, Mr. Ilcisin?

A I'm there.

Q Okay. At the bottom of that page -- or towards the bottom of that page there's an arrow --

A Yeah.

Q -- with "Nuthatch."

Do you see that?

A I do.

Q It says, "Nuthatch goes public."

Do you see that?

A I do.

Q And it says, "███ walks away."

Do you see that?

A I do.

Q That's a reference to ████████ walking

Page 192

away if Emerson goes public with its offer to acquire National Instruments?

A That's correct.

Q And it says, "If we can get it done by earnings?"

Do you see that?

A Yes.

Q Is that a reference to getting a deal done with ████████

A Correct.

Q -- by earnings?

A Yes.

Q Okay.

ATTORNEY CUMMINGS: If we could mark as Exhibit 21, Tab 31.

(Exhibit No. 21 marked for identification.)

BY ATTORNEY CUMMINGS:

Q Do you have that in front of you, Mr. Ilcisin?

A I do.

Q Exhibit 21 is a document bearing Bates No. NAT-SL-00023167, and it goes to 168.

Do you see that?

A I do.

Page 193

Q Okay. And this is a July 14th, 2022, e-mail thread with the subject line, "Two slide summary of the discussion this morning."

Do you see that?

A I do.

Q Do you recognize this document?

A I do.

Q What do you recognize this document as?

A As an e-mail from Albert to myself, Karen and Eddie in response to the e-mail that I sent him that had the two-page summary.

Q Okay. And this e-mail that we're looking at right now is a discussion of the timing of a potential deal with Emerson -- excuse me. Strike that.

This e-mail is discussing the timing of a potential transaction with ████████; is that right?

A This document is -- is referencing advisors' comments on a potential deal with ████ ████.

Q Okay. And can we take a look at the first bullet point in your -- in Albert's e-mail to you --

A Yeah.

Page 194

Q -- you, Karen and Eddie, right?

Do you see that?

A Yeah.

Q And the first bullet reads, "There is a relatively aligned consensus that an investment in NI will become unattractive," and then you see "RE, if Nuthatch goes public before the deal is inked (based on resulting stock price increase)."

Do you see that?

A Correct.

Q And the highlighted language in this e-mail is being suggested by Mr. Percival; is that right?

A Correct.

Q And Mr. Percival is suggesting in this language to indicate that a deal with ████████ would become unattractive because -- excuse me. Strike that.

Mr. Percival is adding or suggesting this language to indicate that a Nuthatch deal -- the disclosure of a Nuthatch deal would make a ████ ████ transaction unattractive because it would result in an increase in the price of National Instruments stock; is that right?

A It's Mr. -- Mr. -- I use Albert.

Page 195

Albert is writing and reframing that the consensus of the advisors is that an investment by ███ ██ becomes unattractive if Emerson goes public and the stock price increases.

Q The stock price of National Instruments?

A Correct.

Q Okay. And the perspective, the consensus perspective of the advisors, that was shared with you and others at National Instruments; is that right?

A That's correct.

ATTORNEY CUMMINGS: Alex, could you mark -- actually, can we -- can we take a five-minute break. I want to go through a few things and reassess, if that is okay.

ATTORNEY COMERFORD: Okay.

THE WITNESS: Sure.

THE VIDEOGRAPHER: We're going off the record at 12:44 p.m.

(Recess 12:44-12:54.)

THE VIDEOGRAPHER: We're going back on the record at 12:54 p.m.

ATTORNEY CUMMINGS: Great. Thank you.

And I apologize in advance to the court reporter, Alex, and the videographer. So perhaps

Page 196

after a few documents we can break so you guys can grab something to eat to the extent you haven't already done so.

Alex, could you mark as Exhibit 22, Tab 33.

(Exhibit No. 22 marked for identification.)

EXAMINATION (Continuing)
BY ATTORNEY CUMMINGS:

Q Exhibit 22 is a July 15th, 2022, e-mail bearing Bates No. NAT-SL-00023210, and it goes to 211.

Mr. Ilcisin, take as much time as you need to review this document and let me know when you've done so.

THE WITNESS: Am I able to -- okay. Thanks. I was having trouble moving it.

Okay. I've had a chance to review.

BY ATTORNEY CUMMINGS:

Q Do you recognize this document?

A I do.

Q What -- what is this document?

A This is a set of e-mails between the team on preparing for a board meeting.

Page 197

Q And this e-mail is dated July 15, 2022, right?

A Correct.

Q And it's discussing National Instruments' options for a forthcoming discussion between Eric and the board, right?

A Correct.

Q And do you -- do you remember what options were being discussed at this time?

A I don't remember exactly. The general trend was -- at -- at this point in time, we were talking, generally, about how do we defend ourselves against any hostile takeover, Emerson, activists, investors, hedge funds. And so we were talking about different scenarios of actions we could take under any of those. The specific e-mail refers to specific comments on the restructuring proposal that had been floated.

Q And the restructuring proposal that had been floated was a proposal to engage in a massive restructuring plan.

Do you recall that?

A I -- I don't recall the words that were used to describe it. There was a discussion about whether or not we could be more efficient and

Page 198

reduce our head count.

Q Did that discussion include a reduction in, sort of, operating expenses?

A Yes.

Q And in your e-mail, in the middle of this page, sent at 11:23 a.m.

Do you see that?

A Yeah.

Q You're commenting on -- on the option that a restructuring plan would have a, sort of, short-term effect as opposed to a long-term effect.

A Yes.

Q Is that right?

And it would have a short-term effect of increasing NI's stock price; is that right?

ATTORNEY COMERFORD: Form.

THE WITNESS: I don't see anything about stock price.

BY ATTORNEY CUMMINGS:

Q So -- so right below the bullets, right, you write, "The talking point, is (IMHO)" -- is that "in my humble opinion"?

A Yes.

Q So you say, "The talking point is (IMHO),"

Page 199

in my humble opinion, "that there an equal risk that the restructuring plan makes us weaker. It gets us a short-term bump, Nuthatch goes on pause, but not away."

Do you see that?

A Uh-huh.

Q And do you -- does -- "short-term bump" is a reference to a bump in NI stock price?

A Perception, stock price, just the overall investor community that were -- have a long-term future.

Q Okay. And you say that such an option, so a structure -- a restructuring plan would cause Emerson to pause but not go away.

Do you see that?

A I do.

ATTORNEY CUMMINGS: Alex, could you mark as Exhibit 23, Tab 36.

(Exhibit No. 23 marked for identification.)

BY ATTORNEY CUMMINGS:

Q Mr. Ilcisin, this is an August 4th, 2022, e-mail. Bates No. is NAT-SL-00011781, and it goes to 85.

ATTORNEY CUMMINGS: I'll note for the

Page 200

record that this e-mail attaches a presentation from Bank of America titled "National Instruments EMR Dividend Announcement History, August 2022." And an attachment begins on the page ending 783.

(Zoom Speaker Interruption.)

THE REPORTER: Sorry, Counsel. The speaker interrupted us in the middle of all that.

THE VIDEOGRAPHER: Is she still connected? Should we go off the record?

THE REPORTER: Yeah.

ATTORNEY CUMMINGS: Want to go off the record?

THE REPORTER: Oh, now we're back. We lost you for a minute.

BY ATTORNEY CUMMINGS:

Q I'll just -- for the sake of clarity, this is Exhibit 23, I believe. And it's a document bearing Bates No. NAT-SL-00011781, and it goes to 785.

It's an e-mail dated August 4th, 2022. It attaches a presentation from Bank of America titled, "National Instruments EMR Dividend Announcement History, August 2022." And that presentation begins on the page ending 783.

Mr. Ilcisin, take a few minutes to review

Page 201

this document. I'm just going to actually focus on the e-mail, but you should take as much time as you need to orient yourself.

A Okay.

Q Before we get into the substance of the document, did National Instruments respond to Emerson's June 22nd, 2022, proposal?

A I didn't respond to it. I would need to go back through the documents and confirm. That would have been a letter from Eric.

ATTORNEY CUMMINGS: Alex, could you mark as Exhibit 24, Tab 35.

(Exhibit No. 24 marked for identification.)

BY ATTORNEY CUMMINGS:

Q Mr. Ilcisin, this is a document bearing Bates No. NAT-SL-00001239, and it goes to 240.

It's an August 2nd, 2022, e-mail from Eric to Lal Karsanbhai, and it attaches a document titled, "NI Letter to Emerson 8-2-2022.pdf."

Do you see that?

A Yeah. Thanks for sharing.

Q No problem.

And this is National Instruments's August 2nd, 2022, letter response to Lal

Page 202

Karsanbhai's June 22nd, 2022, proposal.

A Okay. Thank you.

Q Is that right? Is that right?

ATTORNEY COMERFORD: Foundation. Form.

THE WITNESS: Yeah. I -- I see the document saying there's a copy of a response letter.

ATTORNEY CUMMINGS: Let's take a look at the page -- Page 2 then.

BY ATTORNEY CUMMINGS:

Q This is August 2nd, 2022, letter from Mr. Starkloff and Mr. McGrath to Lal Karsanbhai, right?

ATTORNEY COMERFORD: Okay. Form. Foundation.

BY ATTORNEY CUMMINGS:

Q Is that right, Mr. Ilcisin?

ATTORNEY COMERFORD: Object to the foundation. And form.

You can answer.

THE WITNESS: Yeah. I read -- I read -- I am reading a letter addressed to Lal from Eric and Michael.

BY ATTORNEY CUMMINGS:

Q Dated August 2nd, 2022?

Page 203

A  Correct.

Q  And the only paragraph in the letter begins with, "Our board."

Do you see that?

A  I do.

Q  And it says, "Our board of directors has carefully reviewed your letter dated June 22nd, 2022," right?

A  Correct.

Q  With the -- and it goes on to say, "With the assistance of our financial and legal advisors."

Do you see that?

A  I do.

Q  Okay.  And this is a response to Emerson's June 22nd, 2022, proposal.

ATTORNEY COMERFORD:  Form.  Foundation.

BY ATTORNEY CUMMINGS:

Q  Is that right?

A  Yes.

ATTORNEY COMERFORD:  Form.  Foundation.

THE WITNESS:  That's what it says.

BY ATTORNEY CUMMINGS:

Q  Thank you.

ATTORNEY CUMMINGS:  Can we go back to the

Page 204

prior exhibit, so Exhibit 23.

BY ATTORNEY CUMMINGS:

Q  So this e-mail, Exhibit 23, is two days later; is that correct?

A  That's correct.

Q  And I believe you testified that you had some time to look at Exhibit 23; is that right?

A  Yes.

Q  Okay.  Do you recognize this document?

A  I have from reading it, yes.

Q  What is this document?

A  This document is an e-mail thread between BofA, Eric, myself, others copied, about Eric's question about when Emerson announces their dividend.

Q  Okay.  So Eric is inquiring about the timing of Emerson's dividend announcement before its earnings release.

A  Yes.

Q  Is that right?

A  Correct.

Q  And you -- you ask BofA to look into that, that issue.

A  Correct.

Q  Is that right?

Page 205

A  Yeah.

Q  And there's a response from Sandeep Alluri dated August 4, 2022, to yourself, Shawn Liu.  And it looks like an e-mail -- a Wolverine BofA e-mail group.

Do you see that?

A  Correct.

Q  And Mr. Alluri provides -- or responds to your question indicating that Emerson's announcement of its dividend prior to its earnings release is sort of out of their -- out of their normal -- out of their normal practice; is that right?

A  Correct.

Q  And you write back in part on the same day, "Eric, per your question, definitely an anomaly."

Do you see that?

A  Uh-huh.

Q  And it says, "Will be an interesting call."

Do you see that?

A  I do.

Q  And you say, "We should do an earnings call party if the timing works," smiley face.

Page 206

Do you see that?

A  I do.

Q  Did you participate in an earnings call party?

A  No.

Q  Did you listen to Emerson's earnings release?

A  I don't remember because I had lots of things going on.  And these are available also on recorded streaming.  So whether I listened to it live or whether I did the streaming, you know, recording, I -- I would suspect that I would have taken it in, but I don't remember when and how.

Q  Okay.  Do you -- do you know if others at National Instruments listened in to Emerson's earnings release?

ATTORNEY COMERFORD:  Form.  Foundation.  Calls for speculation.

THE WITNESS:  I don't know.

ATTORNEY CUMMINGS:  I'm going to ask Alex to mark as Exhibit 25.  It's Tab 37.

(Exhibit No. 25 marked
for identification.)

BY ATTORNEY CUMMINGS:

Q  This is an August 8th, 2022, e-mail.  The

Page 207

Bates No. is NAT-SL-00017263, and it goes to 267.

Mr. Ilcisin, take a few minutes to review Exhibit 25, and let me know when you've done so.

A  Okay.

Q  Do you recognize this document?

A  I see the document in front of me.

Q  This is, again, an August 8, 2022, e-mail. The e-mail is discussing Emerson's announcement of the sale of its InSinkErator asset; is that right?

A  That is correct.

Q  And if we go to the page -- so this is the earliest-in-time e-mail.  It's at the bottom of the Page 265.  It's an e-mail from Sabastian Niles of Wachtell.

Do you see that?

A  I see that.

Q  Okay.  And -- and Mr. Niles writes, "FYI, re Wolverine moving forward with portfolio realignment (selling InSinkErator $3B to Whirlpool/18.1X EBITDA)."

Do you see that?

A  I do.

Q  He indicates -- Mr. Niles indicates this is another reason why Lal may have been a bit busy the past few days; is that right?

Page 208

A  It says that.

Q  Okay.  Now, if we move up to your e-mail on the page ending 264, so it's the first e-mail on that page, it's an August 8th, 2022, e-mail from you to Mr. Dixon, Mr. Niles, Mr. Percival, Mr. Starkloff, Ms. Rapp, Mr. Emmerich, Christina Ma and Kwon-Yong Jin and Anna Dimitrijevic -- I butchered that -- of Wachtell.

Do you see that?

A  I do.

Q  And you say in part, "The BofA team has had some related thoughts related to the impact of the cash generation event."

Do you see that?

A  I do.

Q  And this is a reference to thoughts BofA had regarding Emerson's selling its InSinkErator asset; is that right?

A  Correct.  Correct.

Q  And if we go to the first page of Exhibit 26, so the page ending 263, I want to draw your attention to your e-mail on the same date, August 8, 2022, to Mr. Dixon.

Do you see that?

A  I do.

Page 209

Q  And you indicate that you had talked to BofA on the weekend, right, and they suggested a call.

Do you see that?

A  Yeah.

Q  And you go on and say, "This news is key in their thinking."

Do you see that?

A  Yes.

Q  And this is again a reference to Emerson selling its InSinkErator asset being key to BofA's thinking?

A  Yes.

Q  Okay.  And BofA's thinking about Emerson's financial capacity?

A  No, just the whole defensive position that we were taking.

Q  Okay.

ATTORNEY CUMMINGS:  Alex, if you can mark as Exhibit 26, Tab 38.

(Exhibit No. 26 marked for identification.)

BY ATTORNEY CUMMINGS:

Q  This is an e-mail dated August 8, 2022, Bates No. NAT-SL-00018186, and it goes to 187.

Page 210

Do you have that in front of you?

A  I do.

Q  Please take a few minutes to -- to review this document.

A  Okay.

Q  Do you recognize this document?

A  Yes.

Q  What is this document?

A  It's an e-mail between Shawn and myself.

Q  And this e-mail is about the Emerson selling its InSinkErator --

A  Correct.

Q  -- asset, right?

A  Uh-huh.

Q  Okay.  And -- and you respond to Mr. Liu forwarding an announcement of that sale saying, "Sort of reduces their dependency on the credit markets."

Do you see that?

A  I do.

Q  Okay.  And that's a reference to Emerson's financial capacity; is that right?

A  That is correct.

Q  Okay.  And then Mr. Liu of BofA goes on to say, "Yes, but it doesn't close until Q4."

Page 211

Do you see that?

A  I do.

Q  And that's a reference to the Emerson's sale of InSinkErator closing Q4, 2022?

A  Correct.

Q  Okay.  And you write back, "Neither would something with us, presumably?", right?

A  Correct.

Q  So you're asking -- or saying a deal between Emerson and National Instruments wouldn't close before --

A  Not necessarily.

Q  -- Q4, 2022?

ATTORNEY COMERFORD:  Form.

THE WITNESS:  Not necessarily.

BY ATTORNEY CUMMINGS:

Q  Well, you say, "Neither would something with us, presumably."  What's -- what do -- what's the "something with us"?

A  So in the redacted materials that we've talked about, and counsel and I have spoken and indeed shared that I can speak, I was involved in trying to close another transaction on the scale of over a billion in the same time scale.  And so there was also discussions going on about what we

Page 212

were trying to do independent of Emerson to strengthen the NI business, which is the reference to ▮▮▮▮▮▮ .

Q  So neither would something with us presumably in the context of an e-mail about Emerson's sale of its InSinkErator asset, it's your testimony that those two are not related?

A  No, I said it could be related, but there are a lot of other things that it was relating to.

Q  Okay.  I'll take the could.

ATTORNEY CUMMINGS:  Let's mark as Exhibit 27, Tab 39.

(Exhibit No. 27 marked for identification.)

BY ATTORNEY CUMMINGS:

Q  This is another e-mail about what could -- your could reference, the InSinkErator --

A  Sure.

Q  -- sale from Emerson to Whirlpool.  The Bates No. is NAT-SL-00018188, and it goes to 190.

Do you see that?

A  Yeah.

Q  And in this e-mail which is dated again August 8th, 2022, you are forwarding the announcement of Emerson's sale of its InSinkErator

Page 213

asset to Ms. Vidaurri; is that right?

A  Correct.

Q  And you write, "FYI, this could be interesting."

Do you see that?

A  Yes.

Q  What did you mean by that?

A  Marissa is responsible for communications to our investment community.  FYI, this could be interesting to you.  So that's why I'm sending it to her.

Q  Okay.  And why would it be interesting to her?

A  Because she was responsible for coordinating communications with our investors.

Q  Okay.  But this is an announcement about Emerson --

A  Yes, but --

Q  -- sale.  So -- so what's the connection between your investors and Emerson sale?

A  As you've shown on some of the other documents, by this point in time we had engaged entities like FSG to prepare a set of communications in the event that Emerson was going to go public.  I think we've had that discussion.

Page 214

Q  Uh-huh.

A  So there's multiple activities going on simultaneously, and the team is reaching out to each other to make sure we're all informed.

Q  So it's interesting as it relates to the communication plan relating to Nuthatch?

A  I wasn't making a specific reference.  I'm just telling her, this could be interesting to you.

That's as opposed to just forwarding an e-mail with no context.  And, you know, we all get hundreds of e-mails a day, so this is just trying to highlight this could be interesting to you.

Q  The subject line is "Wolverine"?

A  Yes.

Q  Okay.  Thank you.

I believe you testified earlier that National Instruments hired MacKenzie Partners to perform stock surveillance?

A  Correct.

Q  Do you remember that?

A  Uh-huh.

ATTORNEY CUMMINGS:  I'm going to mark as Exhibit 28, Tab 49.

////

Deposition of Kevin Ilcisin          In Re National Instruments Corporation Securities Litigation

Page 215

(Exhibit No. 28 marked for identification.)

BY ATTORNEY CUMMINGS:

Q This is an e-mail dated August 10, 2022. It bears Bates No. NAN-SL-00011768, and it attaches an Excel spreadsheet.

The title of the attachment is, "NATI - 08-05-22" dash -- dot, excuse me, "xlsx."

Do you have that document in front of you, Mr. Ilcisin?

A I do.

Q Have you had a chance to review this document?

A I am looking at it, yes.

Q Okay. So take a few minutes to review it, please.

A It's just one page, isn't it? I'm not seeing my ability to scroll.

ATTORNEY CUMMINGS: Alex, could you also include -- I believe there's an Excel spreadsheet attached to this document. It was produced natively, Mr. Ilcisin.

THE WITNESS: Okay.

BY ATTORNEY CUMMINGS:

Q So it's like it's associated with this --

Page 216

A Yeah, I understand.

Q -- but produced separately.

A Yep, no. I've read the e-mail so...

Q Okay. I just want to make sure you have the full context.

A Yeah.

ATTORNEY CUMMINGS: And, Alex, could you mark the Excel spreadsheet as -- where -- where are we on exhibits?

EXHIBIT TECHNICIAN: The PDF was 28. Do you want to keep this as 28, as well?

ATTORNEY CUMMINGS: Yes, please.

BY ATTORNEY CUMMINGS:

Q So this is just an Excel spreadsheet attached to the e-mail, the cover e-mail, we were just looking at.

A Got it.

Q You can take as much time as you want to look at this document, but my -- yeah, I'm focused on the actual cover e-mail.

A Yeah. Yeah. No. Okay. This is just a NOBO list.

Okay. We can go back to the e-mail.

Q The subject of this e-mail we talked a little bit before, and I think you just mentioned

Page 217

the word "NOBO"? NOBO, right?

A Right.

Q What does that stand for?

A I think it's non-objecting beneficial ownership. I believe that's what it is.

Q Okay. And if we just go to the e-mail from Sam Geoffroy to Mr. Dixon, yourself, and others at National Instruments and Mackenzie.

Are you there?

A I am.

Q And Mr. Geoffroy is advising yourself and others at National Instruments, and his colleague at Mackenzie Partners. ████████████ ████████████████████████████████████ ████████████████████████████ ; is that right?

A Correct.

Q And with that acquisition, National Instruments is within -- excuse me. Strike that. ███████████████████████████ ████████████████

A That's correct.

Q Okay. And you forward this e-mail to Shawn Liu.

Do you see that?

Page 218

A Yeah.

Q You say, "This just got interesting," right?

A Correct.

Q What did you mean by that?

A So if you go back through some of the other documents you shared with me, there was the ████████████████████████ ████████████████████████ ██████████████████████████ █████████████████ ██████████ Why am I saying that? I apologize. I keep saying that word wrong. ████████████████████ and this whole activity where we were trying to become more educated on what was going on is why we, you know, engaged the stock surveillance company. And so I'm sharing with our financial advisors -- because they didn't get this directly -- that ████████ ████████████████████████ So it's just a statement I made, and I'm now seeing that I used the phrase "this will be interesting," "this got interesting" too often, and I will strike that from future communications.

Page 219

Q  Thank you for that, Mr. Ilcisin.

ATTORNEY CUMMINGS:  I'm going to ask Alex to mark as Exhibit 29, Tab 42.

(Exhibit No. 29 marked for identification.)

ATTORNEY CUMMINGS:  This is in your binder Mr. Ilcisin, so it's handwritten notes.

THE WITNESS:  Yeah, I got it.

BY ATTORNEY CUMMINGS:

Q  Okay.  And for the record Exhibit 29, is a metadata slip sheet with handwritten notes dated August 11, 2022.  Bates No. NAT-SL-00019635.

Do you have that in front of you?

A  I do.

Q  Okay.  Take a few minutes.  It's a one-pager.

A  Yeah.  No, I got it.  I have looked ahead.

Q  Okay.  These are -- these are your handwritten notes.

A  Correct.

Q  Right?

And the subject is "Nuthatch," right?

A  Correct.

Q  And "Nuthatch" referred to -- to Emerson?

A  Yes.

Page 220

Q  Okay.  I have a -- just a question.  You see right -- there's a -- a time reference that says "11:30 to 1" in the notes?

A  Yeah.

Q  Okay.  One two -- four lines above that there's a dash.  You crossed out something, right?

Do you see that?

A  Yeah.

Q  And it says, "If this is a tell not planning to chat"; is that correct?

A  Yeah.

Q  And it says, "Next offer" right below that?

A  Yeah.

Q  Do you know what that's a reference to?

A  No.  Because one of the things I'm looking in this e-mail -- or e-mail, pardon me, this notes and, presumably, if you go through the calendars, what I didn't do for this note was capture who was in this call.  And -- and just reading it, I can't tell if it was the lawyers or the bankers.

Q  Understood.  Understood.

A  Because there's statements like "structural defenses" refers to something that I --

Page 221

Q  Like a banker?

A  No, I would expect a lawyer to say.

Q  A lawyer, okay.  All right.

A  But the -- you know, the e-mail that we were talking about previously was me informing Bank of America that we found this out, so it could have been a joint call.  I'd have to go back to records I don't have.

Yeah.

Q  Do you see in these notes there's two references to "hostile" or "hostility."  So the first is at the top of the page.  It says, "View this as hostile."

Do you see that?

A  Yeah.

Q  Do you know what that's a reference to?

A  Somebody in one of these organizations who looked at this would have come back and said they viewed this as hostile.

Q  When you say "looked at this," what are you referring to?

A  The -- the statement that -- or ▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ One of these advisors had made a statement that they viewed this as hostile.

Page 222

Q  Okay.  And it looks like there's another reference to "hostility" towards the end of the page.

Do you see that?  "Meant to show hostility."

A  Yes.  But that's in reference to the one to two clients that they had been engaged with before that when this was done by other people, it was meant to show hostility, not -- it -- that didn't reference Emerson.

Q  Okay.

ATTORNEY CUMMINGS:  Alex, could you mark as Exhibit 30, Tab 43.

THE WITNESS:  Yeah.  And -- and the other one is -- this is -- it would be helpful to know who this was with because one comment was, "Viewed this as hostile."  Then there's the next one that says, "Not seen a lot."  It's "insurance" and it "averages their costs down."  So there's another advisor saying he disagrees with the first advisor.

BY ATTORNEY CUMMINGS:

Q  Well, you said --

ATTORNEY COMERFORD:  Don't guess or speculate.

Page 223

BY ATTORNEY CUMMINGS:

Q Well, you just -- you testified -- I mean, you said, "Viewed this as hostile" was a reference to one of the advisors viewing --

A Yeah.

Q -- ███████████████████████████ ████████████ as hostile?

A That's how I interpret what I wrote, yes.

Q Okay. Thank you.

ATTORNEY CUMMINGS: Alex, can we go to Exhibit 30.

(Exhibit No. 30 marked for identification.)

BY ATTORNEY CUMMINGS:

Q Exhibit 30 is an August 23rd, 2022, e-mail bearing Bates No. NAT-SL-00027888, and it goes to 889.

Just take a few minutes to review this document, Mr. Ilcisin.

A Yeah.

Okay.

Q Do you recognize this document?

A I do.

Q What is this document?

A It's an e-mail. It's a set of e-mail

Page 224

exchanges on executing another NOBO.

Q To get more information about Emerson's trading and -- or accumulation of shares in National Instruments?

A Correct.

Q Right?

And you -- you agree with the execution of a new NOBO?

A Yes. It's a statement that we should go do it.

Q Okay.

ATTORNEY CUMMINGS: Alex, could you mark as Exhibit 31, Tab 44.

(Exhibit No. 31 marked for identification.)

BY ATTORNEY CUMMINGS:

Q Exhibit 31 is an August 25th, e-mail from Marissa Vidaurri to yourself, Eric Starkloff, Shawn Liu and Sabastian Niles. It's Bates No. NAT-SL-00027400.

And do you have that in front of you?

A I do.

Q Take a few minutes to review this document.

A Okay.

Page 225

Okay. Reviewed. Short review.

Q This is an e-mail discussing MacKenzie's view on Emerson's accumulation of National Instruments common stock; is that right?

A No. This is an e-mail from Marissa to us. Because there's the sentence that said MacKenzie is not in the loop on Nuthatch.

So they don't actually know what they're looking for. They're not looking at Nuthatch or Emerson specifically. They're just a blinded provider of information.

Q But this is expressing MacKenzie's views regarding what share accumulation means.

A Yes.

Q Is that correct?

A That's correct.

Q Okay. And MacKenzie's perspective on ████████████████████████████████████ ████████████████████████████████; is that right?

ATTORNEY COMERFORD: Form. Foundation. Calls for speculation.

THE WITNESS: The words on the page from Marissa which is her summarizing a verbal conversation with MacKenzie is that the

Page 226

████████████████████████████████ ██████ as she wrote.

BY ATTORNEY CUMMINGS:

Q Right. And that's summarizing a conversation with MacKenzie. That bullet is referring to ████████████████████████ ████████████; is that right?

ATTORNEY COMERFORD: Form. Foundation. Calls for speculation.

BY ATTORNEY CUMMINGS:

Q Is that right?

ATTORNEY COMERFORD: Same objections again.

BY ATTORNEY CUMMINGS:

Q Is that right?

ATTORNEY COMERFORD: Same objections again.

THE WITNESS: So --

BY ATTORNEY CUMMINGS:

Q Let me just -- let me try this.

A Okay.

Q In her e-mail, Ms. Vidaurri says, "MacKenzie is not in the loop on Nuthatch, but I did ask their perspective on the accumulations," right?

Page 227

ATTORNEY COMERFORD:  Foundation.

THE WITNESS:  So --

BY ATTORNEY CUMMINGS:

Q  Is that right?

A  -- she asked them -- I think her grammar is slightly misconstrued.  What she was asked to ask of MacKenzie is have they seen situations where a strategic had accumulated shares in another strategic and what did that mean.

Q  You said what she was asked to ask MacKenzie, right?

A  Yeah.

Q  So do you have a specific recollection of what Ms. Vidaurri was told to ask MacKenzie at this time?

A  It was the justification for doing another NOBO.

Q  The question was, do you have a specific recollection?

A  Not word for word, but I recall the discussions.

Q  Right.  And she said, again, "MacKenzie is not in the loop on Nuthatch, but I did ask their perspective on the accumulation."

Did I read that correctly?

Page 228

A  You read that correctly.

Q  And the first bullet point says, "."

A  That is the first bullet.

Q  Thank you.

And then second bullet goes on to say, ."

Do you see that?

A  I see that.

Q  Okay.  Thank you.

ATTORNEY CUMMINGS:  Let's go on to the Tab 45.  That should be Exhibit 32.

(Exhibit No. 32 marked for identification.)

BY ATTORNEY CUMMINGS:

Q  It's a September 1st, 2022, e-mail bearing Bates No. NAT-SL-00023790, and it goes to 7891.

Take a few minutes to review this document, Mr. Ilcisin.

A  Okay.  Finished reading it.

Q  Do you recognize this document?

A  I see it in front of me.

Q  This is a document about

Page 229

; is that right?

ATTORNEY COMERFORD:  Form.

THE WITNESS:  It is several people writing -- both            yes.

BY ATTORNEY CUMMINGS

.

Q  Okay.

Do you see that?

A  I do.

Q  And if you go to the second page of this e-mail, it ends 791, right there there's a September 1st, 2022, e-mail from Kevin White of MacKenzie to yourself, others at National Instrument, his colleagues at MacKenzie Partners.

Do you see that?

A  I do.

Q  And in his e-mail, Kevin indicates that

Page 230

; is that correct?

ATTORNEY COMERFORD:  Form.

THE WITNESS:  Yes, that's what it says.

BY ATTORNEY CUMMINGS:

Q  Okay.

.

A  Correct.

Q  Right?

A  Correct.

Q  .

A  Correct.

Q  Is that correct?

A  That is correct.

Q  Thank you.

ATTORNEY CUMMINGS:  How -- how is the videographer and court reporter doing?  I have just a handful more documents, but I wanted to give you an opportunity to eat lunch if you haven't already.

THE REPORTER:  I think we're okay.

ATTORNEY CUMMINGS:  Alex, could you mark as Exhibit 33, Tab 49.

Deposition of Kevin Ilcisin                                    In Re National Instruments Corporation Securities Litigation

Page 231

(Exhibit No. 33 marked for identification.)

BY ATTORNEY CUMMINGS:

Q It's a September 13th, 2022, e-mail, Bates No. NAT-SL-00023530, and it goes to 23532.

Do you have that in front of you?

A I do.

Q Take a few minutes to review this document, Mr. Ilcisin.

A Okay.

Q This is a September 13, 2022, e-mail from you to Karen Rapp.

Do you see that?

A I do.

Q Okay. And you say in this e-mail, "Next wine night is on me."

Do you see that?

A I do.

Q "Regardless of what Nuthatch does to both our hats," right?

A Correct.

Q And Nuthatch is a reference to Emerson?

A Yes.

Q Okay. And this is announcing Karen's retirement --

Page 232

A Correct.

Q -- from National Instruments?

A Yep.

ATTORNEY CUMMINGS: Can I just break for five minutes? I just want to make sure I'm done, but could you give me five minutes?

ATTORNEY COMERFORD: Sure.

THE WITNESS: Sure.

THE VIDEOGRAPHER: We're going off the record at 1:38 p.m.

(Recess 1:38-1:43.)

THE VIDEOGRAPHER: We're going back on the record at 1:43 p.m.

ATTORNEY CUMMINGS: Alex, could you mark -- and I'm sorry; I lost track of the count, but Exhibit 33?

EXHIBIT TECHNICIAN: This will be 34.

ATTORNEY CUMMINGS: 34? Could you mark as Exhibit 34, Tab 50. It's a September 19th, 2022, e-mail bearing Bates No. NAT-SL-00023189, and it goes to 190.

(Exhibit No. 34 marked for identification.)

////
////

Page 233

EXAMINATION (Continuing)

BY ATTORNEY CUMMINGS:

Q Mr. Ilcisin, please take a few minutes to review, and let me know when you've done so.

A I reviewed it. Thank you.

Q Okay. Great.

So the -- the e-mail is dated September 19th. It's from Mr. Dixon to yourself, others at National Instruments and personnel at Wachtell and Bank of America.

Do you see that?

A I do.

Q Okay. And in this e-mail, Mr. Dixon says, "Eric, Kevin, and I spoke this afternoon regarding the general message/Wolverine update to the board on Wednesday. The key points are as follows."

Do you see that?

A I do.

Q So these are points that Eddie put together based on conversation between you and him for the board.

A Correct.

Q Correct?

And one of the points that Mr. Dixon lists to be shared with the board is that, "NI is on

Page 234

Wolverine's acquisition pipeline list, and there is no evidence that Wolverine's interest has petered out."

Do you see that?

A I see those words.

Q Okay. And I read that correctly?

A You read it accurately.

Q Okay. And Mr. Dixon goes on to identify evidence of Wolverine's interest petering out.

Do you see that?

A I do.

Q And Wolverine here is referring to Emerson; is that correct?

A Correct.

Q Okay. And evidence of Emerson's interests petering out would be Emerson selling its shares of National Instruments; is that right?

A Correct.

ATTORNEY COMERFORD: Form.

ATTORNEY CUMMINGS: Thank you.

ATTORNEY COMERFORD: Mischaracterizes the document.

ATTORNEY CUMMINGS: Alex, could you mark as Exhibit 35, Tab 51.

////

Page 235

(Exhibit No. 35 marked for identification.)

BY ATTORNEY CUMMINGS:

Q Exhibit 35 is a September 21st, 2022, e-mail from Shawn Liu to yourself, Mr. Ilcisin. It bears Bates No. NAT-SL-00012292, and it attaches a presentation from Bank of America titled, "Project Wolverine firepower analysis." It's dated September 2022.

Do you see that?

A I see that.

Q Can you take a minute to review this document.

A The e-mail looks short. Is there -- is there --

Q Yes.

ATTORNEY CUMMINGS: Alex, could you please put up the second pages where the attachment actually begins.

BY ATTORNEY CUMMINGS:

Q Mr. Ilcisin.

A Thanks.

Q Page 2?

A Yeah, there we go.

Let me just scan this quickly. Okay.

Page 236

Q This the attachment that begins 293, and it's titled, "Project Wolverine - Firepower Analysis," September 2022 is analysis -- is an analysis of Emerson's financial capacity to engage in M&A; is that correct?

A That's correct.

Q And the analysis indicates that Nuthatch has ample capacity to engage in M&A; is that right?

ATTORNEY COMERFORD: Form.

THE WITNESS: It -- it shows what their capacity between cash and debt is.

BY ATTORNEY CUMMINGS:

Q Right. And Bank of America notes in the first bullet on the page ending 295, "As illustrated on the right, Nuthatch has ample capacity to pursue M&A"; is that right?

A Correct.

Q And I read that correctly?

A Yes.

Q Okay.

ATTORNEY CUMMINGS: I don't have any further questions at this time reserving all rights with respect to -- actually, strike all of that.

Page 237

BY ATTORNEY CUMMINGS:

Q Before I do that, Mr. Ilcisin, did you use text messaging to communicate with your colleagues at National Instruments regarding Project Wolverine?

A Sometimes, yes.

Q Okay. And what phone did you use to communicate via text message with your colleagues?

A It -- it was a personally owned phone on an NI plan.

Q Okay. Were you asked for your text messages in connection with this litigation?

A No.

ATTORNEY CUMMINGS: I don't have any further questions. I reserve my rights with respect to counsel's removal of the redactions on the handwritten notes that we discussed throughout your deposition and including the right to seek additional testimony if -- if needed in those documents produced without redactions.

THE WITNESS: Understood.

ATTORNEY CUMMINGS: Mr. Ilcisin, thank you for your time. Have a great day.

THE WITNESS: Thank you.

////

Page 238

EXAMINATION

BY ATTORNEY COMERFORD:

Q Mr. Ilcisin, my name is John Comerford. I represent the defendants in this case.

I'd like to ask you a few questions, okay?

A Certainly.

Q Where are you from originally?

A Edmonton, Alberta, Canada.

Q All right. Can you trace your education after high school, please.

A As said earlier, high school. Entered into an electrical engineering program at the University of Alberta in Edmonton, graduated with a Bachelor of Science in electrical engineering. And then entered grad school at Princeton in the astrophysical sciences department, where, as I previously shared, was granted a Master of Arts and then a Ph.D.

Q And what year did you obtain your Ph.D. from Princeton University?

A 1991.

Q Okay. How did you become involved with National Instruments?

A So I've been in the test and measurement industry for almost three decades. Prior to

Page 239

National Instruments, I was the chief technology officer, so responsible for product development, technology development at an industry peer of National Instruments.

As part of that role, National Instruments and Tektronix, my employer at that time, did a joint development project. We put out a product where both companies contributed technologies, both companies contributed engineering teams, and I was the head liaison to National Instruments.

Eric Starkloff, at the time, was head liaison from NI to Tektronix, and so we developed a personal and professional relationship. That led to discussions about possibly, you know, joining NI, which did eventually end up in a formal offer in coming over to NI in February of 2015.

Q How would you describe the business of National Instruments?

A So National --

ATTORNEY CUMMINGS: Object to form.

THE WITNESS: Pardon me?

ATTORNEY CUMMINGS: Go ahead, Mr. Ilcisin.

THE WITNESS: Oh, National Instruments is -- first of all, we can say it's a player in

Page 240

the tested measurement industry. And National Instruments' specific position in that industry is a provider of hardware and software that engineers use to test the products that they make. So any product that an electrical engineer makes that has something electrical, like plugs in or has batteries or has any kind of electrical components, the companies will use NI's equipment to test and confirm that their designs work the way they specify them to.

BY ATTORNEY COMERFORD:

Q Were you part of the management team at National Instruments in 2022?

A I was.

Q Was the -- was National Instruments interested in being acquired by another company in 2022?

A No.

ATTORNEY CUMMINGS: Objection to form.

BY ATTORNEY COMERFORD:

Q Why not?

A National Instruments had been an independent company since its founding. Its founder had long established a culture of independence and serving customers, and so the

Page 241

current management team believed that the best situation for our customers and our collection of stakeholders, suppliers, shareholders, employees was to continue executing against our plan to grow the company.

Q Prior to May of 2022 when the CEO of Emerson contacted the CEO of National Instruments, were you aware of any facts that suggested that Emerson was interested in acquiring National Instruments?

A No.

ATTORNEY CUMMINGS: Object to form.

BY ATTORNEY COMERFORD:

Q Would you describe Emerson's acquisition proposals to National Instruments in -- in May and June of 2022 as solicited or unsolicited?

ATTORNEY CUMMINGS: Objection to form. Compound.

THE WITNESS: Unsolicited.

BY ATTORNEY COMERFORD:

Q Okay. Were you involved in the decision by National Instruments to engage Bank of America after National Instruments received a letter from Emerson's CEO on May 25th, 2022?

A Yes.

Page 242

ATTORNEY CUMMINGS: Objection to form.

THE WITNESS: Yes, that's my role.

BY ATTORNEY COMERFORD:

Q Okay. For what purpose did National Instruments retain Bank of America after -- you know, during and after May of 2022?

ATTORNEY CUMMINGS: Objection to form.

THE WITNESS: To advise the board on matters related to receiving the unsolicited offer from the perspective of an investment banker.

BY ATTORNEY COMERFORD:

Q And the -- how would you describe National Instruments' engagement of Bank of America as an advisor?

ATTORNEY CUMMINGS: Objection. Form.

BY ATTORNEY COMERFORD:

Q Would -- would you describe it as defensive, or would you use any other word?

ATTORNEY CUMMINGS: Objection. Form.

THE WITNESS: So it was initially defensive to give them advice on staying independent.

BY ATTORNEY COMERFORD:

Q Okay. And how long did you consider the engagement of Bank of America by National

Page 243

Instruments to be defensive? Like what time period?

ATTORNEY CUMMINGS: Objection. Form.

THE WITNESS: I would say from the initial engagement in May of '22 until NI announced a -- publicly announced a strategic review process on behalf of the board.

BY ATTORNEY COMERFORD:

Q And what -- what month and year did that take place, to the best of your recollection?

A January 2023.

Q Okay. Okay. I want to ask you about some of the documents that you were asked to look at today.

ATTORNEY COMERFORD: Can we -- can we pull up Exhibit 1 on the screen, please? Or it's actually --

BY ATTORNEY COMERFORD:

Q It's in your binder if you just want to refer to that. We'll just do it that way.

Exhibit 1 is handwritten notes that you identified as being your handwriting, and there's a date on there of May 25th, 2022.

Do you see that?

A No. 3.

Page 244

ATTORNEY CUMMINGS: Objection. I think you mischaracterized the actual document. You said "May 25th, 2022."

ATTORNEY COMERFORD: Yeah.

BY ATTORNEY COMERFORD:

Q So I'm -- I'm looking at Tab 3 in your binder, which was marked as Exhibit 2 -- Exhibit 1 to your deposition, as I understand it.

ATTORNEY CUMMINGS: I believe -- I believe Exhibit 1 was a document ending 28044.

BY ATTORNEY COMERFORD:

Q All right. It's Exhibit 4 then. So it's the tab, Tab 3 in your binder.

A Okay.

Q I believe we marked this as Exhibit 4.

Okay. Do you recognize this? You -- you identified this earlier as the handwritten notes that you created. And you wrote a date on there of May 25th, 2022.

Do you see that?

A I do.

Q All right. On the second page of your notes, there are several bullet points, and there's a bullet that says, "View our shareholders as being interested."

Page 245

Do you see that?

A Uh-huh.

Q And then below that, could you read the next bullet point?

A "No one has real information."

Q And what did that mean, as best you can recall?

A I have to read the rest of it.

So this is shorthand notes, as I've shared that I often do, and it has to be taken into the previous context where one of the things that the financial advisors look at is the shareholder overlap between two strategic companies in a merger and acquisition.

And so that was their perspective on, you know, would our shareholders be interested. But no one has information. So it was one of these things that it's an interesting point of analysis that hadn't been done yet.

Q So your -- your notes saying "no one has real information," does that indicate that both National Instruments and its advisors were speculating about Emerson's intent?

ATTORNEY CUMMINGS: Objection to form. Asked and answered.

Page 246

BY ATTORNEY COMERFORD:

Q Let me ask it a different way.

A Sure.

Q When you wrote, "No one has real information," how did that relate to the knowledge of National Instruments and the knowledge of National Instruments advisors at this time, in May 25th, 2022?

ATTORNEY CUMMINGS: Same objection. Asked and answered.

THE WITNESS: We were speculating --

ATTORNEY CUMMINGS: And objection to form.

THE WITNESS: We're just speculating.

BY ATTORNEY COMERFORD:

Q Great.

And then the next bullet, as I read it says, "Soft outreach"; is that correct?

A Correct.

Q All right. What did that mean, as best you can recall?

A So this is -- as best as I recall -- and this goes all the way up to the start of the -- we'll call it paragraph that says, "Run at Rockwell." So this was putting a previous event in terms of a Rockwell, and I don't remember

Page 247

whether that was Emerson pursuing a Rockwell or Rockwell pursuing someone else. And it's just what did that look like. And, you know, it started with the soft outreach.

Q Okay. Below that, three bullets down, I think it says, "Make sure," but I'm not -- I'm not sure.

Can you read that bullet?

A Yeah. "Make sure they understand it will be tough," and, "It would -- it would be tough for a deliberate process."

I think that's referencing somebody commenting that if they're going to do a proxy, you know, fight and overtake the board, that it's a long haul.

Q Okay. Let me ask you to look at the next page which is marked in the corner 22250.

A Yeah.

Q You have a bullet there that says, "Convince them it is a two-year battle"?

A Yes.

Q What -- what did that note mean, as best you can recall?

A So it refers to potentially a couple of things. Going to the previous page, there's the

Page 248

question on if you're going to launch a tender offer proxy battle, that's a long process. There's also the question of any time you try to do something like this, there is the regulatory environment.

And we were talking -- at the time, given that this was '22, the advisors and I were well aware because of deals I was trying to do, the regulatory environment that would make getting things through like the China antitrust agencies very difficult.

Q Okay. Let me ask you to look at what was marked as Exhibit 7, and that should be Tab 9 in your binder. And I'm going to ask you to look at the page that's labeled NAT-SL-19761.

A Yes.

Q Now, toward -- now, I think you testified earlier that -- that these were notes that you created, right?

A Correct.

Q And do you remember, just orient yourself, who was participating in the meeting that these notes reflect?

ATTORNEY CUMMINGS: Objection to form.

THE WITNESS: So the first page specifies

Page 249

that -- and it's -- the first entry is biographical information on Mr. Phil Youn. So this means that it would have to have been a call that included Bank of America and new members of Bank of America, which is the only reason I would have written Phil's name down.

BY ATTORNEY COMERFORD:

Q Okay. And then toward the bottom, I can see that you wrote, "Typically going public is last resort."

Did I read that right?

A That's correct.

Q And then you wrote, "Hostile bids are up this year."

Did I read that right?

A Correct.

Q Then you wrote, "Most likely they will come back once."

A Correct.

ATTORNEY CUMMINGS: Object to form. Asked and answered.

BY ATTORNEY COMERFORD:

Q Did I read that correctly?

A Yes.

Q Okay. And so what does that refer to when

Page 250

you wrote, "Most likely they will come back once"?

ATTORNEY CUMMINGS: Objection. Asked and answered.

THE WITNESS: Okay. That our expectation is that the -- Emerson would likely submit another letter based on the bankers. That's not us. That's speculation from the bankers that they would probably submit another letter.

BY ATTORNEY COMERFORD:

Q Okay. And so what the bankers at Bank of America were telling you and others at National Instruments as of this time, June 2nd, 2022, is that their -- their reading of the situation was that most likely Emerson would come back once and not multiple times.

Is that a fair reading of your --

ATTORNEY CUMMINGS: Objection to form. Mischaracterizes the document.

ATTORNEY COMERFORD: I just have to finish the question, and then -- and then the objection can be interposed after I finish speaking, if that would be okay.

ATTORNEY CUMMINGS: You said, "Is that a fair reading," so I thought your question was finished.

Page 251

ATTORNEY COMERFORD:  I'm saying I wasn't done with my question.  If you could just wait until I'm done speaking and not speak over me, I would appreciate it, Ms. Cummings.  Thank you.

BY ATTORNEY COMERFORD:

Q  Now, when you wrote, "Most likely they will come back once," is that an accurate depiction of what National Instruments advisors were telling you and others within management?

A  Yes.

ATTORNEY CUMMINGS:  Objection to form.

THE WITNESS:  Yes, in the context of typically going public as the last resort.  So they'll come back once privately before they would go public.

BY ATTORNEY COMERFORD:

Q  Okay.  Now let's look at what we marked as Exhibit 29, which should be under Tab 42 in your binder.  These are notes that you created, and they are -- the date of August 11th, 2022, is written there; is that right?

A  Correct.

Q  Okay.  And toward the end of these notes, there's a line where you wrote, "More often than not, decide it's not worth it."

Page 252

Do you see that?

A  Uh-huh.

Q  You have to say "yes" out loud.

A  Oh, yes.  Sorry.

Q  That's okay.

Did I read that correctly?

A  You read it correctly.

Q  And describe for me what that is referring to.

A  So this --

ATTORNEY CUMMINGS:  Object to form.

THE WITNESS:  So this section is a -- is a retelling anonymously by the advisors that they had one to two clients that had been in a similar situation, that the share accumulation was meant to show hostility, but that more often than not, based on their experience that the, you know, acquiring company decides it's not worth to keep going.

ATTORNEY COMERFORD:  Okay.  Those are all the questions I have for you, sir.

ATTORNEY CUMMINGS:  I have a few questions to follow up.  Just bear with me.

THE WITNESS:  Certainly.

////

Page 253

FURTHER EXAMINATION

BY ATTORNEY CUMMINGS:

Q  I believe you testified, Mr. Ilcisin, that you developed a personal professional relationship with Mr. Starkloff?

A  Yes.

Q  When is the last time you spoke with Mr. Starkloff?

A  I think November of -- October or November of '24, because I was in Austin, and I met him for coffee.

Q  Would you say you've developed a personal and professional relationship with Ms. Rapp?

A  Yes.

Q  When is the last time you spoke with Ms. Rapp?

A  Last Wednesday.

Q  What did you talk about?

A  I needed her -- I have a -- I have an -- explicitly, I have a need to user a service like MacKenzie Partners that we've been talking about, and since I haven't been looking at these materials for two years, I remembered that the person who could tell me who and I used at the time might be Karen, so I called her to get -- to

Page 254

see if she remembered the name of the firm we used.

Q  Great.

Would you say you have a personal and professional relationship with Mr. Dixon?

A  I do.

Q  When is the last time you spoke with Mr. Dixon?

A  Oh, now actually you're reminding me.

The last time I saw Mr. Dixon and the last time I saw Mr. Starkloff was March of this year, because they both came to my 60th birthday party.  I forgot about that.

ATTORNEY CUMMINGS:  I don't think I have anything else at this moment, subject to my prior comment about the handwritten notes and the redactions.

THE WITNESS:  Understood.

ATTORNEY CUMMINGS:  Thank you very much for your time, Mr. Ilcisin.

THE WITNESS:  Absolutely.

THE VIDEOGRAPHER:  This concludes the deposition.  We're going off the record at 2:06 p.m.

////

(Signature reserved.)

(Deposition concluded at 2:06 p.m.)

REPORTER'S CERTIFICATE

I, CONNIE A. RECOB, the undersigned Certified Court Reporter, authorized to administer oaths and affirmations in and for the States of Washington, Oregon, Utah and Idaho, do hereby certify that the sworn testimony and/or proceedings, a transcript of which is attached, was given before me at the time and place stated therein; that any and/or all witness(es) were duly sworn to testify to the truth; that the sworn testimony and/or proceedings were by me stenographically recorded and transcribed under my supervision, to the best of my ability; that the foregoing transcript contains a full, true, and accurate record of all the sworn testimony and/or proceedings given and occurring at the time and place stated in the transcript; that a review of which was requested; that I am in no way related to any party to the matter, nor to any counsel, nor do I have any financial interest in the event of the cause.

WITNESS MY HAND and SIGNATURE this 31st day of October, 2025.

_____

/s/CONNIE A. RECOB, RMR, CRR
Oregon CCR No. 15-0436

DEPOSITION ERRATA SHEET


Our Assignment No.  46618

Case Caption:  In re NATIONAL INSTRUMENTS

CORPORATION SECURITIES LITIGATION


DECLARATION UNDER PENALTY OF PERJURY


I declare under penalty of perjury

that I have read the entire transcript of

my Deposition taken in the captioned matter

or the same has been read to me, and

the same is true and accurate, save and

except for changes and/or corrections, if

any, as indicated by me on the DEPOSITION

ERRATA SHEET hereof, with the understanding

that I offer these changes as if still under oath.


Signed on the _____ day of _____,

2025.


_____

KEVIN ILCISIN

DEPOSITION ERRATA SHEET

Page No._____Line No._____Change to:_____

_____

Reason for change:_____

Page No._____Line No._____Change to:_____

_____

Reason for change:_____

Page No._____Line No._____Change to:_____

_____

Reason for change:_____

Page No._____Line No._____Change to:_____

_____

Reason for change:_____

Page No._____Line No._____Change to:_____

_____

Reason for change:_____

Page No._____Line No._____Change to:_____

_____

Reason for change:_____

Page No._____Line No._____Change to:_____

_____

Reason for change:_____

 SIGNATURE:_____DATE:_____

                    KEVIN ILCISIN

## WORD INDEX

**< $ >**
**$3B**  207:*19*
**$48**  43:*9, 25*  44:*7, 10*
 45:*18*  49:*16, 24*  53:*6,*
 *18, 20, 22*  69:*9*  81:*2*
 82:*15*  83:*9, 22*
 124:*24*  129:*3*  136:*21*
**$48/share**  89:*22*
**$48-per-share**  82:*25*
 136:*25*
**$51**  31:*6*  122:*20*
 125:*19*
**$55**  126:*2, 6, 11, 18*
**$58.50**  129:*22*
**$60**  53:*22*  54:*12*
 129:*13*  139:*12*
**$61**  129:*9, 10, 11*

**< 0 >**
**08-05-22**  215:*8*

**< 1 >**
**1**  3:*8*  31:*12, 13, 16,*
 *23*  32:*1*  33:*17*  34:*6*
 76:*3, 6*  93:*13*  98:*10*
 114:*13, 22*  220:*3*
 230:*1, 2, 7*  243:*16, 21*
 244:*7, 10*
**1.26**  217:*14*
**1:23-cv-10488**  1:*5*
**1:38**  232:*10*
**1:38-1:43**  232:*11*
**1:43**  232:*13*
**10**  4:*1*  62:*10*  119:*19,*
 *20, 24*  215:*4*
**10:45**  99:*1, 20*  102:*2*
**100**  44:*6*
**10170**  2:*6*
**104**  3:*19*
**106**  3:*21*
**10b-5-1**  188:*10*
**11**  4:*5, 23*  113:*13*
 114:*1*  115:*15, 17*
 130:*23, 24*  131:*2*
 143:*3*  181:*6*  219:*12*
**11:00**  113:*6*
**11:00-11:10**  113:*7*

**11:05**  98:*7*  100:*20*
 101:*16*  102:*11*
**11:10**  113:*9*
**11:23**  198:*6*
**11:30**  220:*3*
**113**  3:*23*
**1133171-7801**  1:*18*
**114**  61:*17*
**117**  3:*24*
**119**  4:*4*
**11th**  148:*7, 11*
 166:*19, 21*  251:*20*
**12**  4:*5*  9:*23*  117:*8*
 135:*14, 15*  145:*6*
**12:44**  195:*19*
**12:44-12:54**  195:*20*
**12:54**  195:*22*
**121**  62:*8*
**122**  66:*3*
**123**  72:*25*
**124**  74:*22*
**126**  75:*20*
**1266**  39:*21*
**12th**  113:*19*  184:*5,*
 *11, 22*
**13**  4:*7*  119:*19*
 148:*19, 20, 22*  161:*20*
 231:*11*
**130**  4:*5*
**135**  4:*7*
**13th**  231:*4*
**14**  4:*10*  119:*6, 25*
 125:*7*  130:*23*  158:*24*
 159:*5, 7*  161:*19*
**1448**  117:*13*
**145**  3:*15*  57:*24*
 165:*2, 6, 8*
**148**  4:*9*
**14th**  117:*21*  119:*10*
 121:*21*  122:*4*  124:*13*
 181:*14*  184:*19, 23*
 186:*14*  193:*1*
**15**  4:*10*  135:*14*
 164:*14, 16, 19*  197:*1*
**15-0436**  1:*17*  256:*24*
**15147**  164:*21*
**155-156**  6:*1*
**158**  4:*10*  6:*1*
**15th**  196:*11*

**16**  4:*12*  167:*10, 11,*
 *14, 16*
**163-164**  6:*1*
**164**  4:*12*
**167**  4:*14*
**168**  192:*23*
**17**  4:*15*  174:*20, 21*
 175:*2*  176:*22*
**170**  6:*1*
**174**  4:*15*
**177**  4:*17*
**18**  4:*15*  18:*23*
 176:*23, 24*  177:*1, 4*
**183**  4:*18*
**1832**  2:*5*
**186**  4:*20*
**187**  209:*25*
**19**  4:*18*  148:*18*
 183:*8, 11*  186:*4*
 188:*4*
**190**  212:*20*  232:*21*
**1900**  2:*11*
**192**  4:*22*
**196**  4:*23*
**1986**  16:*14*
**199**  5:*4*
**1990**  17:*4*
**1991**  17:*11*  238:*21*
**1994**  17:*19, 20*
**19th**  232:*19*  233:*8*
**1st**  21:*20*  164:*25*
 228:*18*  229:*13, 20*

**< 2 >**
**2**  3:*12*  36:*7*  39:*13,*
 *14*  40:*11, 13*  51:*23*
 52:*2, 22*  55:*21, 23*
 56:*6, 9, 14, 21*  57:*1*
 76:*3, 10*  81:*11*  83:*8,*
 *17*  91:*3*  93:*1*  125:*5*
 134:*5*  136:*4*  142:*10,*
 *11, 13, 15*  187:*11*
 202:*9*  235:*23*  244:*7*
**2.2**  230:*8*
**2:06**  254:*24*  255:*2*
**2_Project**  115:*1*
**20**  4:*18*  98:*10*
 158:*17*  186:*5, 6*
**2001**  17:*24, 25*
**201**  5:*6*

**2015**  18:*11, 13*  19:*7*
 239:*17*
**2016**  19:*9*
**2017**  19:*17*
**2020s**  19:*19*
**2022**  31:*17*  32:*12*
 34:*9*  38:*4*  40:*23*
 44:*17*  45:*20*  57:*24*
 61:*24*  68:*14*  70:*14*
 85:*16*  93:*8*  96:*13*
 97:*8, 19*  98:*4, 7*
 99:*10*  100:*13*  101:*21*
 104:*6, 24*  106:*20*
 107:*18*  113:*19*
 114:*18, 22*  115:*21*
 117:*22*  118:*24*  119:*6,*
 *10, 25*  121:*21*  122:*4*
 124:*13, 23*  125:*7*
 129:*3, 5*  131:*4, 19*
 134:*6*  135:*23, 24*
 136:*6*  137:*2*  142:*9,*
 *10, 25*  143:*9*  144:*11*
 148:*24*  150:*4*  151:*10,*
 *16*  153:*25*  156:*13*
 158:*21*  160:*2, 11, 22*
 161:*7*  164:*21, 25*
 165:*15*  166:*5, 13, 22*
 167:*17*  168:*4, 25*
 170:*25*  172:*4*  177:*4*
 178:*10*  184:*5, 12, 21,*
 *23*  186:*14*  188:*19*
 193:*1*  196:*11*  197:*1*
 199:*22*  200:*3, 20, 23*
 201:*7, 18, 25*  202:*1,*
 *11, 25*  203:*8, 16*
 205:*3*  206:*25*  207:*7*
 208:*4, 23*  209:*24*
 211:*4, 13*  212:*24*
 215:*4*  219:*12*  223:*15*
 228:*18*  229:*13, 20*
 231:*4, 11*  232:*19*
 235:*4, 9*  236:*3*
 240:*13, 17*  241:*6, 16,*
 *24*  242:*6*  243:*23*
 244:*3, 19*  246:*8*
 250:*12*  251:*20*
**2022-07-14**  187:*1*
**2023**  14:*11*  20:*21*
 30:*24*  243:*11*
**2024**  21:*20*

**2025**  1:*10*  7:*2, 11*  70:*14*  256:22  257:*20*
**206**  5:*8*  177:*6*
**209**  5:*9*
**20th**  31:*17*  32:*12*  34:*9*  38:*4*  131:*3, 19*  134:*6*
**21**  4:*4, 20*  164:*15*  192:*15, 16, 22*
**211**  196:*13*
**212**  2:*6*  5:*11*
**215**  5:*13*
**219**  5:*14*
**21st**  131:*4*  137:*2*  235:*4*
**22**  4:*23*  196:4, 6, *11*  243:*5*  248:*7*
**22250**  247:*17*
**223**  5:*16*
**224**  5:*17*
**228**  5:*19*
**22nd**  61:*24*  135:*23, 24*  136:6  144:*11*  148:*24*  149:*18*  150:*4*  151:*16*  160:*11*  166:*13, 22*  172:*4*  201:*7*  202:*1*  203:*7, 16*
**23**  3:*19*  5:*1*  199:*18, 19*  200:*17*  204:*1, 3, 7*
**230**  188:*7, 8*
**231**  5:*20*  188:*18*
**232**  5:*22*
**234**  184:*16*
**235**  5:*24*
**23532**  231:*5*
**236**  191:*9*
**238**  3:*5*
**239**  183:*18*
**23rd**  151:*10*  160:*2, 22*  161:*7*  223:*15*
**24**  5:*4*  45:*20*  158:*21*  201:*12, 13*  253:*10*
**240**  201:*17*
**249**  91:*5*
**24th**  129:*5*  153:*25*
**25**  5:*6*  167:*10*  206:*21, 22*  207:*3*  217:*21*

**250**  78:*4*  93:*6*
**250M**  176:*17*
**253**  3:*6*
**25th**  40:*19, 23*  44:*17*  57:*24*  68:*14*  70:*14*  77:*6*  96:*13*  97:*8, 19*  98:*4, 7*  99:*10*  100:*13*  101:*21*  104:*6*  118:*24*  129:*2*  142:*9, 10, 25*  143:*9*  224:*17*  241:*24*  243:*23*  244:*3, 19*  246:*8*
**26**  5:*9*  85:*16*  116:*6*  174:*20*  208:*21*  209:*20, 21*
**263**  208:*21*
**2631**  1:*17*
**264**  56:*9*  208:*3*
**265**  56:*16*  207:*13*
**266**  47:*17*  56:*23*
**267**  207:*1*
**27**  5:*9*  156:*13*  176:*22*  212:*12, 13*
**27th**  12:*19*  104:*6*  149:*19*  150:*4*
**28**  5:*12*  214:*24*  215:*1*  216:*10, 11*
**28044**  244:*10*
**28th**  12:*19*
**29**  5:*14*  183:*2*  219:*3, 4, 10*  251:*18*
**293**  236:*1*
**295**  236:*15*
**29th**  12:*15*
**2nd**  106:*20*  107:*18*  201:*18, 25*  202:*11, 25*  250:*12*

**< 3 >**
**3**  3:*14*  55:*16, 17*  57:*22*  58:*16*  63:*6, 10*  65:*4, 24*  76:*3*  77:*15*  137:*7*  170:*22*  187:*6*  243:*25*  244:*6, 13*
**3:30**  12:*15*
**3_Wolverine**  115:*5*
**30**  1:*10*  5:*14*  7:*2*  186:*5*  222:*13*  223:*11, 12, 15*

**30th**  7:*11*  164:*21*  165:*15*  166:*5*
**31**  3:*11*  4:*10*  5:*17*  192:*15*  224:*13, 14, 17*
**314**  2:*12*
**31st**  256:*21*
**32**  5:*17, 20*  228:*14, 15*
**33**  5:*20*  196:*5*  230:*25*  231:*1*  232:*16*
**34**  5:*20*  232:*17, 18, 19, 22*
**34-page**  58:*18*
**35**  5:*23*  201:*12*  234:*24*  235:*1, 4*
**36**  199:*18*
**37**  206:*21*
**38**  209:*20*
**39**  3:*13*  4:*18*  45:*19*  129:*4*  212:*12*

**< 4 >**
**4**  3:*16*  51:*25*  52:*6, 16, 25*  65:*9, 25*  77:*15, 16, 21, 22, 24*  78:*5*  83:*25*  96:*20*  205:*3*  244:*12, 15*
**40**  5:*6*
**40s**  157:*7*  158:*3*  162:*11*
**41**  4:*9*
**412**  137:*7*
**413**  135:*20*  147:*14*
**42**  219:*3*  251:*18*
**420**  2:*5*
**43**  222:*13*
**432-5125**  2:*6*
**44**  4:*5*  181:*8*  224:*13*
**45**  181:*8*  228:*14*
**46618**  1:*19*  257:*3*
**47**  4:*14*
**47_0019**  4:*12*
**48**  3:*24*  78:*4*  157:*6*  158:*3*  162:*11*
**49**  214:*24*  230:*25*
**4th**  199:*22*  200:*20*

**< 5 >**

**5**  3:*16*  55:*16*  57:*22*  77:*19*  96:*20, 21*  102:*17*
**5/25**  93:*8*
**5/25/2022**  78:*11*  80:*24*  83:*9*
**5/25/2025**  78:*1*
**5/26**  82:*11*
**5/27**  104:*24*
**5:00**  12:*15*
**50**  3:*16*  232:*19*
**51**  137:*1*  234:*24*
**521**  120:*18*  130:*3*
**55**  3:*15*

**< 6 >**
**6**  3:*19*  4:*17*  103:*25*  104:*1, 4*  167:*17*  168:*24*  170:*25*
**6.14**  115:*5*
**6/14**  114:*18*
**60th**  254:*12*
**61**  3:*21*
**6-14-2022**  115:*11*
**63105**  2:*12*
**636**  150:*8*
**638**  161:*23*
**639**  156:*10*  162:*8*
**641**  148:*25*
**642**  131:*12*
**643**  134:*1*
**644**  131:*5*
**646**  168:*20*
**647**  167:*19*  170:*22*
**66**  3:*13*
**67**  5:*8*
**68**  4:*22*
**69**  5:*13*
**6th**  168:*4*

**< 7 >**
**7**  3:*19*  103:*25*  106:*15, 16, 19*  177:*4*  178:*10*  188:*19*  248:*13*
**702**  4:*20*
**730**  159:*22*
**731**  158:*23*
**761**  106:*21*  111:*4*

**7676**  2:*11*
**77**  3:*16*
**783**  200:*4, 24*
**785**  200:*19*
**7891**  228:*19*
**791**  229:*19*

**< 8 >**
**8**  3:*22*  113:*11, 13, 14*
207:*7*  208:*23*  209:*24*
**8:57**  7:*2, 12*
**8-2-2022.pdf**  201:*20*
**85**  5:*4*  199:*24*
**8520**  120:*2*
**8521**  120:*2*
**86**  229:*14*
**87**  5:*9*
**889**  223:*17*
**889-7300**  2:*12*
**89**  5:*16*
**8th**  206:*25*  208:*4*
212:*24*

**< 9 >**
**9**  3:*4, 24*  106:*15*
117:*8, 9*  230:*13*
248:*13*
**9:44:28**  98:*4*
**9:45**  100:*12*
**9:51**  57:*13*
**9:51-9:57**  57:*14*
**9:55**  101:*21*  102:*7*
**9:57**  57:*16*  98:*25*
**9:57:26**  99:*12*
**9:58**  101:*11*
**9:58:26**  101:*6*
**90**  5:*11, 22*
**90s**  10:*2*
**91**  5:*19*
**922**  105:*8*
**923**  104:*5*  105:*10*
113:*25*  115:*18*
**938**  116:*6*
**95**  5:*24*
**96**  3:*18*
**963**  181:*7*
**976**  3:*23*  113:*21*

**< A >**

**a.m**  7:*3, 12*  57:*13, 16*
113:*6, 9*  198:*6*
**ability**  215:*18*  256:*13*
**able**  179:*6*  196:*17*
**Absolutely**  10:*9*
254:*21*
**accelerate**  111:*1*
**accelerators**  110:*17, 23*
**Acceptable**  10:*20*
13:*21*
**accepted**  17:*14*
**access**  138:*9*
**accumulate**  73:*18*
**accumulated**  73:*23*
221:*23*  227:*8*
**accumulating**  218:*21*
**accumulation**  63:*24*
65:*8*  73:*14*  74:*6*
75:*4*  218:*15*  223:*6*
224:*3*  225:*3, 13, 18*
226:*1, 7*  227:*24*
228:*3, 8*  229:*1*  230:*8*
252:*15*
**accumulations**  76:*19*
226:*24*
**accurate**  251:*7*
256:*14*  257:*13*
**accurately**  234:*7*
**achieve**  42:*2, 16*
**achieved**  143:*18*
**acquire**  14:*14*  22:*4, 13*  24:*1*  35:*8*  40:*24*
43:*8, 24*  48:*22*  49:*15, 23*  53:*5, 16*  63:*14*
71:*14*  78:*22*  79:*7*
80:*18*  81:*2*  88:*8, 12*
95:*19*  102:*19*  124:*24*
136:*19, 20*  168:*14*
192:*2*
**acquired**  14:*8*
217:*14*  230:*1*  240:*16*
**acquirer**  62:*21*
79:*23*  80:*4, 11*  112:*9*
**Acquirers**  62:*16*
**acquiring**  35:*23*
37:*20*  63:*24*  95:*16*
123:*5*  241:*9*  252:*18*
**acquisition**  26:*20*
27:*11*  65:*8*  80:*14*

110:*13, 25*  119:*12*
125:*14*  217:*18, 20*
230:*6*  234:*1*  241:*14*
245:*14*
**acquisitions**  20:*6, 10*
**acronym**  153:*4, 5*
**Act**  182:*5*
**action**  64:*24*  107:*13*
152:*13, 14, 23*  161:*10, 13, 16*
**actions**  135:*11*
179:*25*  197:*15*
**actively**  179:*2*
**Activism**  58:*12*  62:*3*
**activist**  37:*22*  87:*12, 13, 14, 18, 21*  94:*4*
**activists**  197:*14*
**activities**  22:*16*
72:*13*  125:*2*  157:*17*
214:*2*
**activity**  22:*17*  74:*17*
75:*17*  185:*24*  218:*16*
230:*12*
**actual**  41:*16*  92:*1*
179:*5*  216:*20*  244:*2*
**Adam**  84:*3, 6*
**added**  98:*19*  228:*9*
**adding**  194:*19*
**Additional**  133:*14*
138:*11*  230:*1, 7*
237:*19*
**addressed**  136:*7*
202:*22*
**administer**  256:*3*
**advance**  195:*24*
**advances**  138:*2*
**advice**  28:*4*  29:*21*
92:*10*  157:*15*  172:*2*
242:*21*
**advise**  50:*21*  242:*8*
**advised**  30:*22*  182:*1*
**advises**  72:*10*
**advising**  26:*15*  27:*18*
63:*21*  75:*2*  104:*19*
146:*1*  180:*24*  181:*17*
217:*11*
**advisor**  24:*22*  25:*21, 25*  26:*11, 15, 24*  27:*2, 6, 9, 18, 21*  28:*3, 11, 14, 25*  29:*4, 8, 19*

54:*20, 24*  146:*6, 9, 12*
186:*25*  187:*12*
222:*20, 21*  242:*14*
**advisors**  24:*7, 14, 16*
25:*2, 4, 10, 14*  26:*12*
46:*20*  90:*6, 11*  92:*10*
145:*18, 23*  159:*17*
189:*2, 22*  190:*11*
193:*20*  195:*2, 8*
203:*12*  218:*19*
221:*24*  223:*4*  245:*12, 22*  246:*7*  248:*7*
251:*8*  252:*13*
**affirmations**  256:*4*
**afternoon**  12:*15*
233:*14*
**agencies**  248:*10*
**agenda**  114:*19, 21, 25*
115:*4*
**aggressive**  111:*25*
**ago**  9:*23*  68:*15*
77:*12*  81:*18*
**agree**  27:*16*  64:*3*
145:*1*  168:*10*  224:*7*
**agreeable**  46:*22*
**agreed**  130:*16*
**agreement**  46:*22*
53:*16*  137:*19*  141:*8, 14*  143:*17*  144:*5*
146:*24*  147:*6*
**agreements**  48:*16*
**ahead**  22:*6*  47:*25*
65:*25*  69:*8*  74:*9*
109:*15, 21, 22*  119:*16*
128:*10*  139:*24*
219:*17*  239:*23*
**AI**  107:*13*  152:*12*
**AI-based**  21:*6*
**Albert**  186:*17*  193:*9*
194:*25*  195:*1*
**Alberta**  16:*3, 4, 6, 9, 13, 16*  238:*8, 13*
**Albert's**  193:*23*
**Alex**  31:*11*  39:*12*
51:*22*  52:*1, 21*  55:*15*
56:*6, 13, 20*  57:*7, 21*
58:*19*  59:*4*  60:*10, 19*
61:*19*  62:*9*  75:*20*
77:*3, 14, 20*  81:*10*
83:*16, 24*  96:*19*

103:*24*  106:*14*  113:*10*, *11*  114:*1*, *4*  117:*7*  119:*18*, *23*  130:*9*, *22*  135:*14*  136:*3*  137:*7*, *8*  142:*8*, *19*  145:*5*  158:*17*  159:*6*  161:*19*  164:*14*  165:*5*  167:*9*  174:*19*  176:*21*  181:*6*  183:*11*  187:*5*  188:*5*  195:*12*, *25*  196:*4*  199:*17*  201:*11*  206:*20*  209:*19*  215:*19*  216:*7*  219:*2*  222:*12*  223:*10*  224:*12*  230:*24*  232:*14*  234:*23*  235:*17*

**aligned**  187:*16*  194:*5*
**allow**  138:*11*, *21*
**Alluri**  205:*2*, *8*
**alternatives**  39:*5*
**ambitious**  169:*6*
**America**  25:*8*, *12*  30:*13*, *16*, *18*, *22*  31:*2*  54:*19*  108:*2*  116:*2*  150:*11*  164:*23*  200:*2*, *21*  221:*6*  233:*10*  235:*7*  236:*14*  241:*22*  242:*5*, *13*, *25*  249:*4*, *5*  250:*11*
**amount**  31:*7*
**amounts**  31:*4*
**ample**  116:*19*  236:*8*, *16*
**analyses**  118:*15*
**analysis**  108:*5*, *22*  109:*11*, *19*  116:*12*, *15*, *23*  171:*15*  235:*8*  236:*3*, *4*, *7*  245:*18*
**analyst**  151:*5*
**analysts**  133:*3*
**and/or**  132:*9*  256:*6*, *8*, *10*, *15*  257:*14*
**Anna**  208:*7*
**announce**  47:*4*  122:*24*  124:*9*
**announced**  243:*5*, *6*
**announcement**  126:*9*, *10*  141:*8*  143:*17*  200:*3*, *23*  204:*17*

205:*10*  207:*8*  210:*16*  212:*25*  213:*16*
**announces**  204:*14*
**announcing**  123:*8*  141:*14*  144:*4*  231:*24*
**annual**  20:*1*
**anomaly**  205:*17*
**anonymously**  252:*13*
**ANSWER**  6:*1*  10:*13*  11:*8*  15:*12*  22:*9*  27:*15*  28:*2*, *18*, *22*  29:*17*  41:*11*  53:*13*  59:*15*  64:*16*  71:*22*  94:*22*  102:*25*  103:*19*  139:*5*  163:*4*, *12*, *19*  164:*9*  190:*5*  202:*20*
**answered**  15:*4*, *5*, *10*  27:*25*  29:*10*, *24*  65:*17*  69:*24*  70:*18*  79:*16*  94:*19*  245:*25*  246:*10*  249:*21*  250:*3*
**antitrust**  248:*10*
**anybody**  112:*6*
**apologize**  195:*24*  218:*14*
**appear**  32:*11*  78:*10*  89:*19*  94:*25*  161:*25*  184:*19*
**APPEARANCES**  2:*1*  7:*22*
**appeared**  7:*3*
**appearing**  9:*7*  50:*20*
**appears**  34:*11*  97:*7*  164:*12*  170:*2*
**appointment**  97:*20*
**appreciate**  30:*11*  147:*12*  251:*4*
**approach**  37:*21*  66:*10*, *24*  67:*15*, *18*, *19*, *25*  68:*1*, *5*  72:*11*  74:*25*  75:*25*
**approached**  80:*18*
**approaches**  64:*5*
**appropriate**  135:*11*  180:*1*
**appropriately**  157:*25*
**approval**  146:*22*
**approved**  147:*5*
**area**  172:*9*

**arrow**  86:*18*  91:*13*  109:*11*  134:*13*  169:*5*  171:*10*, *11*  175:*10*  191:*14*
**art**  144:*20*
**Arts**  17:*1*  238:*17*
**Aside**  12:*20*  13:*2*  100:*11*
**Asked**  15:*4*, *9*  27:*25*  29:*10*, *17*, *24*  57:*21*  65:*16*  69:*23*  70:*18*  90:*7*  94:*19*  159:*18*  190:*9*  227:*5*, *6*, *10*  237:*11*  243:*13*  245:*25*  246:*9*  249:*20*  250:*2*
**asking**  30:*20*  31:*9*  51:*17*  52:*1*  54:*5*, *6*  59:*16*, *18*, *23*  72:*20*  81:*14*  148:*11*  158:*2*  160:*24*  163:*19*  165:*18*  166:*12*  182:*15*  190:*14*, *17*  211:*9*  229:*5*
**asks**  148:*1*
**assess**  164:*3*
**assessment**  103:*1*  132:*16*
**assessments**  103:*8*
**asset**  117:*3*  207:*9*  208:*18*  209:*11*  210:*13*  212:*6*  213:*1*
**assets**  87:*9*
**Assignment**  257:*3*
**assist**  22:*25*
**assistance**  203:*11*
**assisting**  24:*13*
**associated**  108:*1*  215:*25*
**assume**  11:*3*  19:*5*  122:*5*  161:*17*
**Assumes**  96:*15*  127:*12*
**assumptive**  142:*1*
**astrophysical**  17:*1*  238:*16*
**asymmetry**  132:*17*, *24*  133:*1*
**attached**  215:*21*  216:*15*  256:*7*

**attaches**  58:*4*  113:*21*  164:*22*  200:*1*, *21*  201:*19*  215:*6*  235:*7*
**attaching**  135:*24*  186:*22*
**attachment**  3:*12*, *14*  4:*5*, *10*, *18*  5:*1*, *4*, *12*, *23*  58:*7*, *10*  61:*17*  113:*24*  114:*7*, *9*, *14*, *18*, *21*, *25*  115:*24*  187:*2*  200:*4*  215:*7*  235:*18*  236:*1*
**attachments**  3:*22*
**attend**  117:*25*  118:*2*
**attendance**  24:*6*
**attended**  16:*2*  117:*23*, *24*
**Attendees**  97:*23*
**attending**  8:*25*  23:*24*
**attention**  61:*15*  168:*19*  208:*22*
**ATTORNEY**  3:*4*, *5*, *6*  7:*24*  8:*5*, *10*, *13*, *18*, *22*  9:*1*, *5*, *16*  15:*4*, *5*, *6*, *9*, *11*  22:*1*, *2*, *5*, *8*, *14*, *19*  23:*3*, *4*  24:*2*, *4*  25:*17*, *18*, *22*, *23*  27:*4*, *7*, *12*, *14*, *24*  28:*1*, *15*, *17*, *19*, *21*  29:*9*, *14*, *22*  30:*1*, *3*  31:*11*, *15*  39:*12*, *16*, *23*, *24*  41:*5*, *6*, *9*, *10*  42:*25*  43:*4*, *11*, *14*  44:*2*, *8*, *20*, *22*  45:*3*, *7*, *22*, *25*  46:*8*, *11*, *13*, *16*  47:*22*, *24*  48:*23*  49:*4*, *7*, *13*, *17*, *19*, *21*, *25*  50:*1*, *3*, *11*, *14*, *15*, *19*, *23*, *25*  51:*2*, *3*, *6*, *7*, *10*, *11*, *14*, *15*, *17*, *22*, *24*  52:*1*, *3*, *4*, *5*, *9*, *11*, *12*, *16*, *18*, *24*  53:*1*, *3*, *7*, *8*, *10*, *12*  54:*4*, *9*  55:*15*, *19*, *22*  56:*2*, *3*, *7*, *13*, *15*, *20*, *22*  57:*5*, *7*, *17*, *20*  58:*17*, *19*, *21*  61:*1*, *4*, *11*, *18*, *20*  62:*9*, *11*, *23*, *24*  63:*2*, *5*, *18*, *19*  64:*1*, *8*, *12*, *15*  65:*16*, *20*, *23*  66:*1*, *12*, *17*

67:*1, 12, 16, 22*  68:*22, 25*  69:*20, 21, 23*  70:*1, 4, 7, 17, 23*  71:2, *6, 9, 12, 17, 19, 23*  73:*20, 25*  74:*21, 23*  75:*19, 21*  77:2, *4, 14, 18, 22, 23*  78:*23, 25*  80:*12, 16*  81:*10, 22*  83:2, *7, 16, 19, 24*  84:*1*  85:*19, 23*  88:9, *15, 23*  89:*3*  92:*18, 21*  94:*11, 14, 18, 21*  96:*14, 19, 23*  97:*10, 14*  98:*15, 22*  99:*4, 7, 25*  100:*9, 15, 18, 22, 23*  101:*12, 14, 18, 23, 25*  102:*3, 5, 8, 10, 12, 14, 22, 24*  103:*6, 9, 13, 14, 16, 22, 24*  104:*3*  105:*21, 23*  106:*14, 18*  112:*24*  113:*1, 2, 10, 13, 18*  114:*4, 5*  115:*14, 16*  116:*5, 8*  117:*7, 11*  119:*18, 22*  121:*23*  122:*1*  124:*18, 20*  125:9, *12*  126:*19, 23*  127:*1, 3, 11, 17*  130:*9, 10, 12, 18, 22*  131:*1*  132:*11, 13*  135:*13, 17*  136:*3, 5*  137:*6, 10*  138:*17, 18, 23*  139:*1, 3, 8, 22, 25*  140:*20, 23*  141:*24*  142:*3, 8, 14, 18, 20*  143:*12, 14*  144:*7, 9, 24*  145:*3, 5, 7*  148:*13, 14, 18, 22*  149:*1*  155:*9, 16, 21*  156:*6*  158:*12, 18*  159:*1, 6, 11*  161:*18, 21*  162:*19, 20, 22, 25*  163:*2, 3, 6, 11, 14, 16, 18, 22, 24*  164:*6, 18*  165:*12*  167:*9, 13*  168:*5, 12*  170:*17, 20*  173:*14, 18, 24*  174:2, *19, 23*  175:*1*  176:*21, 24*  177:*3*  181:*3, 5, 9*  182:*14, 17, 22, 24*  183:*1, 4, 10, 13*  185:*10, 13, 15*  186:9,

*13*  187:*5, 7*  188:*4, 6*  190:2, *4, 20, 21, 22*  191:2, *4*  192:*14, 18*  195:*12, 16, 23*  196:*10, 20*  198:*17, 20*  199:*17, 21, 25*  200:*11, 15*  201:*11, 15*  202:*4, 8, 10, 14, 16, 18, 24*  203:*17, 18, 21, 23, 25*  204:2  206:*17, 20, 24*  209:*19, 23*  211:*14, 16*  212:*11, 15*  214:*23*  215:*3, 19, 24*  216:7, *12, 13*  219:*2, 6, 9*  222:*12, 22, 24*  223:*1, 10, 14*  224:*12, 16*  225:*21*  226:*3, 8, 10, 12, 14, 16, 19*  227:*1, 3*  228:*13, 17*  229:*3, 7*  230:*3, 5, 18, 24*  231:*3*  232:*4, 7, 14, 18*  233:2  234:*19, 20, 21, 23*  235:*3, 17, 20*  236:*10, 13, 22*  237:*1, 14, 22*  238:2  239:*21, 23*  240:*11, 19, 20*  241:*12, 13, 17, 20*  242:*1, 3, 7, 11, 15, 16, 19, 23*  243:*3, 8, 15, 18*  244:*1, 4, 5, 9, 11*  245:*24*  246:*1, 9, 12, 14*  248:*24*  249:*7, 20, 22*  250:*2, 9, 17, 19, 23*  251:*1, 5, 11, 16*  252:*11, 20, 22*  253:2  254:*14, 19*
**attorney-client**  61:*6*
**August**  21:*20*  125:*19*  126:*25*  127:*6, 19, 22*  199:*22*  200:*3, 20, 23*  201:*18, 25*  202:*11, 25*  205:*3*  206:*25*  207:*7*  208:*4, 23*  209:*24*  212:*24*  215:*4*  219:*12*  223:*15*  224:*17*  251:*20*
**Austin**  253:*10*
**authorized**  256:*3*
**automation**  88:*13*

**available**  62:*21*  206:*9*
**Avenue**  2:*5*
**averages**  222:*19*
**aware**  21:*24*  22:*3, 12*  73:*22*  87:*21*  102:*18*  106:*5*  118:*22*  124:*15, 16, 23, 25*  241:*8*  248:*8*

**< B >**
**Bachelor**  16:*10*  238:*14*
**back**  30:*21*  55:*24*  56:*6*  57:*15*  59:*15*  81:*4, 11, 12*  82:*14*  83:*25*  84:*2*  112:*17*  113:*8*  120:*20*  123:*6*  153:*17*  161:*18*  164:*13*  181:*6*  184:*10*  188:2, *10, 20*  195:*21*  200:*13*  201:*9*  203:*25*  205:*15*  211:*6*  216:*23*  218:*6*  221:*7, 18*  232:*12*  249:*18*  250:*1, 14*  251:*7, 14*
**background**  21:*21*  32:*15*
**Bank**  25:*8, 12*  30:*13, 16, 18, 22*  31:*1*  54:*19*  108:*1*  116:*2*  150:*11*  164:*22*  200:*2, 21*  221:*6*  233:*10*  235:*7*  236:*14*  241:*22*  242:*5, 13, 25*  249:*4, 5*  250:*10*
**banker**  30:*9*  109:*19*  221:*1*  242:*10*
**bankers**  26:*21*  220:*21*  250:*6, 7, 10*
**banker's**  112:*4*
**banking**  24:*17*  110:*25*
**based**  108:*23*  128:*1, 7*  154:*25*  194:*8*  233:*20*  250:*6*  252:*17*
**basically**  47:*19*
**basis**  162:*20*  163:*4*
**Bates**  3:*8, 12, 14, 16, 19, 22, 24*  4:*1, 5, 7, 10, 12, 15, 18, 20, 23*  5:*4,*

*6, 9, 12, 14, 17, 20, 23*  31:*18*  39:*17, 20*  56:*9*  57:*23*  78:*1*  91:*5*  96:*24*  104:*4*  106:*21*  113:*20*  117:*12*  120:*2*  131:*4*  135:*19*  148:*24*  158:*22*  164:*20*  167:*17*  175:*3*  177:*5*  183:*16*  192:*22*  196:*12*  199:*23*  200:*18*  201:*17*  207:*1*  209:*25*  212:*20*  215:*5*  219:*12*  223:*16*  224:*19*  228:*19*  231:*4*  232:*20*  235:*6*
**batteries**  240:*7*
**battle**  95:*25*  247:*20*  248:*2*
**bear**  31:*18*  67:*19, 24*  68:*4, 7, 11, 19*  70:*10*  72:*7, 11*  78:*1*  252:*23*
**bearing**  39:*17, 20*  57:*23*  96:*24*  104:*4*  106:*21*  113:*20*  117:*12*  120:*2*  135:*18*  164:*20*  175:*3*  192:*22*  196:*12*  200:*18*  201:*16*  223:*16*  228:*18*  232:*20*
**bears**  131:*4*  158:*22*  177:*5*  215:*5*  235:*6*
**becoming**  88:*12*  102:*18*
**begins**  61:*17*  150:*21*  159:*22*  200:*4, 24*  203:*3*  235:*19*  236:*1*
**behalf**  43:*24*  135:*7*  136:*24*  243:*7*
**belief**  123:*4*
**believe**  21:*15*  23:*6*  39:*4*  45:*8, 12, 15*  50:*15, 17*  54:*12*  57:*21*  69:*12*  71:*24*  74:*20*  79:*16*  81:*14, 15*  82:*20*  84:*16*  87:*7*  92:*9*  93:*14, 15, 23*  94:*3, 7*  100:*21*  119:*19*  120:*19*  131:*25*  139:*10*  153:*17*  200:*17*  204:*6*

214:*17*  215:*20*  217:*5*
244:*9*, *15*  253:*3*
**believed**  241:*1*
**Believes**  154:*17*, *21*
**beneficial**  27:*10*, *23*
29:*7*  30:*8*  217:*4*
**BENNETT**  2:*11*
8:*23*  12:*7*, *11*
**best**  152:*7*  241:*1*
243:*10*  245:*6*  246:*19*,
*21*  247:*22*  256:*12*
**bet**  119:*11*  121:*25*
130:*1*
**better**  133:*2*  161:*8*,
*10*  180:*14*
**bid**  130:*17*
**bids**  112:*13*  249:*13*
**bilateral**  137:*18*
**billion**  211:*24*
**binder**  31:*22*, *24*
32:*2*  40:*2*  134:*4*
174:*24*  219:*6*  243:*19*
244:*7*, *13*  248:*14*
251:*19*
**binders**  119:*13*
**biographical**  249:*2*
**birthday**  254:*12*
**bit**  43:*6*  101:*5*
107:*3*  134:*9*  142:*19*
207:*24*  216:*25*
**blank**  13:*4*
**blinded**  225:*10*
**blow**  142:*18*
**board**  24:*10*  28:*4*
29:*2*  47:*9*, *13*  69:*2*
85:*11*, *17*, *21*  90:*16*,
*18*  93:*15*, *24*  100:*7*
104:*8*  110:*19*  114:*19*
115:*1*, *5*, *9*  117:*21*
118:*11*, *17*  121:*18*, *21*
122:*6*, *8*  136:*11*
146:*16*, *18*  147:*2*, *8*
177:*19*  180:*6*  181:*14*
196:*25*  197:*6*  203:*3*,
*6*  233:*15*, *21*, *25*
242:*8*  243:*7*  247:*14*
**board/shareholder**
93:*14*
**board-only**  118:*21*
**boards**  181:*13*

**BofA**  14:*4*, *5*  109:*20*
114:*8*, *9*  115:*20*
116:*18*  118:*6*, *14*
125:*3*  128:*21*  131:*25*
132:*6*, *9*, *15*, *16*, *19*
151:*6*  154:*3*, *14*
160:*10*  161:*4*  162:*1*
166:*25*  170:*3*  204:*13*,
*22*  205:*4*  208:*11*, *16*
209:*2*  210:*24*
**BofA's**  116:*15*, *23*
209:*11*, *14*
**Boil**  156:*19*
**book**  13:*1*, *2*
**bookings**  137:*25*
**bottom**  38:*13*, *14*
52:*6*, *16*  57:*6*  75:*7*
99:*8*  101:*19*  104:*25*
105:*1*, *7*  110:*4*  111:*8*
133:*10*  150:*19*
177:*23*  180:*13*  188:*9*
191:*12*, *13*  207:*12*
249:*8*
**Boulder**  18:*3*
**Boulevard**  2:*11*
**bounds**  60:*21*
**box**  36:*6*  131:*23*
157:*2*  170:*6*  189:*5*
**boxes**  156:*24*
**break**  11:*11*, *12*, *13*,
*17*  57:*9*  112:*25*
185:*11*  195:*14*  196:*1*
232:*4*
**bringing**  164:*4*
**broad**  175:*14*
**broke**  57:*21*
**brought**  22:*15*, *24*
23:*9*, *11*, *15*, *21*  55:*4*
164:*1*
**budget**  20:*3*
**bullet**  35:*13*  140:*5*, *7*,
*10*, *18*, *22*  141:*1*
143:*6*  145:*9*, *12*, *17*
187:*15*  193:*23*  194:*4*
226:*5*  228:*2*, *5*, *7*
236:*15*  244:*23*, *24*
245:*4*  246:*16*  247:*8*,
*19*
**bullets**  145:*8*  198:*21*

247:*5*
**bump**  199:*3*, *7*, *8*
**bunch**  97:*16*
**business**  87:*10*  212:*2*
239:*18*
**busy**  207:*24*
**butchered**  208:*8*
**buy**  22:*17*  79:*3*
188:*9*, *20*
**buy-back**  179:*9*
**buybacks**  72:*13*
**buy-backs**  178:*3*
180:*14*
**buying**  121:*2*
**buyout**  38:*23*
**buys**  120:*24*

**< C >**
**calculate**  54:*13*
**calculation**  108:*25*
**calculations**  151:*7*
**calendars**  220:*18*
**call**  23:*7*  34:*11*  38:*6*
39:*3*  65:*11*, *12*  92:*16*
96:*13*, *18*  97:*8*  98:*9*,
*12*, *13*  99:*15*, *18*
100:*12*, *20*  101:*9*, *16*,
*21*  102:*1*, *7*, *11*  123:*9*,
*12*, *18*, *24*  124:*1*, *2*, *4*,
*10*, *11*  150:*10*  154:*2*
156:*12*  162:*1*  164:*12*
167:*15*  173:*7*, *12*, *20*
174:*6*, *7*  205:*21*, *25*
206:*3*  209:*3*  220:*20*
221:*7*  246:*23*  249:*3*
**called**  17:*22*  128:*22*
145:*9*  253:*25*
**calling**  35:*6*
**Calls**  27:*13*, *24*
28:*15*  29:*9*, *22*  32:*17*
45:*4*  88:*10*, *24*  98:*16*
100:*1*  102:*22*  103:*17*
105:*22*  124:*7*  127:*2*,
*4*, *10*  130:*13*  135:*10*
155:*10*  173:*15*, *24*
174:*15*  206:*18*
225:*22*  226:*9*
**camera**  8:*8*
**campaign**  76:*24*
87:*21*

**Canada**  15:*25*  16:*2*
238:*8*
**Candidly**  72:*15*
**Capacity**  116:*12*, *16*,
*19*, *24*  117:*1*  209:*15*
210:*22*  236:*4*, *8*, *12*,
*17*
**Caption**  257:*4*
**captioned**  257:*11*
**capture**  134:*22*
168:*8*  220:*19*
**captured**  90:*1*  168:*8*
**capturing**  91:*19*
**carefully**  203:*7*
**carries**  105:*10*
**Case**  1:*4*  8:*16*  71:*22*
72:*11*  79:*10*  163:*2*
238:*4*  257:*4*
**cash**  44:*7*, *13*, *15*
48:*6*, *21*  49:*5*, *8*, *16*,
*24*  53:*6*, *23*  54:*15*
69:*9*  70:*15*, *20*  89:*5*,
*12*  108:*23*  136:*21*, *25*
208:*13*  236:*12*
**casually**  111:*15*
**categories**  67:*4*
**caught**  66:*14*
**cause**  33:*1*  155:*8*
199:*13*  256:*20*
**CCR**  1:*16*, *17*, *18*
7:*3*  256:*24*
**ceilings**  170:*1*
**Centerview**  25:*8*
38:*10*  146:*4*
**CEO**  21:*3*, *16*, *18*
22:*15*, *21*  40:*18*
68:*12*, *16*  69:*2*  87:*22*
173:*12*  241:*6*, *7*, *24*
**certain**  82:*7*
**Certainly**  34:*7*  41:*18*
59:*13*  238:*6*  252:*24*
**certainty**  48:*9*
**CERTIFICATE**
256:*1*
**Certified**  256:*2*
**certify**  256:*5*
**CHAD**  2:*4*
**chain**  83:*5*  177:*13*
**chairman**  136:*10*

**chance** 115:*23* 149:*24* 159:*10* 196:*19* 215:*12*

**change** 163:*9* 258:*4, 7, 10, 13, 16, 19, 22*

**changed** 69:*11* 165:*6*

**changes** 18:*2* 257:*14, 17*

**characterizing** 67:*18*

**chat** 220:*10*

**chatting** 119:*14*

**check** 43:*12* 75:*7* 153:*18*

**checking** 149:*7, 20* 165:*23*

**chief** 101:*1, 2* 102:*16* 239:*1*

**China** 248:*10*

**choice** 144:*17*

**Choose** 62:*16* 120:*24*

**chooses** 122:*6*

**choosing** 121:*1*

**Christina** 208:*6*

**cjohnson@rgrdlaw.com** 2:*7*

**clarification** 10:*25* 11:*2* 51:*5*

**clarifying** 59:*9*

**clarity** 200:*16*

**clear** 52:*10* 111:*24* 112:*20* 158:*2* 163:*11* 166:*2* 180:*12* 189:*7* 191:*2*

**clearly** 100:*4*

**click** 60:*14*

**clients** 222:*7* 252:*14*

**close** 54:*3, 7* 129:*20* 210:*25* 211:*11, 23*

**closed** 14:*10* 30:*23* 53:*22* 129:*13* 130:*1* 139:*12*

**closing** 45:*19* 54:*8, 10* 128:*16* 129:*5* 137:*2* 211:*4*

**coaching** 180:*3*

**code** 14:*13, 17, 20, 23, 25* 15:*2, 7, 13, 18* 78:*18* 79:*4, 8, 19* 80:*6*

**coercion** 63:*8*

**coercive** 62:*25* 63:*1, 3, 4* 64:*10, 11, 18, 19, 21, 22* 65:*14* 218:*12, 13*

**coerciveness** 64:*6* 218:*9*

**coffee** 253:*11*

**cohesive** 218:*11*

**cohesiveness** 64:*6*

**collaboratively** 137:*17*

**colleague** 8:*25* 217:*12*

**colleagues** 8:*19, 20* 229:*22* 237:*3, 8*

**collection** 241:*2*

**collectively** 59:*21*

**college** 15:*22, 23, 24, 25* 16:*1*

**Colorado** 18:*2, 4*

**column** 67:*14, 21* 68:*8* 69:*1*

**columns** 67:*5*

**combination** 25:*1* 42:*1*

**come** 13:*18* 19:*13* 112:*17* 123:*6* 221:*18* 249:*18* 250:*1, 14* 251:*7, 14*

**COMERFORD** 2:*10* 3:*5* 8:*5, 22* 12:*9, 13, 14, 20* 15:*4, 9* 22:*1, 5, 14* 23:*3* 24:*2* 25:*17, 22* 27:*4, 12, 24* 28:*15, 19* 29:*9, 22* 39:*23* 41:*5, 9* 42:*25* 43:*11* 44:*2, 20* 45:*3, 22* 46:*8, 13* 47:*22* 48:*23* 49:*7, 17, 20, 25* 50:*3, 11, 12, 14, 16, 23* 51:*2, 6, 10, 14, 17, 24* 52:*3, 5, 11, 16, 18, 19, 24* 53:*7, 10* 54:*4* 55:*19* 56:*2* 57:*5* 58:*17* 61:*4* 62:*23* 63:*2, 18* 64:*1, 12* 65:*16, 23* 66:*12* 67:*1, 16* 68:*22* 69:*20, 23* 70:*4, 17* 71:*2, 9, 17, 19* 73:*20* 78:*23* 80:*12* 83:*2* 85:*19* 88:*9, 23* 92:*18*

94:*11, 18* 96:*14* 97:*10* 98:*15* 99:*4, 25* 100:*15, 22* 101:*12, 18, 23* 102:*3, 8, 12, 22* 103:*6, 13, 16* 105:*21* 113:*1* 121:*23* 124:*18* 125:*9* 126:*19* 127:*1, 11* 130:*12* 132:*11* 138:*17, 23* 139:*3, 22* 140:*20* 141:*24* 143:*12* 144:*7, 24* 148:*13* 155:*9* 162:*19, 22* 163:*2, 6, 14, 18, 24* 168:*5* 173:*14, 24* 181:*3* 182:*14, 22* 185:*10, 13* 186:*9* 190:*2, 20, 22* 195:*16* 198:*17* 202:*4, 14, 18* 203:*17, 21* 206:*17* 211:*14* 222:*24* 225:*21* 226:*8, 12, 16* 227:*1* 229:*3* 230:*3* 232:*7* 234:*19, 21* 236:*10* 238:*2, 3* 240:*11, 20* 241:*13, 20* 242:*3, 11, 16, 23* 243:*8, 15, 18* 244:*4, 5, 11* 246:*1, 14* 249:*7, 22* 250:*9, 19* 251:*1, 5, 16* 252:*20*

**comes** 65:*21*

**coming** 89:*20* 92:*17* 148:*12* 239:*16*

**comment** 124:*6* 170:*3* 180:*19* 222:*16* 254:*16*

**commenting** 198:*9* 247:*13*

**comments** 67:*6* 127:*14* 132:*12* 170:*14* 193:*20* 197:*17*

**commitment** 143:*21*

**common** 44:*6, 10, 15* 106:*7* 225:*4*

**communicate** 41:*7* 68:*6* 112:*6, 8* 237:*3, 8*

**communicated** 118:*25* 119:*1*

**communicates** 41:*3* 72:*10*

**communicating** 176:*15*

**communication** 83:*5* 150:*15, 16* 177:*13, 18* 214:*6*

**communications** 23:*8* 181:*21* 182:*1* 213:*8, 15, 24* 218:*25*

**community** 38:*25* 199:*10* 213:*9*

**companies** 26:*16, 18* 29:*5, 6* 80:*9* 239:*8, 9* 240:*8* 245:*13*

**company** 13:*23* 14:*15* 15:*3* 17:*15, 22* 21:*7, 13* 24:*1* 26:*19, 25* 27:*3, 19, 23* 28:*3, 8, 13* 29:*7, 21* 30:*6* 35:*23* 37:*19* 63:*15* 67:*11* 71:*14* 74:*11, 12, 14, 15* 75:*3* 78:*22* 80:*19* 91:*15* 95:*16, 19* 171:*17* 174:*18* 218:*18* 240:*16, 23* 241:*5* 252:*18*

**company's** 18:*21* 20:*5* 63:*24* 66:*23* 111:*1*

**comparison** 142:*2*

**compensated** 30:*14, 16*

**competitive** 87:*20*

**complete** 46:*6, 21* 47:*3* 48:*15* 49:*2, 3, 9* 146:*21*

**completing** 53:*14*

**complicated** 72:*12*

**components** 240:*8*

**Compound** 241:*18*

**conclude** 129:*8* 147:*23*

**concluded** 255:*2*

**concludes** 254:*22*

**conclusions** 102:*23* 103:*18* 105:*22*

**conclusive** 146:*25*

**conditions** 121:*3*

145:*15*
**confident** 138:*9*
**Confidential** 104:*12*
160:*5*
**confirm** 7:*25* 90:*2*
114:*9* 166:*1* 170:*15*
201:*9* 240:*9*
**confirmation** 90:*3*
148:*1*
**confirmatory** 141:*12*
144:*3*
**confused** 191:*1*
**connect** 186:*2*
**connected** 200:*8*
**connection** 14:*14*
23:*16* 31:*2* 48:*21*
54:*24* 90:*13* 116:*2*
181:*14* 187:*23*
213:*19* 237:*12*
**Connie** 1:*16* 7:*3, 20*
256:*2*
**cons** 67:*6*
**Conscious** 175:*18*
**consensus** 128:*2, 8,*
*13, 14* 187:*16* 194:*5*
195:2, *7*
**consider** 24:*25* 49:*1*
71:*11* 242:*24*
**consideration** 23:*1*
24:*14* 48:*6* 49:*5, 9*
70:*15* 78:*21* 110:5, *8*
**considered** 15:*20*
24:*21* 25:*1, 7* 26:*2, 4*
90:*4*
**considering** 25:*14*
**considers** 117:*1*
**consistency** 176:*1*
**consistently** 33:*13*
59:*15*
**contact** 67:*19* 76:*7*
**contacted** 241:*7*
**contained** 98:*24*
**contains** 42:*21*
256:*13*
**content** 45:*14* 59:*19*
60:*25*
**context** 55:*3* 82:*4*
86:*9* 89:*14* 117:*2*
118:*12* 127:*9* 144:*25*
165:*9* 166:*16* 180:*8*

190:*24* 212:*5* 214:*11*
216:*5* 245:*11* 251:*12*
**Context.pdf** 58:*12*
**contingency** 48:*7*
**continuation** 73:*8*
116:*23* 188:*19*
**continue** 52:*20* 241:*4*
**CONTINUED** 4:*1*
5:*1* 20:*11* 171:*16*
**continues** 39:*20*
**Continuing** 57:*19*
113:*17* 196:*9* 233:*1*
**contributed** 239:*8, 9*
**control** 59:*5* 60:*11*
159:*8*
**controversial** 51:*16*
**conversation** 35:*25*
84:*17* 89:*18* 107:*4*
225:*25* 226:*5* 233:*20*
**conveyed** 121:*20*
152:*3*
**Convince** 95:*25*
247:*20*
**convinced** 151:*1*
**coordinating** 19:*25*
213:*15*
**copied** 204:*13*
**copies** 33:*10* 166:*9*
**copy** 119:*14* 183:*5*
202:*6*
**copying** 178:*10*
**corner** 247:*17*
**corp** 179:*15*
**corporate** 10:*3*
19:*14, 17, 22* 20:*9*
23:*17*
**CORPORATION** 1:*4*
7:*14* 13:*24* 106:*4*
257:*5*
**correct** 12:6, *8, 10, 12*
14:*12* 18:*7* 23:*13, 14*
29:*8* 30:*25* 32:*13*
34:*10, 13, 16* 35:2, *16*
36:*5, 11, 16, 21* 38:5,
*8, 11* 39:*7* 40:*20*
41:*1* 44:*25* 48:*17, 19*
58:*9* 62:*22* 63:*1, 12*
64:*22* 65:*1, 2, 4, 5, 10*
66:*22* 68:*5, 13, 18*
70:*16* 71:*8* 73:*7, 10,*

*16* 75:*1, 15, 18* 76:*16*
78:*12, 16* 80:*5, 20, 21,*
*23, 24, 25* 81:*3, 25*
83:*12* 84:*4, 5, 8, 16,*
*18* 85:*13* 86:*16, 17*
88:*3* 90:*11, 12, 14*
92:*23* 93:*4, 9, 11*
95:2, *3* 98:*5, 8, 11*
99:*19* 101:*4* 102:*4, 9,*
*13* 104:*18, 24* 105:*9,*
*11* 107:*11, 20, 22, 25*
108:*3* 110:*18, 21*
112:*10, 15, 18, 23*
114:*10* 115:*10, 22*
116:*4, 17, 25* 117:*4*
118:*4, 13, 15, 16*
119:*7* 120:*25* 121:*8*
122:*11, 14, 15* 127:*10,*
*20* 128:*5* 129:*11, 12,*
*23* 130:*21* 131:*10, 17,*
*18* 134:*11* 135:*1*
136:*1, 23* 140:*4, 9*
143:*1, 8* 145:*11, 16,*
*24* 146:*5, 7, 13*
147:*10, 25* 148:*5*
150:*6, 12* 151:*1, 2*
152:*16* 153:*8* 154:*4,*
*15, 19* 155:*19* 156:*14,*
*20* 158:*5, 11* 160:*1, 3,*
*12, 14, 21* 161:*2, 5, 9*
162:*2, 13* 166:*15, 20,*
*23* 168:*1, 2* 169:*3*
171:*2, 9, 22* 172:*23*
173:*2* 178:*5, 8, 17, 20*
181:*19* 184:*13, 15, 20,*
*24* 185:*2* 187:*3*
189:*16* 191:*7, 8*
192:*3, 10* 194:*10, 14*
195:*6, 11* 197:*3, 7*
203:*1, 9* 204:*4, 5, 21,*
*24* 205:7, *14* 207:*10*
208:*19* 210:*12, 23*
211:*5, 8* 213:*2*
214:*20* 217:*17, 22*
218:*4* 219:*20, 23*
220:*10* 224:*5* 225:*15,*
*16* 229:*11* 230:*2, 9,*
*11, 14, 15, 16* 231:*21*
232:*1* 233:*22, 23*
234:*13, 14, 18* 236:*5,*

*6, 18* 246:*17, 18*
248:*20* 249:*12, 16, 19*
251:*22*
**correction** 146:*14*
**corrections** 257:*14*
**correctly** 36:*11* 42:*5,*
*19* 46:*12, 25* 48:*12,*
*18* 138:*5* 157:*10*
227:*25* 228:*1* 234:*6*
236:*19* 249:*23* 252:*6,*
*7*
**costs** 222:*19*
**Counsel** 7:*22* 9:*7*
11:*6, 24* 51:*8* 72:*16*
83:*5, 6* 101:*1, 2*
103:*8, 21* 155:*21*
157:*15* 158:*12*
170:*18* 185:*9* 200:*6*
211:*21* 256:*19*
**counsel's** 237:*16*
**count** 198:*1* 232:*15*
**counterparts** 20:*2*
**County** 8:*15*
**Couple** 85:*3, 9*
247:*24*
**course** 13:*18* 106:*6*
119:*17* 161:*10, 13, 16*
**COURT** 1:*1* 7:*15,*
*19, 20, 21* 9:*5, 9*
10:*10* 195:*24* 230:*19*
256:*3*
**cover** 216:*15, 20*
**covered** 34:*8* 119:*4*
**covering** 66:*8*
**created** 244:*18*
248:*19* 251:*19*
**credit** 210:*17*
**criteria** 25:*15* 26:*1,*
*3, 8*
**cross** 70:*21*
**crossed** 220:*6*
**CRR** 1:*16* 7:*3*
256:*24*
**culture** 240:*24*
**CUMMINGS** 2:*4*
3:*4, 6* 7:*24* 8:*10, 13,*
*18* 9:*1, 5, 16* 15:*5, 6,*
*11* 22:*2, 8, 19* 23:*4*
24:*4* 25:*18, 23* 27:*7,*
*14* 28:*1, 17, 21* 29:*14*

30:1, 3   31:11, 15
33:22   39:12, 16, 24
41:6, 10   43:4, 14
44:8, 22   45:7, 25
46:11, 16   47:24   49:4,
13, 19, 21   50:1, 11, 15,
19, 25   51:3, 7, 11, 15,
22   52:1, 4, 9, 12, 18
53:1, 3, 8, 12   54:9
55:15, 20, 22   56:3, 7,
13, 15, 20, 22   57:7, 17,
20   58:19, 21   61:1, 11,
18, 20   62:9, 11, 24
63:5, 19   64:8, 15
65:20   66:1, 17   67:12,
22   68:25   69:21   70:1,
7, 23   71:6, 12, 23
73:25   74:21, 23
75:19, 21   77:2, 4, 14,
18, 22, 23   78:25
80:16   81:10, 22   83:7,
16, 19, 24   84:1   85:23
88:15   89:3   92:21
94:14, 21   96:19, 23
97:14   98:22   99:7
100:9, 18, 23   101:14,
25   102:5, 10, 14, 24
103:9, 14, 22, 24
104:3   105:23   106:14,
18   112:24   113:2, 10,
13, 18   114:1, 4, 5
115:14, 16   116:5, 8
117:7, 11   119:18, 22
122:1   124:20   125:12
126:23   127:3, 17
130:9, 10, 18, 22
131:1   132:13   135:13,
17   136:3, 5   137:6, 10
138:18   139:1, 8, 25
140:23   142:3, 8, 14,
18, 20   143:14   144:9
145:3, 5, 7   148:14, 18,
22   149:1   155:16, 21
156:6   158:12, 18
159:1, 6, 11   161:18,
21   162:20, 25   163:3,
11, 16, 22, 25   164:6,
18   165:12   167:9, 13
168:12   170:17, 20
173:18   174:2, 19, 23

175:1   176:21, 24
177:3   181:5, 9
182:17, 24   183:1, 4,
10, 13   185:14, 15
186:13   187:5, 7
188:4, 6   190:4, 21, 23
191:2, 4   192:14, 18
195:12, 23   196:10, 20
198:20   199:17, 21, 25
200:11, 15   201:11, 15
202:8, 10, 16, 24
203:18, 23, 25   204:2
206:20, 24   209:19, 23
211:16   212:11, 15
214:23   215:3, 19, 24
216:7, 12, 13   219:2, 6,
9   222:12, 22   223:1,
10, 14   224:12, 16
226:3, 10, 14, 19
227:3   228:13, 17
229:7   230:5, 18, 24
231:3   232:4, 14, 18
233:2   234:20, 23
235:3, 17, 20   236:13,
22   237:1, 14, 22
239:21, 23   240:19
241:12, 17   242:1, 7,
15, 19   243:3   244:1, 9
245:24   246:9, 12
248:24   249:20   250:2,
17, 23   251:4, 11
252:11, 22   253:2
254:14, 19
current   241:1
currently   20:22, 25
customer   18:21
customers   132:23
133:18, 23   240:25
241:2
cut   97:21   105:5
cuts   165:19
cutting   105:4

< D >
danger   112:20
Daniels   154:12, 14
155:13
dash   215:8   220:6
date   7:11   38:4   81:1,
23, 24   82:18   93:8

119:10   121:6, 21
122:8   131:19   160:20
161:7   166:21   208:22
243:23   244:18
251:20
dated   31:17   32:12
34:9   38:3   40:19
77:25   78:11   80:23
82:3   83:9   93:2
104:24   106:20
113:19   119:25
124:16   131:3   134:5
148:24   150:3   153:25
156:13   160:2   165:15
167:17   168:4, 24
170:25   178:9   184:5,
11, 19, 22   186:14
197:1   200:20   202:25
203:7   205:3   209:24
212:23   215:4   219:11
233:7   235:9
dates   149:16
dating   82:1
Davis   146:9, 12
day   12:19   52:19
93:2   98:6   122:3
128:16   205:16
214:12   237:23
256:21   257:19
days   204:3   207:25
DC   33:22
DCF   151:6
dcummings@rgrdlaw.
com   2:7
deal   53:22   54:3, 8,
11   71:8   129:13, 21
130:15   141:7   187:18,
24   192:8   193:14, 20
194:7, 16, 20, 21
211:9
deals   248:8
Debt   116:12   236:12
decades   238:25
December   20:20
decide   122:9   251:25
decides   252:18
decision   118:23
175:13   241:21
decisions   85:3, 9
deck   74:22   115:1, 5

DECLARATION
257:7
declare   257:9
decline   118:18, 23
declining   121:14, 22
defend   197:12
Defendants   2:9   8:24
238:4
defense   11:24
defenses   220:24
defensive   155:12
209:16   242:18, 21
243:1
Definitely   161:8
205:16
definition   182:16
definitive   48:16
53:16   141:14   143:17
144:5   146:24   147:6
degree   16:5, 8, 20, 24
17:3, 6
degrees   16:22   17:5
deliberate   247:11
deliver   161:4
department   238:16
dependency   210:17
depending   54:13
66:9, 24
depiction   251:8
deposed   9:2, 12, 18,
20, 22   10:1, 7
DEPOSITION   1:9
7:13, 16   9:25   10:16
11:23   12:21, 23
164:2, 4   237:18
244:8   254:23   255:2
257:1, 11, 15   258:1
depositions   50:18
derivative   134:21
derivatives   134:17
describe   18:18   19:20
178:2   197:24   239:18
241:14   242:12, 17
252:8
described   105:16
describes   147:22
describing   47:20
179:9   180:7
DESCRIPTION   3:8

**4**:*1*  **5**:*1*
**designs**  240:*9*
**DESIREE**  2:*4*  8:*13*
33:*21*  52:*17*  81:*14*
**destroy**  32:*25*
**detailed**  59:*16, 18*
**Determine**  76:*13, 17,*
*22*
**determined**  118:*17*
217:*14*
**dev**  179:*15*
**develop**  179:*4*
**developed**  239:*12*
253:*4, 12*
**development**  19:*15,*
*17, 22*  20:*1, 9*  21:*6*
239:*2, 3, 7*
**DF**  153:*6, 19*
**dialog**  41:*14*
**difference**  144:*17*
**different**  30:*19*
37:*20*  67:*4*  69:*18, 19,*
*25*  70:*2, 5*  79:*19*
98:*20*  180:*10*  190:*16*
197:*15*  246:*2*
**difficult**  248:*11*
**diligence**  46:*6, 21*
48:*15*  49:*1, 3, 10, 12*
53:*15*  69:*6, 10*
139:*16, 20*  140:*4, 6, 7,*
*10, 12, 22*  141:*13*
144:*3*  178:*23, 24, 25*
179:*4, 8, 10, 12*
**diluted**  189:*12*
**diluting**  189:*25*  191:*6*
**Dimitrijevic**  208:*7*
**direct**  61:*15*  62:*8*
168:*19*
**directed**  59:*22*
**directing**  59:*25*
163:*12, 14, 18*
**direction**  163:*16*
**directly**  218:*20*
**director**  176:*14*
**Directors**  58:*11*  62:*3*
67:*10*  117:*21*  147:*2*
203:*6*
**disagrees**  222:*20*
**discern**  85:*7*

**Disclosable**  182:*9*
**disclose**  182:*19, 23*
**disclosed**  45:*2, 9, 13*
105:*2, 7, 13, 15*
182:*20*
**disclosure**  67:*20*
182:*13*  194:*21*
**disclosure/notification**
63:*15*
**disclosures**  72:*12*
182:*18*
**discounted**  108:*22*
**discoverable**  178:*15,*
*21*  179:*7*  181:*1*
182:*2*
**discovery**  157:*19*
**discuss**  46:*1*  139:*15*
**discussed**  12:*21, 23*
24:*1*  35:*22*  127:*9*
197:*9*  237:*17*
**Discusses**  66:*23*
**discussing**  55:*11*
151:*16*  170:*6*  193:*16*
197:*4*  207:*8*  225:*2*
**discussion**  73:*8*
115:*21*  118:*20*  151:*4*
164:*24*  174:*16*  180:*1*
193:*3, 13*  197:*5, 24*
198:*2*  213:*25*
**discussions**  77:*6, 10*
100:*6*  137:*18*  211:*25*
227:*21*  239:*14*
**dismissed**  100:*6*
**display**  145:*6*
**displayed**  51:*19*  59:*3*
**displaying**  165:*19*
**dispute**  49:*17*
**disputing**  49:*14, 22*
53:*4*
**distraction**  137:*18*
**DISTRICT**  1:*1, 2*
7:*15, 16*
**divestment**  117:*2*
**Dividend**  200:*3, 22*
204:*15, 17*  205:*10*
**Dixon**  100:*11, 20, 25*
104:*7*  159:*25*  160:*17,*
*24*  161:*6*  166:*9*
186:*17*  208:*5, 23*

217:*7*  233:*8, 13, 24*
234:*8*  254:*5, 8, 10*
**DLC**  1:*5*
**Docs**  115:*9*
**Doctorate**  17:*8, 9*
**document**  31:*19*
32:*3, 6, 8, 9*  39:*17, 19*
40:*16*  42:*8*  44:*3*
45:*24*  50:*4, 7*  51:*13,*
*23*  53:*11*  57:*22*
58:*18*  59:*2, 3, 5, 17,*
*23*  60:*1, 3, 23*  61:*2,*
*13*  64:*2*  66:*13*  67:*2*
82:*8, 10*  96:*15, 24*
97:*4, 5, 11, 18*  98:*11,*
*18*  101:*20*  104:*4*
105:*24*  106:*23*
113:*19*  117:*12, 17, 19*
127:*12*  131:*4*  135:*18*
139:*4, 7, 23*  149:*11,*
*22*  157:*16*  159:*3, 12,*
*14*  164:*11, 19*  165:*3*
177:*8, 10, 12*  181:*11*
186:*2, 10*  190:*3*
192:*22*  193:*6, 8, 19*
196:*15, 21, 23*  200:*17*
201:*1, 6, 16, 19*  202:*6*
204:*9, 11, 12*  207:*5, 6*
210:*4, 6, 8*  215:*9, 13,*
*21*  216:*19*  223:*19, 22,*
*24*  224:*24*  228:*21, 23,*
*25*  231:*9*  234:*22*
235:*13*  244:*2, 10*
250:*18*
**documentation**  46:*7*
47:*4*
**documents**  12:*25*
13:*3*  50:*20*  58:*24, 25*
59:*12, 16*  61:*7*
113:*22*  145:*1*  164:*7*
179:*6*  180:*25*  196:*1*
201:*9*  213:*22*  218:*7*
230:*20*  237:*20*
243:*13*
**Doing**  34:*21*  37:*18*
119:*23*  126:*7*  157:*20*
174:*11*  227:*16*
230:*19*
**dot**  215:*8*

**DOWD**  2:*5, 11*  8:*14,*
*22*  12:*7, 11*
**Draft**  133:*11*
**draw**  208:*21*
**due**  46:*6, 21*  48:*15*
49:*1, 2, 9*  53:*15*  69:*6,*
*10*  106:*3*  140:*12*
141:*12*  144:*3*
**duly**  9:*11*  256:*9*
**Duties**  58:*11*  62:*3*
118:*11*

**< E >**
**Eagle**  14:*20, 22*
**Earlier**  54:*18*  64:*9*
78:*18*  79:*16*  107:*4*
125:*5*  128:*13*  134:*10*
139:*10*  142:*25*
214:*17*  238:*11*
244:*17*  248:*18*
**earliest-in-time**
159:*21*  207:*12*
**early**  95:*4, 9, 20*
125:*19*  126:*25*  127:*5,*
*18*
**earn**  16:*5, 8*  17:*3, 9*
**earned**  16:*10, 24*
17:*5, 7*
**earnings**  122:*25*
123:*9, 12, 17, 24*
124:*1, 2, 3, 4, 7, 10, 11*
125:*24*  127:*2, 4, 10,*
*19*  128:*2, 7*  173:*20*
192:*5, 11*  204:*18*
205:*10, 24*  206:*3, 6,*
*16*
**easier**  31:*24*  40:*4*
**eat**  196:*2*  230:*21*
**EBITDA**  207:*20*
**Eddie**  104:*6*  115:*9*
119:*3*  159:*24*  166:*9*
178:*7*  186:*17*  193:*10*
194:*1*  233:*19*
**Edmonton**  16:*4*
238:*8, 13*
**educate**  86:*7*
**educated**  218:*17*
**educating**  71:*10*
109:*24*  135:*10*

education 238:9
effect 198:11, 12, 15
efficient 197:25
either 18:2  23:7
123:8  144:20  169:20
184:22
Electric 14:2
electrical 16:11
238:12, 14  240:5, 6, 7
electronic 186:10
electronically 32:2
33:6  40:6  59:3
element 70:22  71:8
e-mail 3:12, 14, 19,
22  4:5, 10, 15, 18, 20,
23  5:1, 4, 6, 9, 12, 14,
17, 20, 23  23:7  57:24
58:4  104:6, 11, 16, 19
106:2  113:21  114:13
115:8  135:23  158:21
159:21, 24  160:15, 16
161:7  164:22  165:2,
8, 13, 25  166:3, 5
167:4  177:5, 13, 22
178:6, 9  180:12
186:14  193:2, 9, 10,
12, 16, 23  194:12
196:11  197:1, 17
198:5  199:23  200:1,
20  201:2, 18  204:3,
12  205:4  206:25
207:7, 8, 12, 13  208:2,
3, 4, 22  209:24  210:9,
10  212:5, 16, 23
214:11  215:4  216:3,
15, 20, 23, 24  217:6,
23  220:17  221:4
223:15, 25  224:17
225:2, 5  226:22
228:18  229:13, 19, 20,
25  231:4, 11, 15
232:20  233:7, 13
235:5, 14
e-mails 166:24
181:21  196:24
214:12
Emerson 14:2, 8, 18,
21, 24  15:3, 8  35:21,
23  36:4  40:18, 24
43:24  45:6, 9  46:5,

19  47:2  48:21  49:15,
23  53:5, 15  70:25
73:18, 23  80:17  85:1
86:24  87:8, 19, 22
88:4, 22  89:1, 11
92:2  93:2, 21  94:9,
13, 15, 23  95:15
111:19  121:13, 22
122:7  123:5, 19
124:4, 25  126:5
129:3  136:20, 25
138:15  139:11, 19
145:13, 22  146:10, 11,
18, 22  147:18  148:1,
10  154:23  155:8, 14,
18, 24  162:24  166:22
172:25  173:13
174:13, 17  178:18
179:1, 4, 11  190:25
191:5  192:1  193:14
195:3  197:13  199:14
201:20  204:14
209:10  210:10
211:10  212:1, 19
213:17, 20, 24  217:14,
20  218:21  219:24
221:23  222:10
225:10  228:25  229:8,
9, 14  230:1, 12
231:22  234:13, 16
241:7, 9  247:1  250:5,
14
Emerson's 14:14
15:20  21:24  22:3, 12
23:1  24:1  47:12, 20
70:14  77:6  78:22
81:1  92:1, 13  102:18
116:15, 24  117:1
118:18, 23  119:12
124:15, 16, 23  151:16
160:11  166:13
168:14, 17  172:4
201:7  203:15  204:17
205:9  206:6, 15
207:8  208:17  209:14
210:21  211:3  212:6,
25  223:6  224:2
225:3  230:7  234:15
236:4  241:14, 24
245:23

Emmerich 84:3, 6
208:6
employed 20:22, 25
21:1, 2, 3
employee 180:4
Employees 8:15
17:21  133:18, 22
241:3
employer 239:6
employers 133:17
EMR 14:2  200:3, 22
encourage 59:1
encouragement 112:5
encouraging 155:14
endeavor 11:11
ended 98:6
ends 56:9, 16  91:5
129:22  229:19
engage 116:16  117:2
137:17  155:2  179:2
197:20  236:4, 8
241:22
engaged 30:18
109:20, 21  146:2, 4, 8,
12  150:16  213:22
218:18  222:7
engagement 25:11
29:13, 15  31:9, 10
154:17, 22, 24  155:8
242:13, 25  243:5
engaging 125:2  179:4
engineer 240:5
engineering 16:11
238:12, 14  239:9
engineers 240:3
enhancer 32:19
enroll 16:18
enrolled 16:17, 19
enter 53:15
entered 25:11
238:11, 15
enthusiasm 42:23
enthusiastic 42:15
43:3
entire 50:6  79:4
159:15  257:10
entirety 52:23  55:21,
23  57:1  59:2
entities 36:3  213:23
entitled 66:5  67:15

entries 110:10
112:11
entry 99:10  101:6
111:10  127:19
150:21  152:17  154:7
249:1
environment 248:5, 9
equal 144:23  199:1
equipment 240:8
equity 36:18  37:5, 21
Eric 2:16  7:18
22:22  23:7  68:17
119:3  125:1  159:25
160:17  166:6  173:7,
11  197:5  201:10, 18
202:22  204:13, 16
205:16  224:18
233:14  239:11
Eric's 150:22, 25
204:13
ERRATA 257:1, 16
258:1
Escalate 62:17
escalation 63:13, 23
65:9, 11
Establish 76:6
established 240:24
estimate 229:12
estimating 229:5
evaluated 28:9
evaluating 109:9
110:1
event 166:18  179:24
208:13  213:24
246:24  256:20
Eventually 18:5
239:15
Evercore 25:8  34:12,
15
Everest 7:18, 21
everybody's 124:7
evidence 96:16
127:13  234:2, 9, 15
EVR 34:14
exact 10:3  31:4
exactly 197:10
EXAMINATION 3:1,
3  9:15  57:19  113:17
196:9  233:1  238:1
253:1

**example** 33:22, 25 79:5

**Excel** 215:6, 20 216:8, 14

**exception** 11:15

**exchanges** 224:1

**excited** 41:20, 25

**excitement** 41:3, 8 42:22 43:2

**excuse** 39:18 63:23 70:15 99:14 104:6 136:19 146:16 162:3 167:15 190:21 193:14 194:17 215:8 217:19

**excused** 118:19

**execute** 46:7

**executing** 224:1 241:4

**execution** 224:7

**executives** 118:21 180:5

**exercise** 141:13 144:3

**EXHIBIT** 3:8, 12, 14, 16, 19, 22, 24 4:1, 5, 7, 10, 12, 15, 18, 20, 23 5:1, 4, 6, 9, 12, 14, 17, 20, 23 31:12, 13, 16 32:1 33:17 34:6 39:13, 14 40:11, 13 52:22 55:16, 17, 21, 23 56:6, 9, 14, 21 57:1, 22 58:16 59:6 60:14 77:15, 16, 19, 21, 24 78:5 81:11 83:8, 25 93:1 96:20, 21 98:24 102:17 103:25 104:1, 4 106:15, 16, 19 113:11, 12, 13, 14 117:8, 9 119:19, 20, 24 125:5 130:23, 24 131:2 135:14, 15 142:12, 13, 15, 16 143:3 145:6 148:19, 20, 22 156:3 158:24 159:4, 5, 7 161:19, 20 164:14, 16, 19 167:10, 11, 14, 16 174:20, 21 175:2

176:22, 23 177:1, 4 183:8, 11, 12 186:4, 5, 6 188:4 192:15, 16, 22 196:4, 6, 11 199:18, 19 200:17 201:12, 13 204:1, 3, 7 206:21, 22 207:3 208:21 209:20, 21 212:12, 13 214:24 215:1 216:10 219:3, 4, 10 222:13 223:11, 12, 15 224:13, 14, 17 228:14, 15 230:25 231:1 232:16, 17, 19, 22 234:24 235:1, 4 243:16, 21 244:7, 10, 12, 15 248:13 251:18

**exhibits** 40:5 55:25 156:4 183:6 216:9

**existence** 106:3

**expect** 221:2

**expectation** 143:16 144:19 250:4

**expected** 86:2

**expenses** 198:3

**experience** 20:10, 11 25:25 26:11, 13, 15, 22, 24 27:2, 9, 21 28:7, 12 29:7, 20 125:8, 13, 16, 17 155:1 252:17

**explain** 39:25 72:17

**explaining** 178:11

**explicitly** 159:18 181:4 186:2 253:20

**expressing** 225:12

**extended** 140:12

**extensive** 20:9 125:8 139:20 140:11

**extent** 185:22 196:2

**external** 24:6 83:6 150:25 159:17

**externally** 112:8

**extreme** 37:13

**< F >**

**face** 205:25

**fact** 59:22 61:8 82:3 89:17, 18 122:7

221:22

**factors** 25:15

**facts** 96:15 127:13 241:8

**Fair** 10:14, 15 11:13, 14 20:7 27:8, 17 29:3 42:21 59:24 77:13 83:8 184:25 250:16, 24

**fairly** 82:7

**familiar** 60:3, 24 159:2 179:18

**familiarize** 106:22

**far** 72:12

**favorite** 23:21

**feature** 68:19 70:9

**features** 68:10

**February** 18:11, 13 239:16

**feel** 32:1 51:12 56:1 94:3

**FGS** 154:3 160:11 162:3 164:23

**fiberoptic** 21:13

**fiducial** 28:5

**fiduciary** 118:11

**field** 97:25 128:22 151:5

**fight** 247:14

**figure** 152:24

**file** 33:7, 8

**files** 132:18

**FINAL** 115:8 129:8, 10

**finalize** 53:20, 21

**finance** 20:2

**financial** 24:14, 16, 22 25:14, 21, 25 26:11, 12, 15, 24 27:2, 8, 18, 21 28:3, 11, 25 29:4, 19 54:20 90:11 102:16 108:25 114:22 116:24 145:14, 23 146:6 203:11 209:15 210:22 218:19 236:4 245:12 256:19

**financials** 91:11

**financing** 48:7 145:9

177:20 180:1

**find** 138:11

**fine** 81:8 142:7 182:24 183:1

**finish** 10:12 11:16 50:16 74:8 90:8 175:24 250:19, 21

**Finished** 228:22 250:25

**Firepower** 109:5, 10, 19 235:8 236:2

**firm** 38:23 74:4 75:12, 13 150:16 254:1

**firms** 42:1 153:22

**first** 9:11 10:10 16:24 34:9 35:19 36:10 41:19 47:15, 19, 25 48:2 52:9 53:2 56:8 58:18 79:15 84:2 91:10 93:12, 13 106:2 110:13 114:18 136:14 147:1 150:7 164:5 165:8 171:5 175:10 187:15 193:22 194:4 208:3, 20 221:12 222:20 228:2, 5 236:15 239:25 248:25 249:1

**fit** 18:20

**five** 29:25 172:18, 20 232:5, 6

**five-minute** 112:25 195:14

**flag** 132:15

**flagging** 132:5, 9

**Flexibility** 62:16

**flip** 42:7

**floated** 197:18, 20

**floors** 170:1

**flow** 108:23

**focus** 113:23 165:1 166:2 167:3 201:1

**focused** 132:23 216:19

**follow** 33:13 72:6 149:13 151:13 161:15 252:23

**following** 7:*5* 29:*11* 91:*13* 140:*25*
**follows** 9:*13* 140:*11* 233:*16*
**football** 128:*22* 151:*5*
**foregoing** 256:*13*
**forget** 19:*18*
**forgive** 35:*9*
**forgot** 254:*13*
**Form** 22:*1, 5, 14* 23:*3* 24:*2* 25:*17, 22* 27:*4, 12, 24* 28:*15* 29:*9, 22* 37:*14* 40:*5* 41:*5, 9* 42:*25* 43:*11* 44:*2* 45:*3, 22* 46:*8, 13* 47:*22* 48:*23* 49:*7, 18* 50:*3, 13* 53:*11* 54:*4* 62:*23* 63:*2, 18* 64:*1, 12* 65:*16, 23* 66:*13* 67:*1, 16* 68:*22* 70:*4, 17* 71:*2, 9, 17, 19* 73:*20* 78:*23* 80:*12* 83:*2* 85:*19* 88:*9, 23* 92:*18* 94:*11, 18* 96:*14* 97:*10* 98:*15* 99:*4, 25* 100:*15* 101:*12, 18, 23* 102:*3, 8, 12, 22* 103:*18* 105:*21* 121:*23* 125:*9* 126:*19* 127:*1, 11* 130:*12* 132:*11* 138:*17, 23* 139:*3* 141:*24* 143:*12* 144:*7, 24* 148:*13* 155:*9* 158:*15* 168:*6* 173:*14* 181:*3* 182:*14, 21, 22* 190:*2* 198:*17* 202:*4, 14, 19* 203:*17, 21* 206:*17* 211:*14* 225:*21* 226:*8* 229:*3* 230:*3* 234:*19* 236:*10* 239:*21* 240:*19* 241:*12, 17* 242:*1, 7, 15, 19* 243:*3* 245:*24* 246:*12* 248:*24* 249:*20* 250:*17* 251:*11* 252:*11*
**formal** 150:*14* 239:*16*

**former** 87:*22*
**Forsyth** 2:*11*
**forthcoming** 88:*21* 197:*5*
**forward** 138:*7* 207:*18* 217:*23*
**forwarding** 210:*16* 212:*24* 214:*10*
**found** 221:*6*
**Foundation** 44:*20* 45:*3* 47:*22* 68:*22* 71:*3, 9, 20* 73:*20* 85:*19* 88:*9, 23* 92:*18* 98:*16* 99:*5, 25* 100:*15* 101:*12, 18, 23* 102:*3, 8, 12* 130:*13* 141:*24* 155:*10* 173:*14, 24* 202:*4, 15, 19* 203:*17, 21* 206:*17* 225:*21* 226:*8* 227:*1*
**founder** 21:*2* 240:*24*
**founding** 240:*23*
**four** 47:*4* 65:*21* 141:*8, 15, 17, 18* 143:*10, 18* 144:*5, 15, 16, 22* 145:*1, 2* 151:*19* 172:*17, 20* 220:*5*
**fourth** 95:*23*
**FP&A** 177:*16*
**frame** 19:*7, 9* 124:*19* 141:*21* 144:*13* 178:*3*
**framed** 64:*4* 180:*14*
**free** 32:*1* 51:*12*
**Friday** 156:*16*
**front** 8:*7* 31:*19* 40:*11* 45:*24* 46:*15* 62:*13* 73:*2* 83:*21* 117:*14* 120:*4, 11* 131:*6* 142:*21* 149:*2* 167:*20* 175:*7* 182:*7* 183:*20, 21* 192:*19* 207:*6* 210:*1* 215:*9* 219:*13* 224:*21* 228:*24* 231:*6*
**FSG** 150:*11, 13* 161:*4* 162:*1* 213:*23*
**full** 41:*19* 47:*19* 74:*20* 133:*6* 137:*11*

216:*5* 256:*14*
**fully** 91:*10*
**fund** 37:*22* 87:*21*
**funds** 197:*14*
**further** 152:*3* 236:*23* 237:*15* 253:*1*
**future** 128:*12* 179:*1* 199:*11* 218:*25*
**FYI** 207:*17* 213:*3, 9*

**< G >**
**gathering** 20:*12* 87:*20*
**GELLER** 2:*5* 8:*14*
**general** 59:*12, 23* 172:*9* 197:*10* 233:*15*
**generally** 197:*12*
**generation** 208:*13*
**generic** 124:*6*
**Geoffroy** 217:*7, 11*
**getting** 26:*25* 28:*12* 30:*7* 152:*8* 153:*21* 192:*8* 248:*9*
**give** 28:*4* 59:*5* 60:*2, 11* 142:*16* 183:*24* 230:*21* 232:*6* 242:*21*
**given** 48:*25* 80:*4, 7* 81:*17* 172:*6* 248:*6* 256:*7, 15*
**go** 10:*6* 13:*17* 15:*22, 23, 24* 17:*25* 22:*6* 26:*8* 37:*2, 11* 43:*15* 46:*17* 47:*25* 51:*23* 52:*2, 25* 55:*24* 56:*6, 13, 21* 57:*11* 66:*3* 69:*8* 72:*1, 24* 74:*9, 21* 75:*19* 81:*4, 10, 12* 83:*16, 24* 84:*11* 86:*1* 89:*7, 8* 91:*22* 93:*5, 12* 100:*12* 101:*5* 109:*1, 15, 21, 22* 110:*4* 111:*3* 114:*12* 115:*14* 116:*6* 120:*20* 123:*8* 126:*6* 128:*10, 21* 131:*22* 134:*1* 136:*3, 13* 137:*6* 139:*24* 147:*13* 151:*9, 19* 152:*3, 24* 153:*17, 24* 154:*17, 25* 155:*3, 8, 15* 156:*7* 161:*18,*

22 162:*7* 170:*21* 172:*21* 174:*13* 181:*6, 7* 183:*2* 187:*5* 188:*2, 7* 191:*9* 195:*14* 199:*14* 200:*9, 11* 201:*9* 203:*25* 207:*11* 208:*20* 209:*6* 213:*25* 216:*23* 217:*6* 218:*6* 220:*18* 221:*7* 223:*10* 224:*9* 228:*13* 229:*18* 235:*24* 239:*23* 251:*15*
**goal** 143:*13, 21*
**goals** 169:*5*
**goes** 46:*1* 48:*14* 57:*23* 62:*25* 104:*5* 113:*20* 117:*13* 122:*13* 135:*19* 137:*23* 138:*7* 139:*15* 140:*16* 148:*25* 158:*22* 164:*20* 166:*18* 167:*18* 172:*15* 177:*6* 187:*18* 191:*19* 192:*1, 23* 194:*7* 195:*3* 196:*12* 199:*3, 23* 200:*18* 201:*17* 203:*10* 207:*1* 209:*25* 210:*24* 212:*20* 223:*16* 228:*7, 19* 231:*5* 232:*21* 234:*8* 246:*22*
**going** 10:*5, 11, 17* 11:*3* 13:*5, 17* 21:*22* 26:*8* 31:*11* 32:*2, 15* 36:*10* 39:*12* 40:*1* 50:*5, 12* 52:*19* 57:*12, 15* 58:*25* 60:*12* 61:*15* 62:*7* 84:*2* 86:*20* 89:*7, 8* 90:*16, 17* 91:*2* 108:*21, 23* 113:*5, 8, 22, 23* 116:*5* 122:*16* 123:*23* 133:*20* 135:*13* 140:*20* 149:*18* 151:*19* 153:*21* 155:*21* 157:*15* 158:*13* 162:*14* 163:*9* 165:*1* 166:*2* 167:*3* 168:*19* 170:*17* 173:*1* 175:*9* 181:*7* 183:*2*

186:*10*  187:*24*  195:*18, 21*  201:*1*  206:*9, 20*  211:*25*  213:*24*  214:2, *23*  218:*17*  219:2  232:*9, 12*  247:*13, 25*  248:*1, 14*  249:9  251:*13*  252:*19*  254:*23*

**Goldman**  146:2

**Good**  8:*12, 17*  9:*17*  129:*16*  167:*7, 8*

**grab**  196:2

**grad**  238:*15*

**graduate**  16:*12, 17*

**graduated**  238:*13*

**graduating**  16:*15*

**grammar**  227:5

**granted**  17:*4*  238:*17*

**Great**  11:*21*  13:6  34:*23*  43:5  56:*25*  57:*17*  66:2  68:*3*  100:*24*  125:*19*  137:*9*  139:9  195:*23*  233:6  237:*23*  246:*15*  254:*3*

**ground**  10:*6*  13:*17*

**group**  23:*9, 12*  87:*3, 18*  151:*11*  205:5

**grow**  241:*4*

**guarantee**  144:*20*

**guess**  38:*14*  222:*24*

**guidance**  103:*8, 21*  159:*16*  185:*9*

**guide**  59:*21*  157:*16, 21, 24*

**Guiding**  19:*12*  132:*21*

**guys**  196:*1*

**< H >**

**HAND**  256:*21*

**handful**  230:*20*

**Handle**  74:*24*

**handwriting**  120:*15, 17*  243:*22*

**Handwritten**  3:*8, 16, 19*  4:*1, 5, 7, 12, 15, 18*  31:*17*  32:*9, 11, 17, 18, 21*  33:*11*  40:*1*  77:*25*  78:*7*  79:*21*  106:*20*  107:*1, 6*  119:*25*

120:*21*  131:*3, 9*  148:*23*  149:*25*  150:*2, 3*  156:*5*  161:*25*  167:*17, 23*  175:*3*  183:*3, 15*  184:*3*  219:*7, 11, 19*  237:*17*  243:*21*  244:*17*  254:*16*

**Hang**  38:*19*

**happen**  121:*25*  123:*19*  127:*16*  130:*15*

**happened**  127:*10*

**happens**  126:*21*

**Happy**  141:*11*  186:*1*

**hard**  33:*10*  183:5

**hardware**  240:*3*

**hats**  231:*20*

**haul**  247:*15*

**head**  10:*23*  119:*9*  198:*1*  239:*10, 11*

**header**  168:*10*

**heading**  39:*9*  72:2  109:2  110:*9*  134:*6*

**heard**  82:*22*  85:*21*  190:*15, 18*

**hearing**  89:*1*

**heat**  172:*21*

**hedge**  37:*22*  87:*21*  197:*14*

**held**  7:*15*  18:*14*  97:*8*  119:*6*

**help**  26:*9*  35:*18*

**helpful**  56:*3, 4*  85:*24*  107:*17*  111:2  222:*15*

**helping**  26:*24*  29:*5*

**hereof**  257:*16*

**hidden**  50:*8*  52:*7, 13, 15*

**high**  18:*18*  19:*8, 10, 20*  67:*3*  238:*10, 11*

**higher**  30:*7*

**highest**  147:*20*

**highlight**  214:*13*

**highlighted**  194:*11*

**highly**  42:*14*

**hire**  24:*15*  25:*9*  54:*23*  55:*1*  74:*3, 10, 16*  90:*10*

**hired**  74:*12*  75:*12, 16*  90:5  153:*13*  214:*18*

**hiring**  54:*19*

**History**  200:*3, 23*

**HOFMAN**  2:*10*  8:*25*  12:*5, 6, 17, 20*

**hold**  18:*13, 22, 24*  20:*13*

**holiday**  148:*12*

**Hostile**  62:*15, 21*  89:*19*  112:*13*  130:*17*  189:*7*  197:*13*  221:*11, 13, 19, 25*  222:*17*  223:*3, 7*  249:*13*

**hostility**  221:*11*  222:*2, 5, 9*  252:*16*

**hour**  11:*12*  12:*19*  98:*10*  99:*24*

**hug**  67:*20, 24*  68:*4, 7, 11, 19*  70:*10*  72:*7, 11*

**huh**  129:*16*

**humble**  198:*23*  199:*1*

**hundreds**  214:*12*

**hurt**  28:*7, 13*  29:*19*

**hypothetical**  28:*20*  29:*24*  71:*20*

**< I >**

**Idaho**  1:*18*  256:5

**idea**  36:*1*

**identification**  31:*14*  39:*15*  55:*18*  77:*17*  96:*22*  104:2  106:*17*  113:*15*  117:*10*  119:*21*  130:*25*  135:*16*  148:*21*  158:*25*  164:*17*  167:*12*  174:*22*  177:*2*  183:*9*  186:*7*  192:*17*  196:*7*  199:*20*  201:*14*  206:*23*  209:*22*  212:*14*  215:2  219:5  223:*13*  224:*15*  228:*16*  231:2  232:*23*  235:2

**identified**  59:*6*  73:*14*  80:*8*  243:*22*  244:*17*

**identify**  25:*4*  234:*8*

**identifying**  145:*22*

**ILCISIN**  1:*9*  7:*4, 13*  8:*12*  9:*1, 11, 17*  15:*12, 22*  20:*24*  24:*19*  30:*4*  31:*20*  39:*19*  40:*1*  41:*11*  48:*1*  49:*22*  50:*20*  52:*22*  53:*21*  56:*8*  57:*25*  58:*22*  61:*12, 21*  62:*13*  69:*22*  70:*3*  73:*1*  75:*22*  77:*5, 24*  78:*8*  82:*13*  85:*25*  90:*9*  94:*22*  97:*2*  99:*14*  101:*8*  105:*24*  106:*19*  109:*15*  113:*3, 22*  114:*6, 14*  115:*24*  116:*9*  117:*6, 15*  119:*16*  120:*6*  131:*7*  135:*18*  137:*11*  140:*24*  142:*22*  145:*8*  149:*3*  156:*7*  158:*19*  161:*22*  164:*19*  167:*21*  174:*24*  177:*8*  181:*10*  183:*6, 14*  185:*16, 25*  191:*10*  192:*20*  196:*14*  199:*22*  200:*25*  201:*16*  202:*17*  207:*2*  215:*10, 22*  219:*1, 7*  223:*19*  228:*21*  231:*9*  233:*3*  235:*5, 21*  237:*2, 22*  238:*3*  239:*23*  253:*3*  254:*20*  257:*23*  258:*25*

**Ilcisin's**  156:*4*

**illustrated**  236:*16*

**IMHO**  198:*22, 25*

**immediately**  46:*20*

**Imminent**  87:*2*

**impact**  208:*12*

**impediments**  48:*8*

**implicate**  109:*12*

**implications**  109:*12*

**imply**  64:*24*

**important**  89:*25*  179:*22*

**impossible**  91:*25*

Deposition of Kevin Ilcisin                                    In Re National Instruments Corporation Securities Litigation

improper 28:20 29:23 71:20 163:21 164:12

improved 27:3, 9, 22 28:12 29:20

include 23:24 24:13 64:25 100:7 124:9 198:2 215:20

included 70:15 80:10 125:2 249:4

includes 31:16 49:5 69:19 70:5 168:13

including 170:14 237:18

inclusive 70:2 168:11

incomplete 28:19 29:23 68:24 71:20 95:5 140:22

inconsistency 175:19

Inconsistent 33:2

Incorporated 18:3 21:11

incorrectly 36:12

increase 122:20 123:7 137:25 138:12, 16, 22 172:25 189:17 194:8, 23

increased 29:6 190:9

increases 137:25 195:4

increasing 198:16

independence 240:25

independent 171:17 212:1 240:23 242:22

INDEX 3:1, 8 4:1 5:1

indicate 92:15 118:9 121:9 154:25 194:16, 20 209:1 245:21

indicated 141:22 257:15

indicates 47:3, 12 97:18 101:15, 20 102:6 116:18 118:14 136:25 139:19 143:9 146:15, 17 147:18 207:23 229:25 236:7

indicating 138:15 144:12 145:13

166:17 205:9

indicative 90:23, 24

individual 105:12

industry 25:25 110:25 238:25 239:3 240:1, 2

inferred 180:19

INFORMATION 6:1 29:1 98:19, 23 100:5 102:21 103:5, 12 104:22 105:19 106:5 132:16, 17, 23, 25 138:10 159:17 160:5 163:17 180:25 224:2 225:11 245:5, 17, 21 246:5 249:2

informed 214:4

informing 221:5

infringement 10:4

initial 23:8 74:25 243:4

Initially 17:18 242:20

initials 33:18, 21, 23 107:5, 9, 12 169:15

initiated 73:23 74:2

injury 9:23

inked 187:19 194:8

Innovations 21:4, 9, 10, 12, 16, 19

inquiring 204:16

inside 80:14

InSinkErator 117:3 207:9, 19 208:17 209:11 210:11 211:4 212:6, 17, 25

insisting 56:5

instance 165:24

instances 43:2

INSTRUCTED 6:1

instructing 164:8

instruction 163:3

instructs 11:7

Instrument 229:22

INSTRUMENTS 1:4 7:14 13:23, 24 14:8, 13 15:19 18:6, 10, 12, 25 19:15, 24 20:14, 17, 19, 20 21:25 22:4, 13, 18, 25 23:25 24:7,

13, 21, 24 25:7, 9, 13, 15, 20, 24 26:4, 10, 14, 23 27:1 30:23 31:8 40:25 43:9, 25 44:10 45:13, 19 49:16, 24 53:6, 17 54:19, 23 55:1, 13 58:1 63:21 68:17 72:10 73:19 74:3, 16 81:2 85:18 88:5, 7 90:5, 10 102:19 104:21 106:3 118:10 119:12 124:24 125:24 126:17 128:16 129:5 130:20 136:11, 18, 21 139:12 146:1, 8, 19 147:24 155:2, 25 168:15 172:3 173:12 180:25 192:2 194:24 195:5, 9 197:4 200:2, 22 201:6 206:15 211:10 214:18 217:8, 12, 15, 19 223:7 224:4 225:4 232:2 233:9 234:17 237:4 238:23 239:1, 4, 5, 10, 19, 24 240:2, 13, 15, 22 241:7, 10, 15, 22, 23 242:5, 13 243:1 245:22 246:6, 7 250:12 251:8 257:4

Instruments's 118:11, 23 181:13 201:24

insurance 222:18

intelligence 87:20

intend 90:19

intent 87:8 90:21 92:1 95:18 245:23

intentional 149:9

interchangeably 15:14

interest 38:24 59:11 234:2, 9 256:19

interested 37:19 110:19 240:16 241:9 244:25 245:16

interesting 123:25 205:20 213:4, 10, 12 214:5, 8, 13 218:2, 23,

24 245:18

interests 234:15

intermixed 174:11

internal 19:3 23:25 77:6 83:6 132:18 133:22 138:8 151:6 169:5

internalizing 97:6 126:8

interposed 250:21

interpret 37:13 185:19 223:8

interpretation 71:4

interpreted 53:19

interrupted 200:7

Interruption 200:5

invade 61:7

invading 61:6

invested 229:1

investment 24:17 26:21 30:9 109:19 112:4 187:17 189:22 190:12 194:5 195:2 213:9 229:6 242:10

investments 20:6

investor 176:14 199:10

investors 174:15 176:15 189:24 190:16, 19, 24 197:14 213:15, 20

Invite 3:16 97:13 98:19

involve 24:5, 9

involved 72:22 152:20 211:22 238:22 241:21

involvement 24:13

IP 10:3

issue 21:23 152:8 158:16 179:10 188:10 204:23

Item 63:6, 10, 13 76:13 89:9 93:13 95:3 107:13 110:22 114:22 115:1, 5 140:5, 7, 10 152:13, 14, 23 171:5 181:16

**items** 76:*3*, *17* 93:*12* 123:*14*, *17* 127:*5*, *8* 132:*8*
**its** 24:*14* 25:*25* 45:*13* 46:*20* 48:*21* 52:*23* 54:*19* 74:*16* 75:*17* 79:*8* 87:*9* 118:*15* 121:*14*, *22* 125:*24* 126:*6* 138:*16* 145:*13*, *22* 146:*9*, *12* 147:*19* 160:*4* 172:*25* 182:*1* 192:*1* 204:*18* 205:*10* 207:*9* 208:*17* 209:*11* 210:*11* 212:*6*, *25* 229:*1* 234:*16* 240:*23* 245:*22*

**< J >**
**January** 243:*11*
**JAVS** 152:*19*
**jcomerford@dowdben nett.com** 2:*13*
**JEREMY** 2:*10* 8:*25* 12:*2*, *4*, *6*
**jhofman@dowdbennet t.com** 2:*13*
**Jin** 208:*7*
**Job** 1:*19* 17:*14*
**jobs** 179:*14*
**JOHN** 2:*10* 8:*22* 12:*3*, *9* 30:*2* 52:*9* 55:*22*, *24* 57:*8* 238:*3*
**JOHNSON** 2:*4*
**join** 18:*10*
**joined** 8:*18*, *19*, *20* 18:*5*, *12* 98:*20*, *24* 99:*15* 100:*12* 101:*9*, *20* 102:*7*
**joining** 239:*15*
**joint** 221:*7* 239:*7*
**judge** 13:*11*
**July** 148:*7*, *11* 164:*25* 166:*19*, *21* 167:*17* 168:*4*, *24* 170:*25* 177:*4* 178:*10* 184:*5*, *11*, *19*, *22*, *23* 186:*14* 188:*19* 193:*1* 196:*11* 197:*1*
**jump** 34:*5*

**June** 106:*20* 107:*18* 113:*19* 114:*22* 115:*21* 117:*21* 119:*6*, *10*, *25* 121:*21* 122:*4*, *14* 124:*13*, *21*, *22*, *23*, *25* 125:*7* 131:*3*, *4*, *19* 134:*6* 135:*23*, *24* 136:*6* 137:*2* 144:*11* 148:*24* 149:*18*, *19* 150:*4* 151:*10*, *16* 153:*25* 156:*13* 158:*21* 160:*2*, *11*, *20* 161:*7* 164:*21* 165:*15* 166:*5*, *13*, *22* 172:*4* 181:*14* 201:*7* 202:*1* 203:*7*, *16* 241:*16* 250:*12*
**Juniper** 21:*3*, *5*
**jury** 13:*11*
**justification** 227:*16*

**< K >**
**Kar** 44:*17*
**Karen** 119:*11*, *14* 126:*21* 127:*15* 159:*16*, *25* 160:*17* 165:*13* 166:*9* 177:*16* 178:*6* 186:*17* 193:*9* 194:*1* 231:*12* 253:*25*
**Karen's** 120:*19* 231:*24*
**Karsanbhai** 41:*2*, *7*, *25* 42:*14* 43:*7*, *23* 44:*23* 45:*17* 46:*5* 68:*16* 135:*25* 137:*16* 139:*15* 141:*5*, *22* 146:*15*, *17* 173:*13* 201:*19* 202:*12*
**Karsanbhai's** 41:*16* 44:*18* 136:*6*, *24* 202:*1*
**Katz** 164:*23* 181:*12*
**keep** 32:*25* 33:*1*, *4* 60:*11* 216:*11* 218:*14* 252:*18*
**keeping** 32:*21*
**kept** 33:*4*
**KEVIN** 1:*9* 7:*4*, *13* 8:*1*, *6* 9:*11* 99:*14* 154:*8*, *12*, *14* 155:*13*

229:*20*, *25* 233:*14* 257:*23* 258:*25*
**Kevin's** 154:*23*
**key** 47:*20* 209:*6*, *11* 233:*16*
**kind** 13:*16* 240:*7*
**King** 153:*7*, *19*
**knew** 82:*24*
**know** 10:*21* 20:*2* 23:*19*, *21* 28:*10* 30:*13* 31:*1* 32:*4* 35:*3* 36:*11* 37:*25* 44:*16* 45:*1* 64:*18* 67:*6* 72:*17*, *25* 86:*5* 87:*6*, *15* 91:*17*, *22*, *24* 93:*22* 95:*3*, *7*, *9*, *17* 96:*12* 99:*23* 100:*5* 106:*24* 129:*21* 152:*6*, *18* 153:*3* 154:*22* 156:*3*, *21* 157:*12*, *19*, *20*, *21*, *22*, *24*, *25* 163:*9* 165:*21*, *24* 170:*11*, *23* 171:*13* 173:*16* 174:*9*, *12* 175:*16*, *22* 176:*4*, *11*, *19* 179:*2*, *14* 185:*18* 188:*16*, *23* 189:*20* 196:*15* 206:*11*, *14*, *19* 207:*3* 214:*11* 218:*17* 220:*15* 221:*4*, *16* 222:*15* 225:*8* 233:*4* 239:*14* 242:*6* 245:*16* 247:*3*, *14* 252:*17*
**knowing** 45:*6*
**knowledge** 45:*10* 246:*5*, *6*
**known** 87:*8*
**knows** 95:*15*
**Kwon-Yong** 208:*7*

**< L >**
**label** 67:*20*
**labeled** 65:*24*, *25* 80:*2* 140:*5*, *7*, *10* 248:*15*
**Lack** 124:*18* 154:*17*, *21*, *24* 155:*7*
**lacks** 99:*5*



**Lal** 84:*17* 86:*13* 173:*13* 201:*19*, *25* 202:*12*, *22* 207:*24*
**language** 180:*6* 194:*11*, *16*, *20*
**laptop** 8:*7* 33:*9*
**large** 174:*12* 228:*8*
**lasted** 98:*9*
**late** 23:*6* 122:*14* 127:*22*
**launch** 248:*1*
**lawsuit** 9:*24*
**lawyer** 84:*6* 185:*18* 221:*2*, *3*
**lawyers** 220:*21*
**layman's** 185:*20*
**leading** 20:*4* 91:*14*
**leads** 37:*24*
**leaf** 60:*2*
**lean** 179:*18*, *21* 180:*11*
**learn** 87:*19*
**learning** 109:*18* 138:*8*
**leave** 20:*19* 39:*1*
**leaving** 20:*16*
**led** 239:*14*
**left** 20:*20* 75:*9* 98:*21*, *25* 99:*17* 100:*20* 101:*16* 102:*1*, *11* 107:*9* 142:*24* 169:*12* 173:*3*
**legal** 54:*23* 72:*16* 90:*11* 101:*1*, *2* 102:*23* 103:*2*, *18* 105:*22* 145:*23* 146:*9*, *12* 182:*15* 203:*11*
**letter** 40:*17*, *18*, *19*, *21*, *22* 41:*2*, *4*, *8*, *12* 42:*21* 43:*3*, *7*, *13* 44:*18*, *23* 45:*1*, *6*, *9*, *13*, *15*, *17* 46:*1*, *18* 48:*4* 51:*18* 53:*14* 54:*6* 63:*10*, *22* 65:*3* 68:*11*, *14*, *15* 69:*1*, *4* 70:*10*, *19*, *22*, *25* 81:*4*, *25* 82:*17* 83:*9*, *13*, *17*,

21  84:21, 25  89:2, 10, 11, 19  92:14, 17  105:16  121:14, 22  122:9, 18  123:6  125:1, 4  128:1, 6, 12, 13, 15, 17  129:3  135:24  136:6, 14, 24  137:16, 24  138:16, 25  139:2  140:4, 16  142:9, 10, 24, 25  143:3, 9, 22  144:1, 10, 11  145:17  148:2  151:16  169:21  201:10, 20, 25  202:7, 11, 22  203:2, 7  241:23  250:6, 8

**letters**  142:21

**level**  18:18  19:8, 10, 20  67:4  229:5

**Leveraged**  38:15, 23  39:4

**Lexington**  2:5

**liaison**  239:10, 12

**lifted**  106:10

**likelihood**  189:17  190:9

**limit**  50:13

**limited**  138:9

**line**  34:17, 24  35:9  36:10, 19  38:14  58:7, 8, 10  84:3  87:11  90:17  91:7, 14  94:3  95:23, 24  100:16  106:2  108:12, 13, 14  109:3  111:18, 23  112:12, 16  114:14  115:8  122:13  133:6, 13  135:3  152:6  162:10  165:20  171:18  173:19  175:18  176:5  180:20  193:2  214:14  251:24

**lines**  39:3  84:11  87:24  89:12  90:15  91:21  92:5  95:22  131:22  151:19  174:3  220:5

**link**  8:4

**linked**  187:18

**Lipton**  58:11  164:23  181:12

**list**  65:9, 11, 12, 13  105:2, 7, 13  216:22  234:1

**listed**  65:25  104:25  105:12  127:5  178:15

**listen**  57:8  76:10  206:6

**listened**  206:10, 15

**lists**  76:3  105:14  233:24

**LITIGATION**  1:5  7:14  237:12  257:5

**little**  43:6  99:23  101:5  107:3  109:1  134:9  142:19  152:2, 3  156:23  216:25

**Liu**  169:20  205:3  210:15, 24  217:24  224:19  235:5

**live**  206:11

**LLP**  2:5, 11  8:14, 23

**log**  97:7  98:13

**long**  17:17, 23  18:22  52:19  95:17  240:24  242:24  247:15  248:2

**long-term**  198:11  199:10

**look**  11:25  34:2  36:14  40:4  41:15  43:6, 15  61:13  82:6, 14  87:24  103:20  115:23  120:8  131:11  138:7  150:7, 17  163:8  181:5  184:1, 16  186:11  193:22  202:8  204:7, 22  216:19  243:13  245:12  247:3, 16  248:12, 14  251:17

**looked**  34:25  68:15  142:24  219:17  221:18, 20

**looking**  24:21  25:16, 20, 24  26:10, 14, 23  27:1, 6  28:13  29:8  33:16  35:8  37:9  39:22  61:16  68:7  75:6  88:4, 7, 13

95:23, 24  99:6  101:6  112:12  114:15  128:23  129:6  130:2  143:3  144:1, 11  151:17  160:16  162:10  169:17  174:4  177:22  193:12  215:14  216:16  220:16  225:9  244:6  253:22

**looks**  40:17  97:12  98:18  129:19  160:9  176:17  205:4  222:1  235:14

**loop**  225:7  226:23  227:23

**loser**  120:24  121:1, 2

**lost**  200:14  232:15

**lot**  212:9  222:18

**lots**  206:8

**loud**  252:3

**Louis**  2:12

**lower**  165:7

**Lucky**  129:17

**Luna**  21:4, 8, 10, 12, 16, 18

**L-U-N-A**  21:10

**lunch**  230:21

**< M >**

**M&A**  23:17  26:11, 12  62:3  116:16, 19  117:2  125:8, 13, 16, 17  178:3  180:2, 13  236:5, 8, 17

**Ma**  208:7

**MacKenzie**  74:18, 19  75:11, 16  153:7, 12  214:18  217:8, 13  225:6, 25  226:5, 23  227:7, 11, 14, 22  229:21, 22  253:21

**MacKenzie's**  225:2, 12, 17  226:6

**maintaining**  32:21

**making**  48:25  187:22  214:7

**management**  137:19  240:12  241:1  251:9

**March**  254:11

**margin**  107:9  152:12  170:8  173:4

**margins**  33:18, 20, 23  107:5  132:1

**Marissa**  165:10, 15  176:9  213:8  224:18  225:5, 24

**Marissa's**  176:13

**mark**  31:12  32:2  39:13  55:15  57:22  77:14  89:16  96:19  103:24  113:10  117:7  119:18  130:22  135:13  148:18  163:15, 20  164:1, 14  174:19  176:21  186:2, 4  192:14  195:13  196:4  199:17  201:11  206:21  209:19  212:11  214:23  216:8  219:3  222:12  224:12  230:24  232:15, 18  234:23

**marked**  31:13  39:14  55:17  77:16  96:21  104:1  106:16  113:14  117:9  119:20  130:24  135:15  148:20  158:24  164:16  167:11  174:21  177:1  183:8  186:6  192:16  196:6  199:19  201:13  206:22  209:21  212:13  215:1  219:4  223:12  224:14  228:15  231:1  232:22  235:1  244:7, 15  247:17  248:13  251:17

**market**  72:13

**marketing**  18:16  19:2, 4

**markets**  18:21  132:18, 22  210:18

**massive**  197:20

**Master**  17:1  238:17

**material**  102:20  103:4, 12  104:21  105:19  106:4  183:5

Deposition of Kevin Ilcisin                    In Re National Instruments Corporation Securities Litigation

**Materials** 115:*21*
128:*21* 162:*17, 18*
164:*24* 166:*25*
211:*20* 253:*23*
**material's** 163:*6*
**matter** 10:*4* 185:*17*
256:*18* 257:*11*
**matters** 242:*9*
**McGrath** 136:*7, 10*
202:*12*
**mean** 12:*4* 24:*16, 18*
26:*18* 33:*19* 36:*17,*
*23* 37:*7, 15* 70:*9*
78:*21* 79:*1* 90:*5*
124:*1* 178:*22, 25*
185:*24* 189:*3* 213:*7*
218:*5* 223:*2* 227:*9*
245:*6* 246:*19* 247:*22*
**Meaning** 161:*10*
**means** 49:*10* 53:*19*
72:*17, 18* 109:*23*
144:*19* 146:*23*
152:*10* 225:*13, 19*
226:*1* 228:*3* 249:*3*
**meant** 94:*15* 95:*6*
154:*22* 155:*6* 190:*10,*
*25* 222:*4, 9* 252:*15*
**measure** 145:*1, 2*
**Measured** 92:*5, 11, 12*
**measurement** 21:*14*
238:*24* 240:*1*
**media** 182:*11, 13, 20*
**medication** 13:*13*
**meet** 8:*20, 21* 12:*1,*
*13, 16*
**Meeting** 3:*16, 24*
55:*5* 85:*12, 17, 22*
92:*16* 97:*8, 13, 19*
98:*3, 6, 21, 25* 99:*23*
100:*4, 6* 115:*11*
117:*21, 23, 24, 25*
118:*2, 3, 7, 18* 119:*5*
150:*10* 151:*13* 154:*2*
156:*12* 181:*14*
196:*25* 248:*22*
**meetings** 23:*25* 24:*6,*
*10* 32:*17* 55:*6*
**members** 249:*4*
**memory** 32:*18*

**mentioned** 17:*5*
25:*10* 92:*17* 216:*25*
**merger** 30:*23* 46:*7,*
*22* 47:*3, 4* 141:*8*
245:*14*
**mergers** 20:*5, 10*
125:*14*
**message** 237:*8*
**message/Wolverine**
233:*15*
**messages** 237:*12*
**messaging** 133:*21, 23*
160:*25* 237:*3*
**Messrs** 12:*20*
**met** 11:*24* 12:*2, 9, 14*
253:*10*
**metadata** 31:*16*
77:*24* 106:*19* 119:*24*
131:*2* 148:*23* 167:*14,*
*16* 175:*2* 183:*14*
219:*11*
**method** 161:*8*
**methodologies** 180:*11*
**methodology** 179:*18,*
*21*
**Michael** 202:*23*
**MicroDisplay** 18:*3*
**middle** 156:*15* 198:*5*
200:*7*
**mid-year** 19:*7, 9*
**Miller** 38:*7, 9* 39:*3*
**million** 31:*6* 217:*14*
229:*15* 230:*1, 2, 7, 8*
**mindful** 181:*20*
**mine** 150:*2*
**minimal** 137:*18*
**minute** 60:*6* 200:*14*
235:*12*
**Minutes** 3:*24* 32:*3*
40:*15* 68:*15* 78:*4*
97:*1* 98:*10* 106:*22*
117:*20* 118:*9* 119:*5*
149:*5* 159:*2* 177:*7*
183:*22* 200:*25* 207:*2*
210:*3* 215:*15* 219:*15*
223:*18* 224:*23*
228:*20* 231:*8* 232:*5,*
*6* 233:*3*
**mischaracterized**
244:*2*

**Mischaracterizes**
44:*3* 50:*4* 53:*11*
64:*2, 13* 66:*13* 67:*2*
94:*19* 96:*15* 97:*11*
103:*17* 127:*12* 139:*4,*
*23* 168:*6* 190:*3*
234:*21* 250:*18*
**misconstrued** 227:*6*
**misdated** 82:*12*
**missed** 71:*22*
**missing** 70:*22*
125:*24* 176:*5*
**Missouri** 2:*12*
**misspoke** 190:*23*
**mistaken** 77:*19*
**moment** 120:*21*
142:*17* 254:*15*
**Monday** 12:*18*
**monitor** 74:*6, 16*
75:*3, 16* 76:*18*
**month** 243:*9*
**months** 18:*23*
**Montross** 2:*16* 7:*18*
**morning** 8:*12, 17*
9:*17* 193:*3*
**motivated** 147:*23*
**mouse** 60:*14*
**move** 48:*15* 56:*4*
60:*15* 208:*2*
**moved** 42:*9*
**moving** 196:*18*
207:*18*
**multiple** 50:*18* 95:*18*
96:*7* 149:*16* 157:*17*
214:*2* 250:*15*
**mutually** 46:*21*

**< N >**
**name** 7:*18* 8:*12*
14:*17, 20, 23, 25* 15:*2,*
*7, 13, 18* 16:*1* 18:*2*
33:*21, 23* 34:*18*
59:*13* 74:*20* 78:*18*
79:*5, 6, 8, 10, 21* 80:*3,*
*6* 150:*14* 153:*18*
238:*3* 249:*6* 254:*1*
**named** 17:*15*
**names** 14:*13* 79:*19*
80:*8*

**NAN-SL-00001447**
117:*13*
**NAN-SL-00011768**
215:*5*
**NASDAQ** 134:*13, 22*
**NATI** 13:*23* 106:*4*
167:*18* 215:*7*
**NATIONAL** 1:*4*
7:*13* 13:*23, 24* 14:*7,*
*13* 15:*19* 18:*5, 10, 12,*
*25* 19:*15, 24* 20:*14,*
*16, 19, 20* 21:*24* 22:*4,*
*13, 18, 25* 23:*25* 24:*6,*
*13, 20, 24* 25:*5, 7, 9,*
*13, 15, 20, 24* 26:*3, 10,*
*14, 23* 27:*1* 30:*22*
31:*8* 40:*24* 43:*8, 24*
44:*9* 45:*13, 19* 49:*15,*
*23* 53:*5, 16* 54:*18, 23*
55:*1, 12* 57:*25* 63:*21*
68:*16* 72:*10* 73:*18*
74:*3, 15* 81:*2* 85:*17*
88:*5, 7* 90:*5, 10*
102:*19* 104:*20* 106:*3*
118:*10, 11, 22* 119:*12*
124:*24* 125:*23*
126:*16* 128:*16* 129:*4*
130:*19* 136:*11, 18, 21*
139:*12* 146:*1, 8, 19*
147:*23* 155:*2, 24*
168:*14* 172:*3* 173:*12*
180:*24* 181:*13* 192:*2*
194:*23* 195:*5, 9*
197:*4* 200:*2, 22*
201:*6, 24* 206:*15*
211:*10* 214:*18* 217:*8,*
*12, 15, 18* 223:*6*
224:*4* 225:*3* 229:*21*
232:*2* 233:*9* 234:*17*
237:*4* 238:*23* 239:*1,*
*4, 5, 10, 19, 20, 24*
240:*1, 13, 15, 22*
241:*7, 9, 15, 22, 23*
242:*4, 12, 25* 245:*22*
246:*6, 7* 250:*11*
251:*8* 257:*4*
**natively** 215:*22*
**NATSL** 39:*18*
**NAT-SL-00001239**
5:*6* 201:*17*

Deposition of Kevin Ilcisin     In Re National Instruments Corporation Securities Litigation

NAT-SL-00001263 3:*12*  39:*20*
NAT-SL-00001447 3:*24*
NAT-SL-00008520 4:*4*
NAT-SL-00010410 4:*7*  135:*19*
NAT-SL-00011768 5:*12*
NAT-SL-00011781 5:*4*  199:*23*  200:*18*
NAT-SL-00012292 5:*23*  235:*6*
NAT-SL-00015145 4:*12*  164:*20*
NAT-SL-00016099 3:*18*  96:*25*
NAT-SL-00016112 3:*14*  57:*23*
NAT-SL-00017263 5:*8*  207:*1*
NAT-SL-00017728 4:*10*  158:*22*
NAT-SL-00018186 5:*9*  209:*25*
NAT-SL-00018188 5:*11*  212:*20*
NAT-SL-00019635 5:*14*  219:*12*
NAT-SL-00019636 4:*9*  148:*24*
NAT-SL-00019642 4:*5*  131:*5*
NAT-SL-00019645 4:*14*
NAT-SL-00019646 167:*18*
NAT-SL-00019760 3:*21*  106:*21*
NAT-SL-000222  78:*2*
NAT-SL-00022248 3:*16*
NAT-SL-00023167 4:*22*  192:*23*
NAT-SL-00023189 5:*22*  232:*20*
NAT-SL-00023205 4:*17*  177:*5*

NAT-SL-00023210 4:*23*  196:*12*
NAT-SL-00023530 5:*20*  231:*5*
NAT-SL-00023790 5:*19*  228:*19*
NAT-SL-00023922 3:*19*  104:*5*
NAT-SL-00025699 4:*20*
NAT-SL-00027226 4:*18*  183:*16*
NAT-SL-00027400 5:*17*  224:*20*
NAT-SL-00027888 5:*16*  223:*16*
NAT-SL-00028008 4:*15*  175:*4*
NAT-SL-00028044 3:*11*  31:*18*
NAT-SL-19761 248:*15*
**nature** 66:*10*, *24* 132:*25*
**NDA** 138:*10*
**necessarily** 30:*8* 33:*17*  88:*11*  211:*12*, *15*
**need** 9:*3*  11:*12*, *16* 23:*19*  50:*21*  51:*12* 56:*1*  59:*1*  113:*23* 133:*17*  134:*24*  135:*2*, *4* 146:*21*  160:*25* 165:*3*  170:*15*  172:*21* 175:*13*, *25*  176:*8*, *9* 180:*6*  188:*13*  196:*14* 201:*3*, *8*  253:*20*
**needed** 23:*23*  237:*19* 253:*19*
**negotiate** 46:*21*
**Neither** 211:*6*, *17* 212:*4*
**Never** 91:*22*  97:*17* 130:*1*  179:*2*
**NEW** 1:*2*  2:*6*  7:*16* 182:*8*  224:*8*  249:*4*
**news** 209:*6*
**NI** 13:*23*  30:*18* 35:*8*  40:*18*  45:*15* 46:*20*  48:*9*, *22*  73:*24*

74:*10*  75:*2*, *16*  79:*2*, *6*, *23*  80:*4*, *11*, *14*, *15*, *18*  82:*17*  87:*25* 88:*13*  104:*7*  106:*4*, *7* 121:*13*  123:*5*  124:*3* 125:*15*  132:*10*, *21* 133:*2*  140:*12*  148:*1* 150:*16*  154:*22*  155:*8* 179:*2*, *4*, *13*, *17*  182:*1* 187:*17*  194:*6*  199:*8* 201:*20*  212:*2*  229:*1*, *10*, *11*  230:*2*  233:*25* 237:*10*  239:*12*, *15*, *16* 243:*5*
**night** 231:*16*
**Niles** 57:*25* 101:*9*, *16* 169:*16* 171:*21* 207:*13*, *17*, *23*  208:*5* 224:*19*
**NI's** 78:*21*  83:*5*, *6* 101:*1*, *2*  102:*16* 104:*7* 128:*7* 137:*1* 177:*20*  198:*16*  240:*8*
**No.____Change** 258:*2*, *5*, *8*, *11*, *14*, *17*, *20*
**No.____Line**  258:*2*, *5*, *8*, *11*, *14*, *17*, *20*
**NOBO** 216:*22*  217:*1* 224:*1*, *8*  227:*17*
**nods** 10:*21*  119:*9*
**nonbinding** 69:*11*
**non-objecting** 217:*4*
**NonPublic** 75:*25* 102:*20*  103:*4*, *12* 104:*21*  105:*19*  106:*4* 138:*9*
**normal** 108:*9*, *14*, *18* 205:*12*
**normalized** 108:*24*
**Nos** 3:*12*, *14*, *16*, *19*, *22*, *24*  4:*1*, *5*, *7*, *10*, *12*, *15*, *18*, *20*, *23*  5:*4*, *6*, *9*, *12*, *14*, *17*, *20*, *23* 39:*17*  113:*20*
**notation** 169:*4*  170:*5*
**note** 34:*9*  35:*6*  39:*1* 50:*5*  80:*22*, *23*  107:*8* 122:*5*  130:*2*  133:*17*, *18*  176:*16*  178:*9*

199:*25*  220:*19* 247:*22*
**noted** 9:*8*  50:*9*
**Notes** 3:*8*, *16*, *19*  4:*1*, *5*, *7*, *12*, *15*, *18*  13:*5* 31:*17*, *18*  32:*9*, *11*, *17*, *18*, *21*, *24*  33:*1*, *4*, *5*, *11*, *16*  34:*11*  37:*9*, *12*, *13*  38:*3*, *6*, *13*, *19* 39:*2*  40:*1*  77:*25* 78:*1*, *7*, *10*, *11*, *14* 79:*21*  81:*16*, *19*, *24* 82:*1*, *8*, *12*, *14*, *15*, *20* 84:*2*  85:*20*  86:*7* 89:*15*  91:*3*, *20*  92:*15*, *19*  93:*2*, *6*, *10*  106:*20* 107:*1*, *6*, *19*  111:*5* 119:*25*  120:*21*  121:*6* 131:*3*, *9*, *16*  134:*5* 148:*23*  149:*6*, *8*, *10*, *15*, *18*  150:*1*, *2*, *3*, *8*, *10*  151:*10*, *15*  153:*25* 154:*2*  155:*22*  156:*5*, *12*  158:*9*, *14*  161:*25* 162:*8*  167:*15*, *17*, *23*, *25*  168:*3*, *7*, *8*, *16*, *24* 169:*13*, *17*  170:*13*, *18*, *21*, *25*  171:*5*  175:*3*, *6*, *10*  183:*3*, *15*, *16*, *23* 184:*1*, *3*, *5*, *11*, *22* 185:*1*, *20*  186:*1* 188:*3*, *19*  189:*1*, *2*, *3* 219:*7*, *11*, *19*  220:*3*, *17*  221:*10*  236:*14* 237:*17*  243:*21* 244:*17*, *23*  245:*9*, *20* 248:*18*, *23*  251:*19*, *23* 254:*16*
**Notice** 121:*10*  122:*6*
**Notification** 104:*13* 106:*8*
**November** 253:*9*
**NS** 169:*18*  170:*8*, *11*, *15*
**nuanced** 190:*7*
**number** 36:*7*  168:*9* 174:*12*  218:*10*
**numbers** 64:*25* 135:*19*

**Nuthatch** 14:*17* 116:*12*, *18* 166:*18* 178:*14*, *18*, *21* 187:*18*, *24* 189:*8*, *22* 190:*11*, *17* 191:*16*, *19* 194:*7*, *20*, *21* 199:*3* 214:*6* 219:*22*, *24* 225:*7*, *9* 226:*23* 227:*23* 231:*19*, *22* 236:*7*, *16*

**< O >**
**oath** 13:*8* 257:*17*
**oaths** 256:*3*
**object** 11:*6* 22:*5*, *14* 23:*3* 24:*2* 27:*4*, *12*, *24* 28:*15* 42:*25* 44:*2* 49:*18*, *25* 50:*3* 52:*13* 54:*4* 58:*17* 61:*4*, *9* 64:*12* 66:*12* 67:*1* 70:*17* 94:*18* 96:*14* 97:*10* 98:*15* 99:*4* 103:*13*, *16* 105:*21* 127:*11* 138:*17* 139:*22* 140:*21* 162:*19* 190:*2* 202:*18* 239:*21* 241:*12* 249:*20* 252:*11*
**Objection** 15:*9* 50:*13* 53:*7*, *10* 69:*20*, *23* 71:*2* 124:*18* 130:*12* 155:*9* 162:*21* 168:*5* 240:*19* 241:*17* 242:*1*, *7*, *15*, *19* 243:*3* 244:*1* 245:*24* 246:*9*, *12* 248:*24* 250:*2*, *17*, *20* 251:*11*
**objections** 100:*22* 103:*6* 226:*12*, *16*
**obligated** 185:*23*
**obligation** 66:*23*
**obligations** 66:*9* 67:*7*, *9* 72:*2*
**obtain** 16:*20* 29:*5* 238:*19*
**obtained** 16:*22* 20:*9*
**obtaining** 27:*3*, *9*, *22* 28:*12* 29:*20*
**obviously** 30:*8* 149:*15*

**occurred** 82:*11*
**occurring** 256:*15*
**ocean** 156:*19*
**October** 1:*10* 7:*2*, *11* 12:*15* 14:*11* 17:*11* 30:*24* 253:*9* 256:*22*
**offer** 14:*14* 24:*1* 27:*11* 29:*2*, *6* 30:*7* 45:*18* 53:*18*, *20*, *22* 63:*22* 65:*3* 78:*22* 82:*25* 88:*18*, *22* 89:*22* 90:*3*, *20*, *24* 92:*22* 121:*14*, *22* 123:*19* 126:*6* 146:*25* 179:*5* 192:*1* 220:*12* 225:*19* 226:*1* 228:*3* 239:*16* 242:*9* 248:*2* 257:*17*
**offering** 43:*8*, *24* 48:*21* 49:*15*, *23* 53:*5* 126:*5*
**offerings** 72:*13* 74:*13*
**offeror** 63:*11*
**offers** 15:*20* 21:*24* 22:*3*, *13* 23:*1* 27:*3*, *10*, *22* 28:*12* 29:*20*
**officer** 100:*8* 102:*16* 239:*2*
**officers** 100:*7*
**Oh** 9:*5* 75:*8* 129:*16* 167:*2* 170:*24* 176:*24* 186:*12* 200:*13* 239:*24* 252:*4* 254:*9*
**Okay** 8:*10* 10:*5*, *8*, *10*, *19*, *25* 11:*1*, *18* 13:*20* 18:*24* 19:*10* 21:*21* 24:*12* 25:*13* 27:*18* 29:*16* 30:*12*, *17* 31:*1* 32:*5* 33:*8* 34:*2*, *4*, *6*, *17* 35:*22* 36:*3*, *6*, *12*, *19* 37:*2*, *6*, *8*, *10*, *15* 38:*1*, *12* 39:*11* 40:*3*, *7*, *15*, *23* 41:*2*, *15*, *16*, *19*, *24* 42:*7*, *11*, *13* 43:*15*, *19* 44:*13*, *16* 45:*17* 46:*4*, *17* 47:*2* 48:*5*, *20* 50:*22* 51:*6*, *14* 55:*8* 56:*12*, *19* 58:*7* 59:*2* 60:*5*, *9*, *23* 61:*15*, *23*

63:*6*, *10*, *13* 64:*9*, *20* 65:*3*, *8*, *21* 66:*8* 68:*7*, *10* 71:*7*, *13*, *25* 72:*9* 73:*5*, *13* 74:*15* 77:*9*, *13*, *22* 78:*6*, *17* 79:*15*, *17*, *20* 80:*3* 81:*5*, *23* 83:*14* 84:*11*, *15*, *25* 85:*6*, *11*, *24* 86:*10*, *13* 88:*7* 89:*4*, *24* 90:*15*, *19* 91:*2*, *13*, *21* 92:*4*, *15* 93:*5* 94:*7* 95:*13* 97:*3*, *7*, *15*, *18*, *21* 98:*12* 100:*19*, *24* 101:*2*, *15* 102:*15* 103:*23* 104:*25* 105:*5* 106:*13*, *25* 107:*8*, *23* 108:*17*, *20* 109:*1*, *8* 110:*1*, *4* 111:*2*, *21* 112:*11*, *16* 113:*2* 114:*3*, *11* 116:*1* 118:*3*, *6*, *9* 119:*4*, *16* 120:*8*, *23* 121:*1*, *5*, *9*, *19* 122:*2*, *8*, *13* 125:*7*, *18* 126:*1*, *13* 127:*18*, *21* 128:*25* 129:*2*, *8*, *13* 131:*11*, *16* 133:*10*, *16* 136:*13* 137:*5*, *23* 139:*9*, *15* 140:*3* 141:*1*, *11* 142:*4*, *7* 143:*5*, *22* 144:*10*, *15* 145:*4*, *8* 147:*22* 148:*10* 149:*5*, *12*, *20*, *23*, *24* 150:*3*, *13* 151:*23* 152:*11*, *17*, *22* 153:*2*, *6* 156:*23* 157:*2* 159:*9*, *24* 160:*24* 161:*6* 165:*4*, *14*, *17*, *21* 166:*4*, *5*, *12*, *16*, *24* 167:*2*, *5* 168:*21* 169:*12*, *22* 170:*5*, *25* 171:*13*, *18* 172:*8* 174:*9* 175:*6*, *9*, *25* 176:*9*, *16* 177:*22* 178:*9*, *24* 179:*13* 180:*23* 181:*22* 182:*25* 183:*25* 184:*25* 186:*12* 187:*11* 188:*2*, *8*, *18*, *25* 189:*4* 191:*2*, *12* 192:*13* 193:*1*, *12*, *22*

195:*7*, *15*, *16* 196:*17*, *19* 199:*12* 201:*4* 202:*2*, *14* 203:*15* 204:*9*, *16* 206:*14* 207:*4*, *17* 208:*2* 209:*14*, *18* 210:*5*, *15*, *21*, *24* 211:*6* 212:*10* 213:*12*, *16* 214:*16* 215:*15*, *23* 216:*4*, *21*, *23* 217:*6*, *23* 219:*10*, *15*, *18* 220:*1*, *5* 221:*3* 222:*1*, *11* 223:*9*, *21* 224:*11*, *25* 225:*1*, *17* 226:*21* 228:*12*, *22* 229:*12* 230:*6*, *23* 231:*10*, *15*, *24* 233:*6*, *13* 234:*6*, *8*, *15* 235:*25* 236:*21* 237:*7*, *11* 238:*5*, *22* 241:*21* 242:*4*, *24* 243:*12* 244:*14*, *16* 247:*5*, *16* 248:*12* 249:*8*, *25* 250:*4*, *10*, *22* 251:*17*, *23* 252:*5*, *20*
**old** 59:*13*
**once** 112:*17* 127:*9* 249:*18* 250:*1*, *14* 251:*7*, *14*
**one-pager** 219:*16*
**ones** 167:*6*
**one-word** 135:*5*
**open** 176:*17*
**operating** 198:*3*
**operational** 20:*3* 138:*1*
**opinion** 29:*2* 53:*19* 198:*23* 199:*1*
**opportunistic** 178:*3* 180:*14*
**opportunities** 171:*16*
**opportunity** 51:*8* 55:*24* 60:*2* 171:*11* 230:*21*
**opposed** 179:*5* 198:*11* 214:*10*
**option** 155:*4* 198:*9* 199:*12*
**options** 62:*21* 197:*5*, *8*
**orally** 161:*4*

**Oregon** 1:*11, 17* 7:*2*
17:*16* 256:*5, 24*
**organization** 19:*4*
**organizations** 221:*17*
**orient** 201:*3* 248:*21*
**original** 67:*10*
**originally** 238:*7*
**outline** 67:*4*
**outreach** 246:*17*
247:*4*
**outside** 60:*20* 140:*12*
**outstanding** 44:*6, 10*
**overall** 15:*1* 60:*25*
79:*22* 199:*9*
**overlap** 245:*13*
**overtake** 247:*14*
**owned** 237:*9*
**owner** 21:*2*
**ownership** 217:*5*

**< P >**
**p.m** 98:*4, 7, 25* 99:*1,
12, 20* 100:*12* 101:*6,
11, 16, 21* 102:*2, 7, 11*
195:*19, 22* 232:*10, 13*
254:*24* 255:*2*
**pace** 92:*5, 11, 12*
**package** 185:*22*
**pad** 13:*4*
**PAGE** 3:*3, 8* 4:*1*
5:*1* 6:*1* 42:*8, 12, 14*
43:*16, 17* 47:*16, 17*
50:*6* 51:*18, 20, 23, 25*
52:*2, 6, 16, 22, 25*
56:*8, 14, 16, 21, 23*
58:*18* 60:*24* 61:*17,
19* 62:*8, 10, 12* 67:*10*
72:*24, 25* 73:*5* 74:*22*
75:*20* 83:*17* 91:*2, 3*
92:*20* 93:*5, 6* 94:*25*
99:*8* 105:*7* 110:*5*
111:*3, 4, 8* 113:*25*
114:*1, 13* 115:*15, 17*
116:*6, 22* 117:*1*
120:*9, 13, 17, 18*
130:*2, 9* 131:*11, 12,
14* 133:*11* 134:*1, 2, 5*
136:*4, 9, 14* 137:*7, 8*
141:*20* 142:*10, 11*
143:*24* 147:*4, 13, 19*

150:*8, 19* 151:*9*
153:*24* 156:*8, 10, 16*
157:*16* 159:*22*
161:*22* 162:*7, 8*
165:*2, 6, 8* 168:*20*
170:*21, 22* 177:*23*
180:*13* 181:*7* 182:*7*
184:*16* 187:*6, 11*
188:*7, 9, 18* 191:*9, 12,
13* 198:*6* 200:*4, 24*
202:*9* 207:*11, 13*
208:*3, 4, 20, 21*
215:*17* 221:*12* 222:*3*
225:*23* 229:*18*
235:*23* 236:*15*
244:*22* 247:*17, 25*
248:*15, 25* 258:*2, 5, 8,
11, 14, 17, 20*
**Pages** 6:*1* 59:*25*
75:*20* 78:*13* 121:*17*
235:*18*
**paid** 31:*2, 7*
**paper** 13:*4* 39:*23*
141:*4*
**paragraph** 41:*19, 24*
42:*13* 47:*19* 48:*2, 3,
5, 20, 24* 136:*13*
137:*11* 147:*19* 203:*2*
246:*23*
**paragraphs** 133:*14*
**paraphrase** 46:*12*
**paraphrasing** 46:*9*
72:*9* 141:*6, 10*
145:*13*
**pardon** 19:*9* 220:*17*
239:*22*
**paren** 176:*17*
**part** 22:*18* 23:8, *12,
19* 50:*8* 83:*4* 89:*25*
100:*4* 108:*15* 109:*23*
117:*24, 25* 118:*2*
154:*24* 205:*15*
208:*11* 239:*5* 240:*12*
**partial** 91:*20*
**partially** 168:*2*
**participate** 206:*3*
**participated** 77:*11*
96:*12, 18* 99:*22*
**participating** 77:*5*

248:*22*
**participation** 24:*9*
**particular** 15:*15*
80:*8* 107:*8* 115:*24*
185:*23*
**partner** 38:*10*
**Partners** 74:*19*
75:*12* 214:*18* 217:*13*
229:*22* 253:*21*
**parts** 84:*12, 15*
**party** 205:*25* 206:*4*
254:*12* 256:*18*
**passive** 111:*24*
**pause** 199:*3, 14*
**PDF** 61:*19* 62:*10*
111:*3* 114:*2* 115:*15*
116:*7* 120:*9* 131:*12*
136:*4* 216:*10*
**PE** 36:*14, 17* 38:*23,
24*
**Pedro** 177:*14, 15, 16,
19* 178:*2, 10*
**peer** 239:*3*
**PENALTY** 257:*7, 9*
**pending** 11:*16* 53:*4*
**people** 79:*18* 98:*20*
222:*8* 229:*4*
**perceive** 189:*22, 25*
190:*12, 19* 191:*6*
**perceived** 65:*13*
189:*7*
**percent** 44:*6* 45:*19*
129:*4* 137:*1*
**Perception** 199:*9*
**Percival** 186:*18*
194:*12, 15, 19* 208:*5*
**Perfect** 8:*10* 83:*23*
**perform** 28:*4* 153:*15*
214:*19*
**performance** 138:*1*
171:*16*
**performed** 139:*20*
140:*11* 179:*11*
**performing** 133:*2*
**period** 30:*19* 31:*10*
73:*22* 140:*13* 243:*2*
**periods** 30:*17* 79:*5*
**PERJURY** 257:*7, 9*

**person** 12:*2, 11* 50:*8*
105:*14* 107:*16*
253:*24*
**personal** 9:*23*
103:*11* 239:*13* 253:*4,
12* 254:*4*
**personally** 80:*2*
237:*9*
**personnel** 233:*9*
**person's** 33:*23*
**perspective** 195:*7, 8*
225:*17* 226:*6, 24*
227:*24* 242:*10*
245:*15*
**perspectives** 186:*25*
187:*12*
**peruse** 59:*4* 78:*5*
**petered** 234:*3*
**petering** 234:*9, 16*
**Ph.D** 238:*18, 19*
**Phil** 107:*24* 249:*2*
**Philosophy** 17:*8, 10*
**Phil's** 249:*6*
**phone** 89:*18* 161:*11*
237:*7, 9*
**phrase** 23:*21* 218:*23*
**physical** 40:*4*
**piece** 141:*4*
**pipeline** 234:*1*
**place** 97:*19* 98:*13*
105:*19* 243:*10* 256:*8,
16*
**places** 230:*7, 12*
**Plaintiff** 2:*3* 8:*15*
**plan** 108:*10* 114:*22*
133:*6* 138:*8* 154:*17,
25* 161:*3* 197:*21*
198:*10* 199:*2, 13*
214:*6* 237:*10* 241:*4*
**Planning** 172:*9, 14*
220:*10*
**plans** 20:*3*
**play** 88:*12*
**player** 88:*14* 239:*25*
**please** 9:*6, 9* 10:*25*
11:*12* 50:*13, 21, 23*
51:*2, 4, 6, 10, 12, 13,
20, 23* 52:*8, 21, 25*
56:*6* 57:*11* 58:*20*
60:*8* 61:*10* 66:*16*

78:*5*  81:*5*  104:*13*
106:*23*  114:*7*  137:*9*
159:*3*  165:*21*  188:*3*
210:*3*  215:*16*  216:*12*
233:*3*  235:*17*  238:*10*
243:*16*
**Pleasure**  8:*19*, *21*
**plugs**  240:*6*
**point**  28:*23*  55:*25*
56:*1*  59:*14*  62:*7*
69:*11*  73:*19*  76:*6*
77:*13*  86:*8*  91:*19*
108:*24*  126:*22*, *24*
179:*1*, *3*  193:*23*
197:*11*  198:*22*, *25*
213:*22*  228:*2*  245:*4*,
*18*
**pointed**  100:*17*
**points**  35:*14*  41:*8*
94:*8*  160:*10*, *25*
168:*16*  233:*16*, *19*, *24*
244:*23*
**polite**  111:*24*
**Polk**  146:*9*, *12*
**poorly**  169:*21*
**populated**  40:*5*
**POR**  108:*9*, *10*, *14*, *19*,
*24*
**portfolio**  86:*21*, *22*,
*25*  207:*18*
**portion**  91:*14*
**Portland**  1:*11*  7:*2*,
*17*  8:*23*  17:*15*
**Portrayed**  189:*12*
**position**  18:*13*, *14*, *19*,
*22*  19:*6*, *11*  20:*7*
73:*23*  163:*10*  174:*17*
209:*16*  240:*2*
**positions**  18:*25*  20:*13*
**possession**  26:*7*
**possible**  80:*14*  92:*17*
142:*19*  187:*24*
**possibly**  239:*14*
**potential**  22:*17*  25:*2*
41:*13*  42:*1*  79:*23*
80:*1*, *4*, *10*  112:*8*
155:*24*  193:*14*, *17*, *20*
**potentially**  67:*8*
247:*24*

**PowerPoint**  60:*19*
61:*23*  62:*2*  116:*1*
186:*22*
**PR**  133:*6*
**practically**  151:*20*
**practice**  32:*16*, *20*, *23*,
*24*  33:*3*, *14*  34:*1*
205:*12*
**practiced**  144:*19*
**prediction**  129:*11*
**predictions**  123:*18*
**prefer**  137:*14*, *17*
**premise**  121:*25*
122:*5*
**premium**  45:*19*
125:*19*  128:*15*  129:*4*
137:*1*
**premiums**  128:*12*, *14*
**preparation**  40:*22*
**prepare**  11:*22*  36:*20*,
*24*  37:*18*  160:*25*
213:*23*
**prepared**  46:*19*
48:*14*  76:*23*  86:*2*
116:*2*  155:*14*  166:*18*
181:*13*
**Preparedness**  62:*4*
**preparing**  160:*10*
196:*25*
**prepped**  61:*8*
**Present**  2:*15*  41:*20*
55:*7*  100:*4*  112:*20*
**presentation**  61:*23*
66:*4*  81:*16*, *21*  82:*9*,
*11*, *21*, *23*  83:*1*
115:*20*  116:*1*, *23*
164:*22*  180:*8*  181:*12*
186:*23*  200:*1*, *21*, *24*
218:*8*  235:*7*
**presentations**  55:*9*,
*12*  180:*5*
**presented**  65:*19*
83:*21*  118:*4*, *6*, *10*, *14*
**president**  18:*14*, *15*
19:2, *14*, *16*, *22*
**presidents**  20:*8*
**press**  133:*11*, *20*, *24*
**Pressure**  62:*17*
87:*13*, *14*, *18*  94:*4*
228:*9*

**presumably**  211:*7*, *18*
212:*5*  220:*18*
**pretty**  129:*16*, *20*
**prevent**  13:*14*
**previous**  92:*19*
142:*6*  176:*5*  180:*19*
245:*11*  246:*24*
247:*25*
**previously**  25:*3*
141:*22*  221:*5*  238:*17*
**price**  29:*3*  45:*20*
54:*3*, *8*, *10*  68:*20*
69:*3*, *5*, *13*  123:*7*
128:*16*  129:*5*, *9*, *10*
137:*2*  151:*5*  194:*8*,
*23*  195:*4*, *5*  198:*16*,
*19*  199:*8*, *9*
**prices**  128:*24*
**Princeton**  16:*19*, *20*,
*22*, *25*  17:*6*, *7*, *10*, *12*
238:*15*, *20*
**print**  182:*20*
**prior**  9:*25*  64:*13*
94:*20*  103:*17*  164:*2*
168:*6*  204:*1*  205:*10*
238:*25*  241:*6*  254:*15*
**priority**  147:*20*
**Priv**  58:*11*
**private**  35:*7*  36:*18*
37:*5*, *21*  63:*10*, *22*
65:*3*  68:*11*, *15*  69:*1*
**privately**  137:*20*
251:*14*
**privilege**  61:*6*  156:*1*
163:*5*, *13*  164:*10*
185:*17*
**Privileged**  160:*5*
163:*17*
**proactive**  132:*22*
174:*6*, *15*
**Proactively**  151:*24*, *25*
**probably**  81:*20*
85:*21*  86:*11*  105:*4*
119:*2*, *3*  123:*7*
155:*11*  170:*15*  250:*8*
**problem**  40:*10*
163:*25*  178:*4*  179:*10*,
*23*  180:*9*, *15*, *16*, *17*,
*21*, *22*  201:*23*
**problems**  178:*16*

**proceed**  10:*5*  46:*19*
58:*22*  64:*21*
**proceedings**  7:5
256:*6*, *10*, *15*
**process**  11:*25*  13:5
15:*1*, *13*, *19*  20:*1*
53:*18*  73:*22*  74:*1*
78:*19*, *20*, *21*  79:*1*, *4*,
*6*, *22*  80:*2*, *7*, *10*
95:*16*, *20*  109:*9*, *23*,
*24*  157:*19*  159:*19*
185:*8*  243:*6*  247:*11*
248:*2*
**produce**  155:*22*
158:*14*
**produced**  149:*10*, *21*
215:*21*  216:*2*  237:*20*
**product**  18:*15*  239:2,
*7*  240:*5*
**products**  18:*21*  240:*4*
**professional**  239:*13*
253:*4*, *13*  254:5
**Profitability**  169:*25*
**program**  238:*12*
**Project**  15:*18*  23:*20*
31:2  54:*24*  55:*4*
73:*19*, *21*  79:*3*, *9*
80:*3*, *14*  90:*13*
104:*12*, *22*  105:*15*, *20*
106:*6*, *9*  115:*20*
116:*3*  118:*12*  121:*7*
164:*24*  235:*8*  236:2
237:*4*  239:*7*
**projects**  168:*9*
**promotion**  19:*18*
**proper**  163:*1*
**proposal**  26:*20*
40:*24*  41:*21*  44:*9*, *13*,
*14*  47:*20*  48:*6*, *22*, *25*
49:*2*, *5*, *8*  69:*6*, *9*
70:*15*, *25*  77:*7*  80:*18*
81:*2*  83:*9*  92:*13*
93:*1*  102:*18*  118:*18*,
*24*  123:*20*  124:*15*, *17*,
*24*  126:*10*, *17*, *18*
128:*7*  129:*4*  136:*16*
137:*1*  138:*12*, *16*, *22*
145:*14*  147:*19*
160:*11*  166:*14*, *22*
168:*14*, *17*  172:*4*

179:*5*  187:*1, 13*
197:*18, 19, 20*  201:*7*
202:*1*  203:*16*
**proposals**  241:*15*
**proposed**  69:*13*
143:*10*  146:*19*  147:*3,*
*8*
**Proposes**  44:*5*  70:*10*
**proposing**  43:*8*
68:*20*  69:*2*  71:*13*
136:*18, 20*
**pros**  67:*6*
**prospects**  42:*15*
**protocols**  100:*3*
**provide**  10:*13, 17*
11:*8*  29:*1*  48:*8*
100:*4*  161:*11*
**provided**  13:2  148:*6*
229:*12*
**provider**  88:*13*
153:*20*  225:*11*  240:*3*
**provides**  75:*13*  205:*8*
**proxy**  74:*12*  75:*12*
247:*13*  248:*2*
**psychology**  172:*10, 14*
**public**  44:*19*  45:*2,*
*16*  63:*14*  67:*20*
76:*24*  95:*16*  123:*8*
126:*2, 6, 9, 10*  127:*25*
132:*17*  154:*18, 25*
155:*3, 8, 15, 17*
166:*19*  172:*15, 21*
173:*1*  174:*13*  181:*18*
182:*6, 10*  187:*18, 25*
191:*19*  192:*1*  194:*7*
195:*4*  213:*25*  249:*9*
251:*13, 15*
**publicly**  87:*8*  243:*6*
**publish**  182:*12*
**published**  54:*8, 10*
182:*11*
**pull**  106:*14*  142:*4*
158:*17*  167:*9*  243:*15*
**pundits**  133:*3*
**purchase**  38:*15*  39:*4*
44:*5, 9*
**pure**  88:*12*
**purely**  94:*24*
**purported**  140:*21*

**purpose**  242:*4*
**purposely**  52:*13*
**pursue**  116:*19*
236:*17*
**pursuing**  247:*1, 2*
**put**  26:*5*  64:*17*  77:*2*
82:*3*  112:*19*  117:*5*
142:*8*  177:*19*  188:*13*
233:*19*  235:*18*  239:*7*
**putting**  180:*4*  246:*24*

**< Q >**
**Q3**  128:*1, 12*
**Q4**  210:*25*  211:*4, 13*
**quarter**  128:*7*
**question**  10:*12, 24*
11:*3, 16*  15:*17*  26:*17*
28:*24*  29:*12*  30:*5, 11,*
*20*  31:*9*  37:*17*  38:*12,*
*22*  39:*2*  49:*18*  50:*4*
51:*1, 3*  52:*2*  53:*4, 9*
54:*6, 7*  59:*9, 17, 19,*
*22, 23*  61:*5*  66:*15*
74:*10*  79:*16*  90:*8, 9*
103:*2, 3*  125:*11*
150:*18*  163:*4, 13, 21*
165:*1*  185:*11, 17, 19*
190:*6, 8, 18*  204:*14*
205:*9, 16*  220:*1*
227:*18*  248:*1, 3*
250:*20, 24*  251:*2*
**questioning**  53:*2*
**questions**  11:*7*  32:*15*
51:*11*  60:*1*  111:*7*
113:*24*  236:*23*
237:*15*  238:*5*  252:*21,*
*22*
**quickly**  46:*6*  48:*15*
235:*25*
**quite**  91:*22*
**quotation**  180:*22*
**quote**  137:*17*
**quotes**  109:*10*  153:*21*

**< R >**
**R&D**  19:*4*
**Range**  39:*5*  70:*5*
**ranked**  64:*5, 10, 23*
**Rapp**  101:*20*  102:*15,*
*16*  129:*19*  159:*16, 25*

160:*17*  165:*13*  166:*9*
177:*17*  186:*17*  208:*6*
231:*12*  253:*13, 16*
**Rapp's**  130:*2*
**rationale**  34:*25*
**reach**  137:*19*
**reaching**  214:*3*
**reach-out**  41:*13*
**react**  152:*15*  159:*19*
**reacting**  126:*8*
**reaction**  180:*10*
**reactive**  174:*7*
**read**  23:*22*  31:*24*
32:*1*  36:*10, 11, 12, 23*
38:*13, 19*  39:*10*
41:*12*  42:*5, 19*  44:*4*
46:*25*  48:*12, 18*  55:*4*
59:*18*  60:*24*  67:*18*
84:*25*  85:*10*  87:*11*
91:*12*  98:*11*  104:*13*
109:*15*  122:*16*  132:*8,*
*12*  133:*23*  138:*5, 25*
140:*3*  141:*11*  143:*15,*
*20*  146:*21*  155:*5*
157:*10*  159:*10*  167:*6*
180:*18, 20*  187:*21*
202:*21*  216:*3*  227:*25*
228:*1*  234:*6, 7*
236:*19*  245:*3, 8*
246:*16*  247:*8*  249:*11,*
*15, 23*  252:*6, 7*
257:*10, 12*
**reading**  37:*13*  72:*15*
96:*6*  121:*6*  140:*21*
147:*10*  155:*7*  202:*22*
204:*10*  220:*20*
228:*22*  250:*13, 16, 24*
**reads**  44:*12*  47:*15*
58:*10*  91:*1*  140:*11*
152:*6, 9*  194:*4*
**ready**  141:*12*  144:*2*
**real**  90:*4*  245:*5, 21*
246:*4*
**realignment**  207:*19*
**really**  107:*15*  150:*18*
**reason**  45:*8, 12*
69:*12*  81:*14*  87:*17*
90:*1*  96:*5*  163:*13*
164:*9*  165:*7, 18*

207:*24*  249:*5*  258:*4,*
*7, 10, 13, 16, 19, 22*
**reassess**  195:*15*
**recall**  14:*7, 22*  24:*20*
31:*4, 5*  44:*16, 17*
54:*21*  55:*3, 6, 8, 11*
72:*20*  77:*5, 9*  83:*3*
96:*5, 9*  110:*3*  118:*17,*
*19*  119:2, *11, 13*
121:*4*  132:*20*  153:*3,*
*4*  154:*21*  161:*17*
169:*10, 11*  172:*6*
174:*1, 14*  180:*24*
181:*1, 2*  185:*5*
190:*13*  197:*22, 23*
227:*20*  245:*7*  246:*20,*
*21*  247:*23*
**recalling**  170:*1*
**receive**  84:*20*  106:*8*
129:*24*
**received**  23:*7*  82:*17,*
*18*  105:*24*  148:*2*
149:*11*  241:*23*
**receiving**  55:*8*  242:*9*
**Recess**  57:*14*  113:*7*
195:*20*  232:*11*
**recipient**  104:*16*
**Recob**  1:*16*  7:*3, 20*
256:2, *24*
**recognize**  32:*6*  40:*13*
58:*15*  97:*4, 5*  117:*17*
159:*12*  177:*10*  193:*6,*
*8*  196:*21*  204:*9*
207:*5*  210:*6*  223:*22*
228:*23*  244:*16*
**recollection**  27:*5*
181:*25*  227:*13, 19*
243:*10*
**recommended**  161:*13,*
*15*
**reconsider**  158:*13*
**record**  7:*11, 23*  9:*8*
29:*5*  34:*14*  50:*6, 10*
55:*19*  57:*11, 13, 16*
59:*6*  96:*17*  108:*10*
113:*6, 9*  114:*22*
156:*2*  159:*5*  195:*19,*
*22*  200:*1, 9, 12*
219:*10*  232:*10, 13*
254:*23*  256:*14*

**recorded** 8:*1* 10:*17* 206:*10* 256:*11*
**recording** 206:*12*
**records** 221:*8*
**recurring** 178:*3* 180:*13*
**redact** 164:*7*
**redacted** 131:*23* 157:*2, 22* 158:*4, 8* 162:*16, 18, 23* 163:*7* 170:*6, 12, 16* 189:*5* 211:*20*
**redaction** 156:*24* 163:*8, 15, 20* 164:*1, 12*
**redactions** 155:*23* 158:*13* 163:*1* 170:*19* 237:*16, 20* 254:*17*
**reduce** 52:*21* 198:*1*
**reduces** 210:*17*
**reduction** 142:*6* 198:*2*
**refer** 13:*24* 14:*2* 15:*8* 36:*17* 82:*15* 87:*9* 108:*12* 168:*16* 169:*16* 185:*7* 187:*8* 243:*20* 249:*25*
**reference** 13:*22* 14:*1, 4, 5* 35:*3, 5* 38:*18* 78:*14* 85:*16, 21* 86:*5, 11* 87:*6, 7, 15* 88:*4, 21, 25* 89:*4, 21* 91:*17, 24* 92:*2, 8* 93:*19* 95:*14* 96:*4* 107:*5* 108:*20, 21* 110:*2, 22* 111:*18* 112:*3, 13* 121:*6, 13, 16* 123:*3, 4, 11* 125:*18, 23* 126:*1, 5, 16, 20* 127:*22* 128:*6* 129:*2* 130:*5, 11, 14* 133:*6, 19* 134:*19* 135:*6* 151:*3, 4* 152:*19* 153:*6, 20* 154:*12, 16, 20* 155:*17, 18* 156:*15, 21* 157:*6, 12, 14* 162:*15, 16* 169:*9* 171:*13* 172:*2, 13, 24* 173:*11, 17, 23* 175:*16, 23* 176:*4, 12, 19* 178:*18* 185:*1*

186:*1* 188:*16, 23* 189:*20, 21* 190:*10* 191:*25* 192:*8* 199:*8* 208:*16* 209:*10* 210:*21* 211:*3* 212:*2, 17* 214:*7* 220:*2, 15* 221:*16* 222:*2, 6, 10* 223:*3* 231:*22*
**referenced** 128:*14, 15* 137:*24*
**references** 42:*22* 221:*11*
**referencing** 69:*5* 129:*1* 132:*15* 193:*19* 247:*12*
**referred** 19:*2* 219:*24*
**referring** 22:*21* 89:*17* 124:*2* 221:*21* 226:*6* 234:*12* 252:*8*
**refers** 38:*22* 67:*19* 79:*22* 80:*13* 96:*7* 109:*18* 157:*22* 158:*1* 170:*11, 15* 174:*9* 179:*24* 185:*5* 197:*17* 220:*24* 247:*24*
**reflect** 94:*15* 248:*23*
**reflects** 45:*18*
**reframing** 195:*1*
**refresh** 181:*25*
**refuse** 55:*22*
**refused** 55:*20*
**regarding** 35:*23* 39:*3* 73:*9* 105:*20* 123:*18* 160:*11* 171:*3* 177:*19* 182:*1* 208:*17* 225:*13* 233:*14* 237:*4*
**Regardless** 231:*19*
**regulatory** 48:*8* 248:*4, 9*
**Regus** 7:*17*
**reiterate** 48:*6* 170:*17*
**reject** 90:*20, 24* 126:*13, 22* 127:*5*
**rejecting** 126:*17*
**Rejection** 121:*10* 122:*6*
**relate** 82:*17* 107:*21* 155:*23* 156:*4* 158:*6* 246:*5*

**related** 10:*3* 72:*22* 80:*1* 81:*20* 157:*18* 179:*12* 208:*12* 212:*7, 8* 242:*9* 256:*18*
**relates** 82:*19* 127:*19* 158:*7* 159:*15* 185:*17* 214:*5*
**relating** 104:*22* 131:*16* 156:*13* 167:*25* 168:*3* 176:*15* 212:*9* 214:*6*
**relations** 176:*14*
**relationship** 81:*15* 82:*20* 239:*13* 253:*4, 13* 254:*5*
**relatively** 124:*5* 187:*16* 194:*5*
**release** 133:*11, 20, 24* 204:*18* 205:*11* 206:*7, 16*
**relevance** 163:*1* 164:*7*
**relevant** 163:*8*
**remember** 10:*2* 22:*24* 38:*19* 59:*15* 73:*17* 77:*11* 129:*6* 150:*14* 153:*18* 155:*6* 197:*8, 10* 206:*8, 13* 214:*21* 218:*10* 246:*25* 248:*21*
**REMEMBERED** 7:*1* 253:*23* 254:*1*
**reminded** 119:*15*
**reminding** 254:*9*
**removal** 237:*16*
**remove** 145:*5* 170:*19*
**renegotiation** 49:*11*
**repeat** 66:*15* 190:*6, 18*
**repeating** 103:*19*
**Reported** 1:*16*
**reporter** 7:*20* 9:*3, 6, 9* 10:*11* 195:*25* 200:*6, 10, 13* 230:*19, 23* 256:*3*
**REPORTER'S** 256:*1*
**Reporting** 7:*19, 21* 177:*16*
**represent** 8:*14, 24*

15:*15* 238:*4*
**representation** 141:*3*
**representative** 91:*15*
**represents** 137:*1*
**reproposal** 49:*11*
**request** 55:*20, 23* 159:*15* 170:*18*
**REQUESTED** 6:*1* 173:*8* 256:*17*
**requesting** 52:*5* 185:*9*
**require** 21:*24*
**required** 49:*1* 146:*23* 180:*10*
**research** 17:*14*
**reserve** 158:*15* 164:*10* 237:*15*
**reserved** 255:*1*
**reserving** 236:*23*
**resort** 249:*10* 251:*13*
**respect** 32:*20* 54:*5* 144:*12* 169:*5* 236:*24* 237:*16*
**respond** 92:*10, 12* 157:*25* 161:*3* 185:*23* 201:*6, 8* 210:*15*
**Responding** 75:*24*
**responds** 161:*6* 205:*8*
**response** 11:*8, 17* 30:*5, 11* 35:*7* 82:*9* 92:*13* 148:*6, 11* 166:*13* 171:*25* 172:*3* 193:*10* 201:*25* 202:*6* 203:*15* 205:*2*
**responses** 10:*18*
**responsibile** 19:*25*
**responsibilities** 18:*19* 19:*11, 21* 28:*5*
**responsibility** 72:*21*
**responsible** 20:*4* 213:*8, 14* 239:*2*
**responsive** 28:*10*
**rest** 51:*18, 20* 245:*8*
**restart** 39:*18*
**restatement** 49:*11*
**Restriction** 104:*13, 20* 106:*10*
**restrictions** 105:*16, 18*

**restructuring** 197:*18, 19, 21* 198:*10* 199:*2, 13*

**result** 194:*23*

**resulting** 194:*8*

**results** 128:*8*

**retail** 87:*3, 9, 18*

**retain** 242:*5*

**retains** 28:*3*

**retelling** 252:*13*

**Retirement** 8:*15* 231:*25*

**reveal** 51:*20*

**revenue** 137:*25*

**review** 32:*3* 40:*15* 47:*9* 59:*2* 86:*21, 23, 25* 97:*1* 149:*5* 165:*3* 177:*7* 181:*11* 183:*22* 196:*15, 19* 200:*25* 207:*2* 210:*3* 215:*12, 15* 223:*18* 224:*23* 225:*1* 228:*20* 231:*8* 233:*4* 235:*12* 243:*6* 256:*17*

**reviewed** 32:*5* 47:*13* 82:*7* 146:*18* 147:*2, 8* 166:*24* 203:*7* 225:*1* 233:*5*

**revisit** 158:*16* 164:*10* 170:*18*

**right** 8:*2, 5* 10:*23* 14:*11* 18:*8* 26:*23* 27:*11, 19, 23* 30:*24* 31:*6* 32:*12* 33:*17* 34:*12, 15, 18* 35:*1* 36:*15, 22, 25* 38:*4, 9* 39:*6* 40:*19, 25* 41:*4* 43:*9* 44:*11, 14, 24* 46:*7* 47:*8, 14, 21* 48:*18, 22* 49:*6* 52:*11* 53:*22, 23, 25* 57:*2, 9* 58:*5, 10* 59:*25* 61:*13* 62:*21* 63:*11* 64:*11* 65:*6, 15, 22* 66:*6, 11, 19, 21, 25* 67:*25* 68:*12, 17* 69:*3, 15, 17, 19* 72:*11* 73:*6, 11, 15* 74:*25* 75:*4, 14, 17* 77:*3, 19* 78:*11, 15, 20* 79:*12* 80:*17* 82:*16*

83:*15* 84:*9* 85:*4* 86:*21* 88:*2* 89:*4, 5, 21, 22* 90:*6, 10, 16* 92:*17* 93:*3, 8, 24* 94:*1* 95:*1, 4, 11* 96:*8* 97:*9, 22* 98:*4, 7, 10, 14* 99:*17* 100:*19* 102:*6* 103:*3, 15* 104:*17, 23* 105:*1, 8, 10, 13, 18, 20, 25* 107:*10, 19, 23, 24* 108:*8* 110:*6, 15* 112:*14, 17, 22* 113:*12* 114:*14* 115:*18* 116:*3, 16, 24* 117:*23* 118:*1, 7, 12* 119:*8* 120:*24* 121:*5, 7* 122:*3, 4, 12, 17, 22* 124:*16* 125:*4, 8* 127:*6, 8, 19* 128:*4, 19* 129:*9, 18, 21, 22* 130:*20* 131:*9, 20* 132:*5* 134:*7, 10, 25* 136:*2, 8, 22* 138:*19* 139:*13, 20* 140:*8* 141:*2, 9, 11, 23* 143:*2, 7, 23* 144:*2, 11, 23* 145:*10, 15, 18, 25* 146:*2, 4, 6, 9, 20* 147:*1, 9, 14, 20, 24* 148:*4, 12, 15* 149:*16, 19* 150:*5* 151:*15* 152:*15* 153:*7, 10, 13, 23* 154:*18* 155:*17, 18* 156:*13, 19* 158:*10* 159:*25* 160:*13, 15, 20* 161:*1, 4, 8, 12* 162:*1, 5* 165:*16* 166:*10, 14, 19, 22* 169:*2, 13, 19* 170:*6* 171:*1, 8* 172:*17, 18, 22* 175:*14* 177:*25* 178:*4, 7, 16, 19* 180:*6* 182:*9, 12, 21* 183:*11* 184:*14, 21* 185:*13* 186:*23* 187:*4, 12, 22, 25* 188:*2* 189:*13, 15* 193:*13, 18* 194:*1, 13, 24* 195:*10* 197:*2, 6* 198:*14, 16, 21* 202:*3, 13, 17* 203:*8, 19* 204:*7, 20,*

25 205:*13* 207:*9, 25* 208:*18* 209:*2* 210:*13, 22* 211:*7* 213:*1* 217:*1, 2, 16* 218:*3* 219:*21, 22* 220:*2, 6, 12* 221:*3* 224:*6* 225:*4, 20* 226:*4, 7, 11, 15, 25* 227:*4, 11, 22* 229:*2, 10, 19* 230:*10* 231:*20* 234:*17* 236:*9, 14, 16, 17* 237:*18* 238:*9* 244:*12, 22* 246:*19* 248:*19* 249:*11, 15* 251:*21*

**rights** 158:*15* 164:*10* 236:*24* 237:*15*

**rigorous** 179:*20*

**risk** 199:*1*

**RMR** 1:*16* 7:*3* 256:*24*

**ROBBINS** 2:*5* 8:*13*

**Rockwell** 246:*24, 25* 247:*1, 2*

**role** 22:*18* 23:*17* 30:*9* 41:*12* 72:*16* 100:*5* 112:*5* 125:*14* 155:*13* 176:*13* 239:*5* 242:*2*

**room** 89:*15*

**Rosen** 55:*2* 164:*23* 181:*12*

**row** 67:*19* 72:*1, 6, 9*

**rows** 67:*5* 92:*4*

**rubric** 26:*5*

**RUDMAN** 2:*5* 8:*14*

**rules** 10:*6* 13:*17*

**rumor** 35:*7, 22* 36:*1, 3*

**Run** 246:*23*

**< S >**

**s/CONNIE** 256:*24*

**Sabastian** 57:*24* 169:*16, 21* 171:*20, 21* 172:*3* 207:*13* 224:*19*

**Sabasto** 171:*19*

**Sachs** 146:*2*

**sake** 200:*16*

**sale** 63:*14* 87:*2* 207:*9* 210:*16* 211:*4*

212:*6, 19, 25* 213:*19, 20*

**sales** 134:*21*

**Sam** 217:*7*

**Sandeep** 205:*2*

**save** 59:*20* 257:*13*

**saw** 59:*14* 93:*1* 125:*4* 254:*10, 11*

**saying** 64:*20* 82:*24* 86:*12* 89:*16* 123:*23* 148:*10* 155:*3* 161:*3* 181:*20* 202:*6* 210:*16* 211:*9* 218:*13, 14* 222:*20* 245:*20* 251:*1*

**says** 34:*24* 35:*9* 36:*19* 39:*5* 41:*25* 42:*14* 44:*5, 15* 46:*18* 47:*9* 48:*3, 5, 20, 24, 25* 49:*8, 9* 58:*6* 68:*13* 69:*1* 82:*10, 19* 83:*22* 84:*12, 16, 20* 85:*3, 11* 86:*13, 20* 87:*2, 12, 24* 88:*17* 89:*10* 90:*1, 15, 17* 92:*5* 93:*15* 94:*3* 95:*3, 7, 24* 97:*25* 98:*3, 6, 9* 99:*14, 17* 100:*19, 21* 101:*9* 102:*1* 105:*2* 106:*2* 107:*24* 108:*4, 8, 14* 109:*5, 8, 10* 110:*5, 7* 111:*14, 21, 23, 24* 112:*13, 16, 19* 117:*20* 118:*5, 8* 122:*17, 24* 126:*13* 127:*25* 128:*1* 133:*6* 134:*12, 24* 136:*9, 16, 23* 137:*13* 140:*2* 141:*5, 17, 25* 143:*15, 22* 144:*2* 146:*22* 147:*1, 7* 150:*25* 152:*18* 154:*7, 16* 156:*16* 161:*8* 165:*10, 13* 168:*10* 169:*5, 25* 171:*18, 19, 25* 172:*9, 17, 20* 173:*7, 19* 175:*13, 18, 25* 176:*9* 180:*13, 22* 182:*3, 5* 186:*25* 187:*15* 188:*9, 19* 191:*19, 22* 192:*4*

203:*6, 22*  205:*20*  208:*1*  220:*3, 9, 12*  221:*12*  222:*18*  226:*22*  228:*2*  230:*4*  233:*13*  244:*24*  246:*17, 23*  247:*6, 19*

**scale**  63:*8*  65:*6, 7*  124:*5*  211:*23, 24*

**scan**  33:*6*  60:*7, 12*  115:*25*  149:*24*  159:*8*  235:*25*

**scanned**  60:*23*  166:*25*  167:*6*

**scenario**  124:*12*  127:*18*

**scenarios**  110:*20*  127:*15*  197:*15*

**schedule**  97:*20*

**school**  238:*10, 11, 15*

**Science**  16:*10*  238:*14*

**sciences**  17:*2*  238:*16*

**scientist**  17:*14*

**score**  26:*6*

**screen**  40:*6*  46:*15*  50:*7, 21*  51:*19*  60:*15, 21*  61:*14*  83:*14*  165:*19*  243:*16*

**scripted**  169:*21*

**scroll**  105:*1*  114:*7*  152:*2*  215:*18*

**sec**  183:*24*

**second**  17:*6*  31:*8, 10*  34:*17*  41:*24*  42:*13*  56:*14*  72:*1*  91:*7*  110:*16, 22*  114:*21*  120:*8*  131:*12, 14*  137:*11*  144:*10*  150:*21*  166:*3*  187:*15*  189:*5*  228:*7*  229:*18*  235:*18*  244:*22*

**seconds**  98:*4*

**section**  43:*16, 19, 23*  46:*2*  47:*2, 8, 12*  72:*6*  97:*23*  140:*4*  143:*5, 6*  144:*2*  180:*7*  252:*12*

**SECURITIES**  1:*4*  7:*14*  14:*5*  257:*5*

**see**  26:*9*  33:*18, 20, 22*  35:*15*  36:*8*  38:*16*  41:*22, 23*  42:*3, 4, 17,*

*18*  43:*16, 18, 21*  44:*1*  45:*21, 23*  46:*2, 15, 23, 24*  47:*6, 7, 10*  48:*10*  50:*21, 22*  51:*12, 21*  52:*22, 25*  56:*10, 17, 23*  58:*2, 7, 13*  61:*21, 25*  62:*5, 18*  63:*6, 16*  68:*21, 23*  70:*12*  72:*14*  75:*5, 8, 9*  76:*2, 4, 8, 11, 12, 15, 20, 25*  83:*8, 21*  84:*13*  85:*14*  86:*3*  87:*4*  88:*19*  89:*13*  92:*6, 24*  93:*22, 23*  94:*5*  96:*2*  97:*23*  98:*2*  99:*2, 13*  100:*14, 16*  101:*8, 13, 22, 24*  104:*9, 14*  105:*3*  106:*11*  108:*6*  109:*6, 13*  110:*11*  111:*12, 16*  114:*13, 23*  115:*2, 6, 12*  116:*13, 20*  119:*13*  121:*11*  123:*1, 15*  125:*21*  126:*3, 14*  127:*23*  130:*7*  131:*23*  132:*3*  133:*8, 11*  134:*14*  135:*21*  137:*3, 21*  138:*3, 13, 21*  139:*6, 17*  140:*14, 18*  141:*16, 19, 20*  143:*11, 13, 15, 19, 20*  144:*6, 8*  145:*20*  148:*8*  149:*15*  150:*23*  153:*6*  154:*10*  156:*17, 23, 25*  157:*8*  160:*7, 18*  162:*12*  165:*7, 10, 17*  166:*7*  169:*7, 12*  170:*6, 9*  172:*11*  173:*5, 9, 21*  175:*11, 20*  176:*2*  178:*12*  179:*7*  180:*17*  181:*16, 23*  184:*7*  186:*20*  187:*12, 20*  188:*11, 14, 21*  189:*5, 10, 17*  191:*17, 20, 23*  192:*6, 24*  193:*4*  194:*2, 6, 9*  198:*7, 18*  199:*5, 15*  201:*21*  202:*5*  203:*4, 13*  205:*6, 18, 22*  206:*1*  207:*6, 15, 16, 21*  208:*9, 14, 24*  209:*4, 8*

210:*19*  211:*1*  212:*21*  213:*5*  217:*25*  220:*2, 7*  221:*10, 14*  222:*4*  228:*10, 11, 24*  229:*16, 23*  231:*13, 17*  233:*11, 17*  234:*4, 5, 10*  235:*10, 11*  243:*24*  244:*20*  245:*1*  249:*9*  252:*1*  254:*1*

**seeing**  8:*1, 3, 6, 9*  170:*12, 16*  215:*18*  218:*22*

**seek**  51:*4*  237:*18*

**seeking**  30:*6*  79:*6*

**seen**  40:*21, 22*  57:*1*  58:*18*  61:*2, 5*  97:*17*  98:*18*  222:*18*  227:*7*

**sell**  22:*17*  30:*6*  79:*3*  87:*8, 13, 14*

**selling**  87:*17*  207:*19*  208:*17*  209:*11*  210:*11*  234:*16*

**sell-side**  79:*10*

**send**  121:*21*  122:*6, 9*  178:*6*

**sending**  89:*1*  121:*13*  213:*10*

**senior**  19:*14, 21*  20:*8*

**sense**  41:*3, 7*  90:*25*

**sensitivity**  108:*4, 22*  171:*6, 15*

**sent**  92:*14*  115:*9*  124:*25*  165:*20*  178:*10*  193:*10*  198:*6*

**sentence**  37:*8*  44:*4, 12*  47:*15*  90:*1*  95:*5*  108:*15*  109:*16*  136:*23*  146:*21*  147:*1, 24*  158:*7*  175:*24*  190:*15*  225:*6*

**sentences**  144:*21*

**separate**  54:*7*  79:*8*  80:*8*  149:*8*

**separately**  216:*2*

**September**  228:*18*  229:*13, 20*  231:*4, 11*  232:*19*  233:*8*  235:*4, 9*  236:*3*

**sequence**  174:*10*

**sequential**  64:*24*  82:*4*

**serious**  123:*5*  155:*15*  228:*8*

**service**  253:*20*

**services**  74:*12*

**serving**  240:*25*

**session**  11:*16*

**set**  38:*3*  58:*4*  64:*4, 19*  121:*25*  125:*1*  150:*7*  179:*25*  196:*24*  213:*23*  223:*25*

**sets**  149:*8*

**shaking**  10:*23*

**share**  38:*15*  39:*4*  44:*11, 15*  45:*18*  49:*16, 24*  63:*25*  73:*14*  82:*16*  83:*10*  126:*18*  129:*3, 14*  136:*21*  139:*12*  157:*6*  159:*17*  225:*13, 18*  252:*15*

**shared**  195:*8*  211:*22*  218:*7*  225:*18*  233:*25*  238:*17*  245:*9*

**shareholder**  146:*22*  230:*13*  245:*12*

**shareholders**  28:*5*  48:*9*  93:*15, 24*  130:*6, 15, 19*  152:*7*  189:*14, 15*  190:*1*  191:*7*  217:*21*  241:*3*  244:*24*  245:*16*

**shareholdings**  189:*12*

**shares**  65:*9*  73:*18, 24*  158:*3*  162:*11*  217:*15*  218:*15*  221:*23*  224:*3*  227:*8*  229:*1*  230:*2, 7, 8*  234:*16*

**sharing**  88:*17*  92:*22*  201:*22*  218:*19*

**Shawn**  169:*20*  205:*3*  210:*9*  217:*24*  224:*19*  235:*5*

**sheet**  31:*17*  77:*25*  106:*20*  119:*24*  131:*2*  148:*23*  167:*14, 16*  175:*2*  183:*15*  219:*11*  257:*1, 16*  258:*1*

**Short**  225:*1*  235:*14*

shorter  141:*21*  144:*12*, *15*, *22*  145:*2*
shorthand  37:*9*, *14*  245:*9*
shortly  34:*3*
short-term  198:*11*, *15*  199:*3*, *7*
show  50:*24*  51:*2*  52:*6*  55:*20*, *23*  82:*10*  171:*15*  182:*7*  222:*4*, *9*  228:*8*  252:*16*
showed  70:*19*  83:*13*
showing  59:*12*  62:*20*
shown  50:*7*  58:*25*  60:*21*  139:*7*  213:*21*
shows  236:*11*
Shred  33:*12*
shrink  60:*20*
sic  78:*1*
side  20:*5*  77:*3*  79:*3*  112:*7*  117:*5*  142:*8*, *9*  145:*6*
Siemens  35:*19*, *20*
sign  48:*16*  130:*6*, *16*
Signature  255:*1*  256:*21*
SIGNATURE:_____
_____DA
TE  258:*24*
Signed  257:*19*
significant  48:*8*  137:*24*
signing  138:*10*  141:*7*, *14*  143:*16*  144:*4*

similar  187:*9*  252:*14*
Simple  171:*25*  172:*5*
simultaneously  214:*3*
Single  76:*6*  149:*21*
sir  252:*21*
sitting  60:*4*
situation  241:*2*  250:*13*  252:*15*
situations  227:*7*

six  47:*5*  141:*15*  143:*10*, *18*  144:*16*, *23*  145:*2*
size  52:*21*
skipped  119:*16*
Skipping  184:*18*
slide  62:*15*, *20*  63:*21*  64:*17*, *25*  65:*18*  66:*3*, *4*, *5*, *8*, *18*  68:*6*  74:*22*, *24*  75:*24*  116:*11*, *22*  187:*11*  193:*2*
slides  58:*4*  150:*25*  177:*18*  187:*23*
slightly  227:*6*
slip  31:*16*  77:*25*  106:*19*  119:*24*  131:*2*  148:*23*  167:*14*, *16*  175:*2*  183:*15*  219:*11*
small  17:*22*  23:*9*, *12*  122:*20*
smiley  205:*25*
SN  169:*15*, *18*
Soft  246:*17*  247:*4*
software  240:*3*
sold  157:*6*  158:*3*  162:*11*
solicitation  75:*12*
solicited  241:*16*
somebody  86:*12*  152:*20*  157:*20*  221:*17*  247:*12*
sorry  8:*19*  9:*5*  39:*22*, *25*  47:*25*  66:*14*  69:*8*  74:*8*  109:*22*  114:*6*, *15*  128:*10*  142:*14*  146:*11*  161:*20*  170:*24*  176:*25*  186:*8*  190:*6*  200:*6*  232:*15*  252:*4*
sort  81:*19*  95:*22*  150:*21*  156:*24*  160:*25*  172:*8*  198:*3*, *10*  205:*11*  210:*17*
sound  31:*6*
sounds  31:*7*
SOUTHERN  1:*2*

7:*16*
space  21:*14*  88:*14*
speak  51:*8*  76:*10*  110:*24*  182:*5*  211:*22*  251:*3*
Speaker  200:*5*, *7*
speaking  132:*22*  250:*21*  251:*3*
special  85:*17*  117:*20*
specialist  7:*19*
specific  33:*24*  59:*22*, *25*  68:*20*  69:*2*  157:*16*  179:*24*, *25*  197:*16*, *17*  214:*7*  227:*13*, *18*  240:*2*
specifically  15:*8*  106:*8*  225:*10*
specifics  21:*23*
specified  69:*6*
specifies  248:*25*
specify  69:*5*  179:*6*  240:*10*
spectrum  62:*20*, *25*
speculate  91:*25*  96:*6*  129:*10*  153:*19*  222:*25*
speculating  91:*18*  127:*15*  245:*23*  246:*11*, *13*
speculation  27:*13*, *17*, *25*  28:*16*  29:*10*, *23*  45:*4*  88:*10*, *24*  93:*20*, *23*  94:*23*, *25*  95:*15*  98:*16*  100:*1*  121:*18*, *24*  124:*8*, *9*, *12*  128:*11*  130:*13*  154:*23*  155:*10*  173:*15*, *25*  189:*21*  190:*11*  206:*18*  225:*22*  226:*9*  250:*7*
speculations  94:*12*
speculative  94:*24*
spent  229:*14*
spirit  180:*11*
spoke  233:*14*  253:*7*, *15*  254:*7*
spoken  211:*21*
spreadsheet  215:*6*, *20*  216:*8*, *14*

SRL-1220  1:*18*
St  2:*12*
staff  19:*4*
stage  69:*14*
stakeholders  172:*15*  174:*12*  241:*3*
stand  108:*10*  217:*3*
standard  33:*2*
stands  34:*14*
star  173:*3*
Starkloff  22:*22*, *24*  44:*24*  68:*17*  102:*7*  136:*7*  159:*25*  160:*17*  166:*6*, *12*, *17*  173:*11*  202:*12*  208:*6*  224:*18*  239:*11*  253:*5*, *8*  254:*11*
start  41:*13*  95:*4*, *9*, *20*  97:*25*  107:*17*  114:*4*  147:*18*  246:*22*
started  17:*22*  27:*17*  79:*18*  98:*3*  247:*4*
starting  53:*17*  108:*24*
starts  111:*10*  115:*17*  136:*16*
start-up  18:*1*
state  7:*22*  83:*3*  90:*7*
stated  143:*13*  256:*8*, *16*
statement  27:*16*  43:*1*  64:*4*  89:*1*  122:*7*  142:*5*, *6*  179:*23*  180:*9*, *16*, *17*, *21*  188:*1*  218:*22*  221:*22*, *24*  224:*9*
statements  142:*1*  220:*23*
STATES  1:*1*  7:*15*  45:*18*  46:*5*  53:*14*, *17*  137:*16*  256:*4*
stating  106:*9*  140:*25*
staying  242:*21*
steady  137:*24*
stenographic  9:*8*  50:*6*
stenographically  256:*11*
step  30:*21*  63:*22*  76:*22*  184:*10*

Deposition of Kevin Ilcisin | In Re National Instruments Corporation Securities Litigation

**Steps** 76:*14*, *18*, *23*
**Steve** 38:*7*, *9*
**stock** 44:*6*, *10* 63:*14*
70:*25* 71:*1*, *7*, *14*, *15*
74:*3*, *11*, *12*, *17* 75:*4*,
*13*, *17* 104:*21* 106:*7*
128:*16* 134:*7*, *12*
153:*9*, *15*, *19* 194:*8*,
*24* 195:*4*, *5* 198:*16*,
*19* 199:*8*, *9* 214:*19*
217:*15* 218:*18* 223:*7*
225:*4*
**Stokes** 34:*12* 35:*6*
**Stokes's** 34:*18*
**strategic** 18:*20*
34:*25* 37:*19* 39:*5*
110:*16*, *23* 147:*20*
227:*8*, *9* 243:*6*
245:*13*
**Strategics** 35:*11*, *12*
37:*3*, *4*, *6*, *16* 110:*7*, *8*
**Strategies** 21:*3*, *5*
35:*10* 110:*5*
**strategy** 19:*12*, *14*, *17*,
*22* 20:*1*, *3*, *8* 21:*6*
86:*21*, *22*, *24* 111:*1*
179:*14*
**streaming** 206:*10*, *11*
**street** 36:*24* 128:*23*
133:*3* 151:*1* 152:*15*
**strengthen** 212:*2*
**strengthened** 138:*1*
**strengths** 133:*15*
**Strike** 15:*17* 25:*19*
26:*25* 73:*17* 102:*17*
136:*19* 146:*16*
167:*15* 193:*14*
194:*18* 217:*19*
218:*24* 236:*24*
**string** 3:*12*, *14*, *19*, *22*
4:*5*, *10*, *15*, *18*, *20*, *23*
5:*1*, *4*, *6*, *9*, *12*, *14*, *17*,
*20*, *23*
**stripe** 19:*3*, *12*
**strong** 67:*24* 68:*4*, *7*,
*10*, *19* 70:*10* 72:*7*, *11*
**structural** 71:*7*, *11*
220:*24*
**structure** 70:*11*, *21*

71:*5*, *15* 199:*13*
**structures** 30:*19* 31:*5*
**struggling** 91:*12*
107:*15*
**studies** 16:*17* 17:*12*
**sub-bullet** 39:*8*
**sub-bullets** 36:*23*
**subject** 26:*19* 27:*10*
49:*10* 58:*8* 69:*6*, *10*
104:*11* 105:*15* 109:*3*
115:*8* 145:*14* 160:*4*
193:*2* 214:*14* 216:*24*
219:*22* 254:*15*
**subjects** 103:*20*
**submit** 250:*5*, *8*
**subsequent** 19:*1*
87:*19*
**substance** 32:*14*
201:*5*
**substantive** 48:*7*
**sufficient** 134:*13*
**suggest** 37:*11* 70:*25*
82:*16*
**suggested** 194:*12*
209:*2* 241:*8*
**Suggesting** 99:*22*
178:*2* 194:*15*, *19*
**suggestion** 52:*14*
135:*4*
**suggests** 98:*12*
**Suite** 2:*5*, *11*
**sum** 48:*20*
**summaries** 128:*22*
**summarizing** 225:*24*
226:*4*
**summary** 48:*3* 193:*3*,
*11*
**supervision** 256:*12*
**supplement** 134:*24*
135:*2*, *4*
**suppliers** 241:*3*
**supply** 129:*24*
**support** 22:*16* 23:*22*,
*24* 93:*14*, *24* 130:*16*
**supportive** 93:*16*, *17*,
*25* 94:*1*
**supports** 47:*13*
100:*2* 146:*18* 147:*3*,
*8*

**Sure** 7:*24* 19:*23*
26:*17* 28:*23* 29:*18*
38:*21* 50:*22* 55:*25*
60:*6* 84:*17* 113:*1*, *4*
132:*14* 142:*16* 165:*5*
185:*8*, *21*, *22* 195:*17*
212:*18* 214:*4* 216:*4*
232:*5*, *7*, *8* 246:*3*
247:*6*, *7*, *9*
**surveil** 74:*16*
**surveillance** 74:*4*, *11*,
*13* 75:*13* 134:*7*, *12*
135:*3*, *5* 153:*9*, *16*, *20*
214:*19* 218:*18*
**suspect** 206:*12*
**SVNiles** 101:*6*
**swear** 9:*3*, *6*, *9*
**sworn** 9:*11* 256:*6*, *9*,
*10*, *14*
**System** 8:*15*

**< T >**
**Tab** 31:*12*, *23* 39:*13*
55:*16* 57:*22* 77:*15*
96:*20* 103:*25* 106:*15*
113:*13* 117:*8* 119:*19*,
*24* 130:*23* 135:*14*
148:*18* 149:*8* 158:*17*
164:*15* 167:*10*
174:*20* 176:*22* 181:*6*
183:*2* 186:*5* 192:*15*
196:*5* 199:*18* 201:*12*
206:*21* 209:*20*
212:*12* 214:*24* 219:*3*
222:*13* 224:*13*
228:*14* 230:*25*
232:*19* 234:*24* 244:*6*,
*13* 248:*13* 251:*18*
**table** 146:*25*
**tactic** 65:*24*, *25* 68:*1*,
*11*
**tactics** 64:*19* 65:*12*,
*13* 66:*5*, *19* 67:*4*
73:*6*, *9*, *13* 172:*25*
173:*1* 218:*9*
**take** 11:*11*, *13*, *17*
13:*4* 28:*25* 30:*21*
32:*3*, *24* 33:*24* 34:*2*
38:*21* 40:*15* 41:*14*
57:*8*, *9* 59:*1* 60:*6*

78:*4* 82:*14* 95:*17*
97:*1* 106:*22* 112:*24*
113:*23* 114:*16* 120:*8*
131:*11* 144:*20* 149:*5*
150:*7* 159:*2* 165:*2*
173:*7* 177:*7* 181:*5*,
*10* 183:*22* 184:*9*
185:*10* 190:*16*
193:*22* 195:*13*
196:*14* 197:*16*
200:*25* 201:*2* 202:*8*
207:*2* 210:*3* 212:*10*
215:*15* 216:*18*
219:*15* 223:*18*
224:*23* 228:*20* 231:*8*
233:*3* 235:*12* 243:*10*
**taken** 7:*17* 82:*8*
184:*1* 206:*13* 245:*10*
257:*11*
**Takeover** 58:*12* 62:*3*
66:*5*, *10*, *18*, *24* 68:*1*,
*4*, *11* 73:*5*, *9*, *13*
74:*25* 173:*1* 197:*13*
**takes** 95:*8*, *9*
**talk** 70:*21* 86:*22*
90:*16*, *17* 108:*9*, *18*
140:*16* 174:*11*
253:*18*
**talked** 54:*18* 70:*20*
78:*17* 86:*20* 134:*9*
153:*12* 209:*1* 211:*21*
216:*24* 218:*8*
**talking** 51:*25* 126:*21*,
*24* 160:*10* 174:*14*
197:*12*, *15* 198:*22*, *25*
221:*5* 248:*6* 253:*21*
**talks** 134:*6* 157:*17*
**target** 15:*15* 26:*15*,
*18*, *25* 27:*3*, *19*, *23*
28:*7*, *13* 29:*5*, *21*
30:*6* 41:*13* 63:*23*, *24*
67:*7* 68:*12* 69:*2*
72:*2*, *12*
**targets** 79:*7*
**target's** 66:*9*
**team** 20:*2* 23:*20*
26:*6* 137:*19* 196:*24*
208:*11* 214:*3* 240:*12*
241:*1*
**Teams** 98:*19* 239:*9*

Deposition of Kevin Ilcisin

In Re National Instruments Corporation Securities Litigation

**Technical** 17:*22, 23* 50:*8* 110:*24*
**TECHNICIAN** 60:*14* 77:*21* 113:*12* 142:*12, 16* 159:*4* 176:*23* 183:*12* 216:*10* 232:*17*
**Techniques** 62:*16*
**technologies** 239:*8*
**technology** 138:*2* 239:*1, 3*
**Tektronix** 17:*15, 17, 21* 239:*6, 12*
**tell** 82:*11* 98:*23* 111:*22* 122:*16* 152:*10* 163:*15* 220:*9, 21* 253:*24*
**telling** 214:*8* 250:*11* 251:*9*
**tender** 248:*1*
**tent** 23:*22*
**terms** 13:*18* 47:*20* 63:*23* 64:*5* 98:*20* 129:*20* 168:*13* 179:*10* 185:*20* 246:*25*
**test** 19:*3, 12* 238:*24* 240:*4, 9*
**tested** 240:*1*
**testified** 9:*12* 15:*16* 21:*15* 23:*11* 64:*9* 75:*11* 94:*8* 139:*10* 162:*23* 163:*7* 190:*10* 204:*6* 214:*17* 223:*2* 248:*17* 253:*3*
**testify** 256:*9*
**testifying** 13:*7, 10, 14*
**testimony** 10:*11* 64:*13* 94:*20* 103:*17* 168:*6* 190:*3, 13* 212:*7* 237:*19* 256:*6, 10, 15*
**text** 38:*14* 50:*8* 237:*3, 8, 11*
**texts** 181:*21*
**Thank** 8:*10* 11:*14* 24:*18* 30:*2, 10* 40:*9* 43:*5* 52:*4, 23* 54:*17* 57:*4, 10* 60:*18, 22, 25* 66:*2* 70:*8* 71:*24*

83:*23* 85:*24* 127:*21* 137:*9* 142:*15* 143:*25* 145:*4* 146:*14* 147:*11, 12* 148:*17* 159:*6, 10* 168:*18* 180:*23* 195:*23* 202:*2* 203:*24* 214:*16* 219:*1* 223:*9* 228:*6, 12* 230:*17* 233:*5* 234:*20* 237:*22, 24* 251:*4* 254:*19*
**Thanks** 21:*21* 159:*9* 196:*18* 201:*22* 235:*22*
**thing** 174:*16*
**things** 66:*9* 75:*3* 96:*7* 97:*16* 174:*11* 181:*17* 195:*15* 206:*9* 212:*9* 220:*16* 245:*11, 18* 247:*25* 248:*10*
**think** 15:*16* 21:*8* 29:*25* 34:*8* 49:*19* 53:*24* 54:*1* 61:*4, 16* 64:*9, 20* 67:*9, 17* 77:*18* 78:*17* 82:*15* 84:*12* 86:*14* 87:*12, 24* 89:*9* 90:*15* 94:*15* 109:*2* 112:*13* 119:*4* 128:*1* 133:*21, 22* 152:*7* 155:*11, 13* 163:*20* 171:*19* 181:*8* 182:*7* 185:*16* 190:*22, 24* 213:*25* 216:*25* 217:*4* 218:*9* 227:*5* 230:*23* 244:*1* 247:*6, 12* 248:*17* 253:*9* 254:*14*
**thinking** 31:*25* 93:*21* 94:*9, 13, 16, 24* 122:*2* 155:*13* 189:*24* 191:*5* 209:*7, 12, 14*
**thinks** 47:*3*
**third** 38:*14* 61:*18* 76:*13* 95:*3* 110:*19* 111:*3* 113:*24* 114:*25* 128:*7* 134:*2* 136:*13* 181:*16*
**thought** 121:*19* 129:*20* 190:*18, 25* 250:*24*
**thoughts** 208:*12, 16*

**thread** 159:*15* 193:*2* 204:*12*
**threat** 126:*2, 8* 152:*4*
**threatening** 126:*6*
**three** 17:*18* 25:*1, 4, 10* 39:*3* 42:*22* 43:*2* 59:*13* 65:*21* 77:*12* 81:*17* 90:*15* 93:*12* 95:*23* 96:*6* 110:*10* 151:*20, 24, 25* 156:*24* 238:*25* 247:*5*
**three-sentence** 48:*3*
**Thursday** 7:*1*
**tie** 128:*12*
**time** 7:*12* 9:*22* 10:*24* 19:*7, 9, 13* 35:*24* 38:*21* 44:*17* 45:*2, 9, 14* 49:*14* 50:*2* 53:*6* 59:*1, 11, 14, 20* 61:*12* 69:*12* 72:*20* 79:*2* 80:*17, 22* 81:*13* 82:*25* 86:*8* 94:*16* 95:*4, 8, 9, 17, 18* 97:*25* 101:*3* 109:*20* 112:*5* 113:*23* 114:*16* 124:*5, 13, 17, 19* 125:*7, 13* 126:*22, 24* 141:*21* 144:*13* 155:*12* 158:*16* 164:*5* 165:*3* 174:*16* 179:*1* 181:*11* 196:*14* 197:*9, 11* 201:*2* 204:*7* 211:*24* 213:*22* 216:*18* 220:*2* 227:*15* 236:*23* 237:*23* 239:*6, 11* 243:*1* 246:*7* 248:*3, 6* 250:*12* 253:*7, 15, 25* 254:*7, 10, 11, 20* 256:*8, 16*
**times** 9:*20* 29:*25* 182:*8* 250:*15*
**timestamps** 82:*2*
**timing** 46:*1, 2, 4* 47:*9* 81:*20* 90:*2, 3* 140:*17, 19* 141:*2, 11* 143:*6, 10* 144:*12* 145:*9* 172:*6* 193:*13, 16* 204:*17* 205:*25*

**title** 62:*2* 107:*23* 154:*3* 169:*2* 187:*2* 215:*7*
**titled** 43:*19* 46:*2* 62:*15* 66:*18* 73:*5* 74:*24* 75:*24* 93:*10* 115:*20* 116:*11* 140:*19* 141:*1* 143:*6* 145:*17* 158:*9* 164:*24* 200:*2, 22* 201:*20* 235:*8* 236:*2*
**today** 7:*20* 9:*8* 11:*23* 12:*25* 13:*3, 14, 18* 58:*25* 60:*4* 96:*7* 121:*9* 122:*3, 6* 125:*5* 142:*25* 243:*14*
**Today's** 7:*11*
**told** 35:*7* 227:*14*
**Tom** 34:*12, 18* 35:*6, 22*
**tomorrow** 85:*12*
**tone** 52:*14*
**top** 34:*17* 78:*13* 100:*12* 107:*17* 120:*23* 130:*5, 15, 19* 165:*13* 166:*3* 176:*16* 185:*3* 217:*21* 221:*12*
**topic** 46:*4* 132:*19*
**topics** 156:*1*
**total** 229:*12*
**touched** 107:*3*
**tough** 247:*10*
**trace** 238:*9*
**track** 29:*4* 232:*15*
**trade** 106:*7*
**trading** 75:*3, 16* 76:*18* 104:*20* 105:*16, 18* 106:*9* 224:*3*
**Training** 104:*12*
**transaction** 14:*10* 20:*5* 21:*23* 22:*16* 47:*13* 68:*20* 69:*3, 5, 14* 70:*11, 20* 71:*16* 79:*10* 139:*11* 146:*19* 147:*3, 9, 23* 155:*24* 189:*25* 191:*6* 193:*17* 194:*22* 211:*23*
**transactions** 23:*18*
**transcribed** 256:*12*
**transcribing** 10:*11*

Deposition of Kevin Ilcisin

In Re National Instruments Corporation Securities Litigation

**transcript** 256:*6, 13, 16* 257:*10*
**transforming** 179:*17*
**transition** 76:*23*
**transpired** 23:*10, 13*
**trend** 197:*11*
**triggered** 125:*1*
**trouble** 196:*18*
**true** 43:*1* 82:*1* 141:*3* 188:*1* 256:*14* 257:*13*
**truth** 256:*10*
**truthfully** 13:*14*
**try** 37:*12* 82:*3* 152:*7* 226:*20* 248:*3*
**trying** 59:*19* 61:*7* 81:*15, 18, 19* 82:*6* 87:*19* 165:*9* 166:*1* 211:*23* 212:*1* 214:*12* 218:*16* 248:*8*
**Tuesday** 12:*18*
**turn** 20:*3* 21:*22* 47:*16* 172:*21*
**turns** 218:*20*
**Twice** 9:*21*
**two** 16:*22* 17:*5, 21* 30:*17* 35:*13, 17* 40:*8* 42:*1* 75:*20* 79:*7* 84:*12, 15* 87:*24* 89:*12* 91:*21* 92:*4* 95:*23* 121:*17* 133:*14* 142:*21* 145:*8* 149:*7* 151:*19* 153:*22* 157:*24* 174:*3* 179:*13* 186:*3* 193:*2* 204:*3* 212:*7* 220:*5* 221:*10* 222:*7* 245:*13* 252:*14* 253:*23*
**two-page** 193:*11*
**two-year** 95:*25* 247:*20*
**Type** 67:*15, 18, 19, 24* 68:*1, 4* 175:*13*
**typically** 100:*3* 118:*19* 249:*9* 251:*13*

**< U >**
**Uh-huh** 38:*2, 17* 66:*20* 72:*3* 75:*10* 86:*4, 19* 89:*23* 91:*4*

94:*2* 99:*11* 101:*7* 109:*4* 110:*12* 111:*6, 9* 124:*14* 128:*25* 130:*4* 131:*24* 132:*2, 7* 137:*12* 147:*21* 150:*9, 20* 154:*1, 11* 160:*23* 178:*1* 179:*16, 19* 181:*15* 189:*6* 199:*6* 205:*19* 210:*14* 214:*1, 22* 245:*2* 252:*2*
**unattractive** 187:*17* 194:*6, 17, 22* 195:*3*
**unclear** 10:*24*
**underneath** 34:*18* 35:*13* 36:*23* 39:*8* 58:*8* 72:*7* 76:*22* 84:*15* 110:*9*
**undersigned** 256:*2*
**understand** 11:*3, 4, 9, 19, 20, 25* 13:*7, 22* 14:*1, 4* 18:*20* 23:*9, 12* 26:*17* 28:*23* 51:*4* 59:*7, 8* 63:*20* 102:*20* 103:*4, 10* 133:*4* 152:*11* 164:*8* 187:*8* 216:*1* 244:*8* 247:*9*
**understanding** 67:*14* 103:*11* 125:*10* 187:*9* 189:*3* 257:*16*
**Understood** 10:*22* 11:*10* 22:*20* 28:*6* 37:*23* 38:*1* 67:*13, 23* 72:*19, 23* 82:*5, 13* 87:*23* 95:*21* 96:*11* 100:*10* 123:*10* 133:*25* 135:*8, 12* 149:*23* 151:*8* 170:*4* 220:*22* 237:*21* 254:*18*
**unique** 33:*25*
**UNITED** 1:*1* 7:*15*
**University** 16:*3, 5, 9, 12, 16, 19, 21, 23, 25* 17:*10* 238:*13, 20*
**unredacted** 158:*15*
**unsolicited** 241:*16, 19* 242:*9*
**unusual** 76:*19*

**up-and-coming** 180:*4*
**upcoming** 85:*21*
**update** 154:*3* 160:*10* 161:*4, 11* 162:*1* 233:*15*
**updates** 159:*18*
**use** 14:*13* 23:*21* 32:*18* 109:*2* 180:*6* 182:*23* 194:*25* 237:*2, 7* 240:*4, 8* 242:*18*
**user** 253:*20*
**Utah** 1:*18* 256:*5*

**< V >**
**Vague** 124:*19*
**valuation** 43:*15, 20* 44:*5* 83:*20* 118:*15* 170:*2*
**value** 48:*9* 91:*15* 138:*11*
**various** 41:*8* 127:*15* 128:*22, 23* 133:*3* 184:*9* 218:*9*
**verbal** 10:*17* 119:*2* 225:*24*
**versus** 132:*18* 174:*6*
**vice** 18:*14, 15* 19:*2, 14, 16, 21* 20:*8*
**Vidaurri** 213:*1* 224:*18* 226:*22* 227:*14* 229:*13*
**video** 7:*10, 19, 25* 8:*6, 8*
**Videographer** 2:*16* 7:*10* 8:*8* 9:*7* 57:*12, 15* 113:*5, 8* 195:*18, 21, 25* 200:*8* 230:*19* 232:*9, 12* 254:*22*
**video-recorded** 7:*12*
**VIDEOTAPED** 1:*9*
**view** 64:*4* 67:*3* 221:*12* 225:*3* 244:*24*
**viewed** 221:*19, 24* 222:*16* 223:*3*
**viewing** 223:*4*
**views** 225:*12*
**virtually** 12:*2, 16*
**Visions** 17:*22, 23*
**VP** 177:*16* 179:*14*

**< W >**
**Wachtell** 55:*2, 5, 9, 12* 58:*11* 61:*24* 63:*20* 64:*18, 23* 72:*20* 73:*14* 81:*16, 21* 82:*9, 10, 21, 22, 24* 84:*7* 118:*3, 10* 125:*2* 164:*23* 171:*23* 180:*24* 181:*12* 182:*1* 207:*14* 208:*8* 218:*8* 233:*10*
**Wachtell's** 65:*7* 75:*2* 181:*17*
**wager** 121:*3*
**wagering** 119:*11*
**wait** 103:*8* 123:*11, 17, 24* 251:*2*
**waited** 123:*19*
**waiting** 124:*7* 164:*3*
**waived** 156:*1*
**walking** 191:*25*
**walks** 191:*22*
**Wall** 133:*3*
**want** 7:*25* 50:*9* 55:*19* 59:*4* 60:*6* 105:*6* 114:*12* 154:*7* 156:*2* 166:*18* 178:*15* 179:*6* 185:*10* 186:*10* 195:*14* 200:*11* 208:*21* 216:*4, 11, 18* 232:*5* 243:*12, 19*
**wanted** 60:*2* 230:*20*
**Washington** 1:*17* 256:*4*
**waterfall** 54:*14*
**wavering** 40:*8*
**way** 13:*19* 45:*5, 10* 60:*12* 64:*3, 23* 65:*18* 67:*17* 83:*4* 128:*13* 138:*24* 149:*10* 154:*24* 240:*10* 243:*20* 246:*2, 22* 256:*18*
**Wayne** 8:*15*
**ways** 79:*19* 109:*1* 128:*23* 133:*5* 155:*5* 156:*23* 172:*20, 24*
**weaker** 199:*2*

Deposition of Kevin Ilcisin

In Re National Instruments Corporation Securities Litigation

**Wednesday** 233:*16* 253:*17*

**week** 12:*18* 148:*7, 11* 166:*19*

**weekend** 209:*2*

**weeks** 47:*5* 141:*9, 15, 17, 18* 143:*10, 18* 144:*5, 15, 16, 22, 23* 145:*1, 2* 151:*21, 24, 25*

**well** 8:*21* 15:*16* 42:*9* 53:*21* 56:*2* 59:*24* 86:*2* 90:*5* 91:*13* 111:*22* 138:*1* 162:*25* 185:*25* 211:*17* 216:*11* 222:*23* 223:*2* 248:*7*

**went** 15:*25* 16:*3* 18:*1*

**We're** 7:*10* 13:*5* 32:*2* 53:*24* 57:*12* 77:*18* 113:*5, 8* 119:*19* 123:*23* 133:*20* 144:*10* 163:*9* 193:*12* 195:*18, 21* 200:*13* 214:*4* 230:*23* 232:*9, 12* 246:*13* 254:*23*

**we've** 13:*16* 50:*15, 17* 58:*17* 211:*20* 213:*25* 253:*21*

**Whirlpool** 212:*19*

**Whirlpool/18.1X** 207:*20*

**White** 229:*20*

**willing** 46:*5* 138:*15* 141:*6*

**wine** 120:*24* 121:*2* 129:*25* 231:*16*

**Winner** 120:*24*

**wit** 7:*6*

**WITNESS** 6:*1* 7:*4* 8:*3, 17, 24* 9:*4, 6, 10* 22:*7, 15* 24:*3* 27:*5* 29:*11* 43:*1, 12* 44:*4, 21* 45:*5, 23* 46:*9, 14* 47:*23* 48:*24* 49:*8, 20* 51:*9, 20* 52:*6, 13, 20* 54:*5* 55:*21* 60:*10, 17* 61:*8* 63:*3* 64:*3, 14*

65:*18, 24* 66:*14* 67:*3, 17* 68:*23* 69:*25* 70:*5, 19* 71:*4, 10, 18, 21* 73:*21* 78:*24* 80:*13* 81:*12* 83:*3, 18* 85:*20* 88:*11, 25* 92:*19* 94:*12* 96:*17* 97:*12* 98:*17* 99:*6* 100:*2, 16* 101:*13, 19, 24* 102:*4, 9, 13* 103:*7, 19* 113:*4* 114:*3* 119:*9* 121:*24* 125:*10* 126:*20* 127:*2, 14* 130:*14* 132:*12* 138:*24* 139:*6* 141:*25* 143:*13* 144:*8, 25* 155:*11* 159:*8* 162:*23* 163:*7, 12* 164:*9, 13* 165:*5* 168:*7* 173:*16* 174:*1, 25* 181:*4* 182:*15, 23, 25* 185:*12* 186:*8, 12* 190:*25* 195:*17* 196:*17* 198:*18* 202:*5, 21* 203:*22* 206:*19* 211:*15* 215:*23* 219:*8* 222:*14* 225:*23* 226:*18* 227:*2* 229:*4* 230:*4* 232:*8* 236:*11* 237:*21, 24* 239:*22, 24* 241:*19* 242:*2, 8, 20* 243:*4* 246:*11, 13* 248:*25* 250:*4* 251:*12* 252:*12, 24* 254:*18, 21* 256:*21*

**witness(es** 256:*9*

**WLRK** 55:*2*

**WLRK00000913** 113:*20*

**WLRK-00000913** 3:*22*

**Wolverine** 14:*23, 25* 15:*7, 18* 31:*3* 54:*24* 73:*19, 21* 78:*14, 18* 79:*9, 22* 80:*2, 13* 84:*3* 90:*13* 91:*7* 93:*10* 104:*12, 22* 105:*2, 7, 15, 20* 106:*6, 9* 107:*21, 24* 115:*1, 21* 116:*3* 118:*12* 121:*7* 131:*17* 134:*6*

151:*10* 154:*3* 155:*23* 156:*13* 157:*18, 23* 158:*9* 160:*4* 164:*24* 167:*25* 168:*3, 9, 10, 11, 13* 169:*2, 4* 170:*14* 171:*3* 185:*21* 186:*1* 205:*4* 207:*18* 214:*14* 234:*12* 235:*8* 236:*2* 237:*5*

**Wolverine's** 234:*1, 2, 9*

**word** 11:*13* 35:*20* 64:*7* 71:*5* 85:*6* 90:*22* 91:*10* 93:*22, 23* 109:*2* 171:*10* 182:*23* 190:*23* 217:*1* 218:*14* 227:*20* 242:*18*

**words** 35:*17* 41:*16* 43:*2* 57:*6* 72:*15* 76:*12* 138:*21* 139:*2, 6* 143:*24* 144:*17* 147:*4, 11* 179:*21, 22* 197:*23* 225:*23* 234:*5*

**work** 17:*17* 18:*1* 34:*21* 37:*12* 46:*6, 20* 106:*6* 138:*10* 141:*7, 13* 144:*4, 18* 176:*8* 240:*9*

**worked** 17:*18* 25:*2*

**working** 60:*18* 151:*11* 173:*19*

**works** 60:*22* 185:*9* 205:*25*

**worth** 251:*25* 252:*18*

**write** 198:*22* 205:*15* 211:*6* 213:*3*

**writes** 41:*20* 207:*17*

**writing** 81:*6, 7* 120:*13* 195:*1* 229:*5*

**written** 45:*23* 46:*10, 12* 249:*6* 251:*21*

**wrong** 37:*2* 122:*17* 218:*14*

**wrote** 165:*8, 11* 223:*8* 226:*2* 244:*18* 246:*4* 249:*9, 13, 17* 250:*1* 251:*6, 24*

**< X >**

**xlsx** 215:*8*

**< Y >**

**yeah** 8:*6* 19:*1* 25:*6* 31:*24* 33:*24* 36:*13* 47:*23* 56:*24* 60:*17, 21* 62:*14* 71:*19, 24* 73:*2, 4, 12* 75:*8* 78:*3* 81:*12* 85:*8, 15* 87:*17* 88:*11* 89:*6, 13, 14, 23* 90:*25* 92:*25* 93:*20* 94:*2, 6* 97:*24* 98:*1* 99:*9* 105:*4, 5, 6* 109:*14, 17* 110:*14* 111:*9, 13, 17* 112:*21* 114:*8, 15, 17, 20* 115:*19* 116:*10* 120:*1, 3, 10* 122:*19, 21, 23* 123:*16, 23* 125:*6, 22* 126:*4, 15* 127:*7, 24* 128:*3* 129:*18* 130:*21* 131:*13, 15, 21* 133:*7, 12* 134:*3, 8* 137:*15* 138:*24* 139:*22* 146:*3, 11* 147:*15* 149:*14, 17, 23* 150:*24* 151:*12* 152:*9, 14* 153:*1, 11, 14* 154:*6* 156:*9, 11, 18* 157:*3* 158:*20* 160:*6* 161:*24* 162:*4* 165:*23* 166:*8, 11* 167:*3, 5* 169:*14* 170:*7, 10* 171:*4, 15, 24* 172:*1, 12, 19* 173:*10, 16, 22* 174:*1, 5, 25* 175:*21* 176:*7, 10, 18* 177:*24* 183:*12, 17, 19* 186:*16, 19* 189:*9, 11, 19* 191:*15* 193:*25* 194:*3* 198:*8* 200:*10* 201:*22* 202:*5, 21* 205:*1* 209:*5* 212:*22* 216:*1, 6, 19, 21* 218:*1* 219:*8, 17* 220:*4, 8, 11, 14* 221:*9, 15* 222:*14* 223:*5, 20* 227:*12* 235:*24* 244:*4* 247:*9, 18*

**year**  10:*3*  19:*18*
112:*14*  238:*19*  243:*9*
249:*14*  254:*11*
**years**  9:*23*  17:*18*
20:*12*  59:*13*  77:*12*
81:*18*  95:*18, 19*  96:*6*
253:*23*
**Yep**  83:*18*  84:*24*
95:*12*  98:*5*  99:*13, 16*
169:*1*  175:*5*  176:*24*
183:*7*  184:*18*  216:*3*
232:*3*
**yesterday**  12:*14*
**YORK**  1:*2*  2:*6*  7:*16*
182:*8*
**Youn**  107:*24*  108:*1*
249:*2*


**< Z >**
**Zight**  18:*3*
**Zoom**  2:*3, 10*  8:*3, 20,*
*25*  137:*8*  200:*5*

Deposition of Kevin Ilcisin | In Re National Instruments Corporation Securities Litigation

## WORD LIST

**< $ >**
**$3B**  (*1*)
**$48**  (*19*)
**$48/share**  (*1*)
**$48-per-share**  (*2*)
**$51**  (*3*)
**$55**  (*4*)
**$58.50**  (*1*)
**$60**  (*4*)
**$61**  (*3*)

**< 0 >**
**08-05-22**  (*1*)

**< 1 >**
**1**  (*23*)
**1.26**  (*1*)
**1:23-cv-10488**  (*1*)
**1:38**  (*1*)
**1:38-1:43**  (*1*)
**1:43**  (*1*)
**10**  (*6*)
**10:45**  (*3*)
**100**  (*1*)
**10170**  (*1*)
**104**  (*1*)
**106**  (*1*)
**10b-5-1**  (*1*)
**11**  (*12*)
**11:00**  (*1*)
**11:00-11:10**  (*1*)
**11:05**  (*4*)
**11:10**  (*1*)
**11:23**  (*1*)
**11:30**  (*1*)
**113**  (*1*)
**1133171-7801**  (*1*)
**114**  (*1*)
**117**  (*1*)
**119**  (*1*)
**11th**  (*6*)
**12**  (*6*)
**12:44**  (*1*)
**12:44-12:54**  (*1*)
**12:54**  (*1*)
**121**  (*1*)
**122**  (*1*)

**123**  (*1*)
**124**  (*1*)
**126**  (*1*)
**1266**  (*1*)
**12th**  (*4*)
**13**  (*8*)
**130**  (*1*)
**135**  (*1*)
**13th**  (*1*)
**14**  (*9*)
**1448**  (*1*)
**145**  (*5*)
**148**  (*1*)
**14th**  (*10*)
**15**  (*6*)
**15-0436**  (*2*)
**15147**  (*1*)
**155-156**  (*1*)
**158**  (*2*)
**15th**  (*1*)
**16**  (*5*)
**163-164**  (*1*)
**164**  (*1*)
**167**  (*1*)
**168**  (*1*)
**17**  (*5*)
**170**  (*1*)
**174**  (*1*)
**177**  (*1*)
**18**  (*7*)
**183**  (*1*)
**1832**  (*1*)
**186**  (*1*)
**187**  (*1*)
**19**  (*6*)
**190**  (*2*)
**1900**  (*1*)
**192**  (*1*)
**196**  (*1*)
**1986**  (*1*)
**199**  (*1*)
**1990**  (*1*)
**1991**  (*2*)
**1994**  (*2*)
**19th**  (*2*)
**1st**  (*5*)

**< 2 >**
**2**  (*35*)

**2.2**  (*1*)
**2:06**  (*2*)
**2_Project**  (*1*)
**20**  (*5*)
**2001**  (*2*)
**201**  (*1*)
**2015**  (*4*)
**2016**  (*1*)
**2017**  (*1*)
**2020s**  (*1*)
**2022**  (*133*)
**2022-07-14**  (*1*)
**2023**  (*4*)
**2024**  (*1*)
**2025**  (*6*)
**206**  (*2*)
**209**  (*1*)
**20th**  (*7*)
**21**  (*6*)
**211**  (*1*)
**212**  (*2*)
**215**  (*1*)
**219**  (*1*)
**21st**  (*3*)
**22**  (*6*)
**22250**  (*1*)
**223**  (*1*)
**224**  (*1*)
**228**  (*1*)
**22nd**  (*17*)
**23**  (*8*)
**230**  (*2*)
**231**  (*2*)
**232**  (*1*)
**234**  (*1*)
**235**  (*1*)
**23532**  (*1*)
**236**  (*1*)
**238**  (*1*)
**239**  (*1*)
**23rd**  (*5*)
**24**  (*6*)
**240**  (*1*)
**249**  (*1*)
**24th**  (*2*)
**25**  (*6*)
**250**  (*2*)
**250M**  (*1*)
**253**  (*1*)

**25th**  (*28*)
**26**  (*7*)
**263**  (*1*)
**2631**  (*1*)
**264**  (*2*)
**265**  (*2*)
**266**  (*2*)
**267**  (*1*)
**27**  (*5*)
**27th**  (*4*)
**28**  (*5*)
**28044**  (*1*)
**28th**  (*1*)
**29**  (*6*)
**293**  (*1*)
**295**  (*1*)
**29th**  (*1*)
**2nd**  (*7*)

**< 3 >**
**3**  (*17*)
**3:30**  (*1*)
**3_Wolverine**  (*1*)
**30**  (*8*)
**30th**  (*4*)
**31**  (*7*)
**314**  (*1*)
**31st**  (*1*)
**32**  (*4*)
**33**  (*5*)
**34**  (*5*)
**34-page**  (*1*)
**35**  (*5*)
**36**  (*1*)
**37**  (*1*)
**38**  (*1*)
**39**  (*5*)

**< 4 >**
**4**  (*18*)
**40**  (*1*)
**40s**  (*3*)
**41**  (*1*)
**412**  (*1*)
**413**  (*2*)
**42**  (*2*)
**420**  (*1*)
**43**  (*1*)
**432-5125**  (*1*)

**44**  *(3)*
**45**  *(2)*
**46618**  *(2)*
**47**  *(1)*
**47_0019**  *(1)*
**48**  *(5)*
**49**  *(2)*
**4th**  *(2)*

**< 5 >**
**5**  *(7)*
**5/25**  *(1)*
**5/25/2022**  *(3)*
**5/25/2025**  *(1)*
**5/26**  *(1)*
**5/27**  *(1)*
**5:00**  *(1)*
**50**  *(2)*
**51**  *(2)*
**521**  *(2)*
**55**  *(1)*

**< 6 >**
**6**  *(8)*
**6.14**  *(1)*
**6/14**  *(1)*
**60th**  *(1)*
**61**  *(1)*
**6-14-2022**  *(1)*
**63105**  *(1)*
**636**  *(1)*
**638**  *(1)*
**639**  *(3)*
**641**  *(1)*
**642**  *(1)*
**643**  *(1)*
**644**  *(1)*
**646**  *(1)*
**647**  *(2)*
**66**  *(1)*
**67**  *(1)*
**68**  *(1)*
**69**  *(1)*
**6th**  *(1)*

**< 7 >**
**7**  *(9)*
**702**  *(1)*
**730**  *(1)*

**731**  *(1)*
**761**  *(2)*
**7676**  *(1)*
**77**  *(1)*
**783**  *(2)*
**785**  *(1)*
**7891**  *(1)*
**791**  *(1)*

**< 8 >**
**8**  *(8)*
**8:57**  *(2)*
**8-2-2022.pdf**  *(1)*
**85**  *(2)*
**8520**  *(1)*
**8521**  *(1)*
**86**  *(1)*
**87**  *(1)*
**889**  *(1)*
**889-7300**  *(1)*
**89**  *(1)*
**8th**  *(3)*

**< 9 >**
**9**  *(7)*
**9:44:28**  *(1)*
**9:45**  *(1)*
**9:51**  *(1)*
**9:51-9:57**  *(1)*
**9:55**  *(2)*
**9:57**  *(2)*
**9:57:26**  *(1)*
**9:58**  *(1)*
**9:58:26**  *(1)*
**90**  *(2)*
**90s**  *(1)*
**91**  *(1)*
**922**  *(1)*
**923**  *(4)*
**938**  *(1)*
**95**  *(1)*
**96**  *(1)*
**963**  *(1)*
**976**  *(2)*

**< A >**
**a.m**  *(7)*
**ability**  *(2)*
**able**  *(2)*

**Absolutely**  *(2)*
**accelerate**  *(1)*
**accelerators**  *(2)*
**Acceptable**  *(2)*
**accepted**  *(1)*
**access**  *(1)*
**accumulate**  *(1)*
**accumulated**  *(3)*
**accumulating**  *(1)*
**accumulation**  *(20)*
**accumulations**  *(2)*
**accurate**  *(3)*
**accurately**  *(1)*
**achieve**  *(2)*
**achieved**  *(1)*
**acquire**  *(29)*
**acquired**  *(4)*
**acquirer**  *(5)*
**Acquirers**  *(1)*
**acquiring**  *(7)*
**acquisition**  *(14)*
**acquisitions**  *(2)*
**acronym**  *(2)*
**Act**  *(1)*
**action**  *(8)*
**actions**  *(3)*
**actively**  *(1)*
**Activism**  *(2)*
**activist**  *(7)*
**activists**  *(1)*
**activities**  *(5)*
**activity**  *(6)*
**actual**  *(5)*
**Adam**  *(2)*
**added**  *(2)*
**adding**  *(1)*
**Additional**  *(5)*
**addressed**  *(2)*
**administer**  *(1)*
**advance**  *(1)*
**advances**  *(1)*
**advice**  *(6)*
**advise**  *(2)*
**advised**  *(2)*
**advises**  *(1)*
**advising**  *(9)*
**advisor**  *(28)*
**advisors**  *(31)*
**affirmations**  *(1)*

**afternoon**  *(2)*
**agencies**  *(1)*
**agenda**  *(4)*
**aggressive**  *(1)*
**ago**  *(4)*
**agree**  *(5)*
**agreeable**  *(1)*
**agreed**  *(1)*
**agreement**  *(9)*
**agreements**  *(1)*
**ahead**  *(13)*
**AI**  *(2)*
**AI-based**  *(1)*
**Albert**  *(4)*
**Alberta**  *(8)*
**Albert's**  *(1)*
**Alex**  *(74)*
**aligned**  *(2)*
**allow**  *(2)*
**Alluri**  *(2)*
**alternatives**  *(1)*
**ambitious**  *(1)*
**America**  *(25)*
**amount**  *(1)*
**amounts**  *(1)*
**ample**  *(3)*
**analyses**  *(1)*
**analysis**  *(14)*
**analyst**  *(1)*
**analysts**  *(1)*
**and/or**  *(6)*
**Anna**  *(1)*
**announce**  *(4)*
**announced**  *(2)*
**announcement**  *(12)*
**announces**  *(1)*
**announcing**  *(4)*
**annual**  *(1)*
**anomaly**  *(1)*
**anonymously**  *(1)*
**ANSWER**  *(25)*
**answered**  *(15)*
**antitrust**  *(1)*
**anybody**  *(1)*
**apologize**  *(2)*
**appear**  *(6)*
**APPEARANCES**  *(2)*
**appeared**  *(1)*
**appearing**  *(2)*

appears  *(4)*
appointment  *(1)*
appreciate  *(3)*
approach  *(12)*
approached  *(1)*
approaches  *(1)*
appropriate  *(2)*
appropriately  *(1)*
approval  *(1)*
approved  *(1)*
area  *(1)*
arrow  *(9)*
art  *(1)*
Arts  *(2)*
Aside  *(3)*
Asked  *(23)*
asking  *(22)*
asks  *(1)*
assess  *(1)*
assessment  *(2)*
assessments  *(1)*
asset  *(7)*
assets  *(1)*
Assignment  *(1)*
assist  *(1)*
assistance  *(1)*
assisting  *(1)*
associated  *(2)*
assume  *(4)*
Assumes  *(2)*
assumptive  *(1)*
astrophysical  *(2)*
asymmetry  *(3)*
attached  *(3)*
attaches  *(8)*
attaching  *(2)*
attachment  *(25)*
attachments  *(1)*
attend  *(2)*
attendance  *(1)*
attended  *(3)*
Attendees  *(1)*
attending  *(2)*
attention  *(3)*
ATTORNEY  *(541)*
attorney-client  *(1)*
August  *(26)*
Austin  *(1)*
authorized  *(1)*

automation  *(1)*
available  *(2)*
Avenue  *(1)*
averages  *(1)*
aware  *(14)*

< B >
Bachelor  *(2)*
back  *(39)*
background  *(2)*
Bank  *(25)*
banker  *(4)*
bankers  *(5)*
banker's  *(1)*
banking  *(2)*
based  *(8)*
basically  *(1)*
basis  *(2)*
Bates  *(73)*
batteries  *(1)*
battle  *(3)*
bear  *(12)*
bearing  *(19)*
bears  *(5)*
becoming  *(2)*
begins  *(8)*
behalf  *(4)*
belief  *(1)*
believe  *(40)*
believed  *(1)*
Believes  *(2)*
beneficial  *(5)*
BENNETT  *(4)*
best  *(8)*
bet  *(3)*
better  *(4)*
bid  *(1)*
bids  *(2)*
bilateral  *(1)*
billion  *(1)*
binder  *(12)*
binders  *(1)*
biographical  *(1)*
birthday  *(1)*
bit  *(7)*
blank  *(1)*
blinded  *(1)*
blow  *(1)*
board  *(45)*

board/shareholder  *(1)*
board-only  *(1)*
boards  *(1)*
BofA  *(32)*
BofA's  *(4)*
Boil  *(1)*
book  *(2)*
bookings  *(1)*
bottom  *(23)*
Boulder  *(1)*
Boulevard  *(1)*
bounds  *(1)*
box  *(5)*
boxes  *(1)*
break  *(11)*
bringing  *(1)*
broad  *(1)*
broke  *(1)*
brought  *(8)*
budget  *(1)*
bullet  *(25)*
bullets  *(3)*
bump  *(3)*
bunch  *(1)*
business  *(3)*
busy  *(1)*
butchered  *(1)*
buy  *(4)*
buy-back  *(1)*
buybacks  *(1)*
buy-backs  *(2)*
buying  *(1)*
buyout  *(1)*
buys  *(1)*

< C >
calculate  *(1)*
calculation  *(1)*
calculations  *(1)*
calendars  *(1)*
call  *(55)*
called  *(4)*
calling  *(1)*
Calls  *(27)*
camera  *(1)*
campaign  *(2)*
Canada  *(3)*
Candidly  *(1)*
Capacity  *(11)*

Caption  *(1)*
captioned  *(1)*
capture  *(3)*
captured  *(2)*
capturing  *(1)*
carefully  *(1)*
carries  *(1)*
Case  *(8)*
cash  *(22)*
casually  *(1)*
categories  *(1)*
caught  *(1)*
cause  *(4)*
CCR  *(7)*
ceilings  *(1)*
Centerview  *(3)*
CEO  *(15)*
certain  *(1)*
Certainly  *(5)*
certainty  *(1)*
CERTIFICATE  *(1)*
Certified  *(1)*
certify  *(1)*
CHAD  *(1)*
chain  *(2)*
chairman  *(1)*
chance  *(5)*
change  *(8)*
changed  *(2)*
changes  *(3)*
characterizing  *(1)*
chat  *(1)*
chatting  *(1)*
check  *(3)*
checking  *(3)*
chief  *(4)*
China  *(1)*
choice  *(1)*
Choose  *(2)*
chooses  *(1)*
choosing  *(1)*
Christina  *(1)*
cjohnson@rgrdlaw.com  *(1)*
clarification  *(3)*
clarifying  *(1)*
clarity  *(1)*
clear  *(9)*
clearly  *(1)*

**click**  (*1*)
**clients**  (*2*)
**close**  (*6*)
**closed**  (*6*)
**closing**  (*7*)
**coaching**  (*1*)
**code**  (*14*)
**coercion**  (*1*)
**coercive**  (*14*)
**coerciveness**  (*2*)
**coffee**  (*1*)
**cohesive**  (*1*)
**cohesiveness**  (*1*)
**collaboratively**  (*1*)
**colleague**  (*2*)
**colleagues**  (*5*)
**collection**  (*1*)
**collectively**  (*1*)
**college**  (*5*)
**Colorado**  (*2*)
**column**  (*4*)
**columns**  (*1*)
**combination**  (*2*)
**come**  (*10*)
**COMERFORD**  (*202*)
**comes**  (*1*)
**coming**  (*4*)
**comment**  (*5*)
**commenting**  (*2*)
**comments**  (*6*)
**commitment**  (*1*)
**common**  (*5*)
**communicate**  (*6*)
**communicated**  (*2*)
**communicates**  (*2*)
**communicating**  (*1*)
**communication**  (*6*)
**communications**  (*7*)
**community**  (*3*)
**companies**  (*9*)
**company**  (*41*)
**company's**  (*5*)
**comparison**  (*1*)
**compensated**  (*2*)
**competitive**  (*1*)
**complete**  (*8*)
**completing**  (*1*)
**complicated**  (*1*)
**components**  (*1*)

**Compound**  (*1*)
**conclude**  (*2*)
**concluded**  (*1*)
**concludes**  (*1*)
**conclusions**  (*3*)
**conclusive**  (*1*)
**conditions**  (*2*)
**confident**  (*1*)
**Confidential**  (*2*)
**confirm**  (*7*)
**confirmation**  (*2*)
**confirmatory**  (*2*)
**confused**  (*1*)
**connect**  (*1*)
**connected**  (*1*)
**connection**  (*11*)
**Connie**  (*4*)
**cons**  (*1*)
**Conscious**  (*1*)
**consensus**  (*9*)
**consider**  (*4*)
**consideration**  (*9*)
**considered**  (*7*)
**considering**  (*2*)
**considers**  (*1*)
**consistency**  (*1*)
**consistently**  (*2*)
**contact**  (*2*)
**contacted**  (*1*)
**contained**  (*1*)
**contains**  (*2*)
**content**  (*3*)
**context**  (*17*)
**Context.pdf**  (*1*)
**contingency**  (*1*)
**continuation**  (*3*)
**continue**  (*2*)
**CONTINUED**  (*4*)
**continues**  (*1*)
**Continuing**  (*4*)
**contributed**  (*2*)
**control**  (*3*)
**controversial**  (*1*)
**conversation**  (*7*)
**conveyed**  (*2*)
**Convince**  (*2*)
**convinced**  (*1*)
**coordinating**  (*2*)
**copied**  (*1*)

**copies**  (*2*)
**copy**  (*3*)
**copying**  (*1*)
**corner**  (*1*)
**corp**  (*1*)
**corporate**  (*6*)
**CORPORATION**  (*5*)
**correct**  (*255*)
**correction**  (*1*)
**corrections**  (*1*)
**correctly**  (*16*)
**costs**  (*1*)
**Counsel**  (*20*)
**counsel's**  (*1*)
**count**  (*2*)
**counterparts**  (*1*)
**County**  (*1*)
**Couple**  (*3*)
**course**  (*6*)
**COURT**  (*11*)
**cover**  (*2*)
**covered**  (*2*)
**covering**  (*1*)
**created**  (*3*)
**credit**  (*1*)
**criteria**  (*4*)
**cross**  (*1*)
**crossed**  (*1*)
**CRR**  (*3*)
**culture**  (*1*)
**CUMMINGS**  (*360*)
**current**  (*1*)
**currently**  (*2*)
**customer**  (*1*)
**customers**  (*5*)
**cut**  (*2*)
**cuts**  (*1*)
**cutting**  (*1*)

**< D >**
**danger**  (*1*)
**Daniels**  (*3*)
**dash**  (*2*)
**date**  (*20*)
**dated**  (*45*)
**dates**  (*1*)
**dating**  (*1*)
**Davis**  (*2*)
**day**  (*11*)

**days**  (*2*)
**DC**  (*1*)
**DCF**  (*1*)
**dcummings@rgrdlaw.**
**com**  (*1*)
**deal**  (*19*)
**deals**  (*1*)
**Debt**  (*2*)
**decades**  (*1*)
**December**  (*1*)
**decide**  (*2*)
**decides**  (*1*)
**decision**  (*3*)
**decisions**  (*2*)
**deck**  (*3*)
**DECLARATION**  (*1*)
**declare**  (*1*)
**decline**  (*2*)
**declining**  (*2*)
**defend**  (*1*)
**Defendants**  (*3*)
**defense**  (*1*)
**defenses**  (*1*)
**defensive**  (*5*)
**Definitely**  (*2*)
**definition**  (*1*)
**definitive**  (*7*)
**degree**  (*6*)
**degrees**  (*2*)
**deliberate**  (*1*)
**deliver**  (*1*)
**department**  (*1*)
**dependency**  (*1*)
**depending**  (*3*)
**depiction**  (*1*)
**deposed**  (*7*)
**DEPOSITION**  (*18*)
**depositions**  (*1*)
**derivative**  (*1*)
**derivatives**  (*1*)
**describe**  (*9*)
**described**  (*1*)
**describes**  (*1*)
**describing**  (*3*)
**DESCRIPTION**  (*3*)
**designs**  (*1*)
**DESIREE**  (*5*)
**destroy**  (*1*)
**detailed**  (*2*)

Deposition of Kevin Ilcisin                    In Re National Instruments Corporation Securities Litigation

**Determine** *(3)*
**determined** *(2)*
**dev** *(1)*
**develop** *(1)*
**developed** *(3)*
**development** *(9)*
**DF** *(2)*
**dialog** *(1)*
**difference** *(1)*
**different** *(14)*
**difficult** *(1)*
**diligence** *(27)*
**diluted** *(1)*
**diluting** *(2)*
**Dimitrijevic** *(1)*
**direct** *(3)*
**directed** *(1)*
**directing** *(4)*
**direction** *(1)*
**directly** *(1)*
**director** *(1)*
**Directors** *(6)*
**disagrees** *(1)*
**discern** *(1)*
**Disclosable** *(1)*
**disclose** *(2)*
**disclosed** *(8)*
**disclosure** *(3)*
**disclosure/notification**
 *(1)*
**disclosures** *(2)*
**discounted** *(1)*
**discoverable** *(5)*
**discovery** *(1)*
**discuss** *(2)*
**discussed** *(7)*
**Discusses** *(1)*
**discussing** *(7)*
**discussion** *(13)*
**discussions** *(7)*
**dismissed** *(1)*
**display** *(1)*
**displayed** *(2)*
**displaying** *(1)*
**dispute** *(1)*
**disputing** *(3)*
**distraction** *(1)*
**DISTRICT** *(4)*
**divestment** *(1)*

**Dividend** *(5)*
**Dixon** *(20)*
**DLC** *(1)*
**Docs** *(1)*
**Doctorate** *(2)*
**document** *(110)*
**documentation** *(2)*
**documents** *(20)*
**Doing** *(8)*
**dot** *(1)*
**DOWD** *(6)*
**Draft** *(1)*
**draw** *(1)*
**due** *(13)*
**duly** *(2)*
**Duties** *(3)*

**< E >**
**Eagle** *(2)*
**Earlier** *(14)*
**earliest-in-time** *(2)*
**early** *(7)*
**earn** *(4)*
**earned** *(4)*
**earnings** *(30)*
**easier** *(2)*
**eat** *(2)*
**EBITDA** *(1)*
**Eddie** *(10)*
**Edmonton** *(3)*
**educate** *(1)*
**educated** *(1)*
**educating** *(3)*
**education** *(1)*
**effect** *(3)*
**efficient** *(1)*
**either** *(6)*
**Electric** *(1)*
**electrical** *(6)*
**electronic** *(1)*
**electronically** *(4)*
**element** *(2)*
**e-mail** *(125)*
**e-mails** *(4)*
**Emerson** *(123)*
**Emerson's** *(53)*
**Emmerich** *(3)*
**employed** *(5)*
**employee** *(1)*

**Employees** *(5)*
**employer** *(1)*
**employers** *(1)*
**EMR** *(3)*
**encourage** *(1)*
**encouragement** *(1)*
**encouraging** *(1)*
**endeavor** *(1)*
**ended** *(1)*
**ends** *(5)*
**engage** *(9)*
**engaged** *(11)*
**engagement** *(12)*
**engaging** *(2)*
**engineer** *(1)*
**engineering** *(4)*
**engineers** *(1)*
**enhancer** *(1)*
**enroll** *(1)*
**enrolled** *(2)*
**enter** *(1)*
**entered** *(3)*
**enthusiasm** *(1)*
**enthusiastic** *(2)*
**entire** *(5)*
**entirety** *(5)*
**entities** *(2)*
**entitled** *(2)*
**entries** *(2)*
**entry** *(8)*
**environment** *(2)*
**equal** *(2)*
**equipment** *(1)*
**equity** *(3)*
**Eric** *(22)*
**Eric's** *(3)*
**ERRATA** *(3)*
**Escalate** *(1)*
**escalation** *(4)*
**Establish** *(1)*
**established** *(1)*
**estimate** *(1)*
**estimating** *(1)*
**evaluated** *(1)*
**evaluating** *(2)*
**event** *(6)*
**Eventually** *(2)*
**Evercore** *(3)*
**Everest** *(2)*

**everybody's** *(1)*
**evidence** *(5)*
**EVR** *(1)*
**exact** *(2)*
**exactly** *(1)*
**EXAMINATION** *(9)*
**example** *(3)*
**Excel** *(4)*
**exception** *(1)*
**exchanges** *(1)*
**excited** *(2)*
**excitement** *(4)*
**excuse** *(14)*
**excused** *(1)*
**execute** *(1)*
**executing** *(2)*
**execution** *(1)*
**executives** *(2)*
**exercise** *(2)*
**EXHIBIT** *(194)*
**exhibits** *(5)*
**existence** *(1)*
**expect** *(1)*
**expectation** *(3)*
**expected** *(1)*
**expenses** *(1)*
**experience** *(21)*
**explain** *(2)*
**explaining** *(1)*
**explicitly** *(4)*
**expressing** *(1)*
**extended** *(1)*
**extensive** *(4)*
**extent** *(2)*
**external** *(4)*
**externally** *(1)*
**extreme** *(1)*

**< F >**
**face** *(1)*
**fact** *(7)*
**factors** *(1)*
**facts** *(3)*
**Fair** *(15)*
**fairly** *(1)*
**familiar** *(4)*
**familiarize** *(1)*
**far** *(1)*
**favorite** *(1)*

Deposition of Kevin Ilcisin    In Re National Instruments Corporation Securities Litigation

feature  *(2)*
features  *(1)*
February  *(3)*
feel  *(4)*
FGS  *(4)*
fiberoptic  *(1)*
fiducial  *(1)*
fiduciary  *(1)*
field  *(3)*
fight  *(1)*
figure  *(1)*
file  *(2)*
files  *(1)*
FINAL  *(3)*
finalize  *(2)*
finance  *(1)*
financial  *(36)*
financials  *(1)*
financing  *(4)*
find  *(1)*
fine  *(5)*
finish  *(9)*
Finished  *(2)*
Firepower  *(5)*
firm  *(6)*
firms  *(2)*
first  *(43)*
fit  *(1)*
five  *(5)*
five-minute  *(2)*
flag  *(1)*
flagging  *(2)*
Flexibility  *(1)*
flip  *(1)*
floated  *(2)*
floors  *(1)*
flow  *(1)*
focus  *(5)*
focused  *(2)*
follow  *(6)*
following  *(4)*
follows  *(3)*
football  *(2)*
foregoing  *(1)*
forget  *(1)*
forgive  *(1)*
forgot  *(1)*
Form  *(129)*
formal  *(2)*

former  *(1)*
Forsyth  *(1)*
forthcoming  *(2)*
forward  *(3)*
forwarding  *(3)*
found  *(1)*
Foundation  *(36)*
founder  *(2)*
founding  *(1)*
four  *(19)*
fourth  *(1)*
FP&A  *(1)*
frame  *(6)*
framed  *(2)*
free  *(2)*
Friday  *(1)*
front  *(27)*
FSG  *(5)*
full  *(7)*
fully  *(1)*
fund  *(2)*
funds  *(1)*
further  *(4)*
future  *(4)*
FYI  *(3)*

< G >
gathering  *(2)*
GELLER  *(2)*
general  *(5)*
generally  *(1)*
generation  *(1)*
generic  *(1)*
Geoffroy  *(2)*
getting  *(8)*
give  *(9)*
given  *(8)*
go  *(111)*
goal  *(2)*
goals  *(1)*
goes  *(43)*
going  *(82)*
Goldman  *(1)*
Good  *(7)*
grab  *(1)*
grad  *(1)*
graduate  *(2)*
graduated  *(1)*
graduating  *(1)*

grammar  *(1)*
granted  *(2)*
Great  *(17)*
ground  *(2)*
group  *(6)*
grow  *(1)*
guarantee  *(1)*
guess  *(2)*
guidance  *(4)*
guide  *(4)*
Guiding  *(2)*
guys  *(1)*

< H >
HAND  *(1)*
handful  *(1)*
Handle  *(1)*
handwriting  *(3)*
Handwritten  *(46)*
Hang  *(1)*
happen  *(4)*
happened  *(1)*
happens  *(1)*
Happy  *(2)*
hard  *(2)*
hardware  *(1)*
hats  *(1)*
haul  *(1)*
head  *(5)*
header  *(1)*
heading  *(5)*
heard  *(4)*
hearing  *(1)*
heat  *(1)*
hedge  *(3)*
held  *(4)*
help  *(2)*
helpful  *(6)*
helping  *(2)*
hereof  *(1)*
hidden  *(4)*
high  *(7)*
higher  *(1)*
highest  *(1)*
highlight  *(1)*
highlighted  *(1)*
highly  *(1)*
hire  *(8)*
hired  *(6)*

hiring  *(1)*
History  *(2)*
HOFMAN  *(6)*
hold  *(4)*
holiday  *(1)*
Hostile  *(15)*
hostility  *(5)*
hour  *(4)*
hug  *(9)*
huh  *(1)*
humble  *(2)*
hundreds  *(1)*
hurt  *(3)*
hypothetical  *(3)*

< I >
Idaho  *(2)*
idea  *(1)*
identification  *(35)*
identified  *(5)*
identify  *(2)*
identifying  *(1)*
ILCISIN  *(99)*
Ilcisin's  *(1)*
illustrated  *(1)*
IMHO  *(2)*
immediately  *(1)*
Imminent  *(1)*
impact  *(1)*
impediments  *(1)*
implicate  *(1)*
implications  *(1)*
imply  *(1)*
important  *(2)*
impossible  *(1)*
improper  *(5)*
improved  *(5)*
include  *(7)*
included  *(4)*
includes  *(5)*
including  *(2)*
inclusive  *(2)*
incomplete  *(6)*
inconsistency  *(1)*
Inconsistent  *(1)*
Incorporated  *(2)*
incorrectly  *(1)*
increase  *(10)*
increased  *(2)*

| | | | |
|---|---|---|---|
| increases  (2) | internal  (9) | | led  (1) |
| increasing  (1) | internalizing  (2) | < K > | left  (13) |
| independence  (1) | interposed  (1) | Kar  (1) | legal  (14) |
| independent  (4) | interpret  (3) | Karen  (16) | letter  (109) |
| INDEX  (4) | interpretation  (1) | Karen's  (2) | letters  (1) |
| indicate  (8) | interpreted  (1) | Karsanbhai  (20) | level  (6) |
| indicated  (2) | interrupted  (1) | Karsanbhai's  (5) | Leveraged  (3) |
| indicates  (18) | Interruption  (1) | Katz  (2) | Lexington  (1) |
| indicating  (5) | invade  (1) | keep  (7) | liaison  (2) |
| indicative  (2) | invading  (1) | keeping  (1) | lifted  (1) |
| individual  (1) | invested  (1) | kept  (1) | likelihood  (2) |
| industry  (6) | investment  (13) | KEVIN  (16) | limit  (1) |
| inferred  (1) | investments  (1) | Kevin's  (1) | limited  (1) |
| INFORMATION  (27) | investor  (2) | key  (4) | line  (44) |
| informed  (1) | investors  (9) | kind  (2) | lines  (12) |
| informing  (1) | Invite  (3) | King  (2) | link  (1) |
| infringement  (1) | involve  (2) | knew  (1) | linked  (1) |
| initial  (3) | involved  (5) | know  (86) | Lipton  (3) |
| Initially  (2) | involvement  (1) | knowing  (1) | list  (10) |
| initials  (7) | IP  (1) | knowledge  (3) | listed  (5) |
| initiated  (2) | issue  (6) | known  (1) | listen  (4) |
| injury  (1) | Item  (20) | knows  (1) | listened  (2) |
| inked  (2) | items  (9) | Kwon-Yong  (1) | lists  (3) |
| Innovations  (6) | its  (42) | | LITIGATION  (4) |
| inquiring  (1) | | < L > | little  (11) |
| inside  (1) | < J > | label  (1) | Liu  (7) |
| InSinkErator  (10) | January  (1) | labeled  (7) | live  (1) |
| insisting  (1) | JAVS  (1) | Lack  (5) | LLP  (4) |
| instance  (1) | jcomerford@dowdben | lacks  (1) | log  (2) |
| instances  (1) | nett.com  (1) | ██████ | long  (9) |
| INSTRUCTED  (1) | JEREMY  (6) | Lal  (8) | long-term  (2) |
| instructing  (1) | jhofman@dowdbennet | language  (4) | look  (36) |
| instruction  (1) | t.com  (1) | laptop  (2) | looked  (7) |
| instructs  (1) | Jin  (1) | large  (2) | looking  (48) |
| Instrument  (1) | Job  (2) | lasted  (1) | looks  (9) |
| INSTRUMENTS | jobs  (1) | late  (3) | loop  (3) |
| (139) | JOHN  (10) | launch  (1) | loser  (3) |
| Instruments's  (4) | JOHNSON  (1) | lawsuit  (1) | lost  (2) |
| insurance  (1) | join  (1) | lawyer  (4) | lot  (2) |
| intelligence  (1) | joined  (12) | lawyers  (1) | lots  (1) |
| intend  (1) | joining  (1) | layman's  (1) | loud  (1) |
| intent  (5) | joint  (2) | leading  (2) | Louis  (1) |
| intentional  (1) | judge  (1) | leads  (1) | lower  (1) |
| interchangeably  (1) | July  (22) | leaf  (1) | Lucky  (1) |
| interest  (5) | jump  (1) | lean  (3) | Luna  (8) |
| interested  (6) | June  (54) | learn  (1) | L-U-N-A  (1) |
| interesting  (12) | Juniper  (2) | learning  (2) | lunch  (1) |
| interests  (1) | jury  (1) | leave  (2) | |
| intermixed  (1) | justification  (1) | leaving  (1) | < M > |

Deposition of Kevin Ilcisin                    In Re National Instruments Corporation Securities Litigation

**M&A**  *(17)*
**Ma**  *(1)*
**MacKenzie**  *(21)*
**MacKenzie's**  *(4)*
**maintaining**  *(1)*
**making**  *(3)*
**management**  *(4)*
**March**  *(1)*
**margin**  *(4)*
**margins**  *(5)*
**Marissa**  *(7)*
**Marissa's**  *(1)*
**mark**  *(40)*
**marked**  *(40)*
**market**  *(1)*
**marketing**  *(3)*
**markets**  *(4)*
**massive**  *(1)*
**Master**  *(2)*
**material**  *(7)*
**Materials**  *(8)*
**material's**  *(1)*
**matter**  *(4)*
**matters**  *(1)*
**McGrath**  *(3)*
**mean**  *(25)*
**Meaning**  *(1)*
**means**  *(13)*
**meant**  *(9)*
**measure**  *(2)*
**Measured**  *(3)*
**measurement**  *(3)*
**media**  *(3)*
**medication**  *(1)*
**meet**  *(5)*
**Meeting**  *(36)*
**meetings**  *(5)*
**members**  *(1)*
**memory**  *(1)*
**mentioned**  *(4)*
**merger**  *(7)*
**mergers**  *(3)*
**message**  *(1)*
**message/Wolverine**
  *(1)*
**messages**  *(1)*
**messaging**  *(4)*
**Messrs**  *(1)*
**met**  *(5)*

**metadata**  *(11)*
**method**  *(1)*
**methodologies**  *(1)*
**methodology**  *(2)*
**Michael**  *(1)*
**MicroDisplay**  *(1)*
**middle**  *(3)*
**mid-year**  *(2)*
**Miller**  *(3)*
**million**  *(7)*
**mindful**  *(1)*
**mine**  *(1)*
**minimal**  *(1)*
**minute**  *(3)*
**Minutes**  *(27)*
**mischaracterized**  *(1)*
**Mischaracterizes**  *(18)*
**misconstrued**  *(1)*
**misdated**  *(1)*
**missed**  *(1)*
**missing**  *(3)*
**Missouri**  *(1)*
**misspoke**  *(1)*
**mistaken**  *(1)*
**moment**  *(3)*
**Monday**  *(1)*
**monitor**  *(5)*
**month**  *(1)*
**months**  *(1)*
**Montross**  *(2)*
**morning**  *(4)*
**motivated**  *(1)*
**mouse**  *(1)*
**move**  *(5)*
**moved**  *(1)*
**moving**  *(2)*
**multiple**  *(7)*
**mutually**  *(1)*

**< N >**
**name**  *(30)*
**named**  *(1)*
**names**  *(3)*
**NAN-SL-00001447**
  *(1)*
**NAN-SL-00011768**
  *(1)*
**NASDAQ**  *(2)*
**NATI**  *(4)*

**NATIONAL**  *(146)*
**natively**  *(1)*
**NATSL**  *(1)*
**NAT-SL-00001239**  *(2)*
**NAT-SL-00001263**  *(2)*
**NAT-SL-00001447**  *(1)*
**NAT-SL-00008520**  *(1)*
**NAT-SL-00010410**  *(2)*
**NAT-SL-00011768**  *(1)*
**NAT-SL-00011781**  *(3)*
**NAT-SL-00012292**  *(2)*
**NAT-SL-00015145**  *(2)*
**NAT-SL-00016099**  *(2)*
**NAT-SL-00016112**  *(2)*
**NAT-SL-00017263**  *(2)*
**NAT-SL-00017728**  *(2)*
**NAT-SL-00018186**  *(2)*
**NAT-SL-00018188**  *(2)*
**NAT-SL-00019635**  *(2)*
**NAT-SL-00019636**  *(2)*
**NAT-SL-00019642**  *(2)*
**NAT-SL-00019645**  *(1)*
**NAT-SL-00019646**  *(1)*
**NAT-SL-00019760**  *(2)*
**NAT-SL-000222**  *(1)*
**NAT-SL-00022248**  *(1)*
**NAT-SL-00023167**  *(2)*
**NAT-SL-00023189**  *(2)*
**NAT-SL-00023205**  *(2)*
**NAT-SL-00023210**  *(2)*
**NAT-SL-00023530**  *(2)*
**NAT-SL-00023790**  *(2)*
**NAT-SL-00023922**  *(2)*
**NAT-SL-00025699**  *(1)*
**NAT-SL-00027226**  *(2)*
**NAT-SL-00027400**  *(2)*
**NAT-SL-00027888**  *(2)*
**NAT-SL-00028008**  *(2)*
**NAT-SL-00028044**  *(2)*
**NAT-SL-19761**  *(1)*
**nature**  *(3)*
**NDA**  *(1)*
**necessarily**  *(5)*
**need**  *(28)*
**needed**  *(3)*
**negotiate**  *(1)*
**Neither**  *(3)*
**Never**  *(4)*
**NEW**  *(7)*

**news**  *(1)*
**NI**  *(58)*
**night**  *(1)*
**Niles**  *(10)*
**NI's**  *(12)*
**No.____Change**  *(7)*
**No.____Line**  *(7)*
**NOBO**  *(6)*
**nods**  *(2)*
**nonbinding**  *(1)*
**non-objecting**  *(1)*
**NonPublic**  *(8)*
**normal**  *(5)*
**normalized**  *(1)*
**Nos**  *(32)*
**notation**  *(2)*
**note**  *(16)*
**noted**  *(3)*
**Notes**  *(149)*
**Notice**  *(2)*
**Notification**  *(2)*
**November**  *(2)*
**NS**  *(4)*
**nuanced**  *(1)*
**number**  *(4)*
**numbers**  *(2)*
**Nuthatch**  *(30)*

**< O >**
**oath**  *(2)*
**oaths**  *(1)*
**object**  *(43)*
**Objection**  *(28)*
**objections**  *(4)*
**obligated**  *(1)*
**obligation**  *(1)*
**obligations**  *(4)*
**obtain**  *(3)*
**obtained**  *(2)*
**obtaining**  *(5)*
**obviously**  *(2)*
**occurred**  *(1)*
**occurring**  *(1)*
**ocean**  *(1)*
**October**  *(9)*
**offer**  *(36)*
**offering**  *(7)*
**offerings**  *(2)*
**offeror**  *(1)*

| | | | |
|---|---|---|---|
| **offers**  (*10*) | **paraphrase**  (*1*) | **Phil**  (*2*) | **preparation**  (*1*) |
| **officer**  (*3*) | **paraphrasing**  (*5*) | **Philosophy**  (*2*) | **prepare**  (*6*) |
| **officers**  (*1*) | **pardon**  (*3*) | **Phil's**  (*1*) | **prepared**  (*8*) |
| **Oh**  (*11*) | **paren**  (*1*) | **phone**  (*4*) | **Preparedness**  (*1*) |
| **Okay**  (*360*) | **part**  (*18*) | **phrase**  (*2*) | **preparing**  (*2*) |
| **old**  (*1*) | **partial**  (*1*) | **physical**  (*1*) | **prepped**  (*1*) |
| **once**  (*7*) | **partially**  (*1*) | **piece**  (*1*) | **Present**  (*5*) |
| **one-pager**  (*1*) | **participate**  (*1*) | **pipeline**  (*1*) | **presentation**  (*21*) |
| **ones**  (*1*) | **participated**  (*4*) | **place**  (*6*) | **presentations**  (*3*) |
| **one-word**  (*1*) | **participating**  (*2*) | **places**  (*2*) | **presented**  (*6*) |
| **open**  (*1*) | **participation**  (*1*) | **Plaintiff**  (*2*) | **president**  (*6*) |
| **operating**  (*1*) | **particular**  (*5*) | **plan**  (*14*) | **presidents**  (*1*) |
| **operational**  (*2*) | **partner**  (*1*) | **Planning**  (*3*) | **press**  (*3*) |
| **opinion**  (*4*) | **Partners**  (*6*) | **plans**  (*1*) | **Pressure**  (*6*) |
| **opportunistic**  (*2*) | **parts**  (*2*) | **play**  (*1*) | **presumably**  (*4*) |
| **opportunities**  (*1*) | **party**  (*4*) | **player**  (*2*) | **pretty**  (*2*) |
| **opportunity**  (*5*) | **passive**  (*1*) | **please**  (*41*) | **prevent**  (*1*) |
| **opposed**  (*3*) | **pause**  (*2*) | **Pleasure**  (*2*) | **previous**  (*7*) |
| **option**  (*3*) | **PDF**  (*10*) | **plugs**  (*1*) | **previously**  (*4*) |
| **options**  (*3*) | **PE**  (*4*) | **point**  (*24*) | **price**  (*24*) |
| **orally**  (*1*) | **Pedro**  (*6*) | **pointed**  (*1*) | **prices**  (*1*) |
| **Oregon**  (*6*) | **peer**  (*1*) | **points**  (*11*) | **Princeton**  (*10*) |
| **organization**  (*1*) | **PENALTY**  (*2*) | **polite**  (*1*) | **print**  (*1*) |
| **organizations**  (*1*) | **pending**  (*2*) | **Polk**  (*2*) | **prior**  (*11*) |
| **orient**  (*2*) | **people**  (*4*) | **poorly**  (*1*) | **priority**  (*1*) |
| **original**  (*1*) | **perceive**  (*5*) | **populated**  (*1*) | **Priv**  (*1*) |
| **originally**  (*1*) | **perceived**  (*2*) | **POR**  (*5*) | **private**  (*10*) |
| **outline**  (*1*) | **percent**  (*4*) | **portfolio**  (*4*) | **privately**  (*2*) |
| **outreach**  (*2*) | **Perception**  (*1*) | **portion**  (*1*) | **privilege**  (*6*) |
| **outside**  (*2*) | **Percival**  (*5*) | **Portland**  (*5*) | **Privileged**  (*2*) |
| **outstanding**  (*2*) | **Perfect**  (*2*) | **Portrayed**  (*1*) | **proactive**  (*3*) |
| **overall**  (*4*) | **perform**  (*4*) | **position**  (*12*) | **Proactively**  (*2*) |
| **overlap**  (*1*) | **performance**  (*2*) | **positions**  (*2*) | **probably**  (*10*) |
| **overtake**  (*1*) | **performed**  (*3*) | **possession**  (*1*) | **problem**  (*14*) |
| **owned**  (*1*) | **performing**  (*1*) | **possible**  (*4*) | **problems**  (*1*) |
| **owner**  (*1*) | **period**  (*5*) | **possibly**  (*1*) | **proceed**  (*4*) |
| **ownership**  (*1*) | **periods**  (*2*) | **potential**  (*13*) | **proceedings**  (*4*) |
| | **PERJURY**  (*2*) | **potentially**  (*2*) | **process**  (*31*) |
| **< P >** | **person**  (*6*) | **PowerPoint**  (*5*) | **produce**  (*2*) |
| **p.m**  (*20*) | **personal**  (*6*) | **PR**  (*1*) | **produced**  (*5*) |
| **pace**  (*3*) | **personally**  (*2*) | **practically**  (*1*) | **product**  (*4*) |
| **package**  (*1*) | **personnel**  (*1*) | **practice**  (*8*) | **products**  (*2*) |
| **pad**  (*1*) | **person's**  (*1*) | **practiced**  (*1*) | **professional**  (*4*) |
| **PAGE**  (*155*) | **perspective**  (*8*) | **prediction**  (*1*) | **Profitability**  (*1*) |
| **Pages**  (*7*) | **perspectives**  (*2*) | **predictions**  (*1*) | **program**  (*1*) |
| **paid**  (*2*) | **peruse**  (*2*) | **prefer**  (*2*) | **Project**  (*28*) |
| **paper**  (*3*) | **petered**  (*1*) | **premise**  (*2*) | **projects**  (*1*) |
| **paragraph**  (*14*) | **petering**  (*2*) | **premium**  (*5*) | **promotion**  (*1*) |
| **paragraphs**  (*1*) | **Ph.D**  (*2*) | **premiums**  (*2*) | **proper**  (*1*) |

**proposal**  (58)
**proposals**  (1)
**proposed**  (5)
**Proposes**  (2)
**proposing**  (6)
**pros**  (1)
**prospects**  (1)
**protocols**  (1)
**provide**  (7)
**provided**  (3)
**provider**  (4)
**provides**  (2)
**proxy**  (4)
**psychology**  (2)
**public**  (38)
**publicly**  (2)
**publish**  (1)
**published**  (3)
**pull**  (5)
**pundits**  (1)
**purchase**  (4)
**pure**  (1)
**purely**  (1)
**purported**  (1)
**purpose**  (1)
**purposely**  (1)
**pursue**  (2)
**pursuing**  (2)
**put**  (12)
**putting**  (2)

**< Q >**
**Q3**  (2)
**Q4**  (3)
**quarter**  (1)
**question**  (60)
**questioning**  (1)
**questions**  (11)
**quickly**  (3)
**quite**  (1)
**quotation**  (1)
**quote**  (1)
**quotes**  (2)

**< R >**
**R&D**  (1)
**Range**  (2)
**ranked**  (3)
**Rapp**  (15)

**Rapp's**  (1)
**rationale**  (1)
**reach**  (1)
**reaching**  (1)
**reach-out**  (1)
**react**  (2)
**reacting**  (1)
**reaction**  (1)
**reactive**  (1)
**read**  (66)
**reading**  (14)
**reads**  (8)
**ready**  (2)
**real**  (4)
**realignment**  (1)
**really**  (2)
**reason**  (20)
**reassess**  (1)
**recall**  (48)
**recalling**  (1)
**receive**  (3)
**received**  (7)
**receiving**  (2)
**Recess**  (4)
**recipient**  (1)
**Recob**  (5)
**recognize**  (18)
**recollection**  (5)
**recommended**  (2)
**reconsider**  (1)
**record**  (29)
**recorded**  (4)
**recording**  (1)
**records**  (1)
**recurring**  (2)
**redact**  (1)
**redacted**  (14)
**redaction**  (6)
**redactions**  (8)
**reduce**  (2)
**reduces**  (1)
**reduction**  (2)
**refer**  (13)
**reference**  (113)
**referenced**  (3)
**references**  (2)
**referencing**  (5)
**referred**  (2)
**referring**  (8)

**refers**  (16)
**reflect**  (2)
**reflects**  (1)
**reframing**  (1)
**refresh**  (1)
**refuse**  (1)
**refused**  (1)
**regarding**  (13)
**Regardless**  (1)
**regulatory**  (3)
**Regus**  (1)
**reiterate**  (2)
**reject**  (5)
**rejecting**  (1)
**Rejection**  (2)
**relate**  (6)
**related**  (12)
**relates**  (6)
**relating**  (8)
**relations**  (1)
**relationship**  (6)
**relatively**  (3)
**release**  (7)
**relevance**  (2)
**relevant**  (1)
**remember**  (18)
**REMEMBERED**  (3)
**reminded**  (1)
**reminding**  (1)
**removal**  (1)
**remove**  (2)
**renegotiation**  (1)
**repeat**  (3)
**repeating**  (1)
**Reported**  (1)
**reporter**  (12)
**REPORTER'S**  (1)
**Reporting**  (3)
**represent**  (4)
**representation**  (1)
**representative**  (1)
**represents**  (1)
**reproposal**  (1)
**request**  (4)
**REQUESTED**  (3)
**requesting**  (2)
**require**  (1)
**required**  (3)
**research**  (1)

**reserve**  (3)
**reserved**  (1)
**reserving**  (1)
**resort**  (2)
**respect**  (6)
**respond**  (8)
**Responding**  (1)
**responds**  (2)
**response**  (17)
**responses**  (1)
**responsibile**  (1)
**responsibilities**  (4)
**responsibility**  (1)
**responsible**  (4)
**responsive**  (1)
**rest**  (3)
**restart**  (1)
**restatement**  (1)
**Restriction**  (3)
**restrictions**  (2)
**restructuring**  (6)
**result**  (1)
**resulting**  (1)
**results**  (2)
**retail**  (3)
**retain**  (1)
**retains**  (1)
**retelling**  (1)
**Retirement**  (2)
**reveal**  (1)
**revenue**  (1)
**review**  (29)
**reviewed**  (10)
**revisit**  (3)
**right**  (338)
**rights**  (4)
**rigorous**  (1)
**risk**  (1)
**RMR**  (3)
**ROBBINS**  (2)
**Rockwell**  (4)
**role**  (12)
**room**  (1)
**Rosen**  (3)
**row**  (4)
**rows**  (2)
**rubric**  (1)
**RUDMAN**  (2)
**rules**  (2)

Deposition of Kevin Ilcisin                                    In Re National Instruments Corporation Securities Litigation

rumor  (5)
Run  (1)

< S >
s/CONNIE  (1)
Sabastian  (10)
Sabasto  (1)
Sachs  (1)
sake  (1)
sale  (10)
sales  (1)
Sam  (1)
Sandeep  (1)
save  (2)
saw  (5)
saying  (17)
says  (152)
scale  (6)
scan  (7)
scanned  (3)
scenario  (2)
scenarios  (3)
schedule  (1)
school  (3)
Science  (2)
sciences  (2)
scientist  (1)
score  (1)
screen  (12)
scripted  (1)
scroll  (4)
sec  (1)
second  (25)
seconds  (1)
section  (15)
SECURITIES  (4)
see  (240)
seeing  (8)
seek  (2)
seeking  (2)
seen  (10)
sell  (6)
selling  (6)
sell-side  (1)
send  (4)
sending  (3)
senior  (3)
sense  (3)
sensitivity  (4)

sent  (7)
sentence  (16)
sentences  (1)
separate  (4)
separately  (1)
September  (10)
sequence  (1)
sequential  (2)
serious  (3)
service  (1)
services  (1)
serving  (1)
session  (1)
set  (11)
sets  (1)
shaking  (1)
share  (21)
shared  (7)
shareholder  (3)
shareholders  (16)
shareholdings  (1)
shares  (15)
sharing  (4)
Shawn  (6)
sheet  (14)
Short  (2)
shorter  (5)
shorthand  (3)
shortly  (1)
short-term  (4)
show  (13)
showed  (2)
showing  (2)
shown  (5)
shows  (1)
Shred  (1)
shrink  (1)
sic  (1)
side  (9)
Siemens  (2)
sign  (3)
Signature  (2)
SIGNATURE:_____
_____DA
TE  (1)
Signed  (1)
significant  (2)
signing  (5)

similar  (2)
Simple  (2)
simultaneously  (1)
Single  (2)
sir  (1)
sitting  (1)
situation  (3)
situations  (1)
six  (7)
size  (1)
skipped  (1)
Skipping  (1)

slide  (20)
slides  (4)
slightly  (1)
slip  (11)
small  (4)
smiley  (1)
SN  (2)
Soft  (2)
software  (1)
sold  (3)
solicitation  (1)
solicited  (1)
somebody  (5)
sorry  (22)
sort  (10)
sound  (1)
sounds  (1)
SOUTHERN  (2)
space  (2)
speak  (6)
Speaker  (2)
speaking  (3)
special  (2)
specialist  (1)
specific  (14)
specifically  (3)
specifics  (1)
specified  (1)
specifies  (1)
specify  (3)
spectrum  (2)
speculate  (5)
speculating  (5)
speculation  (33)
speculations  (1)
speculative  (1)

spent  (1)
spirit  (1)
spoke  (4)
spoken  (1)
spreadsheet  (4)
SRL-1220  (1)
St  (1)
staff  (1)
stage  (1)
stakeholders  (3)
stand  (2)
standard  (1)
stands  (1)
star  (1)
Starkloff  (19)
start  (9)
started  (5)
starting  (2)
starts  (3)
start-up  (1)
state  (3)
stated  (3)
statement  (19)
statements  (2)
STATES  (8)
stating  (2)
staying  (1)
steady  (1)
stenographic  (2)
stenographically  (1)
step  (4)
Steps  (3)
Steve  (2)
stock  (38)
Stokes  (2)
Stokes's  (1)
strategic  (11)
Strategics  (8)
Strategies  (4)
strategy  (13)
streaming  (2)
street  (5)
strengthen  (1)
strengthened  (1)
strengths  (1)
Strike  (13)
string  (24)
stripe  (2)
strong  (8)

Deposition of Kevin Ilcisin                                          In Re National Instruments Corporation Securities Litigation

structural *(3)*
structure *(6)*
structures *(2)*
struggling *(2)*
studies *(2)*
sub-bullet *(1)*
sub-bullets *(1)*
subject *(17)*
subjects *(1)*
submit *(2)*
subsequent *(2)*
substance *(2)*
substantive *(1)*
sufficient *(1)*
suggest *(3)*
suggested *(3)*
Suggesting *(4)*
suggestion *(2)*
suggests *(1)*
Suite *(2)*
sum *(1)*
summaries *(1)*
summarizing *(2)*
summary *(3)*
supervision *(1)*
supplement *(3)*
suppliers *(1)*
supply *(1)*
support *(6)*
supportive *(4)*
supports *(5)*
Sure *(29)*
surveil *(1)*
surveillance *(13)*
suspect *(1)*
SVNiles *(1)*
swear *(3)*
sworn *(5)*
System *(1)*

< T >
Tab *(45)*
table *(1)*
tactic *(4)*
tactics *(12)*
take *(60)*
taken *(6)*
Takeover *(15)*
takes *(2)*

talk *(9)*
talked *(10)*
talking *(12)*
talks *(2)*
target *(20)*
targets *(2)*
target's *(1)*
team *(9)*
Teams *(2)*
Technical *(4)*
TECHNICIAN *(10)*
Techniques *(1)*
technologies *(1)*
technology *(3)*
Tektronix *(5)*
tell *(9)*
telling *(3)*
tender *(1)*
tent *(1)*
terms *(10)*
test *(5)*
tested *(1)*
testified *(16)*
testify *(1)*
testifying *(3)*
testimony *(12)*
text *(5)*
texts *(1)*
Thank *(50)*
Thanks *(5)*
thing *(1)*
things *(14)*
think *(52)*
thinking *(13)*
thinks *(1)*
third *(12)*
thought *(5)*
thoughts *(2)*
thread *(3)*
threat *(3)*
threatening *(1)*
three *(22)*
three-sentence *(1)*
Thursday *(1)*
tie *(1)*
time *(85)*
times *(4)*
timestamps *(1)*
timing *(20)*

title *(6)*
titled *(21)*
today *(16)*
Today's *(1)*
told *(2)*
Tom *(4)*
tomorrow *(1)*
tone *(1)*
top *(14)*
topic *(2)*
topics *(1)*
total *(1)*
touched *(1)*
tough *(2)*
trace *(1)*
track *(2)*
trade *(1)*
trading *(8)*
Training *(1)*
transaction *(24)*
transactions *(1)*
transcribed *(1)*
transcribing *(1)*
transcript *(4)*
transforming *(1)*
transition *(1)*
transpired *(2)*
trend *(1)*
triggered *(1)*
trouble *(1)*
true *(6)*
truth *(1)*
truthfully *(1)*
try *(5)*
trying *(14)*
Tuesday *(1)*
turn *(4)*
turns *(1)*
Twice *(1)*
two *(40)*
two-page *(1)*
two-year *(2)*
Type *(7)*
typically *(4)*

< U >
Uh-huh *(42)*
unattractive *(5)*
unclear *(1)*

underneath *(9)*
undersigned *(1)*
understand *(29)*
understanding *(6)*
Understood *(29)*
unique *(1)*
UNITED *(2)*
University *(12)*
unredacted *(1)*
unsolicited *(3)*
unusual *(1)*
up-and-coming *(1)*
upcoming *(1)*
update *(6)*
updates *(1)*
use *(12)*
user *(1)*
Utah *(2)*

< V >
Vague *(1)*
valuation *(6)*
value *(3)*
various *(7)*
verbal *(3)*
versus *(2)*
vice *(7)*
Vidaurri *(5)*
video *(5)*
Videographer *(16)*
video-recorded *(1)*
VIDEOTAPED *(1)*
view *(5)*
viewed *(4)*
viewing *(1)*
views *(1)*
virtually *(2)*
Visions *(2)*
VP *(2)*

< W >
Wachtell *(31)*
Wachtell's *(3)*
wager *(1)*
wagering *(1)*
wait *(5)*
waited *(1)*
waiting *(2)*
waived *(1)*

walking  (*1*)
walks  (*1*)
Wall  (*1*)
want  (*24*)
wanted  (*2*)
Washington  (*2*)
waterfall  (*1*)
wavering  (*1*)
way  (*18*)
Wayne  (*1*)
ways  (*8*)
weaker  (*1*)
Wednesday  (*2*)
week  (*4*)
weekend  (*1*)
weeks  (*17*)
well  (*19*)
went  (*4*)
We're  (*23*)
we've  (*7*)
Whirlpool  (*1*)
Whirlpool/18.1X  (*1*)
White  (*1*)
willing  (*4*)
wine  (*4*)
Winner  (*1*)
wit  (*1*)
WITNESS  (*149*)
witness(es  (*1*)
WLRK  (*1*)
WLRK00000913  (*1*)
WLRK-00000913  (*1*)
Wolverine  (*63*)
Wolverine's  (*3*)
word  (*18*)
words  (*18*)
work  (*14*)
worked  (*2*)
working  (*3*)
works  (*3*)
worth  (*2*)
write  (*4*)
writes  (*2*)
writing  (*6*)
written  (*5*)
wrong  (*3*)
wrote  (*12*)

< X >

xlsx  (*1*)

< Y >
yeah  (*171*)
year  (*7*)
years  (*10*)
Yep  (*13*)
yesterday  (*1*)
YORK  (*5*)
Youn  (*3*)

< Z >
Zight  (*1*)
Zoom  (*7*)

DEPOSITION ERRATA SHEET

Our Assignment No.  46618

Case Caption:  In re NATIONAL INSTRUMENTS

CORPORATION SECURITIES LITIGATION


DECLARATION UNDER PENALTY OF PERJURY


I declare under penalty of perjury

that I have read the entire transcript of

my Deposition taken in the captioned matter

or the same has been read to me, and

the same is true and accurate, save and

except for changes and/or corrections, if

any, as indicated by me on the DEPOSITION

ERRATA SHEET hereof, with the understanding

that I offer these changes as if still under oath.

                              20th                    November
     Signed on the _____ day of _____,

                              2025.

_____

KEVIN ILCISIN

Deposition of Kevin Ilcisin    In Re National Instruments Corporation Securities Litigation

DEPOSITION ERRATA SHEET

Page No. 17    Line No. 4    Change to:

Change 1990 to 1989

Reason for change: Miss remembered the year the degree was granted, confirmed it with transcript

Page No. 64    Line No. 4    Change to:

Change Training to Trading

Reason for change: Correction in what was said

Page No. 240    Line No. 1    Change to:

Change Tested to test and measurement

Reason for change: Correction in what was said

Page No. 253    Line No. 20    Change to:

Change "user" to "use"

Reason for change: Correction in what was said

Page No. 253    Line No. 24    Change to:

change. "And I" to we

Reason for change: Correction in what was said

Page No.____ Line No.____ Change to:

_____

Reason for change:_____

Page No.____ Line No.____ Change to:

_____

Reason for change:_____

SIGNATURE:_____ DATE: 11/20/2025

KEVIN ILCISIN