UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____ x

In re NATIONAL INSTRUMENTS      :      Civ. A. No. 1:23-cv-10488-DLC
CORPORATION SECURITIES LITIGATION  :

_____ x    <u>CLASS ACTION</u>

**DEFENDANTS' REPLY IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................................. 1

ARGUMENT........................................................................................................................... 1

    I.   Plaintiff Has No Evidence Establishing Loss Causation...................................................... 1

    II.   Plaintiff Fails to Offer Any Reliable Evidence on Damages............................................... 3

        a.   Plaintiff Cannot Relax or Shift Its Burden....................................................... 3

        b.   Plaintiff's Attempt to Avoid Applicable Damages Limitations Should Fail.................... 5

    III.   Plaintiff Has Failed to Raise a Dispute of Material Fact on Materiality, Scienter, or Advice-of-Counsel.............................................................................................................. 7

        a.   Plaintiff Improperly "Disputes" Facts.............................................................. 7

        b.   Plaintiff Mischaracterizes Evidence and Relies on Inapposite Cases........................... 7

CONCLUSION.......................................................................................................................11

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds*,
568 U.S. 455 (2013)................................................................................................ 4

*Amnesty Am. v. W. Hartford*,
361 F.3d 113 (2d Cir. 2004) ............................................................................... 10

*Castellano v. Young & Rubicam, Inc.*,
257 F.3d 171 (2d Cir. 2001) ................................................................................. 8

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
511 U.S. 164 (1994)............................................................................................... 6

*Costello v. New York State Nurses Ass'n*,
783 F. Supp. 2d 656 (S.D.N.Y. 2011)................................................................... 7

*Duttle v. Bandler & Kass*,
1990 WL 52147 (S.D.N.Y. Apr. 17, 1990).......................................................... 7

*Elkind v. Liggett & Myers, Inc.*,
635 F.2d 156 (2d Cir. 1980) ............................................................................. 5, 6

*Gordon v. Sonar Cap. Mgmt. LLC*,
92 F. Supp. 3d 193 (S.D.N.Y. 2015) ................................................................. 6, 7

*Gross v. GFI Group, Inc.*,
310 F. Supp. 3d 384 (S.D.N.Y. 2018) ............................................................... 2, 3

*Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.*,
723 F. Supp. 976 (S.D.N.Y. 1989) ....................................................................... 8

*In re Barrick Gold Sec. Litig.*,
314 F.R.D. 91 (S.D.N.Y. 2016)............................................................................. 4

*In re N. Telecom Ltd. Sec. Litig.*,
116 F. Supp. 2d 446 (S.D.N.Y. 2000) ............................................................... 2, 8

*Island Software & Computer Serv., Inc. v. Microsoft Corp.*,
413 F.3d 257 (2d Cir. 2005) ................................................................................. 9

*Macquarie Infrastructure Corp. v. Moab Partners, L. P.*,
601 U.S. 257 (2014); ECF 42 ............................................................................... 6

iii

*Mill Bridge v. Benton*
  2010 WL 5186078 (E.D.Pa. Dec. 21, 2010) ................................................................... 8

*R.F.M.A.S., Inc. v. So*,
  748 F. Supp. 2d 244 (S.D.N.Y. 2010) ........................................................................... 3

*Raishevich v. Foster*,
  247 F.3d 337 (2d Cir. 2001) ........................................................................................... 5

*RLS Assocs., LLC v. United Bank of Kuwait PLC*,
  2005 WL 578917 (S.D.N.Y. Mar. 11, 2005) ................................................................11

*Tripathy v. McCloskey*,
  2024 WL 2135623 (S.D.N.Y. May 13, 2024) ............................................................... 7

**Statutes**

15 U.S.C. §78t-1(b)(1) .................................................................................................... 6

**Rules**

Fed. R. Civ. P. 43(a) ...................................................................................................... 10

**PRELIMINARY STATEMENT**

From skipping past the absence of any precedent for its novel theory of insider trading to misusing the interlocutory class-certification Order as a purported merits determination on damages, Plaintiff's Opposition relies on invalid shortcuts, not actual, material evidence. Plaintiff's only evidence on both loss causation and damages consists of the inadmissible opinions of Dr. Cain, whom Defendants have moved to exclude. Even if Plaintiff's expert evidence is considered, however, Defendants are entitled to summary judgment.  On loss causation, Plaintiff fails to cite any case supporting its contention that its speculative "causation theory" is enough to reach a jury. On damages, Plaintiff ignores dispositive limitations that should receive fresh consideration on the developed record. Plaintiff's arguments on materiality, scienter, and Defendants' reliance on advice-of-counsel do not controvert the key evidence that any potential merger was dead at the time of the stock repurchases. Instead, they rely on improper denials, mischaracterizations of the record, and inapposite cases. As Plaintiff cannot prove liability or damages, summary judgment should be granted and this case dismissed.

**ARGUMENT**

**I.      Plaintiff Has No Evidence Establishing Loss Causation.**

Plaintiff argues, without citing any case, that it can establish loss causation with or without Dr. Cain's testimony. The law is to the contrary and demonstrates that summary judgment should be granted when, as here, there is no reliable evidence, only Plaintiff's speculation, that economic harm occurred as a result of the alleged fraud.

First, it is well-established that the exclusion of expert loss-causation evidence requires summary judgment for defendants. Defendants' Memorandum in Support, ECF 111, MIS 18-19.

1

Plaintiff argues it could still proceed because it has a "causation theory."[1] Plaintiff cites no legal support, however, and does not distinguish—or cite at all—Defendants' cases confirming evidence, not a mere theory, is required. *Cf. In re N. Telecom Ltd. Sec. Litig.*, 116 F. Supp. 2d 446, 460 (S.D.N.Y. 2000) ("None of the cases cited by plaintiffs suggest that to prove causation, it is not necessary to offer evidence showing that the challenged conduct artificially maintained or inflated the company's stock price.").

Next, even if Dr. Cain's testimony were admitted (it should not be), Plaintiff still would not have evidence sufficient to establish loss causation. As reflected in Defendants' cited authorities, courts grant summary judgment, even where expert testimony is not excluded, where neither the plaintiffs' experts nor other evidence reliably establishes a causal connection between the alleged losses and allegedly fraudulent conduct. MIS 18-19. The same applies here, and Plaintiff has no response.

*Gross v. GFI Group, Inc.* is instructive. 310 F. Supp. 3d 384, 398-99 (S.D.N.Y. 2018), *aff'd*, 784 F. App'x 27 (2d Cir. 2019). The plaintiffs' expert in *Gross* opined on market efficiency and materiality, relying on analyst reports, deposition transcripts, academic literature, and an event study. Def.Ex. 46, Expert Report, ECF 118-5 (14-cv-09438-WHP). Based on the facts of *Gross*, the court found "sufficient evidence of materiality to withstand summary judgment," but nonetheless granted summary judgment on loss causation because the expert's event study ignored potentially

---

[1] "Plaintiff's causation theory" is that disclosure "would have caused the market price of NI's stock to rise to at least that level of that offer through the pricing mechanism of the efficient market for NI stock." Plaintiff's Opposition, ECF 125 ("Opp.") 21. Plaintiff still relies on Dr. Cain and mischaracterizes the scope of Defendants' *Daubert* motion to argue that his "market efficiency" opinion is not "contested." ECF 114. Moreover, the paragraphs that Plaintiff cites in support of its theory do not even include Dr. Cain's market efficiency opinion. ECF 116-1 ("Merits Report"), ¶¶130, 134. Regardless, Plaintiff cites no authority supporting its apparent position that expert testimony on market efficiency is sufficient to establish loss causation.

value-relevant information disclosed simultaneously with the corrective disclosures that "could not have been disclosed . . . at the time" of the challenged misrepresentations and omissions, leaving no reliable evidence of loss causation. *Id.* at 396-99.

Similarly here, Dr. Cain's loss-causation discussion does not reliably connect the alleged omission with economic loss; it does not even define the "allegedly omitted information," let alone account for information that actually existed and could have been disclosed during the Class Period. Instead, Dr. Cain relies almost exclusively on Section V of his merits report, which addresses economic materiality. Merits Report ¶¶128-31. The only other evidence Dr. Cain cites in this discussion is his event study, which Plaintiff now appears to concede does not reliably disaggregate confounding information. *Id.* ¶132; ECF 126, at 16-17 (Plaintiff arguing study did not need to "disaggregate certain information" because it is only evidence of economic materiality).[2] Thus, just as in *Gross*, Plaintiff and Dr. Cain have presented a market efficiency opinion; economic materiality analysis based on record evidence, academic literature, and analyst reports; and an unreliable event study. Plaintiff emphasizes that Dr. Cain did not use the event study to quantify artificial deflation but does not, and cannot, explain why this should save Plaintiff's claim. Opp. 23. Having presented even less evidence than was held insufficient in *Gross*, Plaintiff cannot withstand summary judgment on loss causation.

## II.     Plaintiff Fails to Offer Any Reliable Evidence on Damages.

### a.   Plaintiff Cannot Relax or Shift Its Burden.

---

[2] In addition to arguing Dr. Cain did not need to disaggregate confounding information, Plaintiff asserts he "conservatively" took such information "into account." Opp. 23. Any suggestion that Dr. Cain attempted to disaggregate non-fraud-related information from the January 2023 disclosures is incorrect. *See* ECF 115, at 12-13 & n.5. Further, Dr. Cain's opinions are not made reliable solely because he and Plaintiff assure, without analytical support, that they are "conservative." *R.F.M.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 275-76 (S.D.N.Y. 2010).

Plaintiff's discussion of damages similarly relies on its faulty expert opinions and the contention that a mere theory, or "foundational model," is sufficient. Opp. 23. Further, Plaintiff argues a few lines in the Court's class-certification Order conclusively resolved these issues. *Id.* (citing ECF 105). However, that the Court deemed Dr. Cain's model "sufficient to show that damages are capable of measurement on a classwide basis" under Rule 23 cannot relieve Plaintiff of its burden to present reliable evidence of damages on the merits under Rule 56. *In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 106 (S.D.N.Y. 2016) (granting class certification, noting, "[a]lthough plaintiffs may face substantial hurdles in actually proving loss causation and out-of-pocket damages, they are not required to make these showings until the merits stage"); *see also Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455, 460 (2013) (the "office of a Rule 23(b)(3) certification ruling is not to adjudicate the case"). The record is now fully developed,[3] and Plaintiff's evidence falls short.

Plaintiff's attempt to reverse its burden, arguing Defendants have "offer[ed] no evidence" disproving Dr. Cain's arbitrary but-for price, is equally misplaced. Opp. 23-24. First, Defendants have presented expert testimony explaining Dr. Cain's but-for price "has no economic basis." ECF 116-4, Denis Report, ¶¶41-47. Nonetheless, it is <u>Plaintiff</u> who must present reliable evidence of damages. It has not done so. Plaintiff attempts to defend Dr. Cain's decision to simply tie "NI's but-for value to the $48 per share that Emerson offered before the Class Period"—and leave the door open for an even higher price—by pointing to Emerson's stated "willingness to pay more than $48 per share" and Defendants' belief "that $48 was too low a price because NI was worth

---

[3] The class-certification Order noted that Defendants had not yet filed a *Daubert* motion. ECF 105, at 14 n.2. Further, Defendants had not yet deposed Dr. Cain on his merits report or submitted expert rebuttal reports at the class-certification stage.

more." Opp. 23-24.[4] Passing citations to these facts without any reliable analysis, (Merits Report ¶134), do not provide the requisite evidentiary support for Dr. Cain's but-for price, let alone an unspecified higher amount. MIS 21.

Plaintiff also contends it has "no obligation" to prove damages with precision. Opp. 25. That argument, however, cites inapposite case law discussing the situation where a "plaintiff's inability to prove an exact amount of damages arises from actions of the defendant." *Id.* (quoting *Raishevich v. Foster*, 247 F.3d 337 (2d Cir. 2001)). *Raishevich* also explained the factfinder "may not base its award on speculation or guesswork." *Id.* at 343. Courts in securities class actions consistently hold plaintiffs to their burden of establishing damages, despite the fact that the underlying allegations involve some unlawful misrepresentation or omission by the defendant. MIS 21.

### b. Plaintiff's Attempt to Avoid Applicable Damages Limitations Should Fail.

As discussed in Defendants' opening brief (MIS 22-25), Plaintiff's "out-of-pocket" methodology does not measure damages "commensurate to the actual harm" alleged in this novel insider trading case. MIS 24 (quoting *Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156, 172 (2d Cir. 1980)). Rather, damages should be limited to disgorgement of ill-gotten gains, if any. Plaintiff has no response other than another misplaced reference to the class-certification proceedings. Opp. 26. As discussed, the interlocutory class-certification Order was issued on a different record, for a different purpose, and does not constitute a final determination on merits issues, including damages. Further, neither Plaintiff's class-certification reply nor any other submission has

---

[4] The only other evidence Plaintiff cites is the June 14, 2022 "Wine Bet"—before NI's first rejection on June 22, and before Emerson reiterated its $48 proposal and NI repeated its rejection before the Class Period. *See* Declaration of Noam Mandel, ECF 130, Ex. 1 ("Pl.Ex." 1), 166:17-168:1 (Rapp testifying that "Wine Bet" assumed acquisition would happen and guessed how "it would play out").

identified any precedent for applying an out-of-pocket measure to insider trading based on a company's share repurchases.[5]

While Plaintiff's claim is a novel twist on insider trading, the weight of authority supports applying the same limitation adopted in *Elkind*. MIS 22-25. Significantly, Congress included that limitation in its codification of the right to sue for insider trading in §20A. 15 U.S.C. §78t-1(b)(1). *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 178-80 (1994) (looking to express private rights of action in the Act, including §20A, in considering limitations on implied right of action under §10(b) and explaining "the bounds delineated for comparable express causes of action" applied to novel aiding and abetting theory). Plaintiff's attempt to artfully plead around §20A does not change the outcome. Nor does the statute's savings clause create an exception to the damages limitation, as that provision disclaims limits on "the availability of any cause of action" and does not refer to remedies. Indeed, allowing Plaintiff to pursue out-of-pocket damages would flout both Supreme Court precedent, which holds that "[p]ure omissions are not actionable under Rule 10b-5(b)," and this Court's prior order dismissing Plaintiff's misrepresentation and omission claims, which would have been subject to that "traditional" measure. *Macquarie Infrastructure Corp. v. Moab Partners, L. P.*, 601 U.S. 257, 266 (2014); ECF 42.

---

[5] Plaintiff references the Court's citation to *Elkind*, which Plaintiff's class-certification reply cited for the proposition that the "out-of-pocket" measure applies "in cases where a buyer was induced to purchase a company's stock by materially misleading statements or omissions." ECF 84, at 4. Plaintiff ignores the discussion that immediately followed, contrasting those cases with insider trading cases where "uninformed traders on an open, impersonal market … trade independently and voluntarily but without the benefit of information known to the trading tippee." *Elkind*, 635 F.2d at 168-69. Regarding the latter situation—most analogous to Plaintiff's claim here—the Second Circuit concluded disgorgement was the appropriate measure. *Id.* at 172; *Gordon v. Sonar Cap. Mgmt. LLC*, 92 F. Supp. 3d 193, 204 (S.D.N.Y. 2015) (noting *Elkind* preceded enactment of §20A, but still held disgorgement, "capped at the amount of the defendant's gain, was most appropriate in an insider trading case").

Finally, Plaintiff argues that any gains to shareholders caused by the alleged scheme are "unrelated" to the conduct challenged by Plaintiff, but this ignores its theory of the case. Opp. 11 (arguing NI's rejections of Emerson's proposals were first part of bidding leading to Emerson's acquisition at $60/share). Thus, even if Plaintiff could prove liability, damages to Class members must be offset by their gains on NI stock, and this is properly addressed at summary judgment. *See Gordon*, 92 F. Supp. 3d at 201-02. *Cf. Duttle v. Bandler & Kass*, 1990 WL 52147, *4 (S.D.N.Y. Apr. 17, 1990) (at summary judgment, confirming "any recovery in this case will be subject to a setoff").

**III.  Plaintiff Has Failed to Raise a Dispute of Material Fact on Materiality, Scienter, or Advice-of-Counsel.**

### a.  Plaintiff Improperly "Disputes" Facts.

The majority of factual "disputes" in Plaintiff's Rule 56.1 Response are improper, in that they "do not actually controvert the substance" of the facts, but instead insert Plaintiff's own, tangential statements and citations and assert that facts are "presented in a misleading and incomplete context." *Tripathy v. McCloskey*, 2024 WL 2135623, *1 (S.D.N.Y. May 13, 2024) (cleaned up). *See* Appendix A, Defendants' Response to Plaintiff's Rule 56.1 Response and Counterstatement. Defendants request the Court deem these facts admitted and reject Plaintiff's attempt to manufacture non-existent factual disputes. *Costello v. New York State Nurses Ass'n*, 783 F. Supp. 2d 656, 661 n.5 (S.D.N.Y. 2011).

### b.  Plaintiff Mischaracterizes Evidence and Relies on Inapposite Cases.

Plaintiff cannot cite any case like this one seeking to charge a company with insider trading based on repurchases of its own stock after twice rejecting a low-ball acquisition offer. Instead, Plaintiff relies on inapposite cases that support only the general proposition that prospective mergers can be material, and that courts often deny summary judgment on materiality and scienter

due to factual issues. Here, however, Plaintiff has not raised a genuine issue of material fact, and summary judgment is proper. *See, e.g.*, *Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.*, 723 F. Supp. 976, 989-90 (S.D.N.Y. 1989) (granting summary judgment on materiality, noting Supreme Court in *Basic Inc. v. Levinson* "implicitly recognized the propriety of summary judgment" on materiality in some cases); *In re N. Telecom*, 116 F. Supp. 2d 466, 468 (granting summary judgment on materiality and scienter).

Plaintiff fails to meaningfully distinguish Defendants' cited cases. MIS 11-12. For example, Plaintiff attempts to distinguish *Mill Bridge v. Benton* because the merger in that case was "never consummated." Opp. 5 n.2 (citing 2010 WL 5186078, *12 (E.D.Pa. Dec. 21, 2010)). However, materiality depends on facts known at the time, not hindsight. *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 185 (2d Cir. 2001).[6] Plaintiff's theory of materiality violates that rule.

Further, Plaintiff's arguments rely heavily on a few selected quotes and documents removed entirely from their context. For example, Plaintiff misquotes an email from Kevin Ilcisin to Eddie Dixon, where Ilcisin advised another NI employee to change language in a slide deck to "context," rather than "problem statement," because, as Ilcisin testified, "problem statement" has a very specific meaning in "lean methodology." Opp. 18; Pl.Ex. 6, 179:9-180:11. Similarly, Plaintiff cites a portion of an email from Michael McGrath to Eric Starkloff but omits crucial language. Opp. 15; Pl.Ex. 45 ("With almost no cash and negative cash flow, we sure the hell shouldn't be buying back stock to making a $10M donation." (emphasis added)). McGrath testified the full sentence was intended to express NI "shouldn't be making the $10 million donation and buying back stock at the same time." Pl.Ex. 2, 269:22-272:20. Further, while McGrath testified it

---

[6] Therefore, many documents cited by Plaintiff are irrelevant to materiality and scienter at the start of the Class Period. *See, e.g.*, Opp. 6, citing Pl.Ex. 56 (August 25-26); Pl.Ex. 57 (September 1).

was "simply logical" that Emerson might submit a higher proposal, he was testifying about June 14—before NI rejected the first proposal and Emerson reiterated its $48 price. Opp. 13; Pl.Ex. 2, 99:25-107:4. Plaintiff also quotes a slide deck by McGrath, which stated, "[w]e need to get our stock price into the mid-40s, preferably 50s, as soon as possible without the price being based on a potential sale of the company." Opp. 8, 10, 13. Plaintiff omits McGrath's testimony about this document, explaining he "wanted the stock price to go up as part of our obligation as board of directors and chairman," and this was not "linked to not disclosing the Emerson offer." Pl.Ex. 2, 179:6-181:13. *See* Pl.Ex. 3, 156:8-15 (Dixon discussing quoted statement, "[w]hat I understood was Mr. McGrath wanted us to execute our business"). None of this evidence establishes a genuine issue of material fact on materiality or scienter.

Plaintiff also cannot identify any evidence refuting the fact that, by the start of the Class Period, NI's leaders believed they did not possess material non-public information and relied in good faith upon the advice of counsel, including Wachtell, who advised NI it did not possess material non-public information and thus could resume repurchases. Instead, Plaintiff relies entirely on mischaracterizations of the record and "[b]road, conclusory attacks on the credibility" of witnesses that "will not . . . present questions of material fact." *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005).

Plaintiff argues NI did not rely in good faith on the advice of counsel because NI's $80 million in repurchases was not "business as usual." Opp. 19.[7] But the "business as usual" advice

---

[7] This argument relies on Plaintiff's mischaracterization of NI's models as a "business plan" that was abandoned. *Cf.* Pl.Ex. 4, 15:12-16:4 (Starkloff testifying NI had "broad authorization" to repurchase $250 million, and "anything else was just various models of how we may do it"); Pl.Ex. 2, 200:7-12.

Further, Plaintiff emphasizes the $80 million in repurchases but omits that $60 million were pursuant to NI's 10b5-1 Plan. This Plan included a schedule providing more shares were to be repurchased at lower market prices, Def.Ex. 41, and multiple witnesses testified that stock market

was just one of many instances when Wachtell advised NI it could resume repurchases after sending its second rejection. MIS 15-17. For example, the Opposition does not address the first call between attorneys at NI and Wachtell after the August 2 rejection discussing NI resuming repurchases. 56.1 Statement and Response ¶¶136-39. Plaintiff also ignores clear record evidence that Wachtell attorneys advised NI on August 10 that it did not possess material non-public information, and provides no evidence controverting it. *See id.* ¶144; Def.Ex. 39; Def.Ex. 7, 217:19-218:2, 315:18-23; Def.Ex. 2, 176:6-16.[8]

Similarly, Plaintiff cannot refute the extensive record evidence showing Wachtell was aware of all potentially relevant facts when assessing materiality. Even assuming Wachtell was not told the total amount of repurchases, such information is irrelevant to the materiality of any information concerning Emerson. Opp. 3 (materiality turns on magnitude and probability of transaction between NI and Emerson).

Finally, Plaintiff's attempt to question whether Wachtell was "disinterested" fails when Plaintiff cannot dispute that NI's repurchases did not impact Wachtell's compensation.[9] 56.1

---

prices were down overall throughout 2022. Pl.Ex. 3, 130:20-131:4; Pl.Ex. 4, 33:20-34:2, 70:20-71:14, 162:6-163:10.

[8] Plaintiff's "paper trail" argument is inapplicable here, where Dixon documented the advice from Wachtell—and other statements made on the August 10 call—and where the evidence allegedly concealed (advice authorizing repurchases) would <u>favor</u> Defendants. Def.Ex. 39; Pl.Ex. 3, 206:5-208:9.

Nor are Plaintiff's arguments supported by its citation to Dixon's testimony about the removal of his text messages when he left NI in October 2023, after the deal with Emerson closed and before this case was filed. Pl.Ex. 3, 281:18-282:4.

[9] Plaintiff challenges Albert Percival's Declaration, Def.Ex. 45, because he lives in Spain. As Plaintiff is aware, Defendants made Percival available for deposition in Spain—including by remote means, consistent with the other fact depositions—and Plaintiff declined. Plaintiff cannot now use this to suggest Percival is unwilling or unable to testify at trial. *See Amnesty Am. v. W. Hartford*, 361 F.3d 113, 131 (2d Cir. 2004) (party challenging affidavit has "burden . . . to demonstrate that facially adequate affidavits that comply with Rule 56(e) should not be considered valid evidence"); Fed. R. Civ. P. 43(a) (permitting remote testimony under certain circumstances);

Statement and Response ¶133 (Plaintiff attempting to construct theory of how fees were impacted by repurchases, without record support).[10]

In sum, the uncontroverted evidence shows NI relied in good faith on the advice of counsel and did not knowingly possess material non-public information when making repurchases during the Class Period. Lacking evidence of materiality and scienter, Plaintiff's claim cannot proceed.

## CONCLUSION

For the foregoing reasons and those stated in their opening brief, Defendants respectfully request that this Court grant Defendants' Motion for Summary Judgment.

Dated: February 23, 2026

By: /s/ *James F. Bennett*

James F. Bennett (*pro hac vice*)
John D. Comerford (*pro hac vice*)
Jeremy M. Hofman (*pro hac vice*)
Dowd Bennett LLP
7676 Forsyth Blvd., Suite 1900
St. Louis, MO 63105
Telephone:  (314) 889-7300
Facsimile:   (314) 863-2111
jbennett@dowdbennett.com
jcomerford@dowdbennett.com
jhofman@dowdbennett.com

Andrew Ditchfield
Davis Polk & Wardwell LLP
450 Lexington Ave
New York, New York 10017
Telephone: (212) 450-4000
andrew.ditchfield@davispolk.com

---

*RLS Assocs., LLC v. United Bank of Kuwait PLC*, 2005 WL 578917, *7-8 (S.D.N.Y. Mar. 11, 2005) (permitting *de bene esse* deposition of witness that moved abroad).

[10] Defendants dispute any suggestion that they have not fully complied with the parties' joint agreement defining Defendants' privilege waiver or have obstructed Plaintiff's access to relevant facts. For example, Plaintiff's own citations show that Mr. Dixon responded to questions about Wachtell's fees later in his deposition without objection. *See, e.g.*, Opp. 20.

11

*Counsel for Defendants National Instruments Corporation, Michael McGrath, and Eric Starkloff*

12

**<u>CERTIFICATE OF WORD COUNT</u>**

1.      Pursuant to Rule 7.1 of the United States District Court for the Southern District of New York, the undersigned counsel certifies that the foregoing brief was prepared on a computer using Microsoft Word. A proportionally spaced typeface was used as follows:

> Name of Typeface: Times New Roman Point
> Size in Body: 12
> Line Spacing in Body: Double (footnotes, single)

2.      The total number of words in the brief as determined by Microsoft Word's word count function, inclusive of point headings and footnotes and exclusive of the caption, table of contents, table of authorities, signature block, and this Certification, is 3,499 words.

13

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 23, 2026, a true and correct copy of the foregoing was filed electronically using the Court's electronic filing system. By operation of that system a notice of electronic filing will be served upon all counsel of record in the case.

/s/ *James F. Bennett*