UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| _____x | | |
| In re NATIONAL INSTRUMENTS | : | Civ. A. No. 1:23-cv-10488-DLC |
| CORPORATION SECURITIES LITIGATION | : | |
| _____x | | <u>CLASS ACTION</u> |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION
TO EXCLUDE EXPERT TESTIMONY OF DR. MATTHEW CAIN**

**TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................... 1

    I.   Dr. Cain's Event Study Is Unreliable, and So Are All of Dr. Cain's
        Opinions that Rely on It ................................................................................................. 1

    II.  Dr. Cain's Artificial Deflation and Damages Opinions Are Independently
        Unreliable Because He Has No Methodology for His $48 But-For Price ........................... 4

    III. Plaintiff Asks the Court to Ignore its Obligation as a Gatekeeper to Assess
        the Reliability of Dr. Cain's Methodology ..................................................................... 7

    IV. Defendants Move to Exclude Dr. Cain's Testimony in its Entirety ................................ 10

CONCLUSION ...................................................................................................................... 10

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*523 IP LLC v. CureMD.Com*,
  48 F. Supp. 3d 600 (S.D.N.Y. 2014) ................................................................................. 5

*Alves v. Affiliated Care of Putnam, Inc.*,
  2022 WL 1002817 (S.D.N.Y. Mar. 30, 2022) ................................................................ 8-9

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
  303 F.3d 256 (2d Cir. 2002) ............................................................................................. 2

*Daniels-Feasel v. Forest Pharmaceuticals*, *Inc.*,
  2021 WL 4037820 (S.D.N.Y. 2021) .............................................................................. 8-9

*Freudenberg v. E\*Trade Financial Corp.*
  712 F. Supp. 2d 171 (S.D.N.Y. 2010) .............................................................................. 4

*Golden Unicorn Enters., Inc. v. Audible, Inc.*,
  682 F. Supp. 3d 368 (S.D.N.Y. 2023) ............................................................................ 10

*Gross v. GFI Group, Inc.*,
  310 F. Supp. 3d 384 (S.D.N.Y. 2018) ..................................................................... 2, 3, 4
  *aff'd*, 784 F. App'x 27 (2d Cir. 2019) ............................................................................ 2

*Gruber v. Gilbertson*,
  628 F. Supp. 3d 472 (S.D.N.Y. 2022) .............................................................................. 6

*In re Acetaminophen - ASD-ADHD Prods. Liab. Litig.*,
  707 F. Supp. 3d 309 (S.D.N.Y. 2023) .............................................................................. 9

*In re Mirena IUD Prods. Liab. Litig.*,
  169 F. Supp. 3d 396 (S.D.N.Y. 2016) .............................................................................. 5

*In re Omnicom Grp., Inc. Sec. Litig.*,
  541 F. Supp. 2d 546 (S.D.N.Y. 2008) .............................................................................. 4

*In re Under Armour Sec. Litig.*,
  730 F. Supp. 3d 172 (D. Md. 2024) ................................................................................. 6

*Liberty Media Corp. v. Vivendi Universal, S.A.*,
  923 F. Supp. 2d 511 (S.D.N.Y. 2013) .............................................................................. 6

*R.F.M.A.S., Inc. v. So*,
   748 F. Supp. 2d 244 (S.D.N.Y. 2010) ............................................................................... 5

*Raishevich v. Foster*,
   247 F.3d 337 (2d Cir. 2001) ............................................................................................. 7

*United States v. Gushlak*,
   728 F.3d 184 (2d Cir. 2013) ............................................................................................. 6

## Rules

Fed. R. Evid. 702 ............................................................................................................... 8, 9

## PRELIMINARY STATEMENT

Rather than attempt to carry its burden to defend the reliability of Dr. Cain's methodology and testimony, Plaintiff responds to Defendants' Motion to Exclude by deflecting. In particular, Plaintiff attempts to minimize Dr. Cain's reliance on problematic foundational pieces of his analysis, such as the flawed event study, in addressing materiality, loss causation, and artificial deflation; suggests Dr. Cain was not required to explain any analytical steps connecting the "evidence" to his artificial deflation and damages opinions; and asks this Court to ignore its role as gatekeeper under Rule 702 and greenlight Dr. Cain's unreliable testimony under a lighter burden than that established by applicable case law.[1] Plaintiff's Opposition confirms Dr. Cain's analysis is not reliable and should be excluded in its entirety.

## ARGUMENT

I.      **Dr. Cain's Event Study Is Unreliable, and So Are All of Dr. Cain's Opinions that Rely on It.**

Dr. Cain's event study fails basic requirements under applicable case law and Dr. Cain's own standards. *See* Defendants' Memorandum of Law in Support of Motion to Exclude, ECF 109-3, 115 ("MIS") 12-16 (citing case law on necessity of disaggregating confounding information and Dr. Cain's own testimony that failure to do so would lead to conclusion of no artificial deflation). Apparently conceding that the event study does not provide reliable evidence of loss causation and artificial deflation, Plaintiff argues instead that the event study is nonetheless good enough "for its intended purpose, which is to aid in assessing the economic materiality of the undisclosed Class Period information." Opp. 16-17 (arguing Dr. Cain's event study did not need to "disaggregate

---

[1] As threshold issues, Defendants do not dispute Dr. Cain's academic and professional credentials, *see* Lead Plaintiff's Opposition, ECF 126, 133 ("Opp.") at 3, but note Dr. Cain ███████████████████████████████████████████████████████████████. Declaration of Noam Mandel, ECF 130, Ex. 8 ("Pl.Ex." 8), at 14:24-15:10, 22:25-23:24.

certain information" because it is only evidence of economic materiality). Plaintiff's shift in focus does not overcome Defendants' *Daubert* challenge.

First, even if Dr. Cain actually used the event study only for "economic materiality," Plaintiff has not cited any case supporting its apparent position that an otherwise unreliable event study can somehow be rendered reliable when used "as part of the mosaic of evidence on economic materiality." Opp. 19. Plaintiff's novel "mosaic" argument does not relieve it of its burden of establishing reliability and materiality as to Dr. Cain's proffered expert opinions. *Cf. Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002) ("'any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible'" (citation omitted)).

Further, Plaintiff's attempts to minimize Dr. Cain's reliance on the event study to avoid infecting his other opinions are misplaced. While Dr. Cain does not overtly rely on the event study to "calculate" the $48 but-for price, he cites the event study as evidence supporting his but-for price. Merits Report ¶ 135(i); Pl.Ex. 8, at 46:14-49:9 (█████████████████████████████ ████████████████████████████████████████████████████ ███████). And crucially, while Dr. Cain's loss-causation discussion summarily references—without analysis—the entirety of Section V in his Merits Report, the event study is the <u>only</u> piece of evidence Dr. Cain specifically cites to support loss causation. *See id.* ¶¶ 128-31;[2] *id.* ¶ 132 (relying on event study to opine on "direct economic link between the alleged omissions and subsequent economic losses"). *See also id.* ¶ 122 ("After carefully reviewing and considering the

---

[2] Section V of Dr. Cain's Merits Report addresses economic materiality. Dr. Cain's reliance, without analysis, on Section V when discussing loss causation seems to be premised on the false proposition that establishing materiality is sufficient to establish loss causation. *Cf. Gross v. GFI Group, Inc.*, 310 F. Supp. 3d 384, 396-98 (S.D.N.Y. 2018), *aff'd*, 784 F. App'x 27 (2d Cir. 2019) (finding "sufficient evidence of materiality to withstand summary judgment" but nonetheless granting summary judgment for defendants on loss causation where plaintiffs' expert ignored, and failed to disaggregate, confounding information in event study).

relevant information environment for purposes of assessing loss causation and damages in this Report, I have utilized the same event study methodology as that performed in my prior Efficiency Report."); Opp. 19 (Plaintiff arguing event study would help jury because it shows "the January 13 and 17, 2023 increases in NI's stock price were statistically significant and were caused by the M&A-related information disclosed on those dates, as opposed to, for example, market or industry-wide factors" (emphasis added)).

Dr. Cain's placement of the event study at the heart of his loss-causation opinion leaves Plaintiff without any basis for distinguishing Defendants' cited case law, which establishes that an event study is unreliable unless it adequately disaggregates confounding information. MIS 14-16; Opp. 16 n.12 (attempting to distinguish cases because they addressed loss causation and damages, not materiality). In *Gross v. GFI Group, Inc.*, for example, the Court rejected the expert's loss-causation opinions, even where the expert also formed an economic materiality opinion based on analyst reports, deposition transcripts, and academic literature, because the expert's event study ignored potentially value-relevant information disclosed simultaneously with the corrective disclosures that "could not have been disclosed . . . at the time" of the challenged misrepresentations and omissions. 310 F. Supp. 3d at 397-98; Defendants' Reply in Support of Motion for Summary Judgment, Def.Ex. 46, Expert Report of Chad Coffman, CFA, ECF 118-5, 14-cv-09438-WHP (S.D.N.Y. Nov. 21, 2017). *Gross* therefore illustrates, even if Dr. Cain had put forth reliable evidence of economic materiality—he did not—this would not relieve Dr. Cain, or Plaintiff, of the burden of disaggregating confounding information to provide reliable evidence of loss causation.

Even as Plaintiff attempts to narrow the reach of Dr. Cain's unreliable event study in its Opposition, Plaintiff simultaneously seems to acknowledge that Dr. Cain's loss-causation opinion

3

depends on the event study, as Plaintiff defends the event study by arguing, "even in the loss-causation context, a corrective disclosure need not be a 'mirror image' of the undisclosed truth." Opp. 17. The sole case cited by Plaintiff in support, *Freudenberg v. E\*Trade Financial Corp.*, dealt only with pleading standards and held that the Complaint sufficiently alleged loss causation. 712 F. Supp. 2d 171, 202-04 (S.D.N.Y. 2010). Unlike *Freudenberg*, Defendants' cited cases directly addressed the issue presented here—the reliability of expert testimony on loss causation in connection with motions for summary judgment. MIS 14-16. *See, e.g.*, *Gross*, 310 F. Supp. 3d at 397-77; *In re Omnicom Grp., Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 554-55 (S.D.N.Y. 2008) (granting summary judgment for defendants on loss causation, explaining plaintiffs' expert "undertook an event study to isolate the effect of Plaintiffs' identified disclosures on Omnicom's stock price from that of other market forces. Assuming for the purposes of this motion that the event study is adequate in that regard, <u>it nevertheless fails to demonstrate loss causation</u>" because expert did not disaggregate all confounding factors (emphasis added)).

In sum, Dr. Cain's unreliable event study infects the entirety of Dr. Cain's analysis—especially on loss causation and artificial deflation—and warrants exclusion.

## II. Dr. Cain's Artificial Deflation and Damages Opinions Are Independently Unreliable Because He Has No Methodology for His $48 But-For Price.

Dr. Cain's artificial deflation and damages opinions, including his opinion that NI's common stock would have traded "at or above $48 per share throughout the Class Period" had NI disclosed the allegedly omitted information, are unreliable on the additional ground that they are conclusions lacking methodological support. MIS 20-24 (quoting Merits Report ¶¶ 134, 21). In issuing these opinions, Dr. Cain cites a list of "evidence" without providing any substantive analysis connecting that evidence to his $48 but-for price, let alone any higher price. To illustrate, Defendants' opening brief listed a series of questions that Dr. Cain's artificial deflation and

4

damages opinions did not, and could not, answer, all of which simply ask how the evidence cited by Dr. Cain supports his $48 but-for price. MIS 22-23 (e.g., "But why do [the facts cited by Dr. Cain] 'clearly support[]' Dr. Cain's $48 figure?"). Plaintiff's response only confirms the necessary analysis does not exist. While Plaintiff notes that Dr. Cain discussed certain facts and academic literature, Plaintiff fails to identify anywhere in Dr. Cain's reports and testimony where he even hinted at a methodology or analysis connecting this "evidence" to his $48 figure. Opp. 21-22.

Plaintiff suggests that an expert need not set forth the analytical steps connecting the evidence and his conclusions for his testimony to be admissible, and that it is Defendants' burden to ask the expert to bridge the analytical gaps in his testimony. Opp. 21 ("Defendants had every opportunity to ask Dr. Cain those questions at his deposition, and they will have another opportunity to cross-examine him at trial, but Defendants' questions are no reason to exclude Dr. Cain's testimony."). That argument is flatly contrary to long-established law. Of course, it is Plaintiff's burden to establish reliability and admissibility of the expert opinions it seeks to introduce. *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 411 (S.D.N.Y. 2016). And an expert's "unsupported assertions—made without explanation or elaboration that would allow a fact finder to follow his reasoning and come to the same conclusion"—are unreliable and inadmissible. *523 IP LLC v. CureMD.Com*, 48 F. Supp. 3d 600, 650 (S.D.N.Y. 2014).[3]

---

[3] Plaintiff's Opposition highlights another of Dr. Cain's unsupported assertions, which is that the $48 figure is "conservative." Opp. 20, 22. Like Dr. Cain's other artificial deflation and damages opinions, Dr. Cain has not provided any analysis to support this assertion. For example, did Dr. Cain run calculations that yielded a higher but-for price, but then for some reason choose to instead set the figure at $48? Again, without any analysis connecting Dr. Cain's "evidence" and his conclusion, Plaintiff is left suggesting the Court should take Dr. Cain at his word, and that Defendants should be grateful Dr. Cain did not arbitrarily select a higher but-for price. Expert opinions cannot be admitted based on *ipse dixit*. *See R.F.M.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 275-77 (S.D.N.Y. 2010) ("To the extent that either expert attempts to justify his choices at all, the proffered justification in almost every instance is a comment that the choice is 'conservative' . . . The errors that Hansen identifies in Smith's analysis are relevant to the admissibility of Smith's

Plaintiff also argues that Dr. Cain's unreliable artificial deflation and damages opinions are good enough because "[i]n securities-fraud cases, plaintiffs are required only to provide evidence that is sufficient to make a 'reasonable estimate' of damages," which can rely upon a "more generalized approach." Opp. 22, 23. Plaintiff's cited case law, however, illustrates that Dr. Cain's opinions are not, in fact, good enough. *Compare* Merits Report ¶ 135 (Dr. Cain citing "evidence," without analysis, for but-for price opinion), *with Liberty Media Corp. v. Vivendi Universal, S.A.*, 923 F. Supp. 2d 511, 518-19 (S.D.N.Y. 2013) (expert testimony admissible where expert examined each of 166 trading days within relevant time period, identified nine days with "statistically significant negative returns," and studied each of nine selected days to determine whether material non-fraud-related company-specific news caused price drops), *United States v. Gushlak*, 728 F.3d 184, 199-202 (2d Cir. 2013) (noting expert "explained the various aspects of his approach in significant detail," which involved using a regression analysis, identifying an existing stock index as a comparator, and calculating stock prices on any given date by relying on movements in comparator index), *and Gruber v. Gilbertson*, 628 F. Supp. 3d 472, 488-89 (S.D.N.Y. 2022) (expert analyzed loss causation based on regression analysis and examined specific non-fraud events to determine whether they caused price declines).[4]

---

testimony; the fact that Smith's estimate of damages was erroneously low rather than erroneously high is not.").

[4] The Opposition also cites *In re Under Armour Sec. Litig.*, 730 F. Supp. 3d 172 (D. Md. 2024), where the court denied a motion to exclude Dr. Cain. Opp. 7. Like the expert analyses in the cases cited above, the loss-causation and artificial inflation analysis by Dr. Cain himself in *Under Armour* further illustrates the inadequacy and unreliability of his approach in this case. 730 F. Supp. 3d at 181-82 (detailing Dr. Cain's event study used to establish loss-causation, which specifically "analyze[d] the news that caused the stock price movements to determine whether, and if so, how it related to the alleged fraudulent misstatements and omissions," and his "constant dollar" method for measuring artificial inflation, which "is calculated by working chronologically backward from the disclosures of the relevant truth and cumulating the artificial inflation in the stock price on each day").

Finally, Plaintiff tries to save Dr. Cain's artificial deflation and damages testimony by citing inapposite case law discussing the situation where a "plaintiff's inability to prove an exact amount of damages arises from actions of the defendant." Opp. 24 (quoting *Raishevich v. Foster*, 247 F.3d 337 (2d Cir. 2001) (involving $24,000 compensatory damages for destruction of photographic transparencies of cannabis, where district court discredited testimony of sole expert)). Setting aside Plaintiff's apparent concession that Dr. Cain did not "directly measure the but-for stock-price impact of the undisclosed information," Plaintiff identifies no basis for relieving it of the burden of establishing the reliability of Dr. Cain's testimony. *Id.* Nor has Plaintiff cited any case where a court has endorsed or admitted expert testimony involving Dr. Cain and Plaintiff's "more generalized approach"—simply tying the but-for price to the $48 offer price, citing various "evidence" without providing any analysis connecting the evidence to the but-for price, and arguing that Dr. Cain need not provide such analysis. Contrary to Plaintiff's argument, it is not Defendants' burden to fill in the gaps left by Dr. Cain, and his opinions grounded on the $48 but-for price should be excluded as unreliable.

### III.   Plaintiff Asks the Court to Ignore its Obligation as Gatekeeper to Assess the Reliability of Dr. Cain's Methodology.

In response to the numerous flaws in Dr. Cain's testimony that reflect on the reliability of his methodology, Plaintiff falls back on the argument that any issue Defendants raise with Dr. Cain's analysis can be "explored on cross-examination." *See* Opp. 3, 9-10 (raising "cross-examination" defense regarding Dr. Cain's cherry-picking of record evidence), 14-15 (same regarding Dr. Cain's cherry-picking of academic literature), 19 (same regarding Dr. Cain's event study), 21 (same regarding artificial deflation and damages testimony). The issues Defendants have raised go to the fundamental unreliability of Dr. Cain's testimony, not its weight. In attempting to defer them to cross-examination, Plaintiff asks the Court to ignore its gatekeeper role

7

to ensure the reliability of expert testimony, which the Advisory Committee emphasized as "critical" in connection with the recent Amendments to Rule 702. Fed. R. Evid. 702, Advisory Committee cmt. 2023; MIS 2-3.

Plaintiff also seems to suggest throughout the Opposition that the Court has already resolved various substantive issues upon which Dr. Cain opines in the Order granting class certification. Opp. 1, 23, 24, 25 (citing ECF 105). But that was an interlocutory order on a procedural issue; it could not make any *Daubert* or merits rulings; rather, the Court noted that the Defendants had not yet filed a motion challenging the admissibility of Dr. Cain's testimony. ECF 105, at 14 n.2. In fact, Defendants had not had the opportunity to depose Dr. Cain on his merits opinions or submit their expert rebuttal reports at the class certification stage, further undermining Plaintiff's attempt to use the interlocutory class-certification Order to avoid scrutiny of Dr. Cain's testimony. As explained in Defendants' summary judgment briefing and Memorandum in Support of their Motion to Exclude, Plaintiff's arguments and evidence—including Dr. Cain—do not "fit" its theory of liability in this insider trading case, where the traditional measure of damages is disgorgement of the insider's ill-gotten gains.[5] These arguments warrant fresh consideration on the developed record.

Further, contrary to Plaintiff's mischaracterization, Defendants' arguments are not mere challenges to Dr. Cain's substantive conclusions; they identify methodological flaws that render Dr. Cain's testimony unreliable under applicable case law.[6] For example, in *Daniels-Feasel* and *In*

---

[5] Further evincing Dr. Cain's lack of "fit," while Dr. Cain mentioned NI's rejections of Emerson's offers in a 30-page description of facts, he ignored them in his opinions regarding the "allegedly omitted information," all while failing to actually define the "allegedly omitted information." *See* MIS at 6-8.

[6] Plaintiff cites *Alves v. Affiliated Care of Putnam, Inc.*, 2022 WL 1002817, at *7 (S.D.N.Y. Mar. 30, 2022) for the proposition that "the scope for professional judgment and differing conclusions is greater" for "soft sciences." Opp. 15 n.11. Nothing in *Alves*, however, suggests that Plaintiff has

*re Acetaminophen*, experts were excluded because their "selective and biased reliance on favorable sources . . . [was] demonstrative of an unreliable application of purportedly sound scientific methodology"—not, as Plaintiff suggests, simply because the experts reached conclusions that contradicted the positions of government health authorities. *Daniels-Feasel v. Forest Pharmaceuticals, Inc.*, 2021 WL 4037820, at *5 (S.D.N.Y. 2021); *In re Acetaminophen - ASD-ADHD Prods. Liab. Litig.*, 707 F. Supp. 3d 309, 355-56 (S.D.N.Y. 2023) (explaining plaintiffs' arguments that the expert was preeminent in his field and that "a more flexible standard should be adopted" did "not relieve the Court of the obligation to scrutinize the methodology applied by [the expert] to ensure that it is sufficiently rigorous to pass muster by the standards established by his discipline, Rule 702 and *Daubert*."); Opp. 15 n.11. The same is true of Dr. Cain's use of academic literature in this case. Rather than merely failing "to address every counterexample," Opp. 13, Dr. Cain ignores relevant conclusions from the very sources he relies upon where such conclusions contradict Plaintiff's materiality arguments and Dr. Cain's own conclusions, demonstrating the unreliability of his methodology and testimony. *Daniels-Feasel*, 2021 WL 4037820, at *5.[7]

---

a lighter burden for establishing the <u>reliability</u> of an expert's methodology or that Rule 702 and applicable case law have less force for economics experts than experts in the "hard sciences."

[7] Plaintiff argues, on the topic of bid premiums, the paper relied upon by Dr. Cain instead of Branch and Yang (2003) is "more specific." Opp. 13. Plaintiff does not explain how that paper is "more specific," and this argument begs the question why Branch and Yang was sufficiently specific and reliable to support Dr. Cain's opinion regarding cash offers, but not bid premiums. *See* Merits Report ¶ 111; Pl.Ex. 12, at 9, 12 (Branch and Yang, describing "a prediction model using stepwise logic," which included as variables the merger consideration and bid premium, and reaching conclusion on significance of cash offers and insignificance of bid premiums). Further, Dr. Cain could have provided some explanation or otherwise responded to this critique in his Reply Report after it was raised by Defendants' expert, Dr. Denis, but he instead omitted Branch and Yang from his Reply Report entirely. *See* MIS 18.

Plaintiff also argues Dr. Cain did not need to rely on Even-Tov, et al. (2024) because it did not address the exact circumstances at issue in this case. Opp. 14. First, Plaintiff contradicts itself, as it simultaneously defends Dr. Cain's reliance on other, inapposite studies because experts commonly "extrapolate" from studies addressing different situations. Opp. 12-13. Second, as explained in Defendants' opening brief, Dr. Cain's decision not to rely on a 2024 study addressing

**IV.    Defendants Move to Exclude Dr. Cain's Testimony in its Entirety.**

Plaintiff's attempt to carve certain opinions out from Defendants' motion as "unchallenged" is also misplaced. Defendants request an Order excluding Dr. Cain's testimony in its entirety. ECF 114. In addition, Plaintiff does not cite any case law or otherwise explain how Dr. Cain's market efficiency opinion—relied upon by Plaintiff in moving to certify the class—would be helpful to the trier of fact at this stage. Opp. 26. Further, to the extent Plaintiff argues that Dr. Cain should be permitted to describe a basic out-of-pocket methodology for damages, even if the Court excludes his testimony about the inputs into that methodology, such description would not constitute admissible expert testimony. *Golden Unicorn Enters., Inc. v. Audible, Inc.*, 682 F. Supp. 3d 368, 379 (S.D.N.Y. 2023) (compiling cases excluding damages expert where testimony involved straightforward calculations).

## CONCLUSION

For the foregoing reasons and those stated in their opening brief, Defendants respectfully request that this Court exclude from evidence in this case all the opinions, reports, and testimony of Plaintiff's proposed expert, Dr. Matthew Cain.

---

rejected offers—authored by the people who assisted in drafting his reports—in a case involving two rejected proposals, provides further evidence of "cherry-picking" that courts have found fatal to reliability and admissibility. MIS 18-19.

10

Dated: February 23, 2026

By: /s/ *James F. Bennett*

James F. Bennett (*pro hac vice*)
John D. Comerford (*pro hac vice*)
Jeremy M. Hofman (*pro hac vice*)
Dowd Bennett LLP
7676 Forsyth Blvd., Suite 1900
St. Louis, MO 63105
Telephone:  (314) 889-7300
Facsimile:   (314) 863-2111
jbennett@dowdbennett.com
jcomerford@dowdbennett.com
jhofman@dowdbennett.com

Andrew Ditchfield
Davis Polk & Wardwell LLP
450 Lexington Ave
New York, New York 10017
Telephone: (212) 450-4000
andrew.ditchfield@davispolk.com

*Counsel for Defendants National
Instruments Corporation, Michael McGrath,
and Eric Starkloff*

11

## CERTIFICATE OF WORD COUNT

1.       Pursuant to Rule 7.1 of the United States District Court for the Southern District of New York, the undersigned counsel certifies that the foregoing brief was prepared on a computer using Microsoft Word. A proportionally spaced typeface was used as follows:

> Name of Typeface: Times New Roman Point
> Size in Body: 12
> Line Spacing in Body: Double (footnotes, single)

2.        The total number of words in the brief as determined by Microsoft Word's word count function, inclusive of point headings and footnotes and exclusive of the caption, table of contents, table of authorities, signature block, and this Certification, is 3,459 words.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 23, 2026, a true and correct copy of the foregoing was filed electronically using the Court's electronic filing system. By operation of that system a notice of electronic filing will be served upon all counsel of record in the case.

/s/ *James F. Bennett*