UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____x

In re NATIONAL INSTRUMENTS          :          Civ. A. No. 1:23-cv-10488-DLC
CORPORATION SECURITIES LITIGATION   :
_____x          <u>CLASS ACTION</u>

**DEFENDANTS' OPPOSITION TO
LEAD PLAINTIFF'S MOTION TO EXCLUDE
EXPERT TESTIMONY OF DR. DAVID DENIS AND DR. SHANE GOODWIN**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................ 1

BACKGROUND ............................................................................................................... 2

I.     Dr. Denis's and Dr. Goodwin's Qualifications ................................................... 2

II.    Dr. Denis's and Dr. Goodwin's Opinions and Analysis...................................... 3

       a.  Dr. Denis.................................................................................................... 3

       b.  Dr. Goodwin .............................................................................................. 5

LEGAL STANDARD........................................................................................................ 7

ARGUMENT .................................................................................................................. 8

   I.    Dr. Denis Does Not Offer Affirmative Materiality Opinions, and Plaintiff's
         Challenge to the Admissibility of Dr. Goodwin's Opinion is Mistaken............... 8

   II.   Plaintiff's Challenge to Defendants' Experts as "Duplicative" is Premature
         and Incorrect .................................................................................................. 10

   III.  Dr. Denis's Damages Opinions, Including Regarding Profits Gained by the
         Alleged "Insider," Are Relevant in this Insider Trading Case........................... 13

   IV.   Dr. Goodwin's Opinion on Industry Custom Regarding Disclosure is
         Relevant ........................................................................................................ 18

   V.    Unlike the Foundational Methodological Flaws Rendering Dr. Cain's
         Opinions Inadmissible, Plaintiff's Argument About Defendant's Experts'
         Consideration of Specific Facts Is Not Grounds for Exclusion......................... 20

CONCLUSION............................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acticon AG v. China N. E. Petroleum Holdings Ltd.*,
  692 F.3d 34 (2d Cir. 2012)..................................................................................................... 15

*Ambrosini v. Labarraque*,
  101 F.3d 129 (D.C. Cir. 1996) ................................................................................................. 9

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) ................................................................................................................. 9

*Better Holdco, Inc. v. Beeline Loans, Inc.*,
  666 F. Supp. 3d 328 (S.D.N.Y. 2023) .................................................................................... 21

*Betts v. Sixty Lower E. Side, LLC*,
  2025 WL 1795362 (S.D.N.Y. June 30, 2025).......................................................................... 13

*Bustamante v. KIND, LLC*,
  100 F.4th 419 (2d Cir. 2024).................................................................................................... 7

*Capri Sun GmbH v Am. Beverage Corp.*,
  595 F. Supp. 3d 83 (S.D.N.Y. 2022) ........................................................................................ 8

*Castellano v. Young & Rubicam, Inc.*,
  257 F.3d 171 (2d Cir. 2001)................................................................................................. 9, 10

*Cooper Crouse-Hinds, LLC v. City of Syracuse*,
  568 F. Supp. 3d 205 (N.D.N.Y. 2021) ................................................................................... 10

*Daubert v Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ................................................................................................................. 7

*Elkind v. Liggett & Myers, Inc.*,
  635 F.2d 156 (2d Cir. 1980).............................................................................................. 14, 15

*Gordon v. Sonar Cap. Mgmt. LLC*,
  92 F. Supp. 3d 193 (S.D.N.Y. 2015) ..................................................................................... 14

*Harris Tr. & Sav. Bank v. Ellis*,
  810 F.2d 700 (7th Cir. 1987).................................................................................................. 17

*In re Axis Cap. Holdings Ltd. Sec. Litig.*,
  456 F. Supp. 2d 576 (S.D.N.Y. 2006) .................................................................................... 20

*In re Barrick Gold Sec. Litig.*,
  314 F.R.D. 91 (S.D.N.Y. 2016)......................................................................................... 13

*In re Nat'l Hockey League Players' Concussion Inj. Litig.*,
  2017 WL 3142399 (D. Minn. July 24, 2017) ............................................................. 12

*In re Pfizer Inc. Sec. Litig.*,
  819 F.3d 642 (2d Cir. 2016)............................................................................................. 9

*Kaplan v S.A.C. Cap. Advisors, L.P.*,
  40 F. Supp. 3d 332 (S.D.N.Y. 2014) ............................................................................ 14

*Macquarie Infrastructure Corp. v. Moab Partners, L. P.*,
  601 U.S. 257 (2014) ........................................................................................................ 16

*O'Connor & Assocs. v. Dean Witter Reynolds, Inc.*,
  559 F. Supp. 800 (S.D.N.Y. 1983) ............................................................................... 18

*Robson v. Duckpond Ltd*,
  2021 WL 1222429 (E.D. Mo. Mar. 31, 2021) ........................................................... 13

*Schlanger v. Four-Phase Sys., Inc.*,
  582 F. Supp. 128 (S.D.N.Y. 1984) ............................................................................... 19

*Scott v. Chipotle Mexican Grill, Inc.*,
  315 F.R.D. 33 (S.D.N.Y. 2016)...................................................................................... 21

*Sec. & Exch. Comm'n v. Fiore*,
  416 F. Supp. 3d 306 (S.D.N.Y. 2019) .......................................................................... 16

*Sec. & Exch. Comm'n v. Xia*,
  2022 WL 17539124 (E.D.N.Y. Dec. 8, 2022) ........................................................... 15

*Shapiro v. Merrill Lynch, Pierce, Fenner & Smith*,
  495 F.2d 228 (2d Cir. 1974)........................................................................................... 18

*Tropple v. Black & Decker (U.S.) Inc.*,
  2015 WL 4992011 (D. Minn. Aug. 20, 2015) ...................................................... 10, 12

*United States v. Gushlak*,
  728 F.3d 184 (2d Cir. 2013)........................................................................................... 17

*Wilson v. Comtech Telecommunications Corp.*,
  648 F.2d 88 (2d Cir. 1981).......................................................................................17, 18

**Statutes**

15 U.S.C. § 78t-1(b)(1) ................................................................................................ 14

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................ 16

Fed. R. Evid. 702 ............................................................................................... 7, 8, 9, 10

## PRELIMINARY STATEMENT

Plaintiff's Motion to Exclude Defendants' experts, Dr. David Denis and Dr. Shane Goodwin, does not challenge their qualifications or the overall reliability of their opinions. Indeed, Plaintiff states that it is filing its Motion primarily to avoid waiver and, apparently in an attempt to protect its own expert from exclusion, prefers that the Court not reach any *Daubert* issues at this juncture. Pl. MIS 2, 11. [1] Plaintiff's gambit fails. Defendants' Motion to Exclude Plaintiff's Expert Dr. Matthew Cain is well-founded, but Plaintiff's attempted copy-cat challenge against Defendants' rebuttal experts is not. While gaps in an expert's analysis could impact the reliability and "fit" of expert testimony in some instances, Plaintiff wrongly conflates a mere alleged failure to consider discrete facts by Defendants' experts with the foundational methodological flaws in Dr. Cain's opinions. *See* Memorandum of Law in Support of Defendants' Motion to Exclude Dr. Cain, ECF 109-3, 115. Plaintiff's arguments and characterizations regarding Defendants' experts are also incorrect as a factual matter. In addition, Plaintiff's misuse of the Court's interlocutory class-certification Order to contend Dr. Denis's critiques of Dr. Cain's damages model are "irrelevant" flies in the face of applicable standards.

Moreover, Plaintiff is grossly overreaching in seeking to immunize parts of Dr. Cain's analysis from expert rebuttal. Defendants' indisputably well-qualified experts will remain vital to Defendants' arguments in challenging Dr. Cain's unreliable analysis and conclusions, should the Court deny Defendants' Motion for Summary Judgment and Motion to Exclude Dr. Cain. Any suggestion that Dr. Cain's testimony can be admitted while rebuttal expert opinions are barred is

---

[1] Lead Plaintiff's Memorandum of Law in Support of its Motion to Exclude Expert Testimony of Dr. David Denis and Dr. Shane Goodwin, ECF 129 ("Pl. MIS").

specious. For all these reasons, discussed further below, Defendants respectfully request that the Court deny Plaintiff's Motion to Exclude.

## BACKGROUND

### I.       Dr. Denis's and Dr. Goodwin's Qualifications

Defendants' rebuttal experts are well-qualified, and Plaintiff does not suggest otherwise. Dr. David Denis is the Terrence P. Laughlin Chair in Finance at the University of Pittsburgh, with a Ph.D. in finance from the University of Michigan and more than three decades of scholarship and teaching in corporate finance, capital markets, and valuation. ECF 109-26, 116-4, Expert Report of David J. Denis, August 27, 2025 ("Denis Report"), ¶ 1. He has authored over 50 peer-reviewed publications, served as Editor of the *Review of Financial Studies* and the *Journal of Corporate Finance*—where he reviewed and edited many academic studies on market efficiency, corporate financial policies, and stock price valuation—and served as President of the Financial Management Association. *Id.* ¶ 3. *See also id.*, Appendix A.

Dr. Shane Goodwin is an experienced scholar-practitioner in corporate finance and M&A with more than three decades of combined academic and industry experience. He holds a Ph.D. in Business Administration from Oklahoma State University, an LL.M. from SMU Dedman School of Law, and an M.B.A. in Finance from Northwestern University's Kellogg School of Management. ECF 70-6, Expert Report of Shane Goodwin, June 16, 2025 ("Goodwin Class-Certification Report") ¶ 8. At the time of his reports, Dr. Goodwin served as the Associate Dean of Graduate Programs and Executive Education and serves as a Professor of Practice in Finance at Southern Methodist University's Cox School of Business. *Id.* ¶ 2. In industry, Dr. Goodwin spent nearly 25 years in investment banking and corporate finance, including senior roles at Goldman Sachs, Citigroup, and Wells Fargo Securities; he advised boards and management teams on

2

complex M&A, takeover defenses, shareholder activism, and restructurings, and led Wells Fargo Securities' Southwest investment-banking franchise as Managing Director and Head of Investment Banking. *Id.* ¶ 4. *See also id.*, Appendix A.

## II.        Dr. Denis's and Dr. Goodwin's Opinions and Analysis

Both Dr. Denis and Dr. Goodwin submitted reports at the class-certification stage responding to Dr. Cain's opinions at that time. *See* ECF 70-1, Expert Report of David J. Denis, June 16, 2025 ("Denis Class-Certification Report"); ECF 70-6, Goodwin Class-Certification Report. Plaintiff then served Dr. Cain's "Merits Report," responding to Defendants' experts' class-certification reports and setting forth Dr. Cain's merits opinions, on July 28, 2025. ECF 85-1, 109-23, 116-1, Expert Report of Matthew D. Cain, Ph.D., July 28, 2025 ("Merits Report"). In response to Dr. Cain's Merits Report, Defendants served rebuttal reports from Dr. Denis and Dr. Goodwin on August 27, 2025. ECF 109-26, 116-4, Denis Report; ECF 109-27, 116-5, Expert Report of Shane Goodwin, August 27, 2025 ("Goodwin Report").

Dr. Denis and Dr. Goodwin apply their respective experience and expertise to highlight numerous issues in Dr. Cain's analysis and opinions—many of which Defendants contend render Dr. Cain's testimony unreliable and warrant exclusion. *See* ECF 109-3, 115. Nonetheless, should the Court deny Defendants' Motion to Exclude and Motion for Summary Judgment, the opinions of Dr. Denis and Dr. Goodwin will assist the jury in evaluating and understanding flaws and limitations in Dr. Cain's analysis.

### a.  Dr. Denis

Dr. Denis offers several opinions related to materiality and damages. First, he opines that Dr. Cain has failed to establish the economic materiality of the information allegedly omitted by Defendants. Denis Report ¶ 11. Dr. Denis notes that Dr. Cain purports to opine on the materiality

of certain information without defining what that information is. *Id.* ¶ 15. Dr. Denis explains that Dr. Cain's event study based on announcements in January 2023, and review of market commentary based on those same announcements, does not support Dr. Cain's economic materiality opinions because the information disclosed in January 2023 was very different than the information that was available, and could have been disclosed, during the Class Period. *Id.* ¶¶ 20-23. Further, Dr. Denis explains that Dr. Cain has made no effort in his event study to isolate the price impact of information available during the Class Period from that of "contemporaneous confounding announcements." *Id.* ¶ 21. Dr. Denis also explains that the academic literature upon which Dr. Cain relies is inapposite, and that Dr. Cain has ignored relevant, contrary findings from some of the literature he cites. *Id.* ¶¶ 24-33; *id.* ¶ 31 ("Dr. Cain fails to acknowledge that, contrary to his assertion [that higher bid premiums increase the likelihood of an acquisition], one of the papers he cites (Branch and Yang (2003)) finds the bid premium to *not* be a statistically significant factor predicting the probability of success of a bid." (emphasis in original)).

Dr. Denis next reiterates his opinion from his class-certification report that "a firm receives no ill-gotten gains from conducting share repurchases at allegedly deflated prices while in possession of MNPI." *Id.* ¶¶ 34-36 (citing Denis Class-Certification Report ¶ 25). Dr. Denis explains that Dr. Cain has failed to rebut this opinion and "provides no evidence that NI benefited from conducting its repurchases while the share prices were allegedly deflated." *Id.* ¶ 35. Dr. Denis also responds to Dr. Cain's tangential arguments about differences between repurchases and dividends and explains why those arguments do not alter the conclusion that NI did not profit from its repurchases. *Id.* ¶¶ 51-68.

Dr. Denis further opines that Dr. Cain's damages opinions have "no economic basis." *Id.* ¶ 44. Dr. Denis explains that, even assuming the out-of-pocket damages method set forth by Dr. Cain

is applicable, Dr. Cain's $48 but-for price rests on a number of "implied assumptions"—none of which Dr. Cain justifies or even acknowledges. *Id.* ¶ 44. While Dr. Denis explains that Dr. Cain has not specifically cited any academic literature supporting his chosen but-for price, Dr. Denis nonetheless addresses potentially applicable studies and explains how they do not support Dr. Cain's $48 figure. *Id.* ¶¶ 45-46. Dr. Denis also relies on findings from a study addressing price reactions to rejected or failed deals to conduct a brief quantitative analysis—again, something that is lacking from Dr. Cain's damages opinions—the results of which illustrate that Dr. Cain's $48 figure overstates damages. *Id.* ¶ 47.

Finally, Dr. Denis opines that Dr. Cain's damages approach does not account for the various situations where Class Members could have profited from their trading in NI stock. *Id.* ¶¶ 48-50. And Dr. Denis explains that Dr. Cain's damages opinions ignore one of the two plausible but-for worlds created by the "abstain or disclose" rule in insider trading cases—where, "rather than disclose the Alleged Omissions, the company simply refrained from repurchasing." *Id.* ¶ 37. Under this scenario, the "but-for" price of NI stock would be the "same as the actual stock price," and damages would be zero. *Id.* ¶¶ 37-40.

### b.  Dr. Goodwin

In his class-certification report, Dr. Goodwin set forth multiple opinions, including: NI's "unequivocal rejections [to Emerson's May and June proposals] constituted classic 'Just Say No' responses, signaling the absence of any meaningful engagement or likelihood of a transaction under the terms offered"; multiple facts, including that NI retained BofA as a financial advisor defensively and did not adopt a shareholder rights plan before the Class Period, "confirm that NI's Board was not interested in pursuing further discussions about a merger at the start of the Proposed Class Period, and the probability of an acquisition thereafter was negligible"; that, based on

5

valuation ranges, "it is highly unlikely that NI's Board would have approved . . . an acquisition of the Company by Emerson for $48 per share, or that BofA would have issued a fairness opinion"; and

> [i]f hypothetically, NI had disclosed at the start of the Proposed Class Period that it had received two unsolicited non-binding proposals to acquire all NI shares at $48 per share in May and June, 2022, both of which the Board had unanimously rejected after careful consideration and advice from its legal and financial advisors as not in the best interests of NI's shareholders, and both of which the Board had determined did not provide a basis for further discussions with the unsolicited suitor, such a disclosure would have been economically immaterial and would not have had a significant impact on NI's stock price.

Goodwin Report ¶¶ 2-3 (reiterating opinions from Goodwin Class-Certification Report).

In Dr. Goodwin's merits rebuttal report, he, like Dr. Denis, highlights fundamental flaws in Dr. Cain's opinions and analysis and responds to Dr. Cain's critiques of Dr. Goodwin's class-certification report. For example, Dr. Goodwin explains that a source relied upon by Dr. Cain, Bruner (2004), actually supports Dr. Goodwin's opinion that "most merger proposals die" after a target "just say[s] no" to proposals from a prospective acquirer. *Id.* ¶¶ 15-20. Dr. Goodwin also reviews the documents cited by Dr. Cain and explains why those documents do not support, and actually contradict, Dr. Cain's conclusion that "National Instruments remained actively engaged with the prospect of a transaction with Emerson throughout the Class Period." *Id.* ¶¶ 28-148. Similarly, Dr. Goodwin provides a detailed analysis of the academic studies cited by Dr. Cain, explaining that such studies are irrelevant and "do not prove or provide support for Dr. Cain's opinion that the alleged omissions in this case were economically material." *Id.* ¶¶ 149-195.

Dr. Goodwin responds to Dr. Cain's opinion that Emerson's June 22 letter "explicitly signaled a willingness to increase its offer," explaining, based on his experience, "such language is classic 'cheap talk,' a well-recognized strategy in bargaining theory, according to which 'these claims-or confessions-of urgent desire to trade are meant to encourage the other side to participate

in more detailed negotiation,' and are not a pre-commitment to submitting a higher bid." *Id.* ¶¶ 196-97 (quoting Farrell and Gibbons, "Cheap Talk Can Matter in Bargaining," *Journal of Economic Theory*, Vol. 48). Dr. Goodwin also rebuts Dr. Cain's opinion that BofA's engagement was not merely "defensive." Specifically, Dr. Goodwin opines, "[b]ased on [his] experience, had NI [] considered Emerson's approach a genuine hostile threat, its Board would have executed a more defensive-specific engagement, often including an 'independence fee' designed to secure banker neutrality in advising against a hostile bidder." *Id.* ¶ 200. Finally, Dr. Goodwin responds to Dr. Cain's reliance on offer premiums in opining on the significance of Emerson's proposals, explaining, "simply because an offer premium exceeds some *ad hoc* level does not mean the offer price is fair because it may still significantly undervalue the target and any potential synergy value associated with a merger. Thus, the offer premium is not indicative of the target's appropriate transaction value." *Id.* ¶ 226.

### LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony in federal courts. *Daubert v Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). As the "gatekeeper," the Court "is charged with the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Bustamante v. KIND, LLC*, 100 F.4th 419, 427 (2d Cir. 2024) (cleaned up). Rule 702 provides that a qualified witness may testify to their opinions if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

"The task of a rebuttal expert is different from that of an affirmative expert. A rebuttal expert, by nature, criticizes the methodology and/or opinions of another. There is no requirement that a rebuttal expert himself offer a competing analysis." *Capri Sun GmbH v Am. Beverage Corp.*, 595 F. Supp. 3d 83, 138 (S.D.N.Y. 2022) (cleaned up). "Rebuttal experts thus 'have a less demanding task because they have no burden to produce models or methods of their own; they need only attack those of plaintiff['s] expert[ ].'" *Id.* (citation omitted). Rebuttal experts must still meet the requirements of *Daubert* and Rule 702 to be admissible. *Id.* at 139.

## ARGUMENT

I.   **Dr. Denis Does Not Offer Affirmative Materiality Opinions, and Plaintiff's Challenge to the Admissibility of Dr. Goodwin's Opinion is Mistaken.**

Plaintiff correctly notes that Dr. Denis does not offer an affirmative opinion on economic materiality but, instead, critiques Dr. Cain's economic materiality analysis and opinions. *See* Denis Report ¶ 11; Pl. Ex. 9, at 165:5-20.[2] That is precisely within the scope of proper rebuttal expert testimony.

Plaintiff's challenge to "materiality opinions" is focused on Dr. Goodwin, who opined as follows in his first report, submitted at the class-certification stage:

> If hypothetically, NI had disclosed at the start of the Proposed Class Period that it had received two unsolicited non-binding proposals to acquire all NI shares at $48 per share in May and June, 2022, both of which the Board had unanimously rejected after careful consideration and advice from its legal and financial advisors as not in the best interests of NI's shareholders, and both of which the Board had determined did not provide a basis for further discussions with the unsolicited suitor, such a disclosure would have been economically immaterial and would not have had a significant impact on NI's stock price.

---

[2] Citations to "Pl. Ex." refer to the Exhibits to the Omnibus Declaration of Noam Mandel, ECF 130.

Goodwin Class-Certification Report, ¶ 18(5). Dr. Goodwin's August 27, 2025 rebuttal report re-states and incorporates this opinion. Goodwin Report ¶¶ 2(5), 7. [3]

Plaintiff argues this opinion and testimony should be excluded for just one reason: case law, including that cited by Dr. Goodwin, states that the materiality of a prospective transaction is evaluated based on both the probability that it will occur and its magnitude, and Dr. Goodwin only expressly opines on the former. Pl. MIS 3-4. *See Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 185 (2d Cir. 2001) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 238, 250 (1988) for legal materiality standard, which evaluates both "the probability that the [event] will be consummated, and its significance to the issuer of the securities," i.e. the "anticipated magnitude of the event"). Plaintiff's argument does not warrant exclusion.

While any expert opinions must be the product of reliable principles and methods, there is no requirement that the expert form an opinion on every discrete issue relevant to the ultimate legal question. "The dispositive question under Rule 702 is whether the testimony will assist the trier of fact . . . not whether the testimony satisfies the [presenting party's] burden on the ultimate issue at trial." *In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 661 (2d Cir. 2016) (quoting *Ambrosini v. Labarraque*, 101 F.3d 129, 135 (D.C. Cir. 1996)). Therefore, reliable expert testimony about the probability of a transaction and <u>economic</u> materiality can assist the trier of fact in assessing

---

[3] Dr. Goodwin also opined, "[I]t is speculative to assume that because information regarding advanced discussions is material, a reasonable investor would have viewed the information available as of the start of the Class Period (of preliminary, brief interactions between NI and Emerson that did not advance and were not advancing) as significantly altering the total mix of information available." Goodwin Report ¶ 2(8).

Defendants do not understand Plaintiff's Motion to be challenging this critique of Dr. Cain's materiality analysis as an "affirmative opinion" on materiality. Nonetheless, any such challenge should fail for the reasons described below—expert testimony on probability is undoubtedly relevant when assessing materiality and the "total mix" of information available to investors.

materiality under the applicable <u>legal</u> standard, even when it relates to just one of the two *Basic* prongs.[4] Notably, Dr. Cain's opinions—to which Dr. Goodwin is responding—also focus on probability. *See generally* Merits Report (repeatedly referring to claim that NI was engaged with prospect of transaction with Emerson). Plaintiff's relevancy objection to Dr. Goodwin fails.[5]

## II.   Plaintiff's Challenge to Defendants' Experts as "Duplicative" is Premature and Incorrect.

Plaintiff's claim that Defendants' experts offer "duplicative" testimony does not raise a question of reliability, relevance, or any other *Daubert* issue. Unlike challenges to the admissibility of expert testimony under Rule 702, challenges to expert testimony as "duplicative" arise under Rule 403 and need not be resolved at this stage. *See Cooper Crouse-Hinds, LLC v. City of Syracuse*, 568 F. Supp. 3d 205, 222 (N.D.N.Y. 2021) (stating, at the summary judgment stage, "it is premature to rule whether Plaintiffs' experts present needlessly duplicative testimony. The Court will evaluate whether expert testimony should be excluded because it is cumulative at the time of trial."); *Tropple v. Black & Decker (U.S.) Inc.*, 2015 WL 4992011, at *5 (D. Minn. Aug. 20, 2015) ("experts may offer rebuttal testimony concerning different aspects of the opposing expert's testimony, and the Court cannot weigh the effect of the potentially repetitive testimony until the initial testimony

---

[4] Nor is an expert opinion on probability rendered irrelevant based on the possibility that "a relatively improbable event of sufficient magnitude could potentially be material" in some factual scenarios. *Castellano*, 257 F.3d at 185; Pl. MIS 4. Probability is relevant to materiality, and Plaintiff's arguments and cited cases do not suggest otherwise.

[5] Plaintiff also mischaracterizes Dr. Goodwin's testimony to falsely suggest that he completely ignored the significance of a hypothetical disclosure to investors. Pl. MIS 4 (citing Pl. Ex. 7, at 127:22-128:11). In the cited deposition transcript excerpt, Dr. Goodwin was asked about the significance of a specific combination of discrete facts and answered, "[t]here was a lot there," "I can't opine on that," and "I'd need a little bit more time to think through that." Dr. Goodwin's testimony also reflects that he approached his analysis with an understanding that mergers and acquisitions can be "very significant event[s] for a company." Pl. Ex. 7, at 96:18-99:9, 102:1-8.

is elicited at trial"). Plaintiff's Rule 403 argument is premature and can be addressed at the time of trial, should this case reach that point.

Moreover, the opinions and testimony of Dr. Denis and Dr. Goodwin are not duplicative. While both have a general background in finance, they were retained for discrete assignments and respond to flaws in different components of Dr. Cain's testimony. Dr. Goodwin applies his direct experience with M&A dynamics from 25 years working in industry, while Dr. Denis approaches the issues based on his expertise and academic experience with finance and valuation. For example, Dr. Goodwin conducts a detailed review of the documents cited by Dr. Cain and explains why those documents do not support Dr. Cain's conclusion that "National Instruments remained actively engaged with the prospect of a transaction with Emerson throughout the Class Period." Goodwin Report ¶¶ 28-148. Dr. Goodwin also opines on a number of discrete issues addressed by Dr. Cain, but not analyzed by Dr. Denis, including BofA's defensive engagement, whether BofA would issue a fairness opinion, NI's decision not to adopt a pill, and whether Emerson's June 22 letter suggested a willingness to increase the offer or was merely "cheap talk." *Id.* ¶¶ 196-97, 198, 213, 230. Likewise, Dr. Denis's opinions focus on areas not covered by Dr. Goodwin, particularly with respect to damages and the unreliability of Dr. Cain's model. Denis Report ¶¶ 41-50. [6]

While Plaintiff makes the broad-brush suggestion that the entirety of each expert's analysis is duplicative of the other's, Plaintiff identifies only two topics in their reports that purportedly overlap: critiques of Dr. Cain's event study and his reliance on academic literature. Pl. MIS 5. Even

---

[6] To the extent Plaintiff argues that all of Dr. Denis's damages opinions are irrelevant and should be excluded if the out-of-pocket methodology applies, Plaintiff is incorrect for the reasons addressed in Section III, below. Pl. MIS 5. Moreover, Section VI of Dr. Denis's report explains the flaws in Dr. Cain's damages analysis under the out-of-pocket method and is undoubtedly relevant rebuttal testimony if Dr. Cain is allowed to testify to his out-of-pocket damages opinions (which he should not be).

11

on those topics, however, Dr. Denis and Dr. Goodwin take different approaches based on their individual specialties and highlight different flaws in Dr. Cain's analysis. For example, Dr. Denis explains that Dr. Cain did not use the event study to "calculate" the "but-for" price of $48, which "is an implicit acknowledgement of the irrelevance of his event study." Denis Report ¶ 23. Dr. Goodwin critiques the event study from a different perspective and explains that Dr. Cain "disregards . . . [the] fundamental difference in merger dynamics" between the "typical merger process when a target is interested in closing a deal"—which was initiated by Emerson's new, $53 proposal in November 2022—and "NI's actions after receiving Emerson's May 2022 and June 2022 proposals." Goodwin Report ¶¶ 21-22. And regarding the academic literature, Dr. Denis explains that Dr. Cain expresses an opinion on the significance of bid premiums while ignoring a finding from another paper he cites, Branch and Yang (2003), that directly contradicts his opinion. Denis Report ¶ 31. Dr. Goodwin did not opine on this flaw in Dr. Cain's analysis. Rather, Dr. Goodwin presents a detailed explanation of Bruner (2004)'s discussion of the "just say no" defense—supporting Dr. Goodwin's opinions about NI's "just say no responses" and the likelihood of an acquisition thereafter—that was not part of Dr. Denis' assignment. Goodwin Report ¶¶ 15-19.

By moving to exclude either expert on this ground, Plaintiff effectively asks this Court to immunize parts of Dr. Cain's testimony from expert rebuttal. This is especially unwarranted where Plaintiff has not challenged the qualifications of either expert and does not broadly contest the reliability of their opinions. Courts have rejected similar challenges and refused to exclude rebuttal experts that use different analyses or methodologies or address different components of the opposing expert's testimony. *Tropple*, 2015 WL 4992011, at *5; *In re Nat'l Hockey League Players' Concussion Inj. Litig.*, 2017 WL 3142399, at *4 (D. Minn. July 24, 2017) (noting there

was "some overlap" in studies addressed by multiple rebuttal experts but generally declining request to exclude those allegedly duplicative opinions); *Robson v. Duckpond Ltd*, 2021 WL 1222429, at \*11 (E.D. Mo. Mar. 31, 2021). *See also Betts v. Sixty Lower E. Side, LLC*, 2025 WL 1795362, at \*7 (S.D.N.Y. June 30, 2025). Thus, while the Court need not address Plaintiff's challenge to Defendants' experts as "duplicative" at this time, the Court should reject Plaintiff's request to exclude portions of testimony from either expert on this basis.

### III.    Dr. Denis's Damages Opinions, Including Regarding Profits Gained by the Alleged "Insider," Are Relevant in this Insider Trading Case.

Plaintiff next seeks to exclude Dr. Denis's damages opinions on the ground that they discuss "inapplicable damages methodologies"—specifically, the disgorgement measure of damages for insider trading and the but-for world where NI abstained from trading, rather than disclosing the allegedly omitted information. Pl. MIS 6. Plaintiff argues that the Court has already conclusively resolved the applicable damages model in Plaintiff's favor at the class-certification stage, and that Dr. Denis's opinions are irrelevant under that model. *Id.* Plaintiff is wrong on both fronts.

First, this Court's interlocutory conclusion in the class-certification Order that Dr. Cain's proposed out-of-pocket damages model was "sufficient to show that damages are capable of measurement on a classwide basis" did not exempt Plaintiff's proposed methodology from expert rebuttal. ECF 105; *In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 106 (S.D.N.Y. 2016) (granting motion for class certification and noting, "[a]lthough plaintiffs may face substantial hurdles in actually proving loss causation and out-of-pocket damages, they are not required to make these showings until the merits stage. The Court remains free, of course, to modify its class certification rulings in light of subsequent developments in the litigation."). Directly contrary to Plaintiff's contention that the class-certification Order somehow mandates exclusion of Dr. Denis's rebuttal

13

opinions on damages, that very same Order noted that expert admissibility issues were not before the Court, as *Daubert* motions had not yet been filed. ECF 105, at 14 n.2. Indeed, expert disclosures and discovery were still in progress at that time. The *Daubert* (and summary judgment) motions must be decided on the developed record currently before the Court now, not based on a few lines in an interlocutory order addressing a procedural question.

For the reasons explained in Defendants' briefing on their Motion for Summary Judgment, insider trading damages in this case must be limited "to profits gained and losses avoided based on the defendant's unlawful acts." *Kaplan v S.A.C. Cap. Advisors, L.P.*, 40 F. Supp. 3d 332, 344 (S.D.N.Y. 2014). This limitation has been expressly codified in Section 20A. 15 U.S.C. § 78t-1(b)(1). Although Plaintiff disclaims reliance on Section 20A, it cannot avoid the broad limitation on insider trading damages through artful pleading. The statute's savings clause does not create an exception to the limitation on damages, as that provision disclaims any limit on "the availability of any cause of action" and does not refer to remedies. *Id.* § 78t-1(d). Moreover, the limitation predates and exists independent of the statutory cap. Caselaw addressing damages for insider trading claims has long recognized that disgorgement of ill-gotten gains is better tied to the actual harm caused by the wrongful conduct at issue in insider trading, while the out-of-pocket loss method risks overcompensating plaintiffs for "losses" that are not directly traceable to the alleged fraud. *See, e.g.*, *Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156, 170-72 (2d Cir. 1980)[7]; *Gordon v.*

---

[7] Plaintiff's Motion specifically references the Court's citation to *Elkind*, which Plaintiff's class-certification briefing had cited for the proposition that the "out-of-pocket" measure of damages applies "in cases where a buyer was induced to purchase a company's stock by materially misleading statements or omissions." ECF 84, at 4. Plaintiff ignores the discussion that immediately followed, contrasting those cases with insider trading cases where "uninformed traders on an open, impersonal market … trade independently and voluntarily but without the benefit of information known to the trading tippee." *Elkind*, 635 F.2d at 168-69. In addressing the latter situation—the situation most analogous to Plaintiff's claim here—the Second Circuit concluded disgorgement was the appropriate measure of damages. *Id.* at 172. The other case

*Sonar Cap. Mgmt. LLC*, 92 F. Supp. 3d 193, 204 (S.D.N.Y. 2015) (noting *Elkind* preceded enactment of Section 20A, but still held disgorgement, "capped at the amount of the defendant's gain, was most appropriate in an insider trading case").

Plaintiff wrongly suggests that the applicable contemporaneous-purchase requirement alone is sufficient to connect its proposed damages model to the actual source of the alleged fraud in this case—NI's trading. Pl. MIS 8. As the Second Circuit recognized in *Elkind*, disgorgement generally results in damages "commensurate to the actual harm caused" in an insider trading case because it ties damages to the defendant's <u>trading</u>. 635 F.2d at 172. Plaintiff does not, and could not, argue that Dr. Denis's opinions about NI's ill-gotten gains would be irrelevant to the calculation of damages using the disgorgement measure, which the weight of authority supports as the proper measure of damages in cases alleging insider trading.

Even assuming counterfactually that the out-of-pocket methodology applies and damages are not capped by Defendants' ill-gotten gains, Dr. Denis's opinions would remain relevant. Dr. Denis's opinion that "a firm receives no ill-gotten gains from conducting repurchases"—and that NI did not profit from its repurchases—provides support for his related opinion that Dr. Cain has failed to provide "evidence that NI benefited from conducting its repurchases while the share prices were allegedly deflated." Denis Report ¶¶ 11, 34-35. Whether the defendant in a securities fraud case profits from the alleged fraud is relevant, including when assessing scienter. *See, e.g.. Sec. & Exch. Comm'n v. Xia*, 2022 WL 17539124, at *24 (E.D.N.Y. Dec. 8, 2022) (finding "evidence of

---

referenced in Plaintiff's Opposition and cited in the class-certification Order, *Acticon AG v. China N. E. Petroleum Holdings Ltd.*, 692 F.3d 34 (2d Cir. 2012), did not involve insider trading.

scienter" where defendant "directly benefited from the alleged fraud"); *Sec. & Exch. Comm'n v. Fiore*, 416 F. Supp. 3d 306, 323-24 (S.D.N.Y. 2019). [8]

Plaintiff similarly argues that Dr. Denis's criticism of Dr. Cain's failure to consider the impact, if any, of NI's stock repurchases in his damages model is "irrelevant," contending that it is sufficient for Dr. Cain to address the but-for world where the allegedly omitted information was disclosed. Pl. MIS 7-8; Denis Report ¶¶ 11, 34-40. To be clear, the implication of Plaintiff's position is that its novel twist on insider trading allows it to pursue a claim against Defendants for stock repurchases based on the "omission of information" without even attempting to establish any link between the actual trading and Plaintiff's claimed damages. It is Plaintiff's theory that flouts the law, including Supreme Court precedent, which holds that "[p]ure omissions are not actionable under Rule 10b-5(b)," and this Court's prior order dismissing Plaintiff's misrepresentation and omission claims, which would have been subject to that "traditional" out-of-pocket damages measure. *See Macquarie Infrastructure Corp. v. Moab Partners, L. P.*, 601 U.S. 257, 266 (2014); ECF 42.

Further, even if a damages model need not "account for two but-for worlds at once," *see* Pl. MIS 8, that does not prevent Defendants from rebutting Dr. Cain's proposed model based on its failure to account for one of the two equally valid and applicable but-for worlds related to

---

[8] In addition, Dr. Denis's opinions about the similarities between repurchases and dividends are relevant because they provide analytical support for his opinion that NI did not profit from its repurchases. *See* Denis Report ¶ 52 (opining that certain "fundamental features of a repurchase"— shared by dividends—"imply that a company does not profit from its share repurchases"); *id.* ¶¶ 51-68.

Plaintiff again points to a line in the class-certification Order to wrongly suggest this Court previously held that these opinions are irrelevant. Pl. MIS 7 (quoting ECF 105, at 16 n.4). As discussed, that Order did not conclude or otherwise suggest that Dr. Denis's opinions are not relevant to the merits of Plaintiff's claim. That was not the issue before the Court in its interlocutory ruling on the procedural question of whether Plaintiff satisfied the requirements of Fed. R. Civ. P. 23.

Plaintiff's theory of liability. A "but-for" damages approach measures "the difference between the price received in fact and the price that would have been received <u>but for the fraud</u>." *Harris Tr. & Sav. Bank v. Ellis*, 810 F.2d 700, 706 (7th Cir. 1987) (emphasis added); *United States v. Gushlak*, 728 F.3d 184, 197 (2d Cir. 2013) ("To quantify investor losses in this manner, one needs to determine what the aggregate price of the investor's shares would have been on a given date <u>but for the fraud</u>." (emphasis added)). Plaintiff's sole remaining theory of securities fraud in this case is that NI possessed material non-public information and thus was required <u>either</u> to <u>abstain</u> from trading or <u>disclose</u> the alleged material non-public information. ECF 105, at 5-6.[9] Dr. Cain considers one of the two but-for worlds contemplated by this theory—specifically, he opines on the price at which NI stock would have traded had NI <u>disclosed</u> the "relevant truth." *See* Merits Report ¶ 134. But Dr. Cain does not consider the price at which NI stock would have traded had NI <u>abstained</u> from trading—i.e., the price at which NI stock would have traded "but for the [alleged] fraud." Dr. Denis's presentation of this critique, along with a description of the damages analysis in this equally applicable but-for world, is relevant to damages in this case—even if the out-of-pocket methodology applies.

Plaintiff's cited case law does not suggest this but-for world is irrelevant, but instead simply explains the scope of the duty of disclosure where one is applicable—i.e., because the defendant traded while in possession of material non-public information. *See, e.g.*, *Wilson v. Comtech Telecommunications Corp.*, 648 F.2d 88, 94 (2d Cir. 1981) ("Any duty of disclosure is owed only

---

[9] For this reason, Plaintiff is wrong to imply that opening the door to the consideration of this second legitimate but-for world would create some sort of slippery slope and confuse the jury. Pl. MIS 8-9 (positing "many conceivable worlds in which Defendants would not have violated the law," including if Emerson's electronic communications to NI were "lost in the mail, or if NI had never been founded in the first place"). An insider trading claim contemplates just two but-for worlds: one where the defendant <u>abstains</u> from trading, and one where the defendant <u>discloses</u> the alleged material non-public information. ECF 105, at 5-6.

to those investors trading contemporaneously with the insider."). Plaintiff does not cite any authority indicating that but-for damages analysis in an insider trading case must proceed from the assumption that the defendants would have complied with the law by disclosing the allegedly withheld information, rather than by abstaining from trading. In fact, other case law previously cited by Plaintiff, *see* ECF 84, at 9, explains that it is not only the duty to disclose, but the "duty to 'disclose or abstain,'" that "is owed" to contemporaneous traders. *O'Connor & Assocs. v. Dean Witter Reynolds, Inc.*, 559 F. Supp. 800, 802-03 (S.D.N.Y. 1983) (citing *Wilson*, 648 F.2d at 94, and *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith*, 495 F.2d 228, 237 (2d Cir. 1974)).[10]

## IV.    Dr. Goodwin's Opinion on Industry Custom Regarding Disclosure Is Relevant.

Plaintiff next challenges the relevance of Dr. Goodwin's opinion that:

> When a company receives an unsolicited, non-binding acquisition proposal in the ordinary course of business—particularly when it is not actively pursuing a sale process—and summarily rejects the proposal while explicitly declining to engage in further discussions, it is not customary for the company to publicly disclose the existence or rejection of that proposal.

Goodwin Report ¶¶ 2(7), 7. Plaintiff contends Dr. Goodwin should have expressly stated whether such disclosures are customary when the company is trading stock. Pl. MIS 9.

Contrary to Plaintiff's argument, Dr. Goodwin's opinion is relevant to multiple issues in the case. First, whether it is, and has been, customary to disclose the type of facts that NI allegedly omitted has direct relevance when assessing materiality. The securities laws might require a company to disclose material information related to a merger in a number of circumstances. *See,*

---

[10] Further, because both but-for worlds—i.e., one where the Defendants abstained from trading, and one where the Defendants disclosed the allegedly omitted information—are equally plausible, Plaintiff is wrong to suggest that Dr. Denis's analysis "impl[ies] that damages should not be based on the actual value of NI stock at the time that Class Members sold it." Pl. MIS 8. To the contrary, Dr. Denis specifically explains that, in the but-for world where NI abstained from trading, "NI's 'but-for' stock price"—or the "actual value of NI stock at the time that Class Members sold it" (Pl. MIS 8)—"would be the same as the actual stock price." Denis Report ¶¶ 37-39.

*e.g.*, *Schlanger v. Four-Phase Sys., Inc.*, 582 F. Supp. 128, 133 (S.D.N.Y. 1984) ("While the federal securities laws do not impose a general duty upon an issuer to disclose material facts or new developments when it is not trading in its own securities, it does have a duty to make certain that any statement it does issue is truthful and complete, and does not materially misrepresent the facts existing at the time of the announcement."). Thus, if it is not customary for companies to disclose the information described by Dr. Goodwin, that supports Defendants' argument that such information is generally not regarded by companies as material. *See also* Pl. Ex. 7, at 160:14-161:14 (Dr. Goodwin testifying that his opinion that such disclosures are not customary supports the conclusion that the information does not constitute material non-public information).

Second, Defendants assert Plaintiff cannot prove its securities fraud claim because Defendants relied in good faith on the advice of counsel—including outside counsel at Wachtell, Lipton, Rosen & Katz ("Wachtell")—when resuming share repurchases. There is evidence in the record that NI was advised by Wachtell to return to "business as usual" after rejecting Emerson's proposal for the second time, which included repurchases. *See* Defendants' Rule 56.1 Statement ¶¶ 109-11; Def. Ex. 3, McGrath Dep., at 283:24-284:20; 285:24-286:11.[11] Dr. Goodwin's opinion about how companies in NI's position "customarily" act in the ordinary course of business would assist the trier of fact in understanding and evaluating the evidence on this issue.

Third, Defendants have asserted as a defense that Plaintiff's claims "are barred by Defendants' justifiable concern that publicizing Emerson's private offer (which they had twice rejected as undervaluing the company) could subject National Instruments to potential liability under securities laws and regulations as an improper attempt to raise the market price of National

---

[11] Citations to "Def. Ex." refer to the Exhibits to the Declaration of James F. Bennett in Support of Defendants' Rule 56.1 Statement of Undisputed Material Facts, ECF 113.

Instruments stock." ECF 47, at 29. This defense is supported by record evidence. *See* Def. Ex. 3, at 104:13-105:23 (Michael McGrath testifying, "we felt that if we were to simply say we had an offer and rejected it because we think the company's worth a lot more, okay, that would be simply hyping the company's stock, which is in violation of SEC regulations and we don't go there."). Dr. Goodwin's opinion about whether such disclosures are customary is relevant to this defense.

Finally, evidence of industry custom is relevant when assessing scienter. If the evidence establishes that it was not customary to disclose the information described by Dr. Goodwin, and that Defendants believed they were acting lawfully in accordance with such custom, then this would tend to negate Plaintiff's arguments regarding scienter. *See, e.g.*, *In re Axis Cap. Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 592 (S.D.N.Y. 2006) (fact that agreements at issue were commonly used in insurance industry tended to negate argument that defendant knew they were illegal or that related disclosures were fraudulent).

Plaintiff's overly narrow approach to Dr. Goodwin's opinion about industry custom ignores all of these areas where his testimony will assist the trier of fact. His testimony is relevant and should not be excluded.

V.    **Unlike the Foundational Methodological Flaws Rendering Dr. Cain's Opinions Inadmissible, Plaintiff's Argument About Defendants' Experts' Consideration of Specific Facts Is Not Grounds for Exclusion.**

Plaintiff argues Defendants' experts should be excluded as unreliable for alleged failures to "account for key facts." This argument appears to be premised on its view that Defendants have challenged Dr. Cain's testimony on those grounds and a hope that raising the same objection to Defendants' experts will somehow insulate Dr. Cain from exclusion. Pl. MIS 9. This premise, and Plaintiff's argument, are both mistaken.

As an initial matter, as rebuttal experts, Dr. Denis and Dr. Goodwin largely focus on explaining Dr. Cain's failure to show economic materiality, price deflation, and damages. "[A] proper rebuttal expert's opinion is not required to be based on the same data as the expert opinion that it is offered to rebut." *Better Holdco, Inc. v. Beeline Loans, Inc.*, 666 F. Supp. 3d 328, 361 (S.D.N.Y. 2023) (citation omitted). *See also, e.g.*, *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016) ("A rebuttal expert is permitted to use new methodologies 'for the purpose of rebutting or critiquing the opinions of [the opposing party's] expert witness.'" (citation omitted)). Plaintiff's attempt to apply affirmative expert opinion standards to rebuttal testimony is misplaced.

Further, even assuming counterfactually that Defendants' experts did not "account for" facts that Plaintiff considers "key," it does not mean that the same challenge Defendants have raised against Dr. Cain requires exclusion of their own experts. Dr. Cain's approach suffers from a key foundational, methodological flaw—purporting to opine on the significance of "omitted" information without identifying the exact information at issue. As explained by Dr. Denis, "Dr. Cain does not define what he assumes 'the alleged omissions' to be." Denis Report ¶ 14; *id.* ¶ 15 ("It is puzzling for Dr. Cain to conclude that omission of certain information is material without clearly defining what that information is."); Pl. Ex. 9, at 156:16-22 (Dr. Denis testifying that, "[i]n his report, [Dr. Cain] speaks to the economic materiality of alleged omissions. He doesn't define for me what those are."); *id.* at 157:20-158:20 (Dr. Denis testifying that "part of the problem" in Dr. Cain's analysis is that he uses terms like "alleged omissions" and "alleged omitted information" but is "very unclear on . . . what they are"). Thus, in establishing a basis for Dr. Denis and Dr. Goodwin to respond to Dr. Cain's ambiguous, "rubber stamp" economic materiality opinions, Defendants' counsel provided the experts an "assumption . . . as to what that alleged omitted

21

information would include." Pl. Ex. 9, at 156:20-157:1. [12] Any alleged failure by Defendants' experts to "account" for specific discrete facts differs in kind from Dr. Cain's logically unsound, unreliable contention that he can assess and opine on the significance of information without identifying the information at issue.

In fact, Dr. Denis and Dr. Goodwin do address many of the "key facts" identified by Plaintiff. With respect to Dr. Denis, Plaintiff cites to a portion of his deposition where Plaintiff's counsel asked whether certain facts were included in paragraph 8 of his report regarding economic materiality. Pl. MIS 11. In that paragraph, Dr. Denis sets forth an assumption, provided by counsel, regarding the nature of the "Allegedly Omitted Information." Denis Report ¶ 8. As Dr. Denis repeatedly explained, this assumption did not affect his evaluation of Dr. Cain's economic materiality analysis and opinions—focused on determining whether Dr. Cain had presented a reliable, affirmative showing of economic materiality—which was "the purpose of [that part of Dr. Denis's] report." Pl. Ex. 9, at 150:21-151:2, 151:22-152:1, 155:24-156:5, 156:10-157:7. A review of Dr. Denis's report reveals that he considered facts that Plaintiff alleges he "ignored" when evaluating Dr. Cain's economic materiality analysis. *See, e.g.*, Denis Report ¶¶ 24-25, 30 (critiquing Dr. Cain's reliance on inapplicable literature regarding cash offers or otherwise "credible acquisition offers"). [13]

---

[12] *See* ECF 115, at 6-7 (Defendants' Memorandum of Law in Support of Defendants' Motion to Exclude Expert Testimony of Dr. Matthew Cain, arguing that Dr. Cain's testimony is a "rubber stamp" because it does not define the alleged omissions, and instead commits to deeming "economically material" whatever Plaintiff alleges and proves at trial).

[13] Plaintiff also argues, "Dr. Denis ignores facts demonstrating that Emerson remained highly interested in acquiring NI after NI's initial rejections of its offers." Opp. 11. But the only evidence cited by Plaintiff references a document from September 19, 2022, containing speculation by representatives of NI about potential future events. *Id.* Notably, Plaintiff's arguments about Emerson's interest in an acquisition rely heavily on the language in Emerson's May 25 and June 22 Letters. *See, e.g.*, Opp. 10-11. But as of the start of the Class Period, NI had rejected Emerson's proposal for a second time, and Emerson did not send another letter—or any form of

Similarly, with respect to Dr. Goodwin, much of the deposition testimony Plaintiff cites is hyper-focused on a single paragraph of his report. Effectively, Plaintiff argues Dr. Goodwin did not consider the possibility of certain future events that could potentially impact the prospect of an acquisition because he explained in his deposition that such events were not specifically listed in the paragraph of his class-certification report where he described his assignment from counsel. Pl. MIS 10 (citing Pl. Ex. 7, at 56:20-58:1, 58:11-60:18, and 61:9-62:13); Goodwin Class-Certification Report ¶ 13. Plaintiff also highlights portions of Dr. Goodwin's testimony where he explained that he cannot predict what a company might do in the future—as the future conduct of a third party is something "you have no control over"—but nonetheless explained why his experience and principles from academic literature supported his conclusion that "the probability of an acquisition occurring was negligible. *See, e.g.*, Pl. Ex. 7, at 139:10-143:4. Like Dr. Denis, Dr. Goodwin's analysis and opinions address the facts that Plaintiff alleges he ignored. *See, e.g.*, Goodwin Report ¶ 63 (discussing how documents "indicate that NI was assessing strategies to defend against future takeover attempts by Emerson"); ¶ 123 ("NI's reconsideration and reaffirmation of its decision to not adopt a poison pill would suggest to a reasonable investor that the NI Board did not perceive a substantial threat that Emerson would return with a hostile bid"); ¶ 200 ("Based on my experience, had NI had considered Emerson's approach a genuine hostile threat, its Board would have executed a more defensive-specific engagement, often including an 'independence fee' designed to secure banker neutrality in advising against a hostile bidder.").

---

communication—to NI until November 2022, over a month after the end of the Class Period. *See* Defendants' Rule 56.1 Statement ¶ 124.

Ultimately, Plaintiff's argument differs in kind from Defendants' challenge to foundational methodological flaws in Dr. Cain's analysis, and it does not warrant exclusion of the testimony and opinions of Dr. Denis and Dr. Goodwin.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Lead Plaintiff's Motion to Exclude Expert Testimony of Dr. David Denis and Dr. Shane Goodwin.

Dated: February 23, 2026

By: /s/ *James F. Bennett*

James F. Bennett (*pro hac vice*)
John D. Comerford (*pro hac vice*)
Jeremy M. Hofman (*pro hac vice*)
Dowd Bennett LLP
7676 Forsyth Blvd., Suite 1900
St. Louis, MO 63105
Telephone:  (314) 889-7300
Facsimile:   (314) 863-2111
jbennett@dowdbennett.com
jcomerford@dowdbennett.com
jhofman@dowdbennett.com

Andrew Ditchfield
Davis Polk & Wardwell LLP
450 Lexington Ave
New York, New York 10017
Telephone: (212) 450-4000
andrew.ditchfield@davispolk.com

*Counsel for Defendants National Instruments Corporation, Michael McGrath, and Eric Starkloff*

## CERTIFICATE OF WORD COUNT

1.      Pursuant to Rule 7.1 of the United States District Court for the Southern District of New York, the undersigned counsel certifies that the foregoing brief was prepared on a computer using Microsoft Word. A proportionally spaced typeface was used as follows:

> Name of Typeface: Times New Roman Point
> Size in Body: 12
> Line Spacing in Body: Double (footnotes, single)

2.       The total number of words in the brief as determined by Microsoft Word's word count function, inclusive of point headings and footnotes and exclusive of the caption, table of contents, table of authorities, signature block, and this Certification, is 7,815 words.

25

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on February 23, 2026, a true and correct copy of the foregoing was filed electronically using the Court's electronic filing system. By operation of that system a notice of electronic filing will be served upon all counsel of record in the case.

/s/ *James F. Bennett*