UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | x | |
| In re NATIONAL INSTRUMENTS CORPORATION SECURITIES LITIGATION | : : : : : x | Civil Action No. 1:23-cv-10488-DLC <br><br> <u>CLASS ACTION</u> |

**REPLY MEMORANDUM IN SUPPORT OF LEAD PLAINTIFF'S MOTION
TO EXCLUDE EXPERT TESTIMONY OF DR. DAVID DENIS
AND DR. SHANE GOODWIN**

**TABLE OF CONTENTS**

**PAGE**

I.     Dr. Goodwin Should Not Be Permitted to Offer an Affirmative Materiality Opinion ...........................................................................................................................1

II.    Defendants Should Not Be Permitted to Present Duplicative Expert Opinions ..................1

III.   Dr. Denis's Opinions Based on an Incorrect Measure of Damages Should Be Excluded .....................................................................................................................4

IV.    Dr. Goodwin's Irrelevant Industry Custom Opinion Should Be Excluded..........................9

V.     Dr. Denis and Dr. Goodwin Disregard Key Facts................................................................10

VI.    Conclusion ...........................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Chen-Oster v. Goldman, Sachs & Co.*,
   114 F. Supp. 3d 110 (S.D.N.Y. 2015)........................................................................9

*Elkind v. Liggett & Myers, Inc.*,
   635 F.2d 156 (2d Cir. 1980).............................................................................5, 6

*Federal Housing Finance Agency v. Nomura Holding America, Inc.*,
   2015 WL 640875 (S.D.N.Y. Feb. 16, 2015) ...............................................................4

*In re Enron Securities Litigation*,
   258 F.Supp.2d 576 (S.D. Tex. 2003) .........................................................................5

*Gordon v. Sonar Capital Management LLC*,
   92 F. Supp. 3d 193 (S.D.N.Y. 2015)..........................................................................5

*Gordon v. Sonar Capital Management LLC*,
   962 F. Supp. 2d 525 (S.D.N.Y. 2013)........................................................................5

*Green v. Hamilton*,
   437 F.Supp. 723 (S.D.N.Y. 1977).............................................................................6

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
   40 F.Supp.3d 332 (S.D.N.Y. 2014)...........................................................................5

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
   601 U.S. 257 (2014)........................................................................................9

*McCormick v. Fund American*,
   26 F.3d 869 (9th Cir. 1994) ...............................................................................6

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir. 1993) ................................................................................5

*On Track Innovations Ltd. v. T–Mobile USA, Inc.*,
   106 F. Supp. 3d 369 (S.D.N.Y. 2015).......................................................................2

*S.E.C. v. Lyon*,
   605 F.Supp.2d 531 (S.D.N.Y. 2009).........................................................................7

*Schlanger v. Four-Phase Sys., Inc.*,
   582 F. Supp. 128 (S.D.N.Y. 1984)..........................................................................9

*Scott v. Chipotle Mexican Grill, Inc.*,
   315 F.R.D. 33 (S.D.N.Y. 2016) ............................................................................10

*Shaw v. Digital Equipment*,
  82 F.3d 1194 (1st Cir. 1996)...................................................................................6

*Straumann Co. v. Lifecore Biomedical Inc.*,
  278 F. Supp. 2d 130 (D. Mass. 2003) ...................................................................1

*Sunstar, Inc. v. Alberto–Culver Co.*,
  2004 WL 1899927 (N.D. Ill. Aug. 23, 2004) ........................................................2

*Travelers Indem. Co. v. Northrop Grumman Corp.*,
  2014 WL 464769 (S.D.N.Y. Jan. 28, 2014) .......................................................7, 9

*United States v. Marabelles*,
  724 F.2d 1374 (9th Cir. 1984) ...............................................................................2

*United States v. Zappey*,
  164 F.4th 1348 (11th Cir. 2026) .........................................................................1, 2

*US Airways, Inc. v. Sabre Holdings Corp.*,
  2022 WL 986232 (S.D.N.Y. Apr. 1, 2022)..............................................................4

**Statutes and Rules**

15 U.S.C. § 78t-1(b)(1).......................................................................................5, 8

15 U.S.C. § 78t-1(d)...............................................................................................5

17 C.F.R. § 240.10b5-1(c) .....................................................................................7

Fed. R. Civ. P. 26(a)(2)(B)(i)..................................................................................3

Lead Plaintiff respectfully submits this reply memorandum in support of its motion to exclude the testimony of Defendants' experts Dr. David Denis and Dr. Shane Goodwin.

## I.    Dr. Goodwin Should Not Be Permitted to Offer an Affirmative Materiality Opinion

As Defendants acknowledge, Dr. Denis is not offering an affirmative opinion on economic materiality.  Defendants' Opposition Brief (ECF 148) ("Opp.") at 8.  Defendants cite Dr. Goodwin's stated opinion regarding economic materiality, but acknowledge that, as Dr. Goodwin testified, his analysis concerns only probability, not the magnitude or significance of a transaction. Opp. at 8-9.  Nor do Defendants dispute that the magnitude of a potential event is important in assessing its economic materiality.  Because his analysis does not account for the magnitude of a potential acquisition, Dr. Goodwin's testimony, if otherwise admissible, should be limited to opining on probability, and he should not be permitted to offer an affirmative opinion on the economic materiality of Emerson's offer.  *Cf. Straumann Co. v. Lifecore Biomedical Inc.*, 278 F. Supp. 2d 130, 134-35 (D. Mass. 2003) (expert opinion "addressed to only half" of the relevant standard cannot prevail at summary judgment).

## II.    Defendants Should Not Be Permitted to Present Duplicative Expert Opinions

Defendants do not, and cannot, deny the substantial overlap between the opinions expressed by Dr. Denis and Dr. Goodwin.  Instead, Defendants identify small differences (at most) between their reports.  But it is not the case that cumulative expert testimony may be excluded only if the experts' resumes and reports are identical.  Rather, under Federal Rule of Evidence 403, the Court has the discretion to assess whether expert testimony would be needlessly cumulative, wasteful, or prejudicial, and to weigh those risks against any probative value of the testimony.

For example, in *United States. v. Zappey*, 164 F.4th 1348 (11th Cir. 2026), the court affirmed the exclusion of duplicative expert testimony.  As in this case, the party proffering the expert opinions in *Zappey* argued that one of its experts had a more academic background, while

1

the other was a practitioner. *Id.* at 1360. And like the Defendants here, that party noted that its experts highlighted different academic studies. *Id.* at 1361. The *Zappey* court rejected those arguments, holding that because the experts "were similarly qualified, would have testified on duplicative topics, and would have provided the same information to the jury," the district court's exclusion of one of them was within its discretion. *Id.*; *see also United States v. Marabelles*, 724 F.2d 1374, 1382 (9th Cir. 1984) (affirming exclusion of duplicative expert testimony).

The same is true here. Apart from Dr. Denis's opinions applying an incorrect measure of damages and Dr. Goodwin's opinion concerning purported industry custom, which should be excluded for other reasons discussed herein, their opinions are fundamentally the same. Both are professors of finance, and they present largely overlapping critiques of Dr. Cain's economic materiality opinions, including his analysis of the academic literature, application of that literature to this case, and event study. Indeed, Defendants have touted that overlap, discussing "critiques from Dr. Denis and Dr. Goodwin highlighting" certain studies' purported "lack of 'fit' to this case," and asserting that "Dr. Denis and Dr. Shane Goodwin both cite literature supporting" a proposition. Memorandum of Law in Support of Defendants' Motion to Exclude Expert Testimony of Dr. Matthew Cain (ECF 115) at 8 n.3 & 17. This preview of Defendants' trial strategy underscores the danger of permitting Defendants to bolster the same opinions with multiple experts, which could encourage the jury to resolve expert disputes by "counting heads." *On Track Innovations Ltd. v. T–Mobile USA, Inc.*, 106 F. Supp. 3d 369, 414 (S.D.N.Y. 2015) (quoting *Sunstar, Inc. v. Alberto–Culver Co.*, 2004 WL 1899927, at *25 (N.D. Ill. Aug. 23, 2004)).

While citations to different academic studies do not demonstrate that expert opinions are non-cumulative, *see Zappey*, 164 F.4th at 1361, Defendants do not even accurately distinguish between their experts' reports on that basis. Defendants highlight Dr. Denis' discussion of the

Branch and Yang (2003) study, Opp. at 12, but Dr. Goodwin also discusses that study in detail. Goodwin Rebuttal Report ¶¶183, 185 n.334, 186 n.335, 188.[1]  Likewise, Defendants note that Dr. Goodwin discusses Bruner (2004), Opp. at 12, but so does Dr. Denis.  Denis Rebuttal Report ¶27.

Defendants stray even further from the record by suggesting that Dr. Denis and Dr. Goodwin "take different approaches" in evaluating Dr. Cain's event study.  Opp. at 12. Defendants' mere identification of non-identical quotations from their reports, *see id.*, is meaningless.  Dr. Denis and Dr. Goodwin offer the same critique of Dr. Cain's event study – as Dr. Goodwin puts it, that "the events on January 13 and 17, 2023 . . . are fundamentally different from the disclosures that the Defendants could (and allegedly should) have made at the start of the Proposed Class Period."  Goodwin Rebuttal Report ¶22.  Or, as Dr. Denis puts it, "the January 2023 announcements were very different than the Alleged Omitted Information that NI could have disclosed at the start of and during the Proposed Class Period[.]"  Denis Rebuttal Report ¶21.  Dr. Denis and Dr. Goodwin both misunderstand the purpose of Dr. Cain's event study, *see* ECF 133 at 15-19, but regardless, Defendants' experts should not be permitted to present the same opinions, based on the same reasoning, at trial.

Defendants also insist that resolution of this issue should be deferred until after Dr. Cain testifies at trial.  Opp. at 10-11.  That is unnecessary, as the duplication between Dr. Denis's and Dr. Goodwin's opinions is evident from their reports.  Expert reports are supposed to provide "a complete statement of all opinions the witness will express," Fed. R. Civ. P. 26(a)(2)(B)(i), and if the reports make clear that experts' opinions will be cumulative, that can be decided before trial. *See US Airways, Inc. v. Sabre Holdings Corp.*, 2022 WL 986232, at *2 (S.D.N.Y. Apr. 1, 2022) (rejecting argument that it would be "premature" to exclude cumulative expert testimony at the

---

[1] Capitalized terms have the same meaning as in Lead Plaintiff's Opening Brief.

*Daubert* stage).  Dr. Cain's opinions and reasoning are set out in his reports as well, and there is no reason to believe that his trial testimony would somehow alter the substantial overlap between Dr. Denis's and Dr. Goodwin's opinions.  Resolution of this issue before trial would enable both sides to formulate their trial presentations accordingly, and avoid any potential prejudice or delay caused by exclusion during trial.

Lead Plaintiff respectfully requests that the Court exclude Dr. Denis's and Dr. Goodwin's duplicative testimony.  Because their only non-duplicative opinions should be excluded for other reasons, Defendants should be required to choose between Dr. Denis and Dr. Goodwin at trial.

**III.    Dr. Denis's Opinions Based on an Incorrect Measure of Damages Should Be Excluded**

Dr. Denis's opinion that "ill-gotten gains are zero in this case" begins: "I understand from counsel that damages for insider trading claims are limited to the insider's allegedly ill-gotten gains."  Denis Rebuttal Report ¶34; *see also id.* at ¶37 (same).  That instruction, which is the foundation of Dr. Denis's opinion, is incorrect.  As the Court has held, "[t]he traditional measure of damages in § 10(b) cases is out-of-pocket loss, which is the difference between the price at which a stock is bought or sold and the stock's true value," and "damages are not limited to profits gained and losses avoided by the defendants[.]"  Opinion and Order (ECF 105) at 15, 16 n.4.  There is no reason for the Court to revisit that decision.  Because Dr. Denis's opinion regarding ill-gotten gains applies an incorrect measure of damages, it has no probative value, is likely to confuse the jury, and should be excluded.  *See* Lead Plaintiff's Opening Brief (ECF 129) at 6-7 (citing cases that expert opinions applying the wrong standard should be excluded); *see also Federal Housing Finance Agency v. Nomura Holding America, Inc.*, 2015 WL 640875, at *3 (S.D.N.Y. Feb. 16, 2015) (Cote, J.) (excluding expert's application of legally incorrect measure of damages).

For the reasons it previously explained, the Court's holding that damages in this case are not limited to disgorgement was correct.  The disgorgement cap for Section 20A claims that

4

Defendants cite only limits damages for claims "under subsection(a)" of Section 20A, 15 U.S.C. § 78t-1(b)(1), and specifies that "[n]othing in this section shall be construed to limit or condition" the right to bring any other cause of action, *id.* § 78t-1(d), such as the Section 10(b) claim here.[2] Accordingly, in *Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993), the court declined to limit Section 10(b) insider trading liability based on Section 20A. *Id.* at 669 n.5 (Section 20A "expressly does not preempt existing remedies, including the availability of implied causes of action under existing law").  Likewise, in *Gordon v. Sonar Capital Management LLC*, 962 F. Supp. 2d 525 (S.D.N.Y. 2013), the court rejected the argument that Section 10(b) and Section 20A claims are "duplicative," *id.* at 532, and was "not persuaded that Section 20A abrogates existing case law granting the Court substantial discretion regarding the calculation of damages in securities fraud cases generally[.]" *Gordon v. Sonar Capital Management LLC*, 92 F. Supp. 3d 193, 204 (S.D.N.Y. 2015).  And in *In re Enron Securities Litigation*, 258 F.Supp.2d 576 (S.D. Tex. 2003), the court indicated that one "factor[]" that may "influence a plaintiff in deciding which of the two statutes to use" is that Section 20A, unlike Section 10(b), limits damages to disgorgement.  *Id.* at 601.

Defendants cite *Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156 (2d Cir. 1980), which held only that a disgorgement cap applies to Section 10(b) insider trading claims in tipper-tippee cases, for two reasons.  First, losses in tipper-tippee cases are not as "directly traceable to the defendant's fraud[.]" *Id.* at 170.  By contrast, NI interacted directly with investors, and its massive repurchase program does not implicate *Elkind*'s concern that a remote tippee who sold "only 10 shares" could face exorbitant damages.  *Id.* at 170.  Second, "serious proof problems . . . may often be insurmountable in a tippee-trading cases." *Id.*  For example, in *Elkind*, where the company tipped

---

[2] Defendants also cite *Kaplan v. S.A.C. Capital Advisors, L.P.*, 40 F.Supp.3d 332 (S.D.N.Y. 2014), an inapposite case involving Section 20A claims.

a broker by vaguely hinting at a "good possibility" that earnings would be "down," it would have been difficult to assess the but-for stock price had the tipped information been publicly disclosed. *Id.* at 167, 170.  In such tipper-tippee cases, the gap between the underlying truth and the tipped information presents proof problems that do not exist in direct insider-trading cases like this one, where the true, but-for value of NI stock – the starting point for Section 10(b) damages – can be conservatively estimated using Emerson's specific offer price.  As *Elkind* notes, courts are "accorded flexibility in assessing damages" under Section 10(b). *Id.* at 169.  This Court exercised that discretion appropriately in holding that the rationale for limiting damages in tipper-tippee cases is "largely inapplicable here."  ECF 105 at 16.

Additionally, if Defendants were correct that (1) damages in Section 10(b) insider trading cases are limited to disgorgement, and (2) disgorgement for an issuer's insider trading is zero because there can be no ill-gotten gains, then there would never be insider trading liability for an issuer's trading while possessing material, non-public information.  That is not the law.  *See Shaw v. Digital Equip.*, 82 F.3d 1194, 1204 (1st Cir. 1996) ("the company itself may not engage in such a purchase of its own stock, if it is in possession of such undisclosed information"); *McCormick v. Fund Am.*, 26 F.3d 869, 876 (9th Cir. 1994) (citing "numerous authorities" for that principle); *Green v. Hamilton*, 437 F. Supp. 723, 728-29 (S.D.N.Y. 1977) ("there can be no doubt that the prohibition against 'insider' trading extends to a corporation"; applying prohibition to issuer's redemption of debentures).  Defendants' position would also mean that companies would no longer need to adopt Rule 10b5-1 plans as a safe harbor against Section 10(b) liability for their own insider trading.  That would be contrary to prevailing practice and is inconsistent with Rule 10b5-1, which clearly applies to issuers.  17 C.F.R. § 240.10b5-1(c).

Recognizing that Dr. Denis's opinion is on shaky ground, Defendants pivot to arguing that it is somehow relevant to scienter.  Dr. Denis's opinion, however, explicitly concerns the quantum of "damages."  *See* Denis Rebuttal Report ¶¶34, 37 (applying instruction from counsel concerning measure of "damages"); *id.* ¶39 (opining that "[d]amages are still zero").  Any attempt to refashion Dr. Denis's opinion so that it does not concern damages would unfairly deviate from his report.  *See Travelers Indem. Co. v. Northrop Grumman Corp.*, 2014 WL 464769, at *5-6 (S.D.N.Y. Jan. 28, 2014) (holding it was "too late" at *Daubert* stage to "change . . . opinions" in expert report "to those that might be admissible").

Moreover, Dr. Denis's opinion does not undermine Defendants' scienter, so it has no probative value to weigh against the high risk of jury confusion regarding the measure of damages.  First, as Defendants acknowledge, "[f]or insider trading liability, the Second Circuit has adopted the 'knowing possession' standard."  Memorandum of Law in Support of Defendants' Motion for Summary Judgment (ECF 111) at 6-7.  Under that standard, the scienter element is satisfied if Defendants knew they possessed material, non-public information at the time of the repurchases.  *Id.*  Ill-gotten gains – the subject of Dr. Denis's opinion – are not necessary to establish scienter under this standard.  *See S.E.C. v. Lyon*, 605 F.Supp.2d 531, 548 (S.D.N.Y. 2009) (no "benefit" required for insider trading liability).  Second, Defendants had a clear financial incentive to conduct the repurchases at artificially deflated prices, regardless of whether NI had ill-gotten gains.  Because NI stock was artificially deflated at the time of the repurchases, NI paid less for that stock than it would have paid had Defendants disclosed the truth.  Thus, NI was able to avoid expenses it would have incurred had Defendants disclosed Emerson's premium offer.[3]  Dr. Denis's opinion

---

[3] This is consistent with the principle that disgorgement (when it is the applicable measure of damages, unlike here) includes not only ill-gotten gains, which is Dr. Denis's focus, but also losses

regarding ill-gotten gains is beside the point, and any probative value is outweighed by the risk of jury confusion.[4]

For similar reasons, Dr. Denis's opinion concerning a but-for world in which Defendants neither disclosed the truth nor traded NI stock, and NI's stock price thus did not move, is irrelevant and would confuse the jury. Denis Rebuttal Report ¶¶37-40. The purpose of a but-for analysis is to "determin[e] damages that result from the asserted theory of injury[.]" Opinion and Order (ECF 105) at 15. Dr. Denis's opinion does not serve that purpose because it has no relevance to the proper measure of damages, which as discussed above, is based on the true value of NI stock in light of Emerson's undisclosed offer – *i.e.*, the but-for price had the truth been publicly disclosed. Dr. Denis's but-for analysis has nothing to do with the true value of NI stock and thus contradicts the proper measure of damages.[5] Moreover, to the extent that Dr. Denis's analysis is intended to suggest that there is no link between Lead Plaintiff's damages theory and Defendants' trading (*see* Opp. at 15-17), that link is firmly established by the contemporaneous-trading requirement that this Court has already applied to limit the Class Period, and any such implication of Dr. Denis's opinion would mislead the jury.[6]

---

wrongfully avoided. *Cf.* 15 U.S.C. 78t-1(b)(1) (disgorgement for Section 20A claims includes "loss avoided").

[4] Because Dr. Denis's opinion regarding repurchases and dividends is intended to "provide analytical support" for his irrelevant and confusing opinion regarding ill-gotten gains, Opp. at 16 n.8, that opinion should also be excluded. Denis Rebuttal Report ¶¶51-68.

[5] Defendants claim that NI's stock price had Defendants neither traded nor disclosed the truth is the same as the "actual value" of NI's stock. Opp. at 18. n.10. That is clearly wrong, because in that hypothetical scenario, material information about Emerson's offer would not be known to the market. Dr. Denis himself makes no such claim. *See* Denis Rebuttal Report ¶¶37-39.

[6] Defendants' claim that Plaintiff's theory "flouts" *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257 (2014), Opp. at 16, is absurd, as that case did not involve insider trading or the "disclose or abstain" obligation.

8

Dr. Denis's opinions in Sections IV, V, and VII of his report should therefore be excluded.

## IV.    Dr. Goodwin's Irrelevant Industry Custom Opinion Should Be Excluded

For expert testimony concerning customary industry practices to be amissible, "industry practice must itself be relevant to the issues under consideration." *Chen-Oster v. Goldman, Sachs & Co.*, 114 F. Supp. 3d 110, 127 (S.D.N.Y. 2015).  Otherwise, such expert testimony "has the potential to unduly confuse the jury[.]" *Travelers*, 2014 WL 464769, at *5-6.  Here, Dr. Goodwin's opinion that it is "not customary" for a company to publicly disclose the existence or rejection of an acquisition proposal after its rejection is irrelevant because, as Dr. Goodwin acknowledges, his opinion does not concern disclosure while trading stock.  Goodwin Tr. 159:22-160:21.  Dr. Goodwin's opinion would confuse the jury by misleadingly suggesting that NI's conduct was "customary" and distracting from the insider trading allegations that are at issue.

Defendants' attempts to salvage this opinion are meritless.  Their assertion that Dr. Goodwin's opinion goes to materiality is contradicted by the authority they cite, which makes clear that "the federal securities laws do not impose a general duty upon an issuer to disclose material facts or new developments when it is not trading in its own securities[.]"  Opp. at 19 (quoting *Schlanger v. Four-Phase Sys., Inc.*, 582 F. Supp. 128, 133 (S.D.N.Y. 1984)).  An opinion that it is customary for issuers not to disclose certain information when they are not trading their own securities, and thus have no general duty to disclose material information, has nothing to do with the underlying materiality of the information, or whether it must be disclosed when a company is trading its own securities, as NI did here.

Next, Defendants assert that Dr. Goodwin's opinion is relevant to their advice of counsel defense.  But whether it is customary for a company to disclose an offer when it is *not* trading its own securities, which is the subject of Dr. Goodwin's opinion, has no bearing on whether NI's massive repurchases, contrary to its existing capital-allocation plan, and without disclosing

9

Emerson's offer, constituted "business as usual" per Wachtell's purported advice. Again, because Dr. Goodwin's opinion assumes no trading, it is disconnected from the facts at issue.

Defendants also claim that Dr. Goodwin's opinion somehow suggests that Defendants were concerned that disclosing Emerson's offer could have subjected NI to potential securities liability. Dr. Goodwin's opinion does not remotely suggest that disclosing Emerson's offer would have violated any securities laws, nor would he be qualified to render any such legal opinion, and it would not be appropriate for an expert to testify about Defendants' state of mind in any event.

Finally, Defendants contend that Dr. Goodwin's opinion suggests that "Defendants believed they were acting lawfully in accordance with such custom[.]" Opp. at 20. However, the "custom" that Dr. Goodwin identifies is facially inapplicable because it concerns disclosure in the absence of trading, whereas Defendants knew that NI was engaged in repurchases. Further, regardless of its scope, that purported custom has no bearing on the applicable standard for scienter, which as discussed above, is knowing possession of material, non-public information.

Dr. Goodwin's opinion as to industry custom thus has no probative value, is likely to confuse the jury, and should be excluded.

## V.    Dr. Denis and Dr. Goodwin Disregard Key Facts

As detailed in Lead Plaintiff's opening brief, Defendants' experts ignore many of the central facts of this case, rendering their methodologies unreliable. *See Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016) ("rebuttal experts must meet *Daubert*'s threshold standards"). Dr. Goodwin admitted that he only considered the possibility of an Emerson acquisition under the originally proposed terms without considering scenarios in which Emerson increased its bid, even though Emerson had expressed its willingness to do just that, or went public, which Emerson was clearly threatening to do. The portions of Dr. Goodwin's report that Defendants highlight in response (Opp. at 23) simply reiterate his opinion, without filling these

10

critical gaps in his analysis.  Likewise, Dr. Denis did not consider key facts indicating that Emerson's offer was economically material, and acknowledged that he instead focused narrowly on NI's rejection.

Defendants also repeat their criticisms of Dr. Cain, which were thoroughly addressed in response to Defendants' *Daubert* motion, and have no bearing on this motion.  If the Court determines that cross-examination is insufficient to address the experts' consideration of the evidence in this case, it is Defendants' experts, not Dr. Cain, who should be excluded.

## VI.    Conclusion

Lead Plaintiff respectfully requests that the Court grant this motion in full.

DATED: March 23, 2026                                **JOHNSON VAN KWAWEGEN LLP**

*/s/ Noam Mandel*
Chad Johnson
Noam Mandel
Desiree Cummings
Jonathan Zweig
1120 Avenue of the Americas
New York, NY 10036
Telephone: (646) 836-9630
chad@jvk-law.com
noam@jvk-law.com
desiree@jvk-law.com
jonathan@jvk-law.com

*Lead and Class Counsel*

11

## CERTIFICATE OF WORD COUNT

1.    Pursuant to Rule 7.1 of the United States District Court for the Southern District of New York, the undersigned counsel certifies that the foregoing brief was prepared on a computer using Microsoft Word.  A proportionally spaced typeface was used as follows:

Name of Typeface: Times New Roman
Point Size in Body: 12 (footnotes, 12)
Line Spacing in Body: Double (block quotes and footnotes, single)

2.    The total number of words in the brief, inclusive of point headings and footnotes and exclusive of the caption, table of contents, table of authorities, signature block, and this Certification, is 3,476 words.  By operation of Microsoft Word's word-count function, this number includes legal citations and certain forms of punctuation.

*/s/ Noam Mandel*

NOAM MANDEL