UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re NATIONAL INSTRUMENTS CORPORATION SECURITIES LITIGATION | Civil Action No. 1:23-cv-10488-DLC<br><br>CLASS ACTION<br><br>STIPULATION AND AGREEMENT OF SETTLEMENT |

This Stipulation and Agreement of Settlement, dated as of September 11, 2026 (the "Stipulation"), is entered into by and among: (i) Court-appointed Lead Plaintiff and Class Representative Wayne County Employees' Retirement System ("Lead Plaintiff"), on behalf of itself and each of the other members of the Class, by and through its counsel of record in *In re National Instruments Corporation Securities Litigation*, Case No. 1:23-cv-10488-DLC (S.D.N.Y.) (the "Action" or "Litigation"); and (ii) National Instruments Corporation ("National Instruments" or "NI" or the "Company"), Eric Starkloff, and Michael McGrath (the "Individual Defendants," and together with the Company, the "Defendants"), by and through their counsel of record in the Litigation.[1] The Stipulation is intended to fully, finally, and forever resolve, discharge, and settle the Litigation and the Released Plaintiff's Claims, subject to the approval of the Court and the terms and conditions set forth in this Stipulation.

## I. THE LITIGATION

### A. The Complaint, the Motion to Dismiss, and the Surviving Claims

The Litigation is pending before the Honorable Denise L. Cote in the United States District Court for the Southern District of New York (the "Court"). The initial complaint in the Litigation was filed on November 30, 2023 as a putative class action. On February 16, 2024, the Court

[1] Capitalized terms not otherwise defined shall have the meanings ascribed to them in §IV.1.

appointed Wayne County Employees' Retirement System as Lead Plaintiff and appointed Robbins Geller Rudman & Dowd LLP as Lead Counsel.

On March 29, 2024, Lead Plaintiff filed the Amended Complaint for Violations of the Federal Securities Laws (the "Complaint"), asserting claims under §§10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder against the Company, the Individual Defendants, and former defendant Karen Rapp ("Rapp"). The Complaint alleged, *inter alia*, that the Company repurchased its common stock during 2022 without disclosing that it had received offers from Emerson Electric Co. ("Emerson") to acquire the Company, and that shareholders who sold NI common stock during that period did so at artificially depressed prices.

On April 26, 2024, Defendants and Rapp moved to dismiss the Complaint. Lead Plaintiff filed an opposition on May 17, 2024. Defendants and Rapp filed their reply in support of their motion to dismiss on May 31, 2024. By Opinion and Order dated September 6, 2024, the Court granted the motion to dismiss in part and denied the motion to dismiss in part. The Court sustained the claim against the Company under §10(b) and Rule 10b-5 on a theory of insider trading, as well as the related §20(a) control-person claims against Eric Starkloff and Michael McGrath. The Court dismissed all claims against Rapp and all claims premised on a misrepresentation or omission theory under §10(b) and Rule 10b-5(b).

**B. <u>Discovery</u>**

On October 8, 2024, Defendants answered the Complaint. Following the answer, the Parties began discovery. On November 8, 2024, Lead Plaintiff served requests for production of documents on Defendants ("Lead Plaintiff's Document Requests") and Lead Plaintiff's First Set of Interrogatories Directed to Defendants ("Lead Plaintiff's First Interrogatories"). On December

9, 2024, Defendants served Defendants' Responses and Objections to Lead Plaintiff's Requests for Production and Defendants' Responses and Objections to Lead Plaintiff's Interrogatories.

On November 15, 2024, Defendants served Defendants' Requests for Production to Lead Plaintiff Wayne County Employees' Retirement System ("Defendants' Requests for Production") and National Instruments' First Set of Interrogatories to Lead Plaintiff Wayne County Employees' Retirement System ("Defendants' First Set of Interrogatories"). On December 16, 2024, Lead Plaintiff served responses and objections to the Defendants' First Set of Interrogatories and Defendants' Requests for Production.

In response to Lead Plaintiff's Document Requests, Defendants produced numerous documents, including presentations, emails, handwritten notes, and other internal and external documents. Lead Plaintiff also served document subpoenas on third parties Bank of America Securities, Inc. and Wachtell Lipton Rosen & Katz, NI's financial and legal advisors. Lead Plaintiff received documents in response to these requests and re-produced these documents to Defendants.

Lead Plaintiff and Defendants met and conferred on numerous occasions throughout the fact discovery process, particularly regarding the scope of discovery. Lead Plaintiff filed letter motions to compel discovery on January 15, 2025, and August 12, 2025. Defendants opposed such motions. The Court issued orders on such motions on January 17, 2025, and August 15, 2025, respectively.

In the fall of 2025, Lead Plaintiff took the depositions of the Individual Defendants as well as three other former employees of NI. Lead Plaintiff also took the deposition of a BofA representative.

On December 1, 2025, Lead Plaintiff served its Second Set of Interrogatories Directed to Defendants and Lead Plaintiff's First Set of Requests for Admission to All Defendants. Defendants responded to these discovery requests on January 7, 2026.

The Parties also conducted expert discovery. Lead Plaintiff served the opening merits report of its expert, Dr. Matthew Cain, on July 28, 2025. On August 27, 2025, Defendants served expert rebuttal reports from Dr. Shane Goodwin and Dr. David Denis. On November 10, 2025, Lead Plaintiff served Dr. Cain's reply report. Defendants took the deposition of Dr. Cain on November 14, 2025, and Lead Plaintiff took the depositions of Dr. Goodwin on October 17, 2025 and of Dr. Denis on November 24, 2025.

### C. Class Certification

On May 2, 2025, Lead Plaintiff moved to certify a class, to be appointed as class representative, and for the appointment of class counsel, supported by an expert report of Dr. Cain. Defendants opposed the motion on June 16, 2025, supported by expert reports of Dr. Denis and Dr. Goodwin. Defendants deposed Dr. Cain in connection with his class certification report on June 3, 2025. Defendants also took the deposition of Gerard Grysko, a representative of Lead Plaintiff, on June 5, 2025. Lead Plaintiff deposed Dr. Denis in connection with his class certification report on July 21, 2025. Lead Plaintiff filed a reply on July 28, 2025, supported further by the opening merits report of Dr. Cain.

By Opinion and Order dated September 19, 2025, the Court granted Lead Plaintiff's motion for class certification, with a modified class definition, and certified the following Class: all persons who sold National Instruments common stock between August 12, 2022 and August 30, 2022 and/or between September 12, 2022 and September 28, 2022, inclusive, and were damaged

thereby. The Court appointed Wayne County Employees' Retirement System as class representative and appointed Robbins Geller Rudman & Dowd LLP as class counsel.

On October 3, 2025, Defendants filed a Petition with the United States Court of Appeals for the Second Circuit for permission to appeal the class certification decision pursuant to Rule 23(f) of the Federal Rules of Civil Procedure (the "Petition"). On October 14, 2025, Lead Plaintiff filed an opposition to this Petition, and Defendants filed a motion to file a reply on October 21, 2025. On January 28, 2026, the Second Circuit granted oral argument on the Petition. The argument was held on February 10, 2026, and the Second Circuit denied the Petition the following day.

**D. <u>Substitution of Class Counsel</u>**

On January 5, 2026, Lead Plaintiff filed a motion to appoint Johnson Van Kwawegen LLP as class counsel. As explained in the memorandum of law in support of the motion, the attorneys who had been prosecuting this action left Robbins Geller Rudman & Dowd LLP and sought to continue prosecuting the action at their new firm, Johnson Van Kwawegen LLP. On January 6, 2026, the Court approved the motion and appointed Johnson Van Kwawegen LLP to serve as class counsel.

**E. <u>Summary Judgment</u>**

On December 22, 2025, Defendants filed a motion for summary judgment and a motion to exclude the expert testimony of Lead Plaintiff's expert, Dr. Cain (the "Cain *Daubert* Motion"). On January 26, 2026, Lead Plaintiff filed its opposition to Defendants' motion for summary judgment, its opposition to the Cain *Daubert* Motion, and a motion to exclude the expert testimony of Defendants' experts, Dr. Denis and Dr. Goodwin (the "Denis and Goodwin *Daubert* Motion"). On February 23, 2026, Defendants filed a reply memorandum in support of their motion for summary

judgment, a reply memorandum in support of the Cain *Daubert* Motion, and an opposition to the Denis and Goodwin *Daubert* Motion. On March 23, 2026, Lead Plaintiff filed a reply memorandum in support of the Denis and Goodwin *Daubert* Motion. These motions were fully briefed but not decided.

### F. <u>Class Notice</u>

On March 12, 2026, Lead Plaintiff filed an unopposed motion for approval of notice of pendency of this action ("Class Notice"). On April 7, 2026, the Court ordered a teleconference be held on April 10, 2026. During this conference, the Court ordered Lead Plaintiff to file a revised version of the Class Notice. Lead Plaintiff filed a revised version of the Class Notice and related papers on April 14, 2026. The Court granted the motion to approve the Class Notice that same day. On June 25, 2026, Lead Plaintiff filed a declaration with proof that Class Notice had been distributed to potential class members. On August 31, 2026, Class Counsel filed a list of all persons who have requested exclusion from the Class.

### G. <u>Settlement Negotiations</u>

The Settling Parties engaged in extensive, arm's-length settlement negotiations before experienced mediator David Murphy.

On October 11, 2024, the Court ordered the Parties to arrange for mediation. The first mediation took place in-person before Mr. Murphy on March 5, 2025. Before the mediation, the parties exchanged mediation statements which set forth their positions. While the Parties engaged in good-faith negotiation, the Parties were not able to come to an agreement.

On September 22, 2025, the Court ordered the Parties to engage in renewed mediation. On October 13, 2025, the Parties attended a second in-person mediation before Mr. Murphy. The

parties again exchanged mediation statements in advance. Despite continuing to negotiate in good faith, the Parties were not able to come to an agreement.

On February 26, 2026, the Court ordered that the Parties engage in renewed mediation. On March 30, 2026, the Parties attended a third in-person mediation before Mr. Murphy. The Parties were not able to reach agreement during this session.

On June 18, 2026, after further discussions between Mr. Murphy and the Parties, Mr. Murphy made a mediator's recommendation, which was accepted by both sides. As reflected in the binding term sheet dated July 14, 2026 (the "Term Sheet"), the Parties agreed to settle the Litigation in return for a cash payment of $28,000,000 to be paid by Defendants and/or their insurers for the benefit of the Class, subject to the approval of the Court.

This Stipulation (together with the Exhibits hereto), upon execution by the undersigned signatories on behalf of their respective clients, reflects the final and binding agreement among the Parties, subject to the Court's approval.

## II. <u>DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY</u>

Throughout the Litigation, Defendants have denied, and continue to deny, each and all of the claims and contentions alleged in the Litigation, including any allegations of fault, liability, wrongdoing, or damages whatsoever. Defendants expressly have denied, and continue to deny, that they committed any act or made any omission giving rise to any liability under the federal securities laws, including any act of insider trading, and maintain that their conduct was at all times proper and in compliance with applicable law. Defendants have also denied, and continue to deny, that Lead Plaintiff or any member of the Class suffered any damages, or was harmed by any conduct alleged in the Litigation or that could have been alleged therein. Defendants maintain that they have meritorious defenses to all claims alleged in the Litigation.

Neither the Settlement nor any of the terms of this Stipulation shall be construed or deemed to be evidence of, or an admission, concession, or finding with respect to, any claim or allegation of any fault, liability, wrongdoing, or damage whatsoever, or any infirmity in the defenses that Defendants have, or could have, asserted.

## III. LEAD PLAINTIFF'S CLAIMS AND THE BENEFITS OF SETTLEMENT

Lead Plaintiff and Lead Counsel believe that the claims asserted in the Litigation have merit and that the evidence developed to date supports the claims asserted therein. However, Lead Plaintiff and Lead Counsel recognize and acknowledge the expense, length, and uncertainty of continued proceedings necessary to prosecute the Litigation through trial and appeals. Lead Plaintiff and Lead Counsel also have considered the uncertain outcome and the risks of any litigation, especially in a complex action such as this Litigation, as well as the difficulties and delays inherent in such litigation. Lead Plaintiff and Lead Counsel are also mindful of the inherent difficulties of proving the claims asserted and of establishing damages, and of the possible defenses to the claims asserted in the Litigation. Based on their investigation and evaluation, Lead Plaintiff and Lead Counsel have determined that the Settlement set forth in this Stipulation confers substantial benefits upon the Class and is in the best interests of Lead Plaintiff and the Class.

## IV. TERMS OF THE STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, without any concession by Lead Plaintiff that the Litigation lacks merit, and without any concession by Defendants of any liability, wrongdoing, fault, damages, or lack of merit in the defenses asserted, IT IS HEREBY STIPULATED AND AGREED by and among Lead Plaintiff (on behalf of itself and the Class) and Defendants, by and through their respective counsel, that, subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and subject to the terms and conditions of this Stipulation, in

consideration of the benefits flowing to the Settling Parties from the Settlement, the Litigation and the Released Plaintiff's Claims shall be finally, fully, and forever compromised, settled, and released, and the Litigation shall be dismissed with prejudice, upon and subject to the terms and conditions set forth below.

**1. Definitions**

As used in this Stipulation and in any Exhibits attached hereto and made a part hereof, the following terms, when capitalized, have the meanings specified below:

1.1 **"Authorized Claimant(s)"** means any Class Member who submits a valid Proof of Claim to the Claims Administrator that is accepted for payment pursuant to the Court-approved Plan of Allocation.

1.2 **"Claim(s)"** means a claim submitted by means of a Proof of Claim on paper or online.

1.3 **"Claims Administrator"** means the firm Strategic Claims Services.

1.4 **"Class"** means the class certified by the Court on September 19, 2025, and "**Class Member(s)**" means any member of the Class, consisting of the following: all persons who sold National Instruments Corporation common stock between August 12, 2022 and August 30, 2022 and/or between September 12, 2022 and September 28, 2022, inclusive (the "Class Period"), and were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest. Also excluded from the Class are any persons who have validly requested exclusion from the Class, provided that such request is accepted by the Court.

1.5 **"Class Period"** means, collectively, the period from August 12, 2022 through August 30, 2022, inclusive, and the period from September 12, 2022 through September 28, 2022, inclusive.

1.6 **"Company"** or **"NI"** means National Instruments Corporation.

1.7 **"Defendants"** means the Company and the Individual Defendants.

1.8 **"Defendants' Counsel"** means any attorney or firm who has appeared in the Litigation on behalf of Defendants.

1.9 **"Distribution Order"** means an order entered by the Court authorizing and directing that the Net Settlement Fund be distributed, in whole or in part, to Authorized Claimants.

1.10 **"Effective Date"** means the first date by which all of the events and conditions specified in ¶7.1 of this Stipulation have occurred or, to the extent applicable, have been expressly waived in writing by all Settling Parties.

1.11 **"Escrow Account"** means the interest-bearing escrow account established for the Settlement and controlled by Lead Counsel, subject to the supervisory authority of the Court, for the benefit of Lead Plaintiff and the Class in accordance with the terms of this Stipulation and any order of the Court.

1.12 **"Escrow Agent"** means the Huntington National Bank or such other agent selected by Johnson Van Kwawegen LLP.

1.13 **"Final"** means, with respect to any order or Judgment of the Court, that such order or Judgment represents a final and binding determination of all issues within its scope and has not been reversed, vacated, or modified in any way and is no longer subject to appellate review, either because of disposition on appeal and conclusion of the appellate process or because of the passage, without action, of the time for seeking appellate review. Without limitation, an order or Judgment

becomes Final when: (a) no motion to alter or amend the Judgment under Rule 59(e) of the Federal Rules of Civil Procedure and no appeal has been filed, and the time has passed for the filing of any such motion and for any notice of appeal to be timely filed; (b) a Rule 59(e) motion has been filed, the motion has been finally determined, and the time to appeal has expired without an appeal; or (c) an appeal has been filed and either (i) the court of appeals has affirmed the order or Judgment or dismissed the appeal and the time for any reconsideration or further appellate review has passed, or (ii) a higher court has granted further appellate review and that court has affirmed the underlying order or Judgment or affirmed the court of appeals' decision. For purposes of this paragraph, an "appeal" includes any petition for a writ of certiorari or other writ. Any appeal or proceeding seeking subsequent judicial review pertaining solely to (a) attorneys' fees, costs, or expenses; (b) the Plan of Allocation; (c) the procedures for determining Authorized Claimants' recognized Claims; or (d) any award to Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4) shall not in any way delay, affect, or preclude the Judgment from becoming Final.

1.14 **"Individual Defendants"** means, collectively, Eric Starkloff and Michael McGrath.

1.15 **"Judgment"** means the Final Judgment and Order of Dismissal with Prejudice to be rendered by the Court, substantially in the form attached hereto as Exhibit B.

1.16 **"Lead Counsel"** or "**Class Counsel**" means Johnson Van Kwawegen LLP.

1.17 **"Lead Plaintiff"** means Wayne County Employees' Retirement System.

1.18 **"Lead Plaintiff's Counsel"** means Lead Counsel and any attorney or firm who has appeared in the Litigation on behalf of Lead Plaintiff or the Class.

1.19 **"Litigation"** or **"Action"** means the action pending in the United States District Court for the Southern District of New York captioned *In re National Instruments Corporation Securities Litigation*, Case No. 1:23-cv-10488-DLC.

1.20 **"Net Settlement Fund"** means the Settlement Fund less: (a) any Court-awarded attorneys' fees, expenses, and interest thereon; (b) any award to Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4); (c) Notice and Administration Expenses; (d) Taxes and Tax Expenses; and (e) other Court-approved deductions.

1.21 **"Notice and Administration Expenses"** means all actual costs and expenses incurred in connection with providing notice to the Class and administering the Settlement, including the costs of locating Class Members, disseminating notice, processing Proofs of Claim, administering and distributing the Settlement Fund, and paying escrow fees.

1.22 **"Person(s)"** means an individual, corporation (including all divisions and subsidiaries), limited liability company, professional corporation, partnership, limited partnership, limited liability partnership, joint venture, fund, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any other business or legal entity, and their respective spouses, heirs, beneficiaries, trustees, transferees, executors, administrators, predecessors, successors, representatives, or assignees.

1.23 **"Plan of Allocation"** means the plan or formula of allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants, as set forth in the Settlement Notice or such other plan of allocation as the Court may approve. The Plan of Allocation is not part of this Stipulation, and neither Defendants nor the Released Defendant Parties shall have any responsibility or liability with respect thereto. Any order of the Court

modifying or rejecting the Plan of Allocation shall not affect the finality or binding nature of the Settlement.

1.24 **"Preliminary Approval Order"** means the order to be entered by the Court, substantially in the form of Exhibit A attached hereto, preliminarily approving the Settlement and approving the form and manner of notice to the Class.

1.25 **"Proof of Claim"** means the Proof of Claim and Release form for submitting a Claim, substantially in the form to be attached to the Preliminary Approval Order, which a Class Member must complete and submit to share in a distribution of the Net Settlement Fund.

1.26 **"Released Defendants' Claims"** means any and all claims and causes of action of every nature and description, whether known or unknown (including Unknown Claims), whether arising under federal, state, common, or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims asserted in the Litigation against Defendants. Released Defendants' Claims do not include: (i) any claims relating to the enforcement of the Settlement; (ii) any claims against any Person who or which submitted a request for exclusion from the Class that is accepted by the Court; or (iii) any claims, demands, rights, or causes of action between or among Defendants, or between Defendants and their insurers.

1.27 **"Released Defendant Parties"** means (i) each Defendant; (ii) Defendants' directors' and officers' liability insurance carriers, and any affiliates or subsidiaries thereof; (iii) the immediate family members of the Individual Defendants; (iv) the direct or indirect parent entities of the Company (including, but not limited to, Emerson), and the Company's direct and indirect subsidiaries, related entities, and affiliates; (v) any trust of which any Individual Defendant is the settlor or which is for the benefit of any Individual Defendant and/or his immediate family members; (vi) with respect to any of the Persons or entities listed in parts (i) through (v), as

applicable, their respective past, present, and future general partners, limited partners, principals, shareholders, joint venturers, officers, directors, managers, managing directors, supervisors, employees, contractors, consultants, experts, auditors, accountants, financial advisors, insurers, reinsurers, indemnitors, trustees, trustors, agents, attorneys, predecessors, successors, assigns, heirs, executors, administrators, estates, and any controlling person thereof; and (vii) any entity in which a Defendant has a controlling interest; all in their capacities as such.

1.28 **"Released Plaintiff's Claims"** means any and all claims, actions, causes of action, demands, losses, rights, duties, obligations, debts, sums of money, suits, contracts, agreements, judgments, matters, issues, promises, damages, and liabilities of every nature and description, whether known or unknown (including Unknown Claims), whether arising under federal, state, common, foreign, or other applicable law, rule, or regulation, that Lead Plaintiff or any other member of the Class, or any other Releasing Plaintiff Party, (i) asserted in the Complaint filed in the Litigation, or (ii) could have asserted in any forum that arise out of, are based on, or relate in any way, directly or indirectly, to any of the allegations, acts, transactions, facts, events, matters, occurrences, representations, or omissions involved, set forth, alleged, or referred to in the Litigation, or which could have been alleged in the Litigation, and that arise out of, are based on, or relate in any way, directly or indirectly, to the sale of the Company's common stock by any members of the Class during the Class Period. Released Plaintiff's Claims do not include: (i) any claims relating to the enforcement of the Settlement; or (ii) any claims of any Person who or which submitted a request for exclusion from the Class that is accepted by the Court.

1.29 "**Released Plaintiff Parties**" means (i) Lead Plaintiff, all Class members, any other plaintiffs in the Action and their counsel, and Lead Plaintiff's Counsel, and (ii) each of their respective immediate family members, and their respective partners, general partners, limited

partners, principals, shareholders, joint venturers, members, officers, directors, managing directors, supervisors, employees, contractors, consultants, experts, auditors, accountants, financial advisors, insurers, investigators, trustees, trustors, agents, attorneys, predecessors, successors, assigns, heirs, executors, administrators, estates, and any controlling person thereof, all in their capacities as such, but not including any Person who or which submitted a request for exclusion from the Class that is accepted by the Court.

1.30 **"Releasing Plaintiff Parties"** means Lead Plaintiff and each and every other Class Member, together with their successors, predecessors, assigns, executors, heirs, administrators, representatives, attorneys, and agents, in their capacities as such, but not including any Person who or which submitted a request for exclusion from the Class that is accepted by the Court.

1.31 **"Releases"** means the releases set forth in ¶¶4.1–4.7 of this Stipulation.

1.32 **"Settlement"** means the resolution of the Litigation in accordance with the terms and provisions of this Stipulation.

1.33 **"Settlement Amount"** means Twenty-Eight Million U.S. Dollars (U.S. $28,000,000.00) in cash, to be paid by or on behalf of Defendants (including by their insurers) pursuant to ¶2.2 of this Stipulation.

1.34 **"Settlement Fund"** means the Settlement Amount plus all interest and accretions thereto.

1.35 **"Settlement Hearing"** means the hearing to be set by the Court under Rule 23(e)(2) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

1.36 **"Settlement Notice"** means the Notice of Proposed Settlement of Class Action, to be approved by the Court and disseminated to the Class, substantially in the form to be attached to the Preliminary Approval Order.

1.37. **"Settling Parties"** or "**Parties**" means, collectively, Defendants and Lead Plaintiff, on behalf of itself and the Class; each a "Party."

1.38 **"Supplemental Agreement"** means the separate confidential agreement described in ¶2.14 of this Stipulation that will apply only if the Court requires a second opportunity for requests for exclusion from the Class.

1.39 **"Tax"** or **"Taxes"** means any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax, and additional amounts imposed with respect thereto) imposed by any governmental authority, including any local, state, and federal taxes.

1.40 **"Tax Expenses"** means all expenses and costs incurred in connection with the operation and implementation of ¶2.10 of this Stipulation, including, without limitation, expenses of tax attorneys and/or accountants and mailing, administration, and distribution costs and expenses relating to filing (or failing to file) the returns described in ¶2.12.

1.41 **"Unknown Claims"** means: (a) any and all Released Plaintiff's Claims that any Releasing Plaintiff Party does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, which, if known by him, her, or it, might have affected his, her, or its decision(s) with respect to this Settlement; and (b) any and all Released Defendants' Claims that any Defendant, together with their successors, predecessors, assigns, executors, heirs, administrators, representatives, attorneys, and agents, in their capacities as such (for purposes of this paragraph, a "Defendant"), does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, which, if known by him, her, or it, might have affected his, her, or its decision(s) with respect to this Settlement. With respect to any and all Released Plaintiff's Claims and Released Defendants' Claims, the Settling Parties stipulate and agree that, upon the

Effective Date, the Settling Parties shall expressly waive, and each Releasing Plaintiff Party and each Defendant shall be deemed to have, and by operation of the Judgment shall have, expressly waived, any and all provisions, rights, and benefits conferred by California Civil Code §1542, and by any law of any state or territory of the United States, or principle of common law or foreign law, that is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The Settling Parties acknowledge, and the Releasing Plaintiff Parties and Defendants shall be deemed by operation of the Judgment to have acknowledged, that the inclusion of Unknown Claims in the definition of Released Plaintiff's Claims and Released Defendants' Claims was separately bargained for and is a key element of the Settlement of which this release is a part.

**2. <u>The Settlement</u>**

2.1 The obligations incurred pursuant to this Stipulation are: (a) subject to approval by the Court and the Judgment, reflecting such approval, becoming Final; and (b) in full and final disposition of the Litigation and any and all Released Plaintiff's Claims and Released Defendants' Claims, upon and subject to the terms and conditions set forth herein.

**a. <u>The Settlement Amount</u>**

2.2 In full and final settlement of the claims asserted in the Litigation and in consideration of the Releases specified in ¶¶4.1–4.7, Defendants shall pay or cause to be paid (including by their insurers) the Settlement Amount into the Escrow Account by wire transfer within twenty (20) business days after the later of: (i) the Court's entry of an order preliminarily approving the Settlement; and (ii) Lead Counsel's providing to Defendants' Counsel a completed Form W-9, payee/mailing address information, wire transfer or electronic payment (ACH)

instructions and/or any requisite electronic payment authorization forms, and the name and telephone number of an individual who can verbally confirm wire instructions and provide verbal verification of same. Defendants shall have no right of reversion once the Effective Date occurs.

2.3 The Defendants' obligation to pay, or cause to be paid, the Settlement Amount into the Escrow Account as set forth in ¶2.2, together with Defendants' obligation to provide the notice required under the Class Action Fairness Act of 2005, 28 U.S.C. §1715 *et seq.* ("CAFA") within ten days after the proposed Settlement is filed in Court, and the costs associated therewith, represents the entirety of Defendants' financial obligations in connection with this Settlement. Other than these obligations, the Released Defendant Parties shall have no responsibility for, interest in, or liability whatsoever with respect to: (a) any act, omission, or determination by Lead Counsel, the Escrow Agent, or the Claims Administrator in connection with the administration of the Settlement; (b) the management, investment, or distribution of the Settlement Fund; (c) the Plan of Allocation; (d) the determination, administration, calculation, or payment of any Claims asserted against the Settlement Fund; (e) any loss suffered by, or fluctuation in value of, the Settlement Fund; or (f) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

2.4 If the entire Settlement Amount is not deposited into the Escrow Account by the date specified herein, Lead Counsel may terminate the Settlement, but only if: (a) Lead Counsel has notified Defendants' Counsel in writing of Lead Counsel's intention to terminate the Settlement; and (b) the entire Settlement Amount is not transferred to the Escrow Account within three (3) business days after Lead Counsel has provided such written notice.

**b. <u>The Escrow Agent</u>**

2.5 The Settlement Fund shall be used to pay: (a) any Taxes and Tax Expenses; (b) any Notice and Administration Expenses; (c) any attorneys' fees and expenses awarded by the Court; and (d) any award to Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4) awarded by the Court. The balance remaining in the Settlement Fund, that is, the Net Settlement Fund, shall be distributed to Authorized Claimants as provided in ¶¶5.1–5.10.

2.6 The Escrow Agent shall invest the Settlement Amount deposited pursuant to ¶2.2 in instruments backed by the full faith and credit of the United States Government or an agency thereof, or fully insured by the United States Government or an agency thereof, or in money funds holding only instruments backed by the full faith and credit of the United States Government or an agency thereof, and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. All risks related to the investment of the Settlement Fund shall be borne by the Settlement Fund, and the Released Defendant Parties shall have no responsibility for, interest in, or liability with respect to, any investment decision or the actions of the Escrow Agent or any transactions executed by the Escrow Agent.

2.7 The interest earned on the Escrow Account shall accrue to the benefit of the Class if the Court approves the Settlement. If the Effective Date does not occur, or if the Stipulation is terminated or canceled in accordance with its terms, the Settlement Fund (including interest earned thereon), less Notice and Administration Expenses and Taxes and Tax Expenses actually incurred, paid, or due and owing, shall be returned to the Persons or entities that paid the Settlement Amount on behalf of Defendants, in proportion to their respective contributions, within thirty (30) calendar days, in accordance with ¶7.4.

2.8 The Escrow Agent shall not disburse the Settlement Fund except as provided in this Stipulation, by an order of the Court, or with the prior written agreement of Defendants' Counsel. All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court and shall remain subject to the jurisdiction of the Court until such time as such funds are distributed pursuant to this Stipulation and/or further order(s) of the Court.

2.9 Following entry of the Preliminary Approval Order, Lead Counsel may pay from the Settlement Fund, without further approval from Defendants or further order of the Court, all reasonable Notice and Administration Expenses actually incurred, notwithstanding that the Effective Date has not yet occurred. In the event the Settlement is not consummated, such amounts shall not be returned or repaid to Defendants or the entities that paid the Settlement Amount on behalf of Defendants.

**c. <u>Taxes</u>**

2.10 The Settling Parties agree as follows:

(a) The Settlement Fund shall be at all times treated as a "qualified settlement fund" within the meaning of Treasury Regulation §1.468B-1, and the regulations promulgated thereunder. The Settling Parties further agree that the Settlement Fund shall be established pursuant to the Court's subject matter jurisdiction within the meaning of Treasury Regulation §1.468B-1(c)(1). In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶2.10, including the "relation-back election" (as defined in Treasury Regulation §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary

documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b) For the purpose of §1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" (as defined in Treasury Regulation §1.468B-2(k)(3)) shall be the Escrow Agent. The Escrow Agent shall timely and properly file all informational and other federal, state, or local tax returns necessary or advisable with respect to the earnings on the Settlement Fund (including, without limitation, the returns described in Treasury Regulation §1.468B-2(k)). Such returns (as well as the elections described in ¶2.10(a) hereof) shall be consistent with this ¶2.10 and in all events shall reflect that all Taxes (including any estimated Taxes, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶2.10(c) hereof.

(c) All Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Defendant Parties or their counsel with respect to any income earned by the Settlement Fund for any period, after the deposit of the Settlement Amount, during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and all Tax Expenses, shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court. The Escrow Agent shall be authorized (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Regulation §1.468B-2(l)(2)). Neither the Released Defendant Parties nor

their counsel are responsible nor shall they have any liability for any Taxes or Tax Expenses. The Settling Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶2.10.

2.11 This is not a claims-made settlement. Except only in the event that the Settlement is terminated or otherwise fails to become effective in accordance with the terms of this Stipulation, neither Defendants nor any other Person funding the Settlement on their behalf shall have any right to the return or reversion of the Settlement Fund or any portion thereof for any reason. The Released Defendant Parties shall not have any liability should Claims made exceed the amount available in the Settlement Fund for payment of such Claims. The Released Defendant Parties shall not be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for the payment of Claims, Taxes, legal fees, or any other expenses payable from the Settlement Fund.

2.12 All Taxes shall be paid out of the Settlement Fund, and shall be timely paid by the Escrow Agent without further order of the Court. Any tax returns prepared for the Settlement Fund (as well as the election set forth therein) shall be consistent with ¶2.10 and in all events shall reflect that all Taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein. The Released Defendant Parties shall have no responsibility or liability for the acts or omissions of Lead Counsel or its agents with respect to the payment of Taxes, as described herein.

2.13 No opinion or advice concerning the Tax consequences of the Settlement to individual Class Members is being given, or will be given, by the Settling Parties or their counsel, nor is any representation or warranty in this regard made by virtue of this Stipulation. Each Class Member's Tax obligations, and the determination thereof, are the sole responsibility of that Class

Member, and the Tax consequences of the Settlement may vary depending on the particular circumstances of each individual Class Member.

**d. Supplemental Agreement**

2.14 Concurrent with the execution of this Stipulation, the Settling Parties shall enter into a separate confidential agreement (the "Supplemental Agreement") providing that Defendants shall have the option to terminate the Settlement if certain conditions are met prior to the Settlement Hearing, as set forth in the confidential Supplemental Agreement. The Supplemental Agreement will not be filed with the Court or otherwise disclosed unless required by the Court or unless and until a dispute as between Lead Plaintiff and Defendants concerning its interpretation or application arises. Should the Supplemental Agreement be filed (whether by order of the Court or in connection with any dispute regarding the Supplemental Agreement), the Parties will jointly request that the Supplemental Agreement be filed under seal or submitted for in camera review. Defendants may provide a redacted version of the Supplemental Agreement for CAFA notice purposes.

**e. Refund of Settlement Fund upon Termination of Settlement**

2.15 In the event that this Stipulation or the Settlement is not approved by the Court, or is terminated or canceled in accordance with the terms of this Stipulation, or the Effective Date otherwise fails to occur for any reason, the Settlement Fund (including any accrued interest), less Notice and Administration Expenses and Taxes and Tax Expenses actually paid, incurred, or due and owing, shall be refunded in accordance with ¶¶2.7 and 7.4 herein.

**3. Preliminary Approval Order, Notice, and Settlement Hearing**

3.1 Pursuant to the schedule ordered by the Court, Lead Counsel shall submit this Stipulation, together with its Exhibits, to the Court and shall apply for entry of the Preliminary

Approval Order, substantially in the form of Exhibit A attached hereto, requesting, *inter alia*, preliminary approval of the Settlement and approval of the form and manner of the Settlement Notice, the Summary Notice of Proposed Settlement of Class Action (the "Summary Notice"), the Postcard Notice of Proposed Settlement of Class Action (the "Postcard Notice"), and the Proof of Claim to be disseminated to the Class.

3.2 It shall be Lead Counsel's responsibility to cause the dissemination of the Settlement Notice, Summary Notice, Postcard Notice, and Proof of Claim to the Class in accordance with this Stipulation and as ordered by the Court. Except for Defendants' obligation to provide notice required under CAFA, and the associated costs therewith, the Released Defendant Parties shall have no responsibility for or liability whatsoever with respect to the Notice and Administration Expenses. Class Members shall have no recourse as to the Released Defendant Parties with respect to any claims arising from any failure or deficiency of the notice process.

3.3 Lead Counsel shall request that, after notice is given to the Class in accordance with ¶3.2, and not earlier than ninety (90) calendar days after the later of the dates on which the appropriate federal and state officials are provided with the notice required under CAFA, the Court hold the Settlement Hearing to consider final approval of the Settlement, and, at or after that hearing, consider the proposed Plan of Allocation and any application by Lead Counsel for attorneys' fees, expenses, and an award to Lead Plaintiff.

**4. <u>Releases</u>**

4.1 The obligations incurred by Defendants pursuant to this Stipulation are in consideration of: (a) the full and final disposition and dismissal with prejudice of the Litigation; and (b) the Releases provided for herein.

4.2 Upon the Effective Date, Lead Plaintiff and each other member of the Class, and each and every Releasing Plaintiff Party, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally, and forever compromised, settled, released, relinquished, waived, and discharged each and every one of the Released Plaintiff's Claims, as defined herein, against the Released Defendant Parties, and shall be permanently barred and enjoined from commencing, instituting, maintaining, prosecuting, or continuing to prosecute any of the Released Plaintiff's Claims against any of the Released Defendant Parties. This release applies regardless of whether any such Person submitted a Proof of Claim, received the Settlement Notice, received a distribution from the Settlement Fund, or objected to the Settlement.

4.3 Lead Plaintiff, for itself and on behalf of all Class Members, expressly acknowledges that it may hereafter discover facts in addition to or different from those it or its counsel now know or believe to be true with respect to the subject matter of the Released Plaintiff's Claims or otherwise, but upon the Effective Date, Lead Plaintiff expressly shall have, and each Class Member shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Plaintiff's Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts. Lead Plaintiff acknowledges, and the Class Members shall be deemed to have acknowledged, and by operation of the Judgment shall have acknowledged, that the foregoing waiver of Released Plaintiff's Claims

that are Unknown Claims was separately bargained for and a key element of the Settlement of which this release is a part.

4.4 Upon the Effective Date, Defendants, together with their successors, predecessors, assigns, executors, heirs, administrators, representatives, attorneys, and agents, in their capacities as such, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally, and forever compromised, settled, released, relinquished, waived, and discharged each and every one of the Released Defendants' Claims, as defined herein, against the Released Plaintiff Parties.

4.5 Any Proof of Claim executed by a Class Member shall acknowledge the release of all Released Plaintiff's Claims against the Released Defendant Parties pursuant to this Stipulation.

4.6 Upon the Effective Date, and to the extent allowed by law, this Stipulation shall operate conclusively as an estoppel and full defense in the event of any claim, demand, action, or proceeding brought by any Releasing Plaintiff Party against any Released Defendant Party with respect to any Released Plaintiff's Claims, or by any Defendant against any Released Plaintiff Party with respect to any Released Defendants' Claims.

4.7 Notwithstanding ¶¶4.1-4.6 above, nothing in the Judgment shall bar any action by any of the Settling Parties to enforce or effectuate the terms of this Stipulation or the Judgment.

**5. <u>Administration and Calculation of Claims and Distribution of the Settlement Fund</u>**

5.1 As part of the Preliminary Approval Order, Lead Plaintiff shall seek appointment of the Claims Administrator. The Claims Administrator, subject to the supervision and direction of Lead Counsel and the Court, shall administer and calculate the Claims submitted by Class Members and shall oversee the distribution of the Net Settlement Fund to Authorized Claimants. Except for Defendants' obligation to provide any required CAFA notice, the Released Defendant

Parties and Defendants' Counsel shall have no responsibility for or interest in the administration of the Settlement or the actions or decisions of the Claims Administrator.

5.2 The Plan of Allocation is separate from the Settlement and will be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. Any order of the Court modifying or rejecting the Plan of Allocation will not operate to terminate the Settlement or affect the finality or binding nature of the Settlement, including the release of Released Plaintiff's Claims and Released Defendants' Claims.

5.3 The Settlement Fund shall be applied as follows: (a) to pay all Notice and Administration Expenses; (b) to pay Taxes and Tax Expenses; (c) to pay any attorneys' fees and expenses of Lead Counsel and any award to Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4), to the extent allowed by the Court; and (d) after the Effective Date, to distribute the Net Settlement Fund to Authorized Claimants as provided by this Stipulation, the Plan of Allocation, or orders of the Court.

5.4 Each Class Member wishing to participate in the distribution of the Net Settlement Fund shall be required to submit to the Claims Administrator a completed Proof of Claim, signed under penalty of perjury and supported by such documents as are specified in the Proof of Claim, by the deadline set by the Court.

5.5 Except as otherwise ordered by the Court, all Class Members who fail to timely submit a valid Proof of Claim shall be forever barred from receiving any payment from the Net Settlement Fund, but shall in all other respects be subject to and bound by the provisions of this Stipulation, the Releases, and the Judgment. Notwithstanding the foregoing, Lead Counsel shall have the discretion (but not an obligation) to accept late-submitted Claims for processing by the Claims Administrator so long as the distribution of the Net Settlement Fund to Authorized

Claimants is not materially delayed thereby. No Person shall have any claim against Lead Plaintiff, Lead Counsel, the Claims Administrator, or any Class Member by reason of the exercise or non-exercise of such discretion.

5.6 The Claims Administrator shall review and determine each Claim in accordance with this Stipulation and the Court-approved Plan of Allocation. Proofs of Claim that do not meet the submission requirements may be rejected, subject to reasonable notice and cure procedures established by the Claims Administrator under Lead Counsel's supervision, and subject to review by the Court.

5.7 Each Person who submits a Claim shall be deemed to have submitted to the jurisdiction of the Court with respect to such Claim, including, but not limited to, all Releases provided for herein and in the Judgment. All proceedings with respect to the administration, processing, and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law or fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court, but shall not, in any event, delay or affect the finality of the Judgment. All Class Members, other claimants, and Parties to this Settlement expressly waive trial by jury (to the extent any such right may exist) with respect to such determinations.

5.8 Lead Counsel will apply to the Court, on notice to Defendants' Counsel, for the entry of a Distribution Order: (i) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Proofs of Claim submitted; (ii) approving payment of any fees and expenses associated with the administration of the Settlement from the Escrow Account; and (iii) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants from the Escrow Account.

5.9 Following the Effective Date and the entry of a Distribution Order, the Net Settlement Fund shall be distributed to Authorized Claimants substantially in accordance with the Plan of Allocation approved by the Court. Under the Plan of Allocation, no distribution shall be made to any Authorized Claimant who would otherwise receive less than a specified *de minimis* amount. If any balance remains in the Net Settlement Fund after the initial distribution, Lead Counsel shall, if feasible and economical, reallocate such balance among Authorized Claimants who negotiated the checks sent in the initial distribution and who would receive a minimum of such specified *de minimis* amount. Lead Counsel shall repeat such redistributions until the balance is *de minimis*. Any *de minimis* balance that is not feasible or economical to reallocate shall be donated to one or more non-sectarian, not-for-profit charitable organizations serving the public interest, unaffiliated with any Party or their respective counsel, chosen by Lead Counsel, subject to the Court's approval.

5.10 The Released Defendant Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of Claims, or any losses incurred in connection therewith. No Person shall have any claim against the Released Defendant Parties, Lead Plaintiff, Lead Plaintiff's Counsel, or the Claims Administrator based on distributions made substantially in accordance with this Stipulation, the Plan of Allocation, or further orders of the Court.

**6. <u>Lead Plaintiff's Counsel's Attorneys' Fees and Expenses</u>**

6.1 Lead Counsel may submit an application or applications (the "Fee and Expense Application") to the Court for an award from the Settlement Fund of: (a) attorneys' fees; plus (b) expenses and charges incurred in connection with prosecuting the Litigation; plus (c) any interest

on such amounts at the same rate and for the same periods as earned by the Settlement Fund. Any application may include a request for reimbursement of Lead Plaintiff's reasonable costs and expenses pursuant to 15 U.S.C. §78u-4(a)(4). Lead Counsel reserves the right to make additional applications for fees and expenses incurred.

6.2 Other than their obligation to fund the Settlement Amount as provided in ¶2.2, Defendants shall have no responsibility whatsoever for any attorneys' fees or costs, or any award to Lead Plaintiff, in connection with the Litigation.

6.3 Any fees and/or expenses awarded by the Court shall be paid solely from the Settlement Fund. The amount of any attorneys' fees and expenses and any award to Lead Plaintiff is within the sole discretion of the Court. Any fees and expenses awarded by the Court shall be paid to Lead Counsel immediately upon award, notwithstanding the existence of any timely-filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof. If the Effective Date does not occur, or the Settlement is validly terminated pursuant to the terms of this Stipulation, each recipient of any portion of an award of attorneys' fees or expenses shall, within ten (10) business days after written notice thereof, return to the Settlement Fund the full amount received, together with interest thereon at the same rate earned by the Settlement Fund. If such termination or failure of the Effective Date to occur is disputed, repayment is not due until ten (10) business days after the resolution of that dispute becomes Final. If any award of attorneys' fees or expenses is reduced, reversed, vacated, or modified by a Final order, each recipient shall, within ten (10) business days after written notice thereof, return the portion of the award necessary to conform to such Final order, together with interest thereon at the same rate earned by the Settlement Fund.

6.4 The Settlement is not contingent upon the Court's approval of any particular amount of attorneys' fees, expenses, or award to Lead Plaintiff. Any order or proceeding relating to the Fee and Expense Application, or any appeal from or reversal or modification thereof, shall not operate to terminate or cancel this Stipulation or affect or delay the finality of the Judgment approving the Settlement.

6.5 Lead Counsel shall allocate the attorneys' fees awarded by the Court among Lead Plaintiff's Counsel in a manner which Lead Counsel in good faith believes reflects the contribution of each such counsel to the initiation, prosecution, and resolution of the Litigation, subject to the approval of the Court. The Released Defendant Parties shall have no responsibility for, and no liability whatsoever with respect to, the allocation among Lead Plaintiff's Counsel, or any other Person who may assert a claim thereto, of any fees and expenses awarded by the Court.

**7. <u>Conditions of Settlement; Effect of Disapproval, Cancellation, or Termination</u>**

7.1 The Effective Date of the Settlement shall be conditioned on the occurrence of all of the following events: (a) the Settling Parties have executed this Stipulation; (b) the Court has entered the Preliminary Approval Order; (c) the Settlement Amount has been deposited into the Escrow Account in accordance with ¶2.2; (d) Defendants have not exercised their option to terminate the Settlement pursuant to the Supplemental Agreement or any other applicable provisions of this Stipulation; (e) Lead Plaintiff has not exercised its option to terminate the Settlement pursuant to ¶2.4 or any other applicable provisions of this Stipulation; (f) the Court has entered the Judgment, dismissing with prejudice all claims asserted in the Complaint (including any claims previously dismissed without prejudice by the Court); and (g) the Judgment has become Final.

7.2 Upon the Effective Date, any and all remaining interest or rights of Defendants in or to the Settlement Fund shall be absolutely and forever extinguished, and the Releases shall be effective. If the conditions specified in ¶7.1 are not met, then the Settlement shall be canceled and terminated subject to ¶¶7.3–7.4, unless the Settling Parties mutually agree in writing to proceed with the Settlement. For the avoidance of doubt, no order of the Court or modification or reversal on appeal of any order concerning the Plan of Allocation or the amount of any attorneys' fees, expenses, or award to Lead Plaintiff shall operate to terminate or cancel this Stipulation or constitute grounds for cancellation or termination.

7.3 Lead Plaintiff and Defendants shall each have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so to all other Settling Parties within thirty (30) calendar days of: (a) the Court's refusal to enter the Preliminary Approval Order in any material respect; (b) the Court's refusal to approve this Stipulation or the Settlement in any material respect; (c) the Court's refusal to enter the Judgment in any material respect; (d) the date upon which the Judgment is modified, reversed, or vacated following any appeal, or is successfully collaterally attacked; or (e) the failure of the Effective Date to occur for any reason. For avoidance of doubt, modifications by the Court to proposed dates or deadlines or to the form or methods of notice that do not materially alter the substantive rights or obligations of the Settling Parties or the Class shall not be considered material changes for purposes of this paragraph. Lead Plaintiff shall also have the right to terminate the Settlement in accordance with ¶2.4, and Defendants shall also have the right to terminate the Settlement in accordance with the terms of the Supplemental Agreement.

7.4 Unless otherwise ordered by the Court, if the Settlement is terminated or the Effective Date otherwise fails to occur for any reason, the Stipulation shall be null and void. Within

thirty (30) calendar days from termination, the Settlement Fund (including accrued interest), less Taxes, Tax Expenses, and Notice and Administration Expenses which have either been disbursed or are chargeable to the Settlement Fund pursuant to this Stipulation, shall be fully refunded by the Escrow Agent to the entities that paid the Settlement Fund on behalf of Defendants in proportion to their respective contributions. Such refunds shall be pursuant to written instructions from Defendants' Counsel. The Escrow Agent or its designee shall apply for any tax refund owed on the Settlement Amount and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, to the entities that paid the Settlement Fund on behalf of Defendants. Such payments shall be pursuant to written instructions from Defendants' Counsel. Additionally, the Settling Parties shall be deemed to have reverted to their respective litigation positions as of immediately prior to the execution of the Term Sheet, and neither this Stipulation, the Term Sheet, the Supplemental Agreement, nor any of their terms or the negotiations relating thereto shall be admissible in any proceeding or used for any purpose, except as necessary to enforce this paragraph.

7.5 Notwithstanding the termination of the Settlement or the failure of the Effective Date to occur, and without limiting ¶7.4, the following provisions of this Stipulation shall survive termination and continue in full force and effect: ¶¶1.1 through 1.41 (Definitions); ¶¶2.6 through 2.13 and ¶2.15 (relating to the Escrow Account and the investment, administration, and taxation of the Settlement Fund, and the refund of the Settlement Fund upon termination); ¶6.3 (relating to the refund of any attorneys' fees and expenses previously paid); ¶¶7.3 through 7.5; ¶8.1; ¶¶9.10, 9.11, 9.14, and 9.17 through 9.21.

**8. <u>No Admission of Wrongdoing</u>**

8.1 Neither this Stipulation (whether or not consummated), including the Exhibits hereto and any Plan of Allocation, the Term Sheet, the Supplemental Agreement, nor the negotiations leading to the execution of this Stipulation and the Settlement, nor any acts, proceedings, communications, drafts, documents, or agreements taken pursuant to or in connection with this Stipulation and/or the approval of the Settlement: (a) shall be offered or received against any of the Released Defendant Parties as evidence of, or construed as or deemed to be evidence of, any presumption, concession, or admission of the truth of any allegation, the validity of any claim, the deficiency of any defense, or any liability, negligence, fault, or wrongdoing of any kind of any of the Released Defendant Parties; (b) shall be offered or received against Lead Plaintiff or any Class Member as evidence that any of their claims lack merit or that any affirmative defense has merit; or (c) shall be construed against any of the Settling Parties as an admission, concession, or presumption that the consideration to be given under the Settlement represents the amount which could be or would have been recovered after trial.

8.2 Notwithstanding the foregoing, the Released Defendant Parties may file this Stipulation and/or the Judgment in any action to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim or issue preclusion, or to effectuate any liability protection under any applicable insurance policy.

**9. <u>Miscellaneous Provisions</u>**

9.1 The Settling Parties: (a) acknowledge that it is their intent to consummate this Settlement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and

implement all terms and conditions of this Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions.

9.2 This Stipulation shall be binding upon, and inure to the benefit of, the successors, heirs, and assigns of the Settling Parties.

9.3 Pending approval of the Court of this Stipulation and its Exhibits, all proceedings in this Litigation shall be stayed and all Class Members shall be barred and enjoined from prosecuting any of the Released Plaintiff's Claims against any of the Released Defendant Parties.

9.4 The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation, and the Settlement shall not be deemed an admission by any Settling Party as to the merits of any claim or defense.

9.5 This Stipulation, the Exhibits hereto, and the Supplemental Agreement supersede any prior or contemporaneous written or oral agreements or understandings between the Settling Parties, including the Term Sheet.

9.6 This Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

9.7 All of the Exhibits to this Stipulation are material and integral parts hereof and are incorporated herein by reference. In the event of any conflict between this Stipulation and any Exhibit, the terms of this Stipulation shall prevail.

9.8 Pursuant to 15 U.S.C. §78u-4(c)(1), the Settling Parties agree that each Party and their counsel have complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure. The Judgment shall contain a statement reflecting such compliance.

9.9 The Settling Parties agree that the Settlement Amount and the other terms of the Settlement were negotiated at arm's length and in good faith by the Settling Parties and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

9.10 All agreements and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Stipulation.

9.11 The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of this Stipulation, and all Settling Parties submit to the jurisdiction of the Court for such purposes. Any action arising under or to enforce this Stipulation or any portion thereof shall be commenced and maintained only in the Court. The Parties further represent that they agree to accept service of any motion, petition, complaint, or any other process to enforce the Settlement, through their counsel of record in the Action.

9.12 Lead Counsel, on behalf of the Class, is expressly authorized by Lead Plaintiff to take all appropriate actions required or permitted to be taken pursuant to this Stipulation to effectuate its terms, and to enter into any modifications or amendments to this Stipulation on behalf of the Class.

9.13 Each counsel or other Person executing this Stipulation, any of its Exhibits, or the Supplemental Agreement on behalf of any Settling Party warrants that such Person has full authority to do so.

9.14 All notices, requests, demands, claims, and other communications hereunder shall be in writing and shall be deemed duly given (a) when delivered personally to the recipient, (b) by U.S. Postal Service or a private delivery service, in either case with proof of delivery, or (c) when sent by email, upon confirmation of receipt, in each case addressed to the intended recipient as set forth below:

***If to Lead Plaintiff or to Lead Counsel:***

JOHNSON VAN KWAWEGEN LLP

Jonathan Zweig
485 Madison Avenue, 15th Floor
New York, NY 10022
Telephone: (646) 836-9630
jonathan@jvk-law.com

***If to Defendants or to Defendants' Counsel:***

DOWD BENNETT LLP

John D. Comerford
7676 Forsyth Blvd., Suite 1900
St. Louis, MO 63105
Telephone: (314) 889-7300
jcomerford@dowdbennett.com

9.15 Except as otherwise provided herein, each Party shall bear his, her, or its own fees and costs.

9.16 This Stipulation may be executed in one or more counterparts, and by facsimile or electronic (including PDF) signature, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

9.17 This Stipulation and its Exhibits shall be governed by, and construed in accordance with, the internal, substantive laws of the State of New York, without giving effect to its choice-of-law principles, except to the extent that federal law requires that federal law govern.

9.18 The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

9.19 This Stipulation shall not be construed more strictly against one Settling Party than another by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations among the Settling Parties, represented by their respective counsel.

9.20 Nothing in the Stipulation, or the negotiations relating thereto, is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, attorney-client privilege, joint defense privilege, or work product protection.

9.21 Any waiver of any of the terms of this Stipulation must be in writing, signed by the party against whom the waiver is sought to be enforced. The waiver by one Settling Party of any breach of this Stipulation by any other party shall not be deemed a waiver by any other Settling Party or a waiver of any other prior or subsequent breach of this Stipulation.

9.22 Unless otherwise provided, the Settling Parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation without further order of the Court.

IN WITNESS WHEREOF, the Settling Parties have caused this Stipulation to be executed, by their duly authorized attorneys, as of the date first written above.

**JOHNSON VAN KWAWEGEN LLP**

Chad Johnson
Noam Mandel
Desiree Cummings
Jonathan Zweig
485 Madison Avenue, 15th Floor
New York, NY 10022
Telephone: (646) 836-9630
chad@jvk-law.com
noam@jvk-law.com
desiree@jvk-law.com
jonathan@jvk-law.com

*Class Counsel*

**DOWD BENNETT LLP**

James F. Bennett
John D. Comerford
7676 Forsyth Blvd., Suite 1900
St. Louis, MO 63105
Telephone: (314) 889-7300
jbennett@dowdbennett.com
jcomerford@dowdbennett.com

*Counsel for Defendants National Instruments Corporation, Eric Starkloff, and Michael McGrath*